SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

Proposed Attorneys for the Chapter 11
Debtor and Debtor In Possession

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 22-02384-11 |
| BORREGO COMMUNITY HEALTH FOUNDATION, | Chapter 11 Case |
| Debtor and Debtor In Possession. | **DEBTOR'S EMERGENCY FIRST DAY MOTION FOR ENTRY OF ORDER: (I) AUTHORIZING THE DEBTOR TO (A) PAY PREPETITION EMPLOYEE WAGES AND SALARIES, AND (B) PAY AND HONOR EMPLOYEE BENEFITS AND OTHER WORKFORCE OBLIGATIONS; (II) AUTHORIZING THE DEBTOR TO PAY PREPETITION AGENCY PAYMENT OBLIGATIONS; AND (III) AUTHORIZING AND DIRECTING THE APPLICABLE BANK TO PAY ALL CHECKS AND ELECTRONIC PAYMENT REQUESTS MADE BY THE DEBTOR RELATING TO THE FOREGOING** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | **Declaration of Isaac Lee and in Support of Debtor's First Day Motions filed concurrently herewith** |
| | Judge: Honorable Laura S. Taylor |
| | Date:  TBD |
| | Time:  TBD |
| | Place:  TBD |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1
2

TABLE OF CONTENTS

Page

I. EMERGENCY MOTION .................................................................. 1

I. INTRODUCTION ........................................................................... 6

II. JURISDICTION ............................................................................. 7

III. STATEMENT OF FACTS AND REQUESTED AUTHORITY ...................... 7

    A.    General Background .................................................. 7

    B.    Relevant Background to Motion ................................ 8

        1.    The Debtor's Employees and Temporary Staff ............ 8

    C.    Prepetition Wages, Payroll and Associated Benefits .......... 10

        1.    The Debtor's Third-Party Payroll System ................. 10

        2.    The Debtor's Withholding Obligations ...................... 11

    D.    Business Expense Reimbursements ............................ 12

    E.    Bonuses ............................................................ 12

    F.    Paid Time Off ..................................................... 13

    G.    Employee Benefits ............................................... 13

        1.    Medical, Vision and Dental Insurance ..................... 14

        2.    Employee Life, Disability, Workers' Compensation and Unemployment ................................................ 16

        3.    Retirement Plans ................................................ 18

        4.    Miscellaneous Employee Benefit Plans .................... 19

IV. LEGAL SUPPORT ........................................................................ 19

    A.    This Court Has Authority Pursuant to §§ 105(a) and 363(b)(1) and (c)(1) to Grant the Relief Requested ........... 20

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- i -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

B.   Outstanding Prepetition Wages, Agency Payment Obligations and Prepetition Employee Benefits Are Priority Claims Under Bankruptcy Code §§ 507(a)(4) and (5) .................................................................................... 23

C.   Maintaining the Employee Benefits Is Within the Debtor's Business Judgment ........................................................... 24

D.   Honoring of Checks and Transfers Related to Employee Obligations and Agency Payment Obligations and Maintenance of Payroll Accounts ......................................... 24

V. CONCLUSION ........................................................................................ 25

- ii -

1

## TABLE OF AUTHORITIES

2

3

**Page(s)**

4

**Cases**

5

*In re All Seasons Industries, Inc.*,
   121 B.R. 822 (Bankr. N.D. Ind. 1990) ................................................ 23

6

7

*In re B&W Enterprises*,
   713 F.2d 534 (9th Cir. 1983) ............................................................. 20

8

9

*In re Canton Castings, Inc.*,
   103 B.R. 874 (Bankr. N.D. Ohio 1989) .............................................. 23

10

11

*Czyzewski v. Jevic Holding Corp.*,
   137 S.Ct. 973 (2017) ........................................................................ 20

12

13

*In re EcoSmart, Inc.*,
   Case No. 15-27139 (RK), 2015 WL 9274245 (Bankr. C.D. Cal.
   Dec. 18, 2015) ............................................................................. 19-20

14

15

*In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
   Case No. 16-17463-ER, Docket No. 68 (Bankr. C.D. Cal. June 10,
   2016) ................................................................................................. 20

16

17

*In re Gordian Med., Inc.*,
   Case No. 12-12399-MW, Docket No. 57 (Bankr. C.D. Cal. March
   5, 2012) ............................................................................................. 20

18

19

*In re Halvorson*,
   581 B.R. 610 (Bankr. C.D. Cal. 2018) ............................................... 19

20

21

*In re Pac. Forest Indus., Inc.*,
   95 B.R. 740 (Bank. C.D. Cal. 1989) .................................................. 23

22

23

*In re Sasson*, 424 F.3d 864 (9th Cir. 2005) .......................................... 19

24

*In re Sotera Wireless, Inc.*,
   Case No. 16-05968-LT11 (Bankr. S.D. Cal. Oct. 25,
   2016)..........................................................................................……20

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*In re Verity Health System of California, Inc.*,
   Case No. 18-20151-ER, Docket No. 612 (Bankr. C.D. Cal. Oct. 22,
   2018)……………………………………………………………..….20

*In re Victor Valley Cmty. Hosp.*,
   Case No. 10-39537-CB, No. 30 (Bankr. C.D. Cal. Sep. 17, 2010).....................20

**Statutes**

11 U.S.C.
   § 101(31)........................................................................................................9
   § 105 ......................................................................................... 1, 5, 18, 19
   § 363 ......................................................................................... 1, 5, 18, 19
   § 507 ...............................................................1, 5, 9, 12, 18, 20, 22, 23
   § 549 ............................................................................................................20
   § 1107 ...................................................................................................1, 5, 7
   § 1108 ...................................................................................................1, 5, 7

26 U.S.C.
   § 4980B........................................................................................................15

28 U.S.C.
   § 157 ..............................................................................................................6
   § 1334 ............................................................................................................6
   § 1408 ............................................................................................................6
   § 1409 ............................................................................................................6

Cal. Health & Safety Code
   §1276.4 ..........................................................................................................8

Employee Retirement Income Security Act of 1974................................................17

**Rules and Regulations**

Cal. Code Regs. tit. 22, § 70217 ...........................................................................8

Federal Rules of Bankruptcy Procedure
   Rule 1007 ......................................................................................................3
   Rule 2002......................................................................................................3
   Rule 6004(a)……………………………………………………..…………3

Local Bankruptcy Rules
   Rule 2014-1 ...................................................................................................9
   Rule 9013-9 ............................................................................................ 1, 3

US_ACTIVE\122223074\V-17

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Appendix D1 .............................................................................. 3, 4, 5

**Secondary Sources**

2 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy*, ¶
    11:386 (2014) ............................................................................ 19

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

US_ACTIVE\122223074\V-17

**EMERGENCY MOTION**

Pursuant to Local Bankruptcy Rule 9013-9 and §§ 105(a), 363(b), 507(a), 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code"),[1] Borrego Community Health Foundation (the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Case"), hereby moves, on an emergency basis (the "Motion"), for the entry of an order (substantially in the form attached hereto as **Exhibit "A"**, the "Proposed Order"): (i) authorizing the Debtor, in its discretion, to (a) pay any outstanding prepetition employee wages and salaries, and (b) pay and honor employee benefits and other workforce obligations (including remitting withholding obligations, maintaining workers' compensation and benefits programs, paying related administration obligations, making contributions to retirement plans, and paying reimbursable employee expenses) (collectively, the "Employee Obligations"), with payments to each employee not to exceed the statutory limit for priority claims of $15,150; (ii) authorizing the Debtor, in its discretion, to pay its Temporary Staff (defined herein) for work performed prepetition *via* payment of Agency Payment Obligations (defined herein), with payments for each Temporary Staff member's prepetition services not to exceed the statutory limit for priority claims of $15,150; and (iii) authorizing and directing the applicable bank to pay all checks and electronic payment requests made by the Debtor relating to the foregoing.

In support of the Motion, the Debtor has separately filed the *Declaration of Isaac Lee, the Debtor's Chief Restructuring Officer of Borrego Community Health Foundation, in Support of Debtor's First Day Motions* (the "Lee Declaration").

## BACKGROUND INFORMATION

On September 12, 2022, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[1] All references to "§" or "sections" herein are to sections of the Bankruptcy Code.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

The Debtor is a nonprofit federally qualified health center that provides health care services to low income and rural patients (collectively, "Patients") in San Diego and Riverside Counties through a system of eleven clinics, two pharmacies, and six mobile units. In 2021, the Debtor provided approximately 386,000 patient care visits to over 94,000 patients. Borrego services include comprehensive primary care, urgent care, behavioral health, dental services, specialty care, transgender health, women's health, prenatal care, veteran's health, chiropractic services, tele-health, and pharmacy.

As set forth in the annexed Memorandum of Points and Authorities, the Debtor filed this Case to protect its patient population and explore all available restructuring options, particularly since its patient population faces risks as a result of recent steps taken by the California Department of Health Care Services.

### SUMMARY OF REQUESTED RELIEF

By this Motion, the Debtor seeks entry of an order: (i) authorizing the Debtor, in its discretion, to (a) pay any outstanding prepetition Employee Obligations, with payments to each employee not to exceed the statutory limit for priority claims of $15,150; (ii) authorizing the Debtor, in its discretion, to pay Agency Payment Obligations, with payments for each Temporary Staff member's prepetition services not to exceed the statutory limit for priority claims of $15,150; and (iii) authorizing and directing the applicable bank to pay all checks and electronic payment requests made by the Debtor relating to the foregoing. The Debtor requests that the relief sought herein be granted on an emergency basis because it will suffer irreparable harm without the relief requested in this Motion.

By way of background, the Debtor's employees are vital to the operation of the Debtor's medical clinics, and to the health, welfare, safety and security of the patients who seek medical care therein. Payment of, and otherwise honoring, the Employee Obligations and Agency Payment Obligations are necessary to prevent

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_ACTIVE\122223074\V-17

employees from terminating their employment with the Debtor and to maintain the employees' morale pending resolution of this Case.

Based on the foregoing, and for the reasons set forth below, the Debtor respectfully requests that (i) the Motion be heard on an emergency basis,[2] pursuant to Rule 9013-9, of the Local Bankruptcy Rules and Administrative Procedures (the "LBR") of the United States Bankruptcy Court for the Southern District of California (the "Court"), and (ii) the Court grant the relief requested in the Motion.

## **ADDITIONAL INFORMATION**

The Motion is based on the Notice of Emergency Motions that will be filed and served after a hearing date for the Debtor's "First Day Motions" has been obtained, the attached Memorandum of Points and Authorities, the Lee Declaration, and the arguments of counsel and other admissible evidence properly brought before the Court at or before the hearing regarding the Motion.  In addition, the Debtor requests that the Court take judicial notice of all documents filed with the Court in this Case.

The Debtor will serve this Motion, the attached Memorandum of Points and Authorities, the Lee Declaration and the Notice of Emergency Motions in accordance with LBR 9013-9(d) and Appendix D1 of the LBR on: (i) the Office of the United States Trustee; (ii) any alleged secured creditors; (iii) the twenty largest general unsecured creditors appearing on the list filed in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (iv) the United States of America, and the State of California; and (v) parties that file with the Court and serve upon the Debtor requests for notice of all matters in accordance with Bankruptcy Rule 2002(i).  To the extent necessary, the Debtor requests that the Court waive compliance with Bankruptcy Rules 2002 and 6004(a), and approve service (in

---

[2] Pursuant to LBR 9013-9(b), a separate motion for an expedited hearing is not required.

US_ACTIVE\122223074\V-17

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

addition to the means of services set forth in such LBR) by overnight delivery and telephonic notice.

Pursuant to Appendix D1(8) of the LBR, any party who opposes this Emergency First Day Motion must immediately notify the Bankruptcy Judge's law clerk of its position by telephone. No opposition may be filed to an Emergency First Day Motion unless authorized by the Court.

In the event that the Court grants the relief requested by the Motion, the Debtor shall provide notice of the entry of the order granting such relief upon each of the foregoing parties and any other parties in interest as the Court directs. The Debtor submits that such notice is sufficient and that no other or further notice be given.

## <u>CONCLUSION</u>

**WHEREFORE**, for all the foregoing reasons and such additional reasons as may be advanced at or prior to the hearing regarding this Motion, the Debtor respectfully requests that the Court enter an order providing for the following relief: (i) authorizing the Debtor, in its discretion, to pay prepetition Employee Obligations, with payments to each employee not to exceed the statutory limit for priority claims of $15,150; (ii) authorizing the Debtor, in its discretion, to pay prepetition Agency Payment Obligations, with payments for each Temporary Employee's prepetition services not to exceed the statutory limit for priority claims of $15,150; (iii) authorizing and directing the applicable bank to pay all checks and electronic payment requests made by the Debtor relating to the foregoing; and (iv) granting such other and further relief as is just and proper under the circumstances.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 4 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  September 12, 2022

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA M. MOYRON

By  */s/Tania M. Moyron*
　　　　　Tania M. Moyron

Proposed Attorneys for the Chapter 11
Debtor and Debtor In Possession

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 5 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Pursuant to Appendix D1(1) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of California (the "LBR"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and §§ 105(a), 363(b), 507(a)(4) and (5), 1107(a) and 1108 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"),[3] Borrego Community Health Foundation ("BCHF" or the "Debtor"), the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case (the "Case"), hereby moves, on an emergency basis (the "Motion"), for the entry of an order (substantially in the form attached hereto as **Exhibit "A"**, the "Proposed Order"):  (i) authorizing, but not directing, the Debtor, in its discretion, to (a) pay or honor any outstanding prepetition wages, salaries, employee benefits, and other compensation, (b) remit withholding obligations, (c) maintain workers' compensation and benefits programs, (d) pay related administration obligations, and (e) pay reimbursable employee expenses (collectively, the "Employee Obligations"), with payments to each employee not to exceed the statutory limit for priority claims of $15,150; (ii) authorizing, but not directing, the Debtor, in its discretion, to pay its Temporary Staff (defined herein) for work performed prepetition via payment of Agency Payment Obligations (defined herein), with payments for each Temporary Staff member's prepetition services not to exceed the statutory limit for priority claims of $15,150; and (iii) authorizing and directing the applicable bank to pay all checks and electronic payment requests made by the Debtor relating to the foregoing.

The Debtor is filing this Case to protect its patient population and explore all available restructuring options, particularly since its patient population faces risks as

---

[3] All references to "§" and "section" herein are to sections of the Bankruptcy Code.

US_ACTIVE\122223074\V-17

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

a result of recent steps taken by the California Department of Health Care Services. Accordingly, it is imperative to the accomplishment of the Debtor's goal in this Case that the Debtor minimizes any adverse impact of the chapter 11 filing on the Debtor's workforce, its Patients (defined herein), the operations of its medical clinics, and on the orderly administration of this Case. Any disruption to payment of the payroll in the ordinary course, or to the continued implementation of employee programs in the Debtor's discretion, would adversely affect the Debtor's goal in this Case. Absent such continued payments and provision of benefits, employees may terminate their employment with the Debtor. It would distract employees from providing critical Patient care and hurt employee morale at a particularly sensitive time in this Case. Failure to honor payroll and employee benefits obligations could have severe repercussions on the Debtor's ability to preserve its assets and administer its estate, to the detriment of all constituencies. Accordingly, the Debtor respectfully requests that the Court grant the Motion.

## II.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.

## STATEMENT OF FACTS AND REQUESTED AUTHORITY

**A.   General Background**

1.   On September 12, 2022 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.   The Debtor is a nonprofit federally qualified health center ("FQHC") that provides health care services to low income and rural patients (collectively, "Patients") in San Diego and Riverside Counties through a system of eleven clinics, two pharmacies, and six mobile units. In 2021, BCHF provided approximately

386,000 patient care visits to over 94,000 patients. Borrego services include comprehensive primary care, urgent care, behavioral health, dental services, specialty care, transgender health, women's health, prenatal care, veteran's health, chiropractic services, tele-health, and pharmacy.

3. FQHCs are federally designated entities that receive higher state payments to provide health care services to poor and rural families and families with incomes below 200% of the poverty level. As an FQHC, BCHF strives to deliver high quality, comprehensive, compassionate primary health care to people in the surrounding area, regardless of ability to pay.

4. Additional background regarding the Debtor, including an overview of the Debtor's business, information on the Debtor's capital structure, and additional events leading up to this Case, is set forth in the *Declaration of Isaac Lee, Chief Restructuring Officer of Borrego Community Health Foundation, in Support of Debtor's Emergency First Day Motions* (the "Lee Declaration").

5. Since the commencement of the Case, the Debtor has been operating its business as debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6. To date, no official committee or examiner has been appointed by the Office of the United States Trustee in this Case.

**B.    Relevant Background to Motion**

     1. The Debtor's Employees and Temporary Staff

7. As set forth in the Lee Declaration, the Debtor employs approximately 697 employees, of which 631 are full-time and 66 are part-time employees (collectively, the "Employees").[4]

---

[4] Part-time employees consist of regular part-time employees, part-time employees, temporary employee, independent contractors and *per diem* employees. Regular part-time Employees are those normally scheduled to work fewer than thirty (30) hours per week and no less than twenty (20). Part-time Employees are those normally scheduled to work fewer than twenty (20) hours per week. Temporary Employees are those employed to work on special projects for short periods of time, or on a "fill-in" basis. Per diem Employees are those who are scheduled to work on an on-

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_ACTIVE\122223074\V-17

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

8.      Full-time, regular part-time and part-time ("core") Employees are regularly scheduled to work every pay period.  Temporary and per diem Employees are used on an as-needed basis.  *Per diem* Employees are called in whenever medical clinics cannot otherwise meet their core staffing requirements – for example, when core Employees are sick or on vacation, or there is a spike in patient census.  Also, because California requires the medical centers to maintain specific nurse-to-patient ratios,[5] the Debtor uses *per diem* Employees to ensure the medical centers are in compliance with those requirements.

9.      In addition to the Employees, the Debtor regularly utilizes temporary staff members (the "Temporary Staff") each of whom is hired through one or several temporary employment agencies that has a contract with the Debtor, notably Roth Staffing ("Roth"), CompHealth Medical Staffing ("CompHealth") and AB Staffing ("AB," together with Roth and CompHealth, the "Agencies"). The number of Temporary Staff fluctuates based on the Debtor's needs.  Temporary Staff are not employees of the Debtor, and accordingly, are not eligible to participate in any employee benefits, health, or welfare plans. The Agencies pay the wages of the Temporary Staff and bill the Debtor on a weekly or monthly basis for the Temporary Staff (the "Agency Payment Obligations").  The Debtor estimates that it will pay Temporary Staff approximately $120,000 per month during this Case.  As of the Petition Date, the Debtor estimates that approximately $120,000 of Agency Payment Obligations are outstanding.  Payment of these Agency Payment Obligations is necessary to avoid harm to morale of the Temporary Staff and prevent any negative impact on Patient care.  Accordingly, the Debtor requests authority to pay the Agency Payment Obligations, as part of its ordinary course of business, whether the amounts are for services that arose pre or post-petition. The Debtor does not believe that any

---

call basis. Unless otherwise required by applicable law, temporary Employees and per diem Employees are not eligible for benefits.

[5] *See* Cal. Health & Safety Code § 1276.4; Cal. Code Regs. tit. 22, § 70217.

payment to an individual member of the Temporary Staff exceeds the $15,150 priority cap under § 507(a)(4).[6]

**C.      Prepetition Wages, Payroll and Associated Benefits**

10.      The Employees are paid wages and salaries (the "Wages") bi-weekly, in arrears, either five or six days after the end of every 14-day pay period, through direct deposit or by check.  The Debtor's average bi-weekly gross payroll is approximately $2,100,000, which includes approximately $90,000 for executive payroll and $600,000 for withholding obligations (relating to various taxes, claims and other obligations).

11.      The Debtor intends to file a First Day Motion with respect to paying the compensation of any of its executives who qualify as "insiders" (as defined in section 101(31) of the Bankruptcy Code).  As part of that motion, which will be supported by a separate declaration, the Debtor will seek authority to pay these insider employees the unpaid wage or salary obligations postpetition in the ordinary course of business.

1.      The Debtor's Third-Party Payroll System

12.      The Debtor pays Employees on the even weeks, on Fridays for the preceding 14-day pay period running from Monday to Sunday.  The Debtor's payroll is disbursed by Ceridian, a supplier of human resources and document services that provides the Debtor with payroll management and administration services.  The Debtor normally funds its payroll to Ceridian on Wednesday prior to the pay date.

13.      The date on which Employees were last paid was September 2, 2022 for the two-week period ending August 28, 2022.

14.      Due to the imminent filing of this Case and the Debtor's desire to ensure that Employees receive timely payment for Wages earned prepetition, the Debtor prefunded the Employees' next routine payroll scheduled for September 16, 2022

---

[6] The Debtor does not seek by this Motion to assume the contracts with the Agencies under which the Agency Payment Obligations arise.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_ACTIVE\122223074\V-17

(the "September 16th Payroll")[7] by payment to Ceridian on Thursday, September 8, 2022.  The September 16th Payroll is scheduled to be disbursed by Ceridian using the prefunded funds on September 16, 2022.  The relief sought by this Motion seeks authority to make this scheduled payment without interruption.

15.    As of the Petition Date, the Debtor will owe Ceridian approximately $5,000 with respect to its processing of payroll and related payroll administration matters (the "Administration Fees").  The Debtor requests authority to pay Ceridian the prepetition amount of $5,000 and to pay the postpetition Ceridian Administration Fees in the ordinary course of the Debtor's business.

16.    Accordingly, the Debtor seeks authority to pay any prepetition Wages that may remain outstanding, with payments to each Employee not to exceed the statutory limit for priority claims of $15,150, and to continue to pay Wages to Employees incurred postpetition in the ordinary course of the Debtor's business.

### 2. The Debtor's Withholding Obligations

17.    In the ordinary course of its business, the Debtor routinely withholds from the Wages certain amounts that the Debtor is required to transmit to the government and certain third parties for purposes such as Social Security and Medicare withholdings, federal and state or local income taxes, contributions to the Debtor's benefit plans, savings and retirement plan contributions, garnishment, child support or other similar obligations pursuant to court order or law (collectively, the "Withholding Obligations").  The Debtor pre-funded approximately $600,000 for Withholding Obligations – including payments for tax obligations (the "Employer Tax Obligations") such as FICA and Social Security – in connection with the payment of September 16th Payroll.  Accordingly, the Debtor seeks authority to pay any prepetition Withholding Obligations that remain outstanding on account of

---

[7] The September 16th Payroll covers Wages earned from August 29, 2022 through September 11, 2022, which the Debtor confirms does not exceed $15,150 per Employee

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

prepetition Wages; and to continue to pay Withholding Obligations incurred postpetition in the ordinary course of the Debtor's business.

**D.    Business Expense Reimbursements**

18.    The Debtor customarily reimburses Employees who incur business expenses in the ordinary course of performing their duties on behalf of the Debtor. Such expenses typically include, but are not limited to, business-related travel expenses (including mileage), business meals, relocation allowances, tuition reimbursement, and other items specified in the Borrego Health Employee Handbook (the "Reimbursement Obligations"). Expense reports detailing the Reimbursement Obligations are submitted for reimbursement by the Employees and generally must be supported by copies of receipts.

19.    It is difficult for the Debtor to determine the exact amount of Reimbursement Obligations that is due and owing for any particular time period since the expenses incurred by Employees on behalf of the Debtor throughout the year vary on a monthly basis and because there may be some delay between when an Employee incurs an expense and submits the corresponding expense report for processing. Based on historical experience, the Debtor anticipates that, as of the Petition Date, the Debtor owes an estimated $20,000 in Reimbursement Obligations. Accordingly, the Debtor seeks authority to pay prepetition Reimbursement Obligations to its Employees. The Debtor further seeks to continue to pay Reimbursement Obligations incurred postpetition in the ordinary course of the Debtor's business.

**E.    Bonuses**

20.    Certain Employees are eligible to receive sign-on bonuses (the "Bonuses"). Sign-on bonuses are provided to candidates for employment in hard-to-fill or critical vacancies. Sign-on bonuses are provided for candidates as a recruiting incentive in accordance to, and consistent with, industry standards.

21.    The Debtor is not, by this Motion, seeking permission to pay any Bonuses to continuing Employees but do seek the authority, in the Debtor's

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 12 -

discretion, to pay the Employees on account of contractually agreed bonuses that accrued within the 180 days prior to the Petition Date when their services with the Debtor are terminated up to and in accordance with § 507(a)(4)'s limit for priority claims of $15,150, taking into account (and not exceeding) all payments made on account of each Employee's priority prepetition Employee Obligations and Bonuses.

**F.    Paid Time Off**

22.    Both regular full-time and regular part-time Employees are eligible for Paid Time Off ("PTO"). Eligible Employees may begin to use any accrued PTO time after 90 days of employment.  The Debtor pays all accrued but unused PTO when an Employee leaves the Debtor.

23.    Eligible Employees accrue PTO annually based on hours worked up to forty (40) hours per week.  The maximum number of PTO hours Employees can accrue each year increases based on an Employee's continuous length of service.  When the maximum accrual cap for an Employee is reached, no further PTO will accrue until the Employee uses some of the accrued PTO.  As of the Petition Date, the Debtor is carrying approximately $2,300,000 on its books for 94,000 hours of accrued and unused PTO.

24.    The Debtor seeks authority to honor its existing PTO policies to the extent it would permit continuing Employees to use their prepetition accrued leave in the ordinary course of business, and going forward.  The Debtor seeks the authority, in its discretion, to pay the Employees for unused PTO, as permitted per employment policy, that accrued within the 180 days prior to the Petition Date so long as the total of the payments already then made for other prepetition Employee Obligations and the PTO does not exceed the statutory limit for priority claims of $15,150.

**G.    Employee Benefits**

25.    The Debtor offers full-time Employees the opportunity to participate in a number of insurance and benefit programs, including, among other things,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 13 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

medical, dental and vision plans, life insurance, short-term and long-term disability insurance, workers' compensation, retirement plans and other insurance plans and benefits as described below (collectively, the "Employee Benefits").

### 1. Medical, Vision and Dental Insurance

26.    The Debtor offers all eligible Employees and their eligible dependents (collectively, the "Dependents") medical, dental and vision insurance, which are primarily self-insured by the Debtor with the exceptions set forth below.

27.    For medical, the Debtor offers eligible Employees a self-insured preferred provider organization plan (the "Self-Insured Medical Plan"). Meritain Health is the third-party administrator for all medical and prescription drug claims against the Self-Insured Medical Plan.

28.    Depending on whether and how many Dependents are covered, the Debtor's and Employees' respective monthly costs for the Self-Insured Medical Plan fall within the following ranges:

| Plan | Monthly Employer Cost | Monthly Employee Cost |
|------|------------------------|------------------------|
| Self-Insured Medical Plan | $550,000 - $3,400,000 | $50,000 - $60,000 |

29.    The Self-Insured Medical Plan is on a self-bill model, whereby the Debtor pays to Meritain Health: (i) monthly administration fees based on the number of insured Employees in the prior month and (ii) actual medical claims. As of the Petition Date, the Debtor believes it does not owe any prepetition administration fees to Meritain Health. As of the Petition Date, the Debtor owed approximately $1.3 million[8] to Meritain Health on account of accrued and unpaid prepetition claims against the Self-Insured Medical Plan.

30.    For dental, the Debtor offers two MetLife plans (together, the "Dental Plans"). The Debtor bears between approximately 75% and 80% of the costs of the

---

[8] This amount does not include estimated incurred but not reported claims.

US_ACTIVE\122223074\V-17

Dental Plans. Depending on the Employees' Dependent status, the Debtor's and Employees' respective monthly costs for the Dental Plans fall within the following ranges:

| Plan | Monthly Employer Cost | Monthly Employee Cost |
|------|----------------------|----------------------|
| MetLife DHMO | $6,000 - $10,000 | $2,000 - $5,000 |
| MetLife PPO | $35,000 - $55,000 | $10,000 - $15,000 |

31.     As of the Petition Date, the Debtor does not owe any amount to MetLife on account of accrued and unpaid prepetition claims against the Dental Plans. Also, as of the Petition Date, the Debtor believes it does not owe any prepetition administration fees to MetLife.

32.     For vision, the Debtor offers one MetLife plan (the "Vision Plan," and together with the Medical Plans and the Dental Plans, the "Health Plans"). The Debtor pays up to 80% of the costs of the Vision Plan. Depending on the Employees' Dependent status, the Debtor's and Employees' respective monthly costs for the Vision Plan falls within the following ranges:

| Plan | Monthly Employer Cost | Monthly Employee Cost |
|------|----------------------|----------------------|
| MetLife Vision | $4,000 - $5,000 | $800 - $1,000 |

33.     As of the Petition Date, the Debtor does not owe any amount to MetLife on account of accrued and unpaid prepetition claims against the Vision Plan. Also, as of the Petition Date, the Debtor believes it does not owe any prepetition administration fees to MetLife.

34.     The Debtor believes that it is current on the administration fees and premiums related to the Health Plans. To the extent it is not, however, the Debtor seeks authority to pay its portion of any premiums or administration fees for the Health Plans that accrued and remain unpaid as of the Petition Date as and when they

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 15 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

come due.  The Debtor also seeks authority to continue to pay, in its discretion and in the ordinary course of its business, the administration fees, premiums for and claims under the Health Plans incurred postpetition.

35.     For similar reasons, the Debtor seeks to continue to perform any obligations under § 4980B of the Internal Revenue Code to administer Continuation Health Coverage ("COBRA") (*see* 26 U.S.C. § 4980B) in respect to former employees.  The Debtor believes that any prepetition costs related to COBRA coverage benefits are *de minimis*, but nonetheless, to maintain Employee morale and ensure the orderly administration of the estate, the Debtor requests authority to pay in its discretion any such prepetition costs.

2.     Employee Life, Disability, Workers' Compensation and Unemployment

36.     The Debtor offers eligible Employees premium-based group life insurance and supplemental life insurance (collectively, "Life Insurance") and accidental death and dismemberment insurance ("AD&D") through MetLife.  The Debtor provides Employees Life Insurance coverage in the amount of $50,000[9] with premiums and other related charges paid 100% by the Debtor and total approximately $12,000 monthly on account of approximately 623 Employees.  The Debtor provides Employees AD&D coverage in the amount of $50,000[10] with premiums and other related charges paid 100% by the Debtor and total approximately $2,000 monthly on account of approximately 623 Employees.

---

[9] Employees may elect to upgrade coverage to 5x annual salary up to $500,000 and pay the additional amount themselves.

[10] Employees may elect to upgrade coverage to 5x annual salary up to $500,000 and pay the additional amount themselves.

US_ACTIVE\122223074\V-17

37.     The Debtor also offers eligible Employees premium-based short term ("ST") through Colonial.[11]  The Debtor pays 100% of premiums and other related charges for ST, totaling approximately $8,000 monthly, on account of 53 Employees.

38.     The Debtor also provides workers' compensation insurance through BETA Healthcare (the "Workers' Compensation Insurance").  The amount of the annual premium is approximately $1,179,361 which is paid monthly in the amount of $98,280.

39.     The Debtor also provides self-insured unemployment claim insurance (the "Unemployment Insurance Plan") for Employees.  The Debtor's quarterly costs under the Unemployment Insurance Plan averages between $130,000 and $330,000.  501(c) Agencies Trust is the third-party administrator for all unemployment claims against the Unemployment Insurance Plan.

40.     The Unemployment Insurance Plan is on a self-bill model, whereby the Debtor pays to 501(c) Agencies Trust: (i) monthly administration fees based on the number of insured Employees in the prior month and (ii) actual unemployment claims.  As of the Petition Date, the Debtor believes it does not owe 501(c) Agencies Trust for any prepetition administration fees or any outstanding unemployment claims.

41.     In addition, as of the Petition Date, the Debtor owes approximately $4,000 to Aetna Resources for Living under an employee assistance program.

42.     The Debtor believes that it is current on all the above-mentioned insurance policies and claims obligations.  To the extent it is not, however, the Debtor seeks authority, in its discretion, to pay any accrued and unpaid prepetition premiums and related charges and to continue the above benefits postpetition and to deliver the Employees' portion of any accrued and unpaid prepetition premiums to the

---

[11] Eligible employees have the option to separately purchase Voluntary Accident Insurance, Voluntary Critical Illness Insurance, Group Hospital Indemnity Insurance and additional Voluntary Disability all through Colonial.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

corresponding administrators in connection with the payment of the Wages and Withholding Obligations.[12]

### 3. Retirement Plans

43.    The Debtor also offers eligible Employees the opportunity to participate in a defined 401(k) contribution plan through Principal (as recordkeeper) that allows for voluntary employee pre-tax deferrals (the "401(k) Plan").    Employees participating in this program may contribute up to the federal statutory cap per year, and the Debtor deducts the employee pre-tax deferrals from Employee paychecks for each pay-cycle.    Failure to timely forward the Employees' 401(k) Plan deductions may be a violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), resulting in potential liability for the Debtor's officers. Maintaining the 401(k) Plan as a part of the Employee Benefit Programs is critical to maintaining employee morale.

44.    The Debtor seeks authority to transfer Employee contributions in connection with the payment of Wages and withholding obligations described above. Administration fees for the 401(k) Plan are paid by Employee participants. The Debtor does not believe any 401(k) Plan payments will cause the total payments made for prepetition Employee obligations to exceed the statutory limit for priority claims of $15,150; however, if that is not the case, the Debtor believes that standard administration costs related to these retirement benefits are *de minimis*, and the Debtor requests authority to pay in its discretion any such prepetition costs to maintain employee morale and ensure the orderly administration of the estate.

---

[12] By separate and contemporaneous motion, the Debtor is requesting authority to maintain its insurance program (including workers' compensation policies) and pay insurance premiums, deductibles and administration fees in the ordinary course of business (including any amounts accrued and unpaid as of the Petition Date).  For the avoidance of doubt, to the extent these two Motions overlap, the Debtor seeks authority to pay any obligation only once.

- 18 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### 4. Miscellaneous Employee Benefit Plans

45.     Employees have the option to join the AirMedCare (Air Ambulance Benefit) Network *via* $50 payroll-deducted annual membership fee.[13] All of these programs are 100% funded by the Employees and are paid for through payroll deductions.  The Debtor requests authority to continue to honor these programs, in its discretion, and to continue distributing to third-parties the payments for these programs in connection with the payment of Wages and Withholding Obligations as described above, including the distributions of payments that are for prepetition amounts due.

**IV.**

**LEGAL SUPPORT**

Sections 105(a) and 363(b)(1) and (c)(1) and the "necessity of payment" doctrine provide statutory support for the requested relief.  Specifically, § 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing; and § 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to enter into transactions in the ordinary course of business without notice and a hearing.

Moreover, the Employee Obligations and Agency Payment Obligations that the Debtor requests authority to pay and/or honor are entitled to priority in payment under §§ 507(a)(4), (5) and (8)(D).  If the aggregate prepetition Wages, Employee Benefits, Agency Payment Obligations  and PTO that accrued within the 180 days prior to the Petition Date exceed the sum of $15,150 allowable as a priority claim under §§ 507(a)(4) and (5) for any individual Employee or Temporary Staff member, the Debtor is not requesting, by this Motion, authority to pay any such excess amounts. Thus, the Debtor requests authority to pay or honor any outstanding Wages, Agency Payment Obligations, Employee Benefits and PTO in the ordinary course of

---

[13] This is a network of affiliated helicopter and airplane air ambulances for medical treatment and transport needs.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_ACTIVE\122223074\V-17

business but only up to the $15,150 priority cap for each Employee or Temporary Staff member.

**A.    This Court Has Authority Pursuant to §§ 105(a)**
**and 363(b)(1) and (c)(1) to Grant the Relief Requested**

Pursuant to § 105(a), "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Essentially, § 105(a) provides a statutory counterpart to the bankruptcy court's otherwise inherent and discretionary equitable powers. *See In re Sasson*, 424 F.3d 864, 874 (9th Cir. 2005); *In re Halvorson*, 581 B.R. 610, 636 n.91 (Bankr. C.D. Cal. 2018).

Utilizing § 105(a), bankruptcy judges in this district have recognized the existence of:

> some case law and some authority in the court's rules in Rule 2081-1(a)(6), which allows immediate payment of claims, often on first day motions, based on the recognition of the critical need to pay prepetition wage and commission claims to employees and specified independent contractors so that they continue to work for the debtor and render services to the debtor to help it continue operations as a going concern and to reorganize in a Chapter 11 bankruptcy case.

*In re EcoSmart, Inc.*, Case No. 15-27139 (RK), 2015 WL 9274245, at *4 (Bankr. C.D. Cal. Dec. 18, 2015) (citing 2 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy*, ¶ 11:386, at 11–45 (2014) ("Most courts allow payment of prepetition employee wages up to the priority amount under the '*necessity of payment' doctrine,* which permits immediate payment of creditors who will not supply services or material essential to the conduct of the business until their prereorganization claims are paid.") (emphasis in original)).

Bankruptcy judges routinely grant motions to pay prepetition wages that are entitled to priority. *See, e.g.*, *In re Sotera Wireless, Inc*., Case No. 16-05968-LT11 (Bankr. S.D. Cal. Oct. 25, 2016); *In re Verity Health System of California, Inc*., Case

- 20 -

No. 18-20151-ER, Docket No. 612 (Bankr. C.D. Cal. Oct. 22, 2018); *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, Case No. 16-17463-ER, Docket No. 68 (Bankr. C.D. Cal. June 10, 2016); *In re Gordian Med., Inc.*, Case No. 12-12399-MW, Docket No. 57 (Bankr. C.D. Cal. March 5, 2012); *In re Victor Valley Cmty. Hosp.*, Case No. 10-39537-CB, Docket No. 30 (Bankr. C.D. Cal. Sep. 17, 2010). Courts either rely on the doctrine of necessity or § 507(a)(4) to allow for the payment of prepetition employee wage claims up to the priority cap set forth in § 507(a)(4). *EcoSmart,* 2015 WL 9274245, at *9. Thus, as long as the Debtor "demonstrate[s] . . . the priority status of wage, salary and commission claims of its employees and independent contractors under 11 U.S.C. § 507(a)(4)(A) and (B)," such demonstration will "warrant immediate payment in advance of general distribution on prepetition claims." *Id.* That is the extent of the relief the Debtor is requesting in this Motion.

The Debtor is mindful that in *In re B&W Enters.*, 713 F.2d 534 (9th Cir. 1983), the Ninth Circuit refused to extend the "necessity of payment" doctrine beyond the railroad reorganization case where the debtor made unauthorized postpetition payments to trade suppliers on prepetition debts. In *B&W*, after conversion to chapter 7, the trustee sought to recover the payments under § 549. That case is factually distinguishable from the instant one in that *B&W* (a) involved ordinary trade suppliers for which the claims were not entitled to priority and (b) did not seek prior court approval for the payments. Moreover, the U.S. Supreme Court, in *Czyzewski v. Jevic Holding Corp.*, has recognized that courts "approve[] interim distributions that violate ordinary priority rules," generally when there are "significant Code-related objectives that the priority-violating distributions serve," including "payment of employees' prepetition wages." 137 S.Ct. 973, 985 (2017).

For a number of reasons, the Bankruptcy Code affords special treatment to certain prepetition claims of employees. Compared to a typical claim in bankruptcy, wages represent a large part of an employee's wealth. In addition, unlike an ordinary

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 21 -

1    trade creditor, the typical employee does not have other sources of income and thus

2    cannot diversify the risk of the employer's default.

3        Any outstanding prepetition Wages as well as the prepetition Agency Payment

4    Obligations cannot be paid without the approval of this Court. The failure of the

5    Debtor to pay outstanding Wages or Agency Payment Obligations timely in the

6    ordinary course of its business would adversely impact Employee and Temporary

7    Staff morale that, in all likelihood, would lead to undesirable employee attrition and

8    other serious and irreparable disruptions of the Debtor's operations as well as

9    possible harm to the Patients. Any significant number of Employee and Temporary

10   Staff member departures or deterioration in morale, especially at this sensitive time,

11   will substantially and adversely impact the Debtor's ability to operate the medical

12   clinics and result in immediate and irreparable harm to the Debtor's estate.

13       The Debtor submits that the amounts to be paid pursuant to this Motion are

14   comparatively small in light of the importance and necessity of preserving the

15   Employees' and Temporary Staff's services and morale and the difficulties and losses

16   the Debtor will suffer if Employee or Temporary Staff morale is low or if they leave

17   in significant numbers. The Debtor further submits that there is ample justification

18   for its belief that even the slightest delay in providing this relief to its Employees or

19   Temporary Staff will hamper operations and damage the Debtor's estate. As a

20   consequence, the Debtor is anxious to reassure its Employees and Temporary Staff.

21       Many Employees and Temporary Staff live from paycheck to paycheck and

22   rely exclusively on receiving their full compensation or reimbursement of their

23   expenses in order to continue to pay their daily living expenses. Employees and

24   Temporary Staff may be exposed to significant financial and healthcare related

25   problems if the Debtor is not permitted to pay and/or honor the Wages, Agency

26   Payment Obligations, PTO policy and Employee Benefits, and the expenses

27   associated therewith in the ordinary course of the Debtor's business. It is critical,

28   therefore, that the Debtor be permitted to pay any outstanding, non-discretionary

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 22 -

prepetition Wages and Agency Payment Obligations that would otherwise constitute priority claims against the Debtor's estate, to honor its prepetition PTO policy regarding the use of accrued PTO and the payment for it upon termination, and to continue to fund its Employee Benefits.

Additionally, the Withholding Obligations do not constitute property of the Debtor's estate. They principally represent Employee earnings that governments (in the case of taxes), Employees (in the case of voluntary Withholding Obligations) and judicial authorities (in the case of involuntary Withholding Obligations), have designated for deduction from Employee paychecks. The failure to transfer these withheld funds could result in hardship to certain Employees and liability for the Debtor and its officer. The Debtor expects that if these Withholding Obligations are not paid, the Debtor may also receive inquiries from garnishers regarding the Debtor's failure to submit, among other things, child support and alimony payments, which are not the Debtor's property but, rather, have been withheld from Employee paychecks.

**B. Outstanding Prepetition Wages, Agency Payment Obligations and Prepetition Employee Benefits Are Priority Claims Under Bankruptcy Code §§ 507(a)(4) and (5)**

Pursuant to § 507(a)(4)(A), claims of Employees and Temporary Staff of the Debtor for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status to the extent of $15,150 per Employee or Temporary Staff member. Similarly, § 507(a)(5) provides that Employees' claims for contributions to certain employee benefit plans are also afforded priority unsecured status to the extent of $15,150 per Employee covered by such plan, less any amount paid pursuant to § 507(a)(4). The Debtor believes that any outstanding Wages, Agency Payment Obligations, PTO policy and Employee Benefits relating to the 180-day period prior to the Petition Date constitute priority claims under §§ 507(a)(4) and (5). As priority claims, they should be paid in full before any general unsecured obligations of the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 23 -

Debtor may be satisfied. Accordingly, the relief requested may affect only the timing of the payment of these priority obligations and will not prejudice the rights of general unsecured creditors or other parties in interest.

With respect to any outstanding prepetition Wages, Agency Payment Obligations, PTO policy and Employee Benefits, no Employees or Temporary Staff will be paid on account of claims above the $15,150 amount stated in §§ 507(a)(4) and (5) of the Bankruptcy Code.

### C. Maintaining the Employee Benefits Is Within the Debtor's Business Judgment

The Debtor's relationships with the Employees, including the terms and conditions of their employment, are matters subject to the Debtor's business judgment and may be managed by the Debtor in the "ordinary course of business." *See In re All Seasons Indus.*, 121 B.R. 822, 825-26 (Bankr. N.D. Ind. 1990); *In re Pac. Forest Indus., Inc.*, 95 B.R. 740, 743 (Bank. C.D. Cal. 1989) ("Employees do not need court permissions to be paid and are usually paid as a part of the ongoing operation of the business.").  This doctrine also applies to accrued employee benefits such as paid time off and leave policies.  *See In re Canton Castings, Inc.*, 103 B.R. 874, 876 (Bankr. N.D. Ohio 1989).   The maintenance of the Debtor's benefit programs is an important part of the Debtor's relationships with its employees that is within the Debtor's business judgment.

Finally, the Withholding Obligations represent funds that the Debtor is not entitled to hold for any protracted period, since the Debtor effectively holds these amounts in trust and the Employees themselves hold a direct claim against such funds.

### D. Honoring of Checks and Transfers Related to Employee Obligations and Agency Payment Obligations and Maintenance of Payroll Accounts

The Debtor further requests that City National Bank be authorized and directed to receive, process, honor and pay all checks presented for payment and to honor all transfer requests made by the Debtor related to Employee Obligations and Agency

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 24 -

Payment Obligations, whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date (including checks that have been presented and dishonored), to the extent that the relevant accounts contain sufficient funds. The Debtor will identify to the banks the checks that are to be honored pursuant to an order approving this Motion. Accordingly, checks other than those for Employee Obligations and Agency Payment Obligations should not be honored inadvertently. Moreover, the Debtor expects to have sufficient funds to pay all Employee Obligations and Agency Payment Obligations, to the extent described herein, on an ongoing basis and in the ordinary course of business.

## V.

## CONCLUSION

**WHEREFORE**, for all the foregoing reasons and such additional reasons as may be advanced at or prior to the hearing on this Motion, the Debtor respectfully requests that this Court enter the Proposed Order: (i) authorizing the Debtor, in its discretion, to pay prepetition Employee Obligations, with payments to each Employee not to exceed the statutory limit for priority claims of $15,150; (ii) authorizing, but not directing, the Debtor, in its discretion, to pay its Temporary Staff for work performed prepetition *via* payment of Agency Payment Obligations, with payments to each Temporary Staff member not to exceed the statutory limit for priority claims of $15,150; (iii) authorizing and directing the applicable bank to pay all checks and electronic payment requests made by the Debtor relating to the foregoing; and (iv) granting such other and further relief as is just and proper under the circumstances.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 25 -

Dated:  September 12, 2022

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA M. MOYRON

By   */s/Tania M. Moyron*
        Tania M. Moyron

Proposed Attorneys for the Chapter 11
Debtor and Debtor In Possession

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 26 -

**Exhibit "A"**

**(Proposed Order)**

**Exhibit A**

**CSD 1008** [08/21/00]
Name, Address, Telephone No. & I.D. No.
DENTONS US LLP
SAMUEL R. MAIZEL (Bar No. 189301)
TANIA M. MOYRON (Bar No. 235736)
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 | Fax: (213) 623-9924

Proposed Attorneys for the Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re
BORREGO COMMUNITY HEALTH FOUNDATION

Debtor.

BANKRUPTCY NO.22-02384-11
Date of Hearing: TBD
Time of Hearing: TBD
Name of Judge: Honorable Laura S. Taylor

## ORDER ON

**EMERGENCY FIRST DAY MOTION FOR ENTRY OF ORDER: (I) AUTHORIZING THE DEBTOR TO (A) PAY PREPETITION EMPLOYEE WAGES AND SALARIES, AND (B) PAY AND HONOR EMPLOYEE BENEFITS AND OTHER WORKFORCE OBLIGATIONS; (II) AUTHORIZING THE DEBTOR TO PAY PREPETITION AGENCY PAYMENT OBLIGATIONS; AND (III) AUTHORIZING AND DIRECTING THE APPLICABLE BANK TO PAY ALL CHECKS AND ELECTRONIC PAYMENT REQUESTS MADE BY THE DEBTOR RELATING TO THE FOREGOING**

The court orders as set forth on the continuation pages attached and numbered  2  through  3  with

exhibits, if any, for a total of pages_____. Motion/Application Docket Entry No. _____.

//

//

//

//

//

//

//

DATED:

_____
Judge, United States Bankruptcy Court

CSD 1001A

US_ACTIVE\122298231\V-3

**CSD 1001A** [07/01/18] (**Page 2**)

**ORDER GRANTING DEBTOR'S EMERGENCY FIRST DAY MOTION FOR ENTRY OF ORDER: (I) AUTHORIZING THE DEBTOR TO (A) PAY PREPETITION EMPLOYEE WAGES AND SALARIES, AND (B) PAY AND HONOR EMPLOYEE BENEFITS AND OTHER WORKFORCE OBLIGATIONS; (II) AUTHORIZING THE DEBTOR TO PAY PREPETITION AGENCY PAYMENT OBLIGATIONS; AND (III) AUTHORIZING AND DIRECTING THE APPLICABLE BANK TO PAY ALL CHECKS AND ELECTRONIC PAYMENT REQUESTS MADE BY THE DEBTOR RELATING TO THE FOREGOING**

**DEBTOR:** BORREGO COMMUNITY HEALTH FOUNDATION          **CASE NO:** 22-02384

---

Having considered the Emergency Motion,[1] the accompanying Memorandum of Points and Authorities in support of the Emergency Motion, and the Declaration of Isaac Lee in support of the Emergency Motion, the arguments of counsel at the hearing, and good cause appearing therefore,

1.      The Emergency Motion is granted subject to the terms of this Order.

2.      The Debtor is authorized, in its sole discretion, to do the following:

   a) To honor and pay any Employee Obligations for Employees of the Debtor that are outstanding as of the Petition Date, including Wages, Withholding Obligations, Reimbursement Obligations, Bonuses, and PTO, provided, however, that no payment to any individual Employee of prepetition Employee Obligations shall exceed, in the aggregate for that individual Employee, the $15,150 statutory cap provided for under § 507(a)(4) of the Bankruptcy Code (the "Statutory Cap") unless otherwise required by applicable law or ordered by this Court;

   b) To pay any Administration Fees owed to Ceridian that are outstanding as of the Petition Date;

   c) To pay any Agency Payment Obligations that are outstanding as of the Petition Date, provided, however, that no payment for any individual Temporary Staff member's prepetition services shall exceed the $15,150 Statutory Cap unless otherwise required by applicable law or ordered by this Court;

   d) To pay postpetition (when payable) any amounts that accrued prepetition for Continuation Health Coverage ("COBRA"), and to continue to perform any obligations related thereto in the ordinary course of business;

   e) To pay its portion of any premiums, claims or administration fees for the Health Plans that accrued and remain unpaid as of the Petition Date and to continue to pay, in its discretion and in the ordinary course of its business, the administration fees, premiums for and claims under the Health Plans incurred postpetition;

   f) To pay any accrued and unpaid prepetition premiums and related charges to maintain Employee Life Insurance, AD&D, ST, Workers' Compensation Insurance, Unemployment Insurance Plan, employee assistance program postpetition and to deliver the Employees' portion of any accrued and unpaid prepetition premiums to the corresponding administrators in connection with the payment of the Wages and Withholding Obligations;

---

[1] Defined terms in this Order shall have the same meaning as in the Emergency Motion unless otherwise defined herein.

**CSD 1001A** [07/01/18] (**Page 3**)

g) To continue to honor, in its discretion and in the ordinary course of its business, miscellaneous employee retirement and benefit programs that are Employee-funded (e.g., 401(k) Plan, AirMedCare), and to distribute to third-parties the payments for these programs in connection with the payment of Wages and Withholding Obligations; and

h) To continue to pay and honor, in its discretion and in the ordinary course of its business, all Employee-related expenses and obligations that accrue postpetition in the ordinary course of the Debtor's business.

3. City National Bank shall honor and pay all checks and electronic payment requests made by the Debtor relating to the foregoing obligations.

4. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order, or the Emergency Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to § 365; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

5. Nothing in this Order or any action taken by the Debtor in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to § 365, and all of the Debtor's rights with respect to such matters are expressly reserved.

6. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity, or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

7. The requirements of Bankruptcy Rule 6003(b) are satisfied because the relief requested in the Emergency Motion is necessary to avoid immediate and irreparable harm to the Debtor.

8. Notice of the Emergency Motion as provided therein shall be deemed good and sufficient notice, and the requirements of Bankruptcy Rules 2002 and 6004(a) and LBR 9013-9(d) and Appendix D1(2) are waived and/or satisfied by such notice.

9. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Emergency Motion.

10. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

###