SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:  213 623 9300
Facsimile:   213 623 9924

Proposed Attorneys for the Chapter 11 Debtor
and Debtor In Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>BORREGO COMMUNITY HEALTH FOUNDATION,<br><br>   Debtor and Debtor In Possession. | Case No. 22-02384-11<br><br>Chapter 11 Case<br><br>**DEBTOR'S EMERGENCY FIRST DAY MOTION OF DEBTOR FOR AUTHORITY TO: (I) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS AND BUSINESS FORMS; (II) IMPLEMENT CHANGES TO THE CASH MANAGEMENT SYSTEM IN THE ORDINARY COURSE OF BUSINESS; (III) REMIT CAPITATION PAYMENTS TO OR AS DIRECTED BY THE PURCHASER OF THE RIVERSIDE CLINICS;  AND (IV) OBTAIN RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Isaac Lee in Support of Debtor's First Day Motions filed concurrently herewith]<br><br>Judge: Honorable Laura S. Taylor<br>Date: TBD<br>Time: TBD<br>Place: TBD |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# TABLE OF CONTENTS

**Page**

EMERGENCY MOTION ............................................................................... 1

BACKGROUND INFORMATION .............................................................. 2

SUMMARY OF REQUESTED RELIEF ...................................................... 2

ADDITIONAL INFORMATION .................................................................. 5

CONCLUSION .............................................................................................. 6

MEMORANDUM OF POINTS AND AUTHORITIES ................................ 8

I. INTRODUCTION ...................................................................................... 8

II. JURISDICTION ........................................................................................ 9

III. STATEMENT OF FACTS ....................................................................... 9

    A.    GENERAL BACKGROUND .................................................. 9

    B.    RELEVANT BACKGROUND TO MOTION ..................... 11

    C.    BALANCE IN ACCOUNTS ................................................ 11

IV. DISCUSSION ......................................................................................... 11

    A.    Maintenance of the Accounts Is in the Best Interests of the
        Estate ................................................................................... 13

    B.    Honoring Certain Prepetition Obligations Related to the Cash
        Management System Should Be Approved .......................... 14

    C.    Authorizing and Directing the Banks to Honor Postpetition
        Checks and Granting Banks Limited Relief from the Automatic
        Stay ...................................................................................... 15

    D.    Maintenance of the Debtor's Existing Business Forms Is in the
        Best Interests of the Estate .................................................. 15

    E.    The Court Should Authorize the Banks to Immediately Release
        Any and All Administrative Holds and/or Freezes That They
        May Have on the Accounts ................................................... 16

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- i -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

F.     The Court Should Authorize the Debtor to Remit Capitation Payments Received by the Debtor Related to the Riverside Clinics to or as Directed by the Purchaser of the Riverside Clinics ..............................................................................17

V. CONCLUSION..............................................................................17

US_ACTIVE\122219591\V-19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Citizens Bank of Md. v. Strumpf*,
    516 U.S. 16 (1995) ................................................................................ 15

*In re Downey Reg'l Med. Ctr.-Hosp., Inc.*,
    Case No. 09-34714-BB, Docket No. 38 (Bankr. C.D. Cal. Sep. 17,
    2009) .................................................................................................... 13

*In re Gen. Growth Props., Inc.*,
    412 B.R. 609 (Bankr. S.D.N.Y. 2009) ............................................... 13

*In re Mwangi*,
    764 F.3d 1168 (9th Cir. 2014) ............................................................ 15

*In re Sasson*,
    424 F.3d 864 (9th Cir. 2005) .............................................................. 11

*In re Tuscan Ranch, Inc.*,
    2012 WL 603639 (B.A.P. 9th Cir. Feb. 2, 2012) ............................... 15

*In re UAL Corp.*,
    2002 WL 34344255 (Bankr. N.D. Ill. Dec. 9, 2002) ......................... 13

*In re Victor Valley Cmty. Hosp.*,
    Case No. 10-39537-CB, Docket No. 32 (Bankr. C.D. Cal. Sep. 17,
    2010) .................................................................................................... 13

*In re Z Gallerie*,
    Case No. 09-18400-VZ, Docket No. 46 (Bankr. C.D. Cal. Apr. 10,
    2009) .................................................................................................... 13

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- iii -

**Statutes**

11 United States Code

§§ 101, *et seq.* ................................................................................. 1, 7, 8

§ 105 .............................................................................. 1, 10, 11, 15

§ 345 .................................................................................................. 10

§ 363 ................................................................................................ 10,11

§ 364 ................................................................................................... 1

§ 503 ................................................................................................... 1

§ 507 ................................................................................................... 1

§ 1107 ................................................................................................. 9

§ 1108 ................................................................................................. 9

28 United States Code

§ 157 .................................................................................................. 8

§ 1334 ................................................................................................ 8

§ 1408 ................................................................................................ 8

§ 1409 ................................................................................................ 8

**Rules and Regulations**

Federal Rules of Bankruptcy Procedure

Rule 2002(i), and (vi) ....................................................................... 5

Rule 1007(d) ..................................................................................... 5

Rule 6003 .......................................................................................... 7

Local Bankruptcy Rules

Rule 9013-9 ................................................................................... 1, 4

Appendix D1 .................................................................................. 5, 8

US_ACTIVE\122219591\V-19

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## **EMERGENCY MOTION**

Pursuant to Local Bankruptcy Rule 9013-9 and §§ 105, 363, 364, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"),[1] Borrego Community Health Foundation (the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Case"), hereby moves, on an emergency basis (the "Motion"), for the entry of an order, pursuant to for entry of an order (substantially in the form attached hereto as **Exhibit "A"** (the "Proposed Order") authorizing the Debtor to: (1) continue to use its cash management system, including the continued maintenance of its existing bank accounts and business forms; (2) implement changes to its cash management system in the ordinary course of business, including opening new or closing existing bank accounts; (3) remit cash received from capitation revenue related to the Riverside Clinics[2] to or as directed by the acquirer of those clinics; and (4) obtain related relief.

The Debtor further requests that the Court authorize the financial institutions at which the Debtor maintains various bank accounts to (a) continue to maintain, service and administer the Debtor's bank accounts, and (b) debit the bank accounts in the ordinary course of business on account of (i) wire transfers or checks drawn on the bank accounts, or (ii) undisputed service charges owed to the banks for maintenance of the Debtor's cash management system, if any.

---

[1] All references to "§" or "section" herein are to sections of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

[2] The term "Riverside Clinics" references all assets, property and rights of the Debtor related to the operations of the following outpatient clinics located in Riverside County, California: (i) Eastside Health Center Building A, located at 1970 University Ave., Riverside, CA; (ii) Eastside Health Center Building B, located at 1971 University Ave., Riverside CA; and (iii) Arlanza Family Health Center, located at 8856 Arlington Ave., Riverside, CA (collectively, the "Riverside Clinics").

**BACKGROUND INFORMATION**

On September 12, 2022, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

The Debtor is a nonprofit federally qualified health center ("FQHC") that provides healthcare services to low income and rural patients (collectively, "Patients") in San Diego and Riverside Counties through a system of twelve clinics, two pharmacies, and six mobile units. In 2021, Debtor provided approximately 386,000 patient care visits to over 94,000 patients. Debtor services include comprehensive primary care, urgent care, behavioral health, dental services, specialty care, transgender health, women's health, prenatal care, veteran's health, chiropractic services, tele-health, and pharmacy.

As set forth in the annexed Memorandum of Points and Authorities, the Debtor filed this Case to protect its patient population and explore all available restructuring options, particularly since its patient population faces risks as a result of recent steps taken by the California Department of Health Care Services.

**SUMMARY OF REQUESTED RELIEF**

By way of background, in the ordinary course of business, the Debtor utilizes an integrated cash management system to collect, concentrate and disburse funds generated by its operations (the "Cash Management System"). The Cash Management System is tailored to meet the Debtor's operating needs as an operator of a sizeable health system with multiple locations. The Cash Management System enables the Debtor to efficiently collect and disburse cash generated by its business, pay its financial obligations, control and monitor funds and available cash, reduce administrative expenses, and obtain accurate account balances and other financial data. It is critical that the Cash Management System remain intact during this Case to ensure seamless continuation of transactions and uninterrupted collection of revenues and disbursement of internal and third-party obligations, and avoid irreparable harm to the Debtor's business and its patients.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 2 -

The Cash Management System currently comprises 6 accounts (the "Accounts"), listed on **Exhibit "B"** hereto, with two commercial banks (City National Bank and Community Valley Bank) (collectively the "Banks") and petty cash at various facilities to pay local expenses that require cash. City National Bank is an authorized depository by the Office of the United States Trustee for Region 16 (the "U.S. Trustee"), pursuant to the U.S. Trustee's Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "UST Guidelines"). Community Valley Bank ("CVB") is not currently an authorized depository under the UST Guidelines. Two of the CVB accounts are used to deposit receipts. The Debtor proposes to keep those two CVB accounts open, but to sweep each CVB account to the City National Bank ending in in 1993 whenever the balance in a CVB account exceeds $10,000. The Debtor will promptly close the CVB account ending in 8653.

The Debtor requests authority to continue utilizing the Accounts. Requiring the Debtor to close certain of the Accounts and open new ones will disrupt the Debtor's cash flow – and, ultimately, impact patient care – because (i) the depositors (some of which are governmental agencies) will not respond quickly to the change and will likely continue to send deposits to the original deposit account, and (ii) the Debtor has certain obligations that it pays exclusively by electronic funds transfer and changes to the payment accounts have the potential of slowing down these crucial payments. Closing the Accounts will also increase the work of the Debtor's accounting personnel, who are already busy addressing the many and varied issues related to this Case. Closing the Accounts and opening new ones under the circumstances described in the attached Memorandum of Points and Authorities would needlessly cost the Debtor time and money at a time when it is trying to conserve both, and would result in no discernible benefit to the Debtor's bankruptcy estate (the "Estate"), while potentially causing irreparable harm thereto.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 3 -

The Debtor also requests authority to continue using its business forms without the designation "Debtor in Possession" on them *for a limited time*.  The Debtor's forms are either electronically printed or can be electronically altered.  The Debtor seeks the authority of this Court to utilize its electronically generated forms without the "Debtor in Possession" designation until the adjustments to the software can be initiated and existing stock is exhausted.

The Debtor recently sold the assets of the Riverside Clinics to Neighborhood Healthcare, a California nonprofit public benefit corporation ("Neighborhood") and in connection with that transaction, the Debtor agreed to collect on behalf of Neighborhood and remit to Neighborhood certain capitation payments related to the Riverside Clinics for a transition period anticipated to end on or about October 1, 2022.  Debtor views those funds as belonging to Neighborhood and not constituting property of the Debtor's bankruptcy estate and proposes to remit those funds as received to Neighborhood.

The Debtor requests that the Court authorize them to continue using its Cash Management System in connection with the continued use of Accounts and continued use of the Debtor's business forms; in furtherance thereof, the Debtor further requests that the Court authorize and direct the Banks to continue honoring the Debtor's transactions.

In support of the Motion, the Debtor has separately filed the *Declaration of Isaac Lee, Chief Restructuring Officer of Borrego Community Health Foundation, in Support of Debtor's Emergency First Day Motions* (the "Lee Declaration").

Based on the foregoing, and for the reasons set forth below, the Debtor respectfully requests that (i) the Motion be heard on an emergency basis[3] pursuant to Rule 9013-9 (the "LBR") of the United States Bankruptcy Court of the Southern

---

[3]     Pursuant to LBR 9013-9(b), a separate motion for an expedited hearing is not required.

US_ACTIVE\122219591\V-19

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  District of California (the "Court") and (ii) the Court grant the relief requested in the

2  Motion.

3  **ADDITIONAL INFORMATION**

4      The Motion is based on the Notice of Emergency Motions that will be filed

5  and served after obtaining a hearing date for the Debtor's "First Day Motions," the

6  attached Memorandum of Points and Authorities, the Lee Declaration, and the

7  arguments of counsel and other admissible evidence properly brought before the

8  Court at or before the hearing on this Motion.  In addition, the Debtor requests that

9  the Court take judicial notice of all documents filed with the Court in this Case.

10      The Debtor will serve this Motion, the attached Memorandum of Points and

11  Authorities, the Lee Declaration and the Notice of Emergency Motions in accordance

12  with LBR 9013-9(d) and Appendix D1 of the LBR on:  (i) the Office of the United

13  States Trustee, (ii) any alleged secured creditors, (iii) the twenty largest general

14  unsecured creditors appearing on the list filed in accordance with Rule 1007(d) of the

15  Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iv) the United

16  States of America and the State of California, (v) parties that file with the Court and

17  served upon the Debtor requests for notices of all matters in accordance with

18  Bankruptcy Rule 2002(i), and (vi) the banks providing the bank accounts.  To the

19  extent necessary, the Debtor requests that the Court waive compliance with LBR

20  Bankruptcy Rules 2002 and 6004(a), and approve service (in addition to the means

21  of service set forth in such LBR) by overnight delivery and telephonic notice.

22      Pursuant to Appendix D-1(8) of the LBR, any party who opposes this

23  Emergency First Day Motion must immediately notify the Bankruptcy Judge's law

24  clerk of its position by telephone at (619) 557-6750.  No opposition may be filed to

25  an Emergency First Day Motion unless authorized by the Court.

26      In the event that the Court grants the relief requested by the Motion, the Debtor

27  shall provide notice of the entry of the order granting such relief upon each of the

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 5 -

foregoing parties and any other parties in interest as the Court directs.  The Debtor submits that such notice is sufficient and that no other or further notice be given.

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons and such additional reasons as may be advanced at or prior to the hearing regarding this Motion, the Debtor respectfully requests that this Court enter an order providing for the following relief:

(i)    Authorizing the Debtor to continue to use its Cash Management System, including to maintain and continue using its existing Accounts and business forms (until existing stock is exhausted), as described in the attached Memorandum of Points and Authorities;

(ii)    Authorizing the Debtor to implement changes to its Cash Management System in the ordinary course of business, including closing the Accounts or opening new bank accounts;

(iii)    Authorizing and directing the Banks to continue to maintain, service and administer the Accounts in the ordinary course of business, including to honor postpetition checks drawn on and transfers made from the Accounts; and requiring that, in the event the Banks refuse to honor a check drawn or a transfer made on an Account maintained by it (provided there are sufficient good funds in the account to complete the transfer), the Banks immediately turn over the deposits held in the applicable Account upon the Debtor's request;

(iv)    Granting the Banks limited relief from the automatic stay to continue to offset standard monthly bank fees against the Accounts in the same manner as such fees were offset prepetition;

(v)    Authorizing the Debtor to remit capitation revenue received with respect to the Riverside Clinics to or as directed by Neighborhood; and

(vi)    Granting such other and further relief as is just and proper under the circumstances.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 6 -

US_ACTIVE\122219591\V-19

1  Dated:  September 12, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA M. MOYRON

By____/s/Tania M. Moyron_____
           Tania M. Moyron

Proposed Attorneys for the Chapter 11
Debtor and Debtor In Possession

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 7 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES , CALIFORNIA  90017-5704
(213) 623-9300

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Pursuant to Appendix D1-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of California (the "LBR"), Rule 6003 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and §§ 362, 363 and 105 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"),  Borrego Community Health Foundation (the "Debtor"), the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case (the "Case") has moved, on an emergency basis, in the Motion (the "Motion") for entry of an order (substantially in the form attached hereto as **Exhibit "A"**, the "Proposed Order") authorizing the Debtor to: (1) continue to use its cash management system, including the continued maintenance of its existing bank accounts and business forms; (2) implement changes to its cash management system in the ordinary course of business, including opening new or closing existing bank accounts; (3) remit cash received from capitation revenue related to the Riverside Clinics[4] to or as directed by the acquirer of those clinics; and (4) obtain related relief.

The Debtor further requests that the Court authorize the financial institutions at which the Debtor maintains various bank accounts to (a) continue to maintain, service and administer the Debtor's bank accounts, and (b) debit the bank accounts in the ordinary course of business on account of (i) wire transfers or checks drawn

---

[4] The term "Riverside Clinics" references all assets, property and rights of the Debtor related to the operations of the following outpatient clinics located in Riverside County, California:  (i) Eastside Health Center Building A, located at 1970 University Ave., Riverside, CA; (ii) Eastside Health Center Building B, located at 1971 University Ave., Riverside CA; and (iii) Arlanza Family Health Center, located at 8856 Arlington Ave., Riverside, CA (collectively, the "Riverside Clinics").

on the bank accounts, or (ii) undisputed service charges owed to the banks for maintenance of the Debtor's cash management system, if any.

## II.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of this Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.

## STATEMENT OF FACTS

### A.    GENERAL BACKGROUND

1.      On September 12, 2022 ("Petition Date"), Borrego Community Health Foundation "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[5]

2.      The Debtor is a non-profit 501(c)(3) public charity, a federally qualified health center ("FQHC"), and a federal tort claims act deemed facility that, as of September 12, 2022, had twenty-four (24) bricks and mortar sites, including administrative sites, two (2) pharmacies, and six (6) mobile units. The Debtor's service area covers a 250-mile corridor on the eastern side of San Diego and Riverside Counties, California. During 2021, the Debtor provided 235,901 primary care, 61,532 pediatric care, 16,246 behavioral health, 15,895 dental service and 33,441 women's health patient care visits.

3.      FQHCs are federally designated entities that receive higher state payments to provide health care services to low income and rural families. The Debtor's health services are targeted to families with incomes below 200% of the poverty level. As a FQHC, the Debtor strives to deliver high quality, comprehensive,

---

[5] All references to "§" or "section" herein are to sections of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

US_ACTIVE\122219591\V-19

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

compassionate primary health care to people in the surrounding area, regardless of ability to pay.

4.      The Debtor was organized in the early 1990s to operate a holistic health clinic in Borrego Springs, a small unincorporated community in the northeast corner of San Diego County, California.  In 2002, when the Debtor gained recognition as a FQHC, it operated one clinic in Borrego Springs with seventeen (17) employees providing 7,400 patient visits.  The Debtor has since grown to approximately 700 employees serving over 94,000 patients in eighteen (18) clinics, and six (6) mobile units throughout San Diego and Riverside counties excluding Riverside Community Health Foundation ("RCHF") affiliated clinics.

5.      The Debtor to be the community leader in improving the health of the populations in our service area.  Its primary focus is the underserved, with an empowering workforce providing measurable quality and compassionate care.

6.      The Debtor's services include comprehensive primary care, pediatric care, urgent care, behavioral health, dental services, specialty care, transgender health, women's health, prenatal care, veteran's care, chiropractic services, telehealth and pharmacy.

7.      The Debtor is an active partner in the training of medical residents, medical students, nurse practitioner students, physician assistant students, nursing students, and other healthcare professionals.

8.      Since the commencement of the Case, the Debtor has been operating as debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

9.      To date, no official committee or examiner has been appointed by the Office of the United States Trustee in this Case.

10.      Additional background facts on the Debtor, the Debtor's business, information on the Debtor's capital structure and additional events leading up this Case are contained in the Lee Declaration.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 10 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### B.    RELEVANT BACKGROUND TO MOTION

1.    As set forth above, as well as in the concurrently filed Lee Declaration, the Debtor maintains 6 Accounts with two Banks and an internal petty cash account, as further detailed herein.[6]  The Debtor's primary disbursement and collection account and payroll account are with City National Bank.

### C.    BALANCE IN ACCOUNTS

1.    As of the Petition Date, the aggregate balance in the Accounts was approximately $5.2 million.  City National Bank is an approved depository for funds of debtor in possession by the U.S. Trustee, so the funds in these Accounts – approximately $1.7 million in aggregate – are protected as required by § 345 of the Bankruptcy Code.  For Community Valley Bank which is not an approved depository institution, the Accounts are generally not very active and the two active accounts are used for smaller deposits which would be difficult to get the payors to redirect.  Less than $3.7 million in the aggregate is currently maintained at Community Valley Bank.

### IV.

### DISCUSSION

Statutory support for the requested relief exists pursuant to §§ 105(a) and 363(b)(1) and (c)(1) and the "necessity of payment" doctrine.  Section 363(c)(1) authorizes a debtor in possession to enter into transactions in the ordinary course of business without notice and a hearing; whereas § 363(b)(1) authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing.  The Debtor requests to continue using its Cash Management System in the ordinary course of business; but even if any of the relief requested herein could be considered outside the ordinary course, the Court may approve it.

---

[6] A full list of Accounts is included as **Exhibit "B"** hereto along with a schematic showing the flow of funds into each account attached as part of that exhibit.

US_ACTIVE\122219591\V-19

1   Pursuant to § 105(a), "the court may issue any order, process, or judgment that
2   is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §
3   105(a).  Essentially, § 105(a) provides a statutory counterpart to the bankruptcy
4   court's otherwise inherent and discretionary equitable powers. *See In re Sasson*, 424
5   F.3d 864, 874 (9th Cir. 2005).

6       The Cash Management System constitutes an ordinary course and essential
7   business practice of the Debtor.  The Cash Management System provides significant
8   benefits to the Debtor including, among other things, the ability to (a) control
9   operating funds, (b) ensure the maximum availability of funds when and where
10  necessary, and (c) reduce costs and administrative expenses by facilitating the
11  movement of funds and the development of more timely and accurate account
12  information.

13      The operation of the Debtor requires that the Cash Management System
14  continue during the pendency of this Case.  As a practical matter, because of the
15  Debtor's history and structure, it would be difficult and expensive to establish and
16  maintain a new cash management system; and it would be extraordinarily disruptive
17  and harmful to its operations at this early and critical stage of this Case.
18  Reestablishing and reconnecting deposits and billings to new accounts would be
19  impractical, costly, and an inefficient use of the Debtor's resources.  Any such
20  disruption would have a severe, adverse, and potentially irreparable impact upon the
21  Estate.  Consequently, maintaining the Cash Management System is in the best
22  interest of all parties in interest, including patients.

23      The Court may exercise its equitable powers to grant the relief requested
24  herein.  Permitting the Debtor to continue using its Cash Management System
25  without interruption is critical to the success of this Case. As currently structured, the
26  Debtor's Cash Management System enables the Debtor to transfer its revenues,
27  deposits and other receipts toward the payment of its obligations, and recognizes the
28  operation of the Debtor's various locations and functions as an integrated health

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES , CALIFORNIA 90017-5704
(213) 623-9300

- 12 -

system.  Without the Cash Management System, the Debtor's efforts to preserve and maximize value would be impaired. It is well within the Court's equitable powers pursuant to §§ 105(a) and 363 to approve the relief requested herein.

**A.**      **Maintenance of the Accounts Is in the Best Interests of the Estate**

The UST Guidelines require a chapter 11 debtor in possession to open new bank accounts and close all existing accounts upon the commencement of its bankruptcy case.  The UST Guidelines also require that new bank accounts be opened at certain financial institutions designated as authorized depositories by the U.S. Trustee.  *See* Notice Of Requirements For Chapter 11 Debtors In Possession, available at www.usdoj.gov/ust/r16.

However, requiring the Debtor to close the Accounts and to open new ones will disrupt the Debtor's business and cash flow, which could affect patient care.  Further, closing the Accounts and opening new ones will also increase the work required of the Debtor's accounting personnel who already are busy addressing the many and varied issues related to the commencement of this Case, and would needlessly cost the Debtor's time and money with no discernible benefit to the Estate at a time when it is trying to conserve both.

LBR 2015-1 requires that a debtor comply with the UST Guidelines.  The Debtor hereby seeks a waiver of the U.S. Trustee's requirements that it close the existing Accounts and open new postpetition bank accounts at depositories authorized by the U.S. Trustee.  The Debtor requests instead that it be allowed to convert the Accounts, which are already primarily at depositories authorized by the U.S. Trustee, to "debtor in possession" accounts and continue to utilize them as necessary to best serve its business needs.

Even though the Debtor has multiple accounts, the Debtor only utilizes one account at City National Bank for its daily disbursements to trade vendors and one account at Community Valley Bank for certain periodic disbursements (the Debtor plans to consolidate those disbursements into the City National Bank disbursement

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 13 -

account post-petition).    As such, there will be no confusion of postpetition transactions with prepetition ones.  Requiring the Debtor to close the Accounts would serve no purpose but would, as stated, delay the Debtor's ability to utilize its funds, put further burdens on accounting personnel dealing with the Debtor's many financial issues and cost the Debtor's time and money better used in its efforts to maximize value of the Estate for its creditors.

Bankruptcy courts across the country routinely grant relief similar to that requested in this Motion; because such considerations are so obvious, however, few decisions related to such requests are published or reported.  *But see In re Gen. Growth Props., Inc.*, 412 B.R. 609 (Bankr. S.D.N.Y. 2009); *In re UAL Corp.*, No. 02-B-48191, 2002 WL 34344255 (Bankr. N.D. Ill. Dec. 9, 2002).  Local bankruptcy courts have routinely (a) waived the strict enforcement of the U.S. Trustee Guidelines requiring closing prepetition bank accounts and (b) approved the continued use of existing cash management systems, including a hospital system's authority to continue using prepetition bank accounts.  *See, e.g., In re Victor Valley Cmty. Hosp.*, Case No. 10-39537-CB, Docket No. 32 (Bankr. C.D. Cal. Sep. 17, 2010); *In re Downey Reg'l Med. Ctr.-Hosp., Inc.*, Case No. 09-34714-BB, Docket No. 38 (Bankr. C.D. Cal. Sep. 17, 2009); *In re Z Gallerie*, Case No. 09-18400-VZ, Docket No. 46 (Bankr. C.D. Cal. Apr. 16, 2009).  The Debtor respectfully submits that continued use of the Accounts should be approved in this Case as well.

**B.**      **Honoring Certain Prepetition Obligations Related to the Cash Management System Should Be Approved**

The Debtor incurs periodic service charges and other fees from the Banks in connection with the maintenance of the Cash Management System (collectively, the "Bank Fees"), which average approximately $1,600 per month, which the Debtor's estimate that it owes as of the Petition Date and is payable on or about September 19, 2022.  Payment of any prepetition Bank Fees is in the best interests of the Debtor and all parties in interest in this Case, as it will prevent unnecessary disruptions to the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 14 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Cash Management System and ensure that the Debtor's receipt of funds are not delayed. Further, because the Banks likely have setoff rights for the Bank Fees, payment of prepetition Bank Fees should not alter the rights of unsecured creditors in this Case.

**C.    Authorizing and Directing the Banks to Honor Postpetition Checks and Granting Banks Limited Relief from the Automatic Stay**

In relation to the above requested relief, the Debtor also requests that the Court: (i) authorize and direct the Banks to honor postpetition checks drawn on and transfers made from the Accounts; (ii) require that in the event the Banks refuse to honor checks drawn on the Debtor's Accounts or transfer instructions made on its Accounts (provided there are sufficient good funds in the account to honor the checks or transfer instructions and the checks are otherwise properly payable), the Banks immediately turn over the deposits held in the applicable Accounts upon the Debtor's request, and (iii) grant the Banks limited relief from the automatic stay to continue to offset standard monthly or periodic bank fees against the Accounts in the same manner as such fees were offset prepetition.  Courts in this district have routinely granted this relief, and the Debtor respectfully submits that the same relief should be approved in this Case as well.  *See* citations, at 24, ll. 4-7, *supra*.

**D.    Maintenance of the Debtor's Existing Business Forms Is in the Best Interests of the Estate**

The Debtor is also requesting authority to continue using its business forms without the designation "Debtor in Possession" on them for a limited time.  Many of the Debtor's business forms are electronically generated or, if printed, can be electronically altered.  The Debtor seeks the authority of this Court to utilize its forms without the "Debtor in Possession" designation until existing stock is exhausted, and until the Debtor can make the necessary adjustments to its software so that these forms will contain the phrase "Debtor in Possession."

- 15 -

Courts in this district routinely grant authority to continue using existing business forms in chapter 11 cases until new forms can be printed and its current stock is depleted. *See* citations, at 24, ll. 4-7, *supra*. Such authority is routinely granted excusing a business enterprise from suffering the disruption and expense of immediately replacing or otherwise placing the "Debtor in Possession" designation on all of its pre-existing business forms, hampering the administration of a chapter 11 case to the further economic detriment of creditors while the new forms are being generated, all because it is counter-productive to the purpose of the bankruptcy filing.

Accordingly, the Debtor respectfully requests continued use of its existing business forms as set forth above, until existing stock is exhausted.

**E.** **The Court Should Authorize the Banks to Immediately Release Any and All Administrative Holds and/or Freezes That They May Have on the Accounts**

The United States Supreme Court as well as courts within the Ninth Circuit have discussed whether the placement of an administrative "freeze" or hold on a debtor's bank account violates the automatic stay; and their holdings depend on several factors including under which chapter of the Bankruptcy Code the case is proceeding and what, if any, setoff rights the bank holds. *See, e.g.*, *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16 (1995); *In re Mwangi*, 764 F.3d 1168 (9th Cir. 2014); *In re Tuscan Ranch, Inc.*, No. BAP AZ-11-1045, 2012 WL 603639, at *6 (B.A.P. 9th Cir. Feb. 2, 2012).

The Debtor is not seeking any determination from the Court at this time with respect to the validity or the permissibility of the policy described above. Nonetheless, as the Debtor is seeking to keep the Cash Management System in place, and concurrently requesting authority to immediately pay prepetition payroll, in an abundance of caution, the Debtor respectfully requests that the Court exercise its authority pursuant to § 105 and authorize the immediate release on all holds or freezes on the Accounts.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**F.** **The Court Should Authorize the Debtor to Remit Capitation Payments Received by the Debtor Related to the Riverside Clinics to or as Directed by the Purchaser of the Riverside Clinics**

The Debtor recently sold the assets of the Riverside Clinics to Neighborhood Healthcare, a California nonprofit public benefit corporation ("Neighborhood") and in connection with that transaction, the Debtor agreed to collect on behalf of Neighborhood and remit to Neighborhood certain capitation payments related to the Riverside Clinics for a transition period anticipated to end on or about October 1, 2022. Debtor views those funds as belonging to Neighborhood and not constituting property of the Debtor's bankruptcy estate and proposed to remit those funds as received to or as directed by Neighborhood.

**V.**

**CONCLUSION**

**WHEREFORE,** for all the foregoing reasons and such additional reasons as may be advanced at or prior to the hearing on the Motion, the Debtor respectfully requests that this Court enter an Order:

(a) Authorizing the Debtor to continue to use its Cash Management System, including to maintain and continue using its existing Accounts and business forms (until existing stock is exhausted);

(b) Authorizing the Debtor to implement changes to its Cash Management System in the ordinary course of business, including closing the Accounts or opening new bank accounts;

(c) Authorizing and directing the Banks to continue to maintain, service and administer the Accounts in the ordinary course of business, including to honor postpetition checks drawn on and transfers made from the Accounts; and requiring that, in the event the Banks refuse to honor a check drawn or a transfer made on an Account maintained by it (provided there are sufficient good funds in the account to

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 17 -

complete the transfer), the Banks immediately turn over the deposits held in the applicable Account upon the Debtor's request;

(e)    Granting the Banks limited relief from the automatic stay to continue to offset standard monthly bank fees against the Accounts in the same manner as such fees were offset prepetition, including those fees accrued prepetition in the amount of approximately $1,500.00;

(f)    Authorizing the Debtor to remit capitation revenue received with respect to the Riverside Clinics to or as directed by Neighborhood; and

(g)    Granting such other and further relief as is just and proper under the circumstances.

Dated:  September 12, 2022

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA M. MOYRON

By   /s/Tania M. Moyron
        Tania M. Moyron

Proposed Attorneys for the Chapter 11 Debtor and Debtor In Possession

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 18 -

US_ACTIVE\122219591\V-19

**Exhibit "A"**

**(Proposed Order)**

**Exhibit A**

**CSD 1008** [08/21/00]
Name, Address, Telephone No. & I.D. No.
DENTONS US LLP
SAMUEL R. MAIZEL (Bar No. 189301)
TANIA M. MOYRON (Bar No. 235736)
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 | Fax: (213) 623-9924

Proposed Attorneys for the Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re
BORREGO COMMUNITY HEALTH FOUNDATION

                                            Debtor.

BANKRUPTCY NO. 22-02384
Date of Hearing:
Time of Hearing:
Name of Judge: Honorable Laura S. Taylor

## ORDER ON

**EMERGENCY FIRST DAY MOTION OF DEBTOR FOR AUTHORITY TO: (I) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS AND BUSINESS FORMS; (II) IMPLEMENT CHANGES TO THE CASH MANAGEMENT SYSTEM IN THE ORDINARY COURSE OF BUSINESS; (III) REMIT CAPITATION PAYMENTS TO OR AS DIRECTED BY THE PURCHASER OF THE RIVERSIDE CLINICS; AND (IV) OBTAIN RELATED RELIEF**

The court orders as set forth on the continuation pages attached and numbered _2_ through _4_ with

exhibits, if any, for a total of pages _6_. Motion/Application Docket Entry No. _____.

//

//

//

//

//

//

//

DATED: _____

                              _____
                              Judge, United States Bankruptcy Court

CSD 1001A

US_ACTIVE\122296842\V-1

**CSD 1001A** [07/01/18] (**Page 2**)

**ORDER ON EMERGENCY FIRST DAY MOTION OF DEBTOR FOR AUTHORITY TO: (I) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS AND BUSINESS FORMS; (II) IMPLEMENT CHANGES TO THE CASH MANAGEMENT SYSTEM IN THE ORDINARY COURSE OF BUSINESS; (III) REMIT CAPITATION PAYMENTS TO OR AS DIRECTED BY THE PURCHASER OF THE RIVERSIDE CLINICS; AND (IV) OBTAIN RELATED RELIEF**

**DEBTOR:** BORREGO COMMUNITY HEALTH FOUNDATION      **CASE NO:** 22-02384

---

Having considered the Emergency Motion,[1] the accompanying Memorandum of Points and Authorities in support of the Emergency Motion, and the Declaration of Isaac Lee in support of the Emergency Motion, the arguments of counsel at the hearing, and good cause appearing therefore,

**IT IS FURTHER ORDERED that:**

1.      The Emergency Motion is granted in its entirety.

2.      The Debtor is authorized and empowered pursuant to sections 105(a), 363, 364, 503 and 507 of the Bankruptcy Code to continue using its Cash Management System and to collect, concentrate, and disburse cash in accordance with the Cash Management System;

3.      The Debtor is authorized to implement changes to its Cash Management System in the ordinary course of business, including closing any existing bank accounts or opening any new bank accounts (collectively, the "Accounts") as the Debtor may deem necessary and appropriate in its sole discretion; provided that any such new account is (i) with a bank that is (A) insured with the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation and (B) designated as an authorized depository pursuant to the UST Guidelines, and (ii) the Debtor provides notice to the U.S. Trustee of the opening of such account. The Debtor may keep the two accounts at Community Valley Bank where deposits are received open for purposes of continuing to collect those receipts from payors provided it shall forward excess funds to the City National Bank disbursement account to the extent any funds on deposit at an account at Community Valley Bank exceeds $10,000 at any time;

4.      The Debtor is authorized to (i) continue to use, with the same account numbers, all of the Accounts in existence as of the Petition Date, including those Accounts identified on **Exhibit "B"** to the Emergency Motion; and (ii) treat the Accounts for all purposes as accounts of the Debtor as debtor in possession;

---

[1] Defined terms in this Order shall have the same meaning as in the Emergency Motion unless otherwise defined herein.

**CSD 1001A** [07/01/18] (**Page 3**)

      5.      The Debtor is authorized to continue to use, in their present form, all correspondence and business forms, as well as checks and all other documents related to the Accounts (collectively, the "Business Forms") existing immediately before the Petition Date, without reference to the Debtor's status as debtor in possession, until existing stock is exhausted; provided that in the event the Debtor generate new Business Forms during the pendency of this chapter 11 Case, such Business Forms shall include a legend referring to the Debtor as "Debtor in Possession," and, to the extent practicable, the Debtor shall print such legend on any Business Forms electronically generated during this case;

      6.      Except as otherwise provided in this Order, all banks at which the Accounts are maintained (collectively, the "Banks") are authorized and directed to continue to maintain, service and administer the Accounts as accounts of the Debtor as debtor in possession, without interruption and in the ordinary course of business, and to receive, process, honor and pay any and all checks, drafts, wires, and ACH payments issued by the Debtor and drawn on the Accounts after the Petition Date to the extent the Debtor has sufficient funds standing to its credit with such Bank; provided that any payments drawn, issued or made prior to the Petition Date shall not be honored absent direction of the Debtor and a separate order of the Court authorizing such prepetition payment;

      7.      In the event the Banks refuse to honor a check drawn or a transfer made on an Account maintained by it (provided there are sufficient good funds in the account to complete the transfer), the Banks are authorized and directed to immediately turn over the deposits held in the applicable Account upon the Debtor's request;

      8.      The Banks are authorized to charge and the Debtor is authorized to pay and honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Banks may be entitled under the terms of and in accordance with the Banks' contractual arrangements with Debtor (collectively, the "Service Charges");

      9.      The Banks are authorized to debit the Debtor's accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtor's accounts that are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of the Petition; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of the Debtor's accounts with such Bank prior to the Petition Date that have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such costs and fees prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as Service Charges for the maintenance of the Cash Management System;

**CSD 1001A** [07/01/18] (**Page 4**)

10.    As of the Petition Date, the Banks may rely on the representations of the Debtor with respect to whether any check, item, or other payment order drawn or issued by the Debtor prior to filing of the Petition should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein, and shall not be liable to any party on account of (i) following the Debtor's representations, instructions, directions, or presentations as to any order of the Court (without any duty of further inquiry), (ii) honoring of any prepetition checks, drafts, wires or ACH payments in a good faith belief or upon a representation by the Debtor that the Court has authorized such prepetition check, draft, wire or ACH payments or (iii) an innocent mistake made despite implementation of reasonable handling procedures;

11.    Those certain existing deposit agreements between the Debtor and the Banks shall continue to govern the postpetition cash management relationship between the Debtor and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect; either the Debtor or the Banks may, without further order of this Court, implement changes to the Debtor's Cash Management System in the ordinary course of business pursuant to the terms of those certain existing deposit agreements, including the opening and closing of bank accounts;

12.    The relief, rights, and responsibilities provided for in this Order shall be deemed to apply to any and all Accounts maintained in the Debtor's name, including any new bank accounts, whether or not such Accounts are identified on **Exhibit "B"** to the Motion, and any Banks at which new accounts are opened shall be subject to the rights and obligations of this Order;

13.    The Debtor is authorized to remit capitation revenue received with respect to the Riverside Clinics to or as directed by Neighborhood Healthcare;

14.    Nothing contained in this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code;

15.    Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party;

16.    Notice of the Emergency Motion as provided therein shall be deemed good and sufficient notice, and the requirements of Bankruptcy Rules 2002 and 6004(a) and LBR 9013(9)(d) and Appendix D-1(2) the Local Bankruptcy Rules are waived and/or satisfied by such notice.

17.    The Debtor is authorized to take all action necessary to effectuate the relief granted in this Order; and

18.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

###

**EXHIBIT "B"**
**(Description of Bank Accounts and Flow**
**of Funds Schematic Chart)**

**EXHIBIT B**

**Description of Bank Accounts and Flow of Funds Schematic Chart**

| | Bank | Type | Description | Account No. |
|---|------|------|-------------|-------------|
| 1 | City National Bank | Checking | Account Payable and Depository from Larger Payors | xxxx1993 |
| 2 | City National Bank | Payroll Checking | Payroll | xxxx2000 |
| 3 | City National Bank | Money Market | Deposits from Grants | xxxx2612 |
| 4 | Community Valley Bank | Checking | Smaller Deposits | xxx2472 |
| 5 | Community Valley Bank | Specialty Checking | Not Active in CY 2022 – balance around $3,000 | xxxxxx8653 |
| 6 | Community Valley Bank | Woolcott Dental Clinic | No material activity in CY 2022 (approximately $70/Month of debits) | xxx6421 |
| 7 | Internal Petty Cash | Petty Cash | No material activity in CY 2022 (around $300 of deposits and around $1,800 of withdrawal). The total amount of all petty cash at all facilities is under $15,000. | N/A |

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300



**EXHIBIT B**
Cash Flow Chart

Note: Account 2472 at Community Valley Bank rarely makes disbursements. In the event cash is required from this account, it could be transferred to City National Bank, account 1993.

Bank, account 1993.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300