SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:  213 623-9300
Facsimile:  213 623-9924

Attorneys for the Chapter 11 Debtor and Debtor In Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | Case No.  22-02384-11 |
| BORREGO COMMUNITY HEALTH FOUNDATION, | Chapter 11 Case |
| | Judge: Honorable Laura S. Taylor |
| Debtor and Debtor In Possession. | **DEBTOR'S NOTICE OF MOTION AND MOTION FOR THE ENTRY OF (I) AN ORDER (1) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (2) APPROVING AUCTION SALE FORMAT AND BIDDING PROCEDURES; (3) APPROVING PROCESS FOR DISCRETIONARY SELECTION OF STALKING HORSE BIDDER AND BID PROTECTIONS; (4) APPROVING FORM OF NOTICE TO BE PROVIDED TO INTERESTED PARTIES; (5) SCHEDULING A COURT HEARING TO CONSIDER APPROVAL OF THE SALE TO THE HIGHEST AND BEST BIDDER; AND (6) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (II) AN ORDER AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR OF ALL CLAIMS, LIENS AND ENCUMBRANCES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | <u>Hearing:</u><br>Date: TBD<br>Time: TBD<br>Location: TBD |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_ACTIVE\122549257\V-9

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**PLEASE TAKE NOTICE** that Borrego Community Health Foundation, the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), will move (the "Motion"), pursuant to §§ 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure and Rules 6004 and 9013 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of California ("LBR"), for the entry of an order: (a) approving a process by which interested parties may bid (a "Bid") to purchase substantially all of the Debtor's assets (collectively, the "Purchased Assets"), including the assignment and assumption of Assumed Executory Contracts, together with the payment of Cure Costs (as such terms are defined in the Motion); (b) approving a process by which, at the Debtor's election, a stalking-horse bidder may be selected from among those parties making a Bid, and bidding protections may be granted to such stalking horse bidder without further order of the Court; (c) setting bid procedures to establish guidelines for parties interested in making initial Bids and overbids to such initial Bids; (d) if multiple Qualified Bids (as defined in the Motion) are received, scheduling an auction of the Purchased Assets; and (e) scheduling a sale hearing for the Court to approve the highest and best Qualified Bid.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based on this Notice of Motion and Motion, the Memorandum, the Declaration of Isaac Lee (to be filed prior to the hearing on the Motion), the *Declaration of Isaac Lee, Chief Restructuring Officer, in Support of Debtor's Emergency First Day Motions* [Docket No. 7], supporting statements, arguments and representations of a counsel who will appear at the hearing on the Motion, the record in this case, and any other evidence properly brought before the Court in all other matters of which this Court may properly take judicial notice.

- 1 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**PLEASE TAKE FURTHER NOTICE** that the Debtor has filed the *Debtors' Ex Parte Motion For Order Shortening Time On Motion for Approval of Sale and Bidding Procedures* (the "Motion to Shorten Time") concurrently herewith.  As set forth more fully in the Motion to Shorten Time, the Debtor requests that the Court set the hearing and briefing deadlines on the Motion on shortened notice pursuant to LBR 9006-1(d) and 9013-3(e).  Any party opposing or responding to the Motion must file and serve a response ("Response") as set forth by the Court in any order granting the Application or any subsequent notice related thereto.  A Response must be a complete written statement of all reasons in opposition thereto or in support, declarations and copies of all evidence on which the responding party intends to rely, and any responding memorandum of points and authorities.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-7(b)(2), the failure to file and serve a timely objection to the Motion may be deemed by the Court to be consent to the relief requested herein.

Dated:  November 10, 2022

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA M. MOYRON


By____*/s/ Tania M. Moyron*_____
     *Tania M. Moyron*

Attorneys for the Chapter 11 Debtor and Debtor In Possession

US_ACTIVE\122549257\V-9

# **TABLE OF CONTENTS**

I.    Introduction ................................................................................................ 1

II.   Jurisdiction and Venue ............................................................................... 2

III.  Statement of Facts ...................................................................................... 3

    A.    GENERAL BACKGROUND ............................................................ 3

    B.    FACTS RELEVANT TO MOTION .................................................. 4

IV.   Proposed Sale and Bidding Procedures...................................................... 4

    A.    REQUIREMENTS TO PARTICIPATE IN THE AUCTION ............... 5

    B.    DISCRETIONARY   STALKING   HORSE   DESIGNATION   AND
           BIDDING PROTECTIONS.................................................................. 6

    C.    AUCTION ......................................................................................... 7

    D.    REPRESENTATIONS AND WARRANTIES ..................................... 8

    E.    ACCEPTANCE OF THE WINNING BID.......................................... 8

V.    The Sale Hearing........................................................................................ 10

VI.   Return of Deposits ..................................................................................... 11

VII.  Notice Procedures ...................................................................................... 12

VIII. Assumption and Assignment of Executory Contracts and Unexpired Leases and
         Procedures Related Thereto ........................................................................ 13

IX.   Argument .................................................................................................... 16

    A.    APPROVAL  OF  THE  BIDDING  PROCEDURES  IS  APPROPRIATE
           AND IN THE BEST INTERESTS OF THE DEBTOR'S ESTATE AND
           STAKEHOLDERS. ........................................................................... 16

DENTONS US LLP
601 SOUTH FIGUEROA STREET., SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- i -

B.    IF   A   STALKING   HORSE   BIDDER   IS   SUBSEQUENTLY
DESIGNATED, THE BREAK-UP FEE HAS A SOUND BUSINESS
PURPOSES AND IS NECESSARY TO PRESERVE THE VALUE OF
THE DEBTOR'S ESTATE................................................................. 17

C.    THE   PROCEDURE   FOR   ASSUMPTION   AND   ASSIGNMENT   OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IS
APPROPRIATE.................................................................................. 20

D.    APPROVAL OF THE SALE IS WARRANTED UNDER § 363........................ 22

1.    The Sale of the Assets is Authorized by § 363 as a Sound Exercise
of the Debtor's Business Judgment............................................. 22

2.    The Sale of the Debtor's Assets Free and Clear of Liens and Other
Interests is Authorized by § 363(f)............................................. 24

3.    The Winning Bidder Should be Afforded All Protections Under §
363(m) as a Good Faith Purchaser. ............................................. 28

E.    RELIEF  FROM  THE  14-DAY  WAITING  PERIOD  UNDER  RULES
6004(H) AND 6006(D) IS APPROPRIATE. ...................................... 29

X.    Conclusion ............................................................................................. 30

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- ii -

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 995 Fifth Ave. Assocs.*,
    96 B.R. 24 (Bankr. S.D.N.Y. 1989) ...................................................................17

*In re Abbotts Dairies of Pa., Inc.*,
    788 F.2d 143 (2d Cir. 1986) ...........................................................................22

*In re America West Airlines, Inc.*,
    166 B.R. 908 (Bankr. D. Ariz. 1994) .............................................................17

*In re ARSN Liquidating Corp. Inc.*,
    2017 WL 279472 (Bankr. D.N.H. Jan. 20, 2017) .........................................26

*In re Atlanta Packaging Prods., Inc.*,
    99 B.R. 124 (Bankr. N.D. Ga. 1988) .......................................................16, 23

*In re Bon Ton Rest. & Pastry Shop, Inc.*,
    53 B.R. 789 (Bankr. N.D. Ill. 1985) ..............................................................20

*Burtch v. Ganz (In re Mushroom Transp. Co.)*,
    382 F.3d 325 (3d Cir. 2004) ...........................................................................16

*In re Bygaph, Inc.*,
    56 B.R. 596 (Bankr. S.D.N.Y. 1986) ........................................................21, 24

*Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*,
    181 F.3d 527 (3d Cir. 1999) ......................................................................16, 18

*Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*,
    103 B.R. 524 (Bankr. D.N.J. 1989) ................................................................20

*In re Case Engineered Lumber, Inc.*,
    No. 09–22499 (Bankr. N.D. Ga. Sept. 1, 2009) .............................................18

*In re Christ Hospital*,
    502 B.R. 158 (Bankr. D.N.J. 2013) ................................................................26

*Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*,
    722 F.2d 1063 (2d Cir. 1983) .........................................................................22

*Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
    60 B.R. 612 (Bankr. S.D.N.Y. 1986) .............................................................22

*In re CXM, Inc.*,
    307 B.R. 94 (Bankr. N.D. Ill. 2004) ..............................................................18

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- iii -

*In re Dan River, Inc.*,
    No. 04-10990 (Banker. N.D. Ga. Dec. 17, 2004) ................................................................. 18

*In re Delaware & Hudson Ry. Co.*,
    124 BR. 169 (D. Del. 1991) ..................................................................................................... 22

*In re Dundee Equity Corp.*,
    1992 Bankr. LEXIS 436 (Bankr. S.D.N.Y. Mar. 6, 1992) ..................................................... 24

*In re Energytec, Inc.*
    739 F.3d 215 (5th Cir. 2013) ................................................................................................... 28

*In re Ewell*,
    958 F.2d 276 (9th Cir. 1992) ................................................................................................... 28

*Folger Adam Security v. DeMatteis/MacGregor JV*,
    209 F.3d 252 (3d Cir. 2000) ............................................................................................. 25, 27

*Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*,
    107 F.3d 558 (8th Cir. 1997) ............................................................................................. 16, 23

*In re Gardens Regional Hospital and Medical Center, Inc.*,
    567 B.R. 820 (Bankr. C.D. Cal. 2017) .................................................................................... 25

*GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*,
    331 B.R. 251 (N.D. Tex. 2005) ............................................................................................... 23

*In re Grumman Olson Indus. Inc.*,
    467 B.R. 694 (S.D.N.Y 2012) ................................................................................................. 26

*In re Hupp Indus.*,
    140 B.R. 191 (Bankr. N.D. Ohio 1997) ............................................................................. 17,18

*In re La Paloma Generating, Co.*,
    2017 WL 5197116 (Bankr. D. Del. Nov. 9, 2017) .................................................................. 25

*In re Lajijani*,
    325 B.R. 282 (B.A.P. 9th Cir. 2005) ....................................................................................... 23

*In re Lake Burton Dev., LLC*,
    2010 WL 5563622 (Bankr. N.D. Ga. Mar. 18, 2010) ............................................................ 18

*MacArthur Company v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
    837 F.2d 89 (2d Cir. 1988) ...................................................................................................... 27

*In re Marrose Corp.*,
    1992 WL 33848 (Bankr. S.D.N.Y. 1992) ............................................................................... 17

*Meyers v. Martin (In re Martin)*,
    91 F.3d 389 (3d Cir. 1996) ...................................................................................................... 22

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_ACTIVE\122549257\V-9

*Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*,
930 F.2d 1132 (6th Cir. 1991)...............................................................................25

*In re Natco Indus., Inc.*,
54 B.R. 436 (Bankr. S.D.N.Y. 1985)......................................................................20

*Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*,
78 F.3d 18 (2d Cir. 1996).........................................................................................20

*Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*,
147 B.R. 650 (S.D.N.Y. 1992)........................................................16, 17, 18, 23

*Official Comm. of Unsecured Creditors v. The LTV Corp. (In re Chateaugay Corp.)*,
973 F.2d 141 (2d Cir. 1992).....................................................................................22

*Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*,
846 F.2d 1170 (9th Cir. 1988).................................................................................28

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
4 F.3d 1095 (2d Cir. 1993).......................................................................................20

*Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*,
163 F.3d 570 (9th Cir. 1998).....................................................................................28

*PBBPC, Inc. v. OPK Biotech, LLC (In re PBBPC, Inc.)*,
484 B.R. 860 (B.A.P. 1st Cir. 2013)........................................................................26

*In re S.N.A. Nut Co.*,
186 B.R. 98 (Bankr. N.D. Ill. 1995).........................................................................17

*In re T Asset Acquisition Company, LLC*,
No. 09-31853 (Bankr. C.D. Cal. Jan. 28, 2010)......................................................18

*In re Tama Beef Packing Inc.*,
321 B.R. 469 (B.A.P. 8th Cir. 2005)........................................................................19

*The Ninth Avenue Remedial Group v. Allis-Chalmers Corp.*,
195 B.R. 716 (Bankr. N.D. Ind. 1996).....................................................................27

*In re Titusville Country Club*,
128 B.R. 396 (W.D. Pa. 1991)..................................................................................22

*In re Tougher Indus.*,
2013 WL 1276501 (Bankr. N.D.N.Y. Mar. 27, 2013)............................................26

*In re Trans World Airlines, Inc.*,
322 F.3d 283 (3d Cir. 2001)...............................................................................26, 27

- v -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*United Mine Workers of Am. Combined Benefit Fund v. Walter Energy, Inc.*,
    551 B.R. 631 (N.D. Ala. 2016) ................................................................26

*In re Verity Health System of California, Inc.*,
    No. 18-20151 (Bankr. C.D. Cal. Oct. 30, 2018) ....................................18

*In re Vista Marketing Group Ltd.*,
    557 B.R. 630 (Bankr. N.D. Ill. 2016) .....................................................26

*WBO P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBO P'ship)*,
    189 B.R. 97 (Bankr. E.D. Va. 1995) .......................................................27

*In re Women First Healthcare, Inc.*,
    332 B.R. 115 (Bankr. D. Del. 2005) .......................................................18

*In re WPRV-TV, Inc.*,
    143 B.R. 315 (D.P.R. 1991) ....................................................................23

**Statutes**

11 U.S.C. § 105(a) ........................................................................15, 24

11 U.S.C. § 363(b) ................................................................15, 22, 28

11 U.S.C. § 363(f) .......................................................................24-28

11 U.S.C. § 363(m) ...............................................................9, 28, 29

11 U.S.C. § 365(a) .............................................................................20

11 U.S.C. § 365(f) .......................................................................20, 21

28 U.S.C. § 157 ...................................................................................2

28 U.S.C. § 1334 .................................................................................2

28 U.S.C. § 1408 .................................................................................2

28 U.S.C. § 1409 .................................................................................2

**Rules**

FED. R. BANKR. P. 2002 .........................................................11, 12, 15

FED. R. BANKR. P. 6004.......................................................15, 22, 29

FED. R. BANKR. P. 6006(d)................................................................29

- vi -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Borrego Community Health Foundation, the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), seeks entry of an order: (a) approving a process by which interested parties may bid (a "Bid") to purchase substantially all of the Debtor's assets (collectively, the "Purchased Assets"), including the assignment and assumption of Assumed Executory Contracts, together with the payment of Cure Costs (as such terms are defined below); (b) approving a process by which, at the Debtor's election, a stalking-horse bidder may be selected from among those parties making a Bid, and bidding protections may be granted to such stalking horse bidder without further order of the Court; (c) setting bid procedures to establish guidelines for parties interested in making initial Bids and overbids to such initial Bids; (d) if multiple Qualified Bids (as defined below) are received, scheduling an auction of the Purchased Assets; and (e) scheduling a sale hearing for the Court to approve the highest and best Qualified Bid.  The proposed timeline follows:

| Date | Event |
|---|---|
| November 28, 2022 | Hearing on Motion |
| November 29, 2022 | Service of approved Bidding Procedures, Auction and Sale Notice |
| December 12, 2022 | Deadline to Submit Indications of Interest |
| December 22, 2022 | Bid Deadline for Qualified Bids |
| January 13, 2023 | Auction |
| TBD | Deadline to file any objections to Sale |
| January 19, 2023 | Sale Hearing |
| Approx. six months after Court approval of Sale | Health Resources & Services Administration approval of Sale |

- 1 -

US_ACTIVE\122549257\V-9

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

The Debtor and its advisors have responded to inquiries from certain potential interested parties and advised those parties that there will be a sale of the Purchased Assets.  The Debtor has assembled a data room which will be made available to potential interested parties after the filing of this Motion and upon the execution of an appropriate confidentiality agreement.[1]  The Debtor and its advisors will continue to market the Purchased Assets to any interested party through the Bid Deadline.  For the reasons set forth below in greater detail, and in order to conduct a full and fair bidding process for the purpose of maximizing the consideration to be received by the Debtor's estate for the Purchased Assets, the Debtor respectfully requests that the Court grant the Motion.

Importantly, the Debtor notes that this proposed sale is contingent on approval by the Health Resources & Services Administration ("HRSA") which must determine whether the Winning Bidder (as defined below) is Federally Qualified Health Center.  This approval process may take up to six months following the Court's approval of the sale.  The Debtor has taken into consideration this delay caused by the HRSA approval process in its proposed bid procedures and sale timeline.

## II.    JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The venue of these Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] To be clear, as of the date of filing this Motion no potential purchasers have yet obtained access to the data room.

- 2 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### III.    STATEMENT OF FACTS

**A.    GENERAL BACKGROUND**

1.      On September 12, 2022 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[2]  Since the commencement of its case, the Debtor has been operating its business as a debtor in possession pursuant to §§ 1107 and 1108.

2.      The Debtor is a nonprofit Federally Qualified Health Center ("FQHC") that provides health care services to low income and rural patients (collectively, "Patients") in San Diego and Riverside Counties through a system of eighteen clinics, two pharmacies, and six mobile units.  In 2021, the Debtor provided approximately 386,000 patient care visits to over 94,000 patients.  The Debtor's services include comprehensive primary care, urgent care, behavioral health, dental services, specialty care, transgender health, women's health, prenatal care, veteran's health, chiropractic services, tele-health, and pharmacy.

3.      FQHCs are federally designated entities that receive higher state payments to provide health care services to low-income and rural families and families in underserved communities with incomes below 200% of the poverty level.  As an FQHC, the Debtor strives to deliver high quality, comprehensive, compassionate primary health care to people in the surrounding area, regardless of ability to pay.

4.      Additional background regarding the Debtor, including an overview of the Debtor's business and additional events leading up to this case, is set forth in the *Declaration of Isaac Lee, Chief Restructuring Officer, in Support of Debtor's Emergency First Day Motions* [Docket No. 7] (the "First-Day Declaration").

---

[2] All references to section or chapter herein are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended. All references to "Rules" are to the Federal Rules of Bankruptcy Procedure.

US_ACTIVE\122549257\V-9

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

5.    On September 26, 2022, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in this chapter 11 case.  [Docket No. 49].

**B.    FACTS RELEVANT TO MOTION**

6.    As set forth in the First-Day Declaration, the Debtor appointed Isaac Lee, of Ankura Consulting Group, LLC ("Ankura"), as its Chief Restructuring Officer.

7.    Since then, the Debtor and Ankura have analyzed its restructuring options and determined, in consultation with the Debtors other advisors and Board, that a sale of substantially all of its assets is in the best interest of the Debtor, the estates, patients and stakeholders.

8.    Consequently, on October 28, 2022, Ankura created a data room which will be made available to potential purchasers following the execution of a confidentiality agreement.

9.    Nine potential purchasers have already signed a confidentiality agreement and will obtain access to the data room after the filing of this Motion.

10.    The Debtor and Ankura have identified additional potential buyers for the Purchased Assets and plan to reach out to these parties regarding the sale.

**IV.    PROPOSED SALE AND BIDDING PROCEDURES**

11.    In connection with the proposed sale (the "Sale") of the Purchased Assets, the Debtor submits that conducting an Auction in accordance with the bidding procedures among Qualified Bidders will obtain the highest or otherwise best offer for the Purchased Assets and will maximize the value of the Debtor's estate.  The proposed bidding procedures (the "Bidding Procedures") are attached hereto as Exhibit 1.[3]  A summary of some of the significant provisions

---

[3] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Bidding Procedures.  The terms of the Bidding Procedures shall control to the extent the descriptions in this Motion conflict with the terms of the Bidding Procedures.

- 4 -

of the Bidding Procedures is set forth below. If there exists any omission or discrepancy between the following summary and the actual terms of the Bidding Procedures, the actual terms of the Bidding Procedures shall control.

## A.    REQUIREMENTS TO PARTICIPATE IN THE AUCTION

12.    The Bidding Procedures provide that only Qualified Bidders may participate in the Auction. To be a Qualified Bidder, a party wishing to submit a Bid must first become a Potential Bidder, which requires that an interested party execute, or shall be currently subject to a confidentiality agreement in form and substance satisfactory to the Debtor. Upon qualifying as a Potential Bidder, a party may receive due diligence information from the Debtor, including access to the Debtor's on-line data room, the CIM and potentially other nonpublic information relating to the Debtor's assets.

13.    The Bidding Procedures also set forth the requirements for a Potential Bidder to become a Qualified Bidder, including (without limitation) that a Potential Bidder: (i) submit an Indication of Interest to purchase the Purchased Assets to the Debtor on or before December 12, 2022, which includes (1) the proposed structure of the transaction, purchase price and any material terms; (2) a description of the acquiring entity and relevant experience; (3) proposed plans for the assets following consummation of the sale transaction; (4) evidence of financial capacity to complete the transaction; (5) authority and approval to complete the transaction; (6) a detailed description of the due diligence information and / or investigation the Potential Bidder may require to submit a Bid; (7) a proposed timetable for consummating the transaction; and (8) contact information for the Potential Bidder; (ii) submit a Bid by the Bid Deadline to the Bid Deadline Recipients identified in the Bidding Procedures (including the Debtor, Ankura, and the Committee); (iii) provide a clean and marked-up copy of the proposed asset purchase agreement (which form shall be consistent with the form of the Draft APA posted in the Debtor's on-line data room); (iv) provide a copy of the draft

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 5 -

Sale Order marked to reflect any amendments and modifications compared to the form of the Sale Order posted in the Debtor's on-line data room; (v) deliver a Deposit by wire transfer in an amount equal to the greater of $200,000 or 10% of the proposed Purchase Price; (vi) demonstrate that it has the financial wherewithal and ability to consummate the Sale; (vii) demonstrate a commitment to operating Debtor's clinics as a FQHC providing continuity of culturally competent care to its patients; (viii) state whether the Potential Bidder is willing to serve as a stalking horse bidder and specify any requested bidding protections, including a break-up fee and/or expense reimbursement in an amount not to exceed in the aggregate 2.5% of the proposed Purchase Price of such Bid; and (ix) disclose any connections to the Debtor and affiliated persons.  The Bidding Procedures further provide that a Bid shall propose cash consideration, and that Bids shall be evaluated based upon the amount of cash consideration.

14.     A Bid that satisfies each of the Bid Requirements (including but not limited to those mentioned in the foregoing paragraph), as determined by the Debtor in its reasonable discretion, in consultation with the Committee, shall constitute a "Qualified Bid," and such Potential Bidder submitting such Bid will be deemed a "Qualified Bidder."  Prior to, or immediately before the commencement of any Auction, the Debtor shall file and serve on each Potential Bidder a notice indicating the identity of all Qualified Bidders, and a copy of the Bid which is deemed to be the Opening Bid at the Auction.

**B.     DISCRETIONARY STALKING HORSE DESIGNATION AND BIDDING PROTECTIONS**

15.     To increase the competitive nature of the sale process, the Bidding Procedures provide that the Debtor, in its discretion, after consultation with the Committee, may designate a Qualified Bidder which indicated a willingness to serve as a stalking horse bidder as the "Stalking Horse Bidder" and award it so-called stalking horse protections, including a break-up fee and expense reimbursement in an amount not to exceed in the aggregate 2.5% of the proposed Purchase

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 6 -

Price of such Bid (the "Break-Up Fee"). The Bidding Procedures provide that any Break-Up Fee, to the extent payable, shall only be paid from proceeds received by the Debtor at the closing of a Sale or the transfer of the Purchased Assets to a party other than the Stalking Horse Bidder. The designation of stalking horse status and the award of stalking horse protections may occur without further notice or order of the Court other than the filing of a notice on the Bankruptcy Court docket no later than twenty-four (24) hours prior to the commencement of the Auction. The Debtor shall have no obligation to designate any Qualified Bidder as the Stalking Horse Bidder. If such designation is made, the Debtor shall notify all other Potential Bidders and, unless the Debtor receives a higher or better bid prior to the Auction, the Opening Bid at the Auction shall be the Bid of the Qualified Bidder that has been designated as the Stalking Horse Bidder.

**C.     AUCTION**

16.     If the Debtor receives more than one Qualified Bid, the Debtor will conduct an Auction at the offices of Dentons US LLP, 601 South Figueroa Street, Suite 2500, Los Angeles, California 90017 on January 13, 2023, in accordance with the Bidding Procedures.

17.     The Auction shall be governed by the following procedures:

(a) only Qualified Bidders, in person or through duly-authorized representatives at the Auction may bid at the Auction, and every Qualified Bidder must have at least one (1) such duly-authorized representative with authority to bind the Qualified Bidder at the Auction;

(b) only such authorized representatives of each of the Qualified Bidders, the Debtor, the Committee (including its members), and their respective legal and financial advisors shall be permitted to attend the Auction;

(c) prior to the commencement of the Auction, representatives of the Debtor, and/or the Committee may have discussions with each Qualified Bidder with respect to the terms and conditions of such Qualified Bids, and the Debtor will have selected, in consultation with the Committee, a Qualified Bid to become the opening bid at the Auction (the bid submitted by such Qualified Bidder shall be referred to as the "Opening Bid" and the Qualified Bidder shall be referred to as the "Opening Bidder");

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

US_ACTIVE\122549257\V-9

(d) bidding shall commence at the amount of the Opening Bid. The Opening Bid shall be announced by the Debtor at or before the commencement of the Auction. Other Qualified Bidders may then submit successive bids in increments of at least $500,000 (plus, with respect to the first successive bid, the amount of the Break-Up Fee, if any) higher than the Opening Bid, and all subsequent bids must be at least $500,000 higher than the previous bid. To the extent a Stalking Horse Bidder submits higher bids, such Stalking Horse Bidder shall have the right (but not the obligation) to increase its Opening Bid by using, as a credit, the amount of the Break-Up Fee when determining whether any Stalking Horse Bidder has topped the previous bid by the required amount;

(e) Qualified Bidders shall have the right to submit additional bids that include modifications to their Qualified APA at the Auction, consistent herewith, provided that any such modifications to the Qualified APA, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtor than any prior bid by such party (as determined by the Debtor, following consultation with the Committee). The Debtor, in consultation with the Committee, reserve the right to separately negotiate the terms of any Qualified Bids at the Auction, provided the terms are fully disclosed at the time such Qualified Bid is formally submitted;

(f) the bidding will be transcribed by a certified court reporter employed by the Debtor to ensure an accurate recording of the bidding at the Auction;

(g) each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale and is not in violation of § 363(n) of the Bankruptcy Code; and

(h) absent irregularities in the conduct of the Auction, the Debtor will not consider any Potential Bids made after the Auction is closed.

## D.     REPRESENTATIONS AND WARRANTIES

18.    Except as explicitly set forth in the Winning Bid APA (as defined below), the Purchased Assets will be transferred on an "as is, where is" basis, with all faults, and without representations or warranties of any kind, nature or description by the Debtor, its agents or estate, whether written, verbal, express, implied, or by operation of law.

## E.     ACCEPTANCE OF THE WINNING BID

19.    Upon the conclusion of the Auction (if such Auction is conducted), the Debtor, in the exercise of its reasonable, good-faith business judgment and after consultation with the Committee, shall identify (i) the Winning Bid, which is the highest and best Qualified Bid submitted at the Auction; and (ii) the next highest and best Qualified Bid (the "Back-Up Bid" and

- 8 -

US_ACTIVE\122549257\V-9

the party submitting the Back-Up Bid, the "Back-Up Bidder").  In evaluating Qualified Bids, the Debtor shall give preference to Qualified Bidders which demonstrate a commitment to operating Debtor's clinics as a FQHC providing continuity of culturally competent care to its patients.

20.     Each of the Winning Bidder and the Back-Up Bidder shall be required to execute a definitive Qualified Bid conformed to the provisions of the Winning Bid and the Back-Up Bid, as applicable, as soon as practicable but, in no event, prior to the Sale Hearing.  For the purposes of these Bidding Procedures, the definitive agreement executed by the (i) Winning Bidder shall be defined as the "Winning Bid APA" and (ii) Back-Up Bidder shall be defined as the "Back-Up Bid APA".

21.     The Back-Up Bidder must keep the Back-Up Bid open and irrevocable until the earlier of (i) 5:00 p.m. (Pacific Time) on the date which is thirty (30) days after the entry of the Sale Order (the "Outside Back-Up Date"), or (ii) the date of closing of the Sale to the Winning Bidder.

22.     Within two business days after the conclusion of the Auction, the Winning Bidder and the Back-Up Bidder shall each deposit with the Debtor an additional amount in cash such that, when combined with their existing Deposit, each such bidder's aggregate Deposit equals the greater of two-hundred thousand dollars ($200,000) or ten percent (10%) of the Purchase Price reflected in the final bid of the Winning Bidder and of the Back-Up Bidder, respectively (such additional amounts shall be included in the definition of the "Deposit").

23.     If an Auction is held, the Debtor shall be deemed to have accepted a Qualified Bid as the winner of the Auction (conditioned upon approval by the Bankruptcy Court) only when (i) such bid is declared the Winning Bid; (ii) definitive documentation has been executed in respect thereof; and (iii) any additional Deposit required as a result of a bid submitted at the Auction (as

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 9 -

required by the Bidding Procedures) has been provided to the Debtor.  Such acceptance is also conditioned upon approval by the Court of the Winning Bid and (if applicable) the Back-Up Bid.

## V.    THE SALE HEARING

24.    As part of this Motion, the Debtor asks this Court to schedule a sale hearing (the "Sale Hearing") on January 19, 2023, at 10:00 a.m. (Pacific Time).  The Debtor will present the results of the Auction to the Court at the Sale Hearing, at which time certain findings will be sought from the Court regarding the Auction, including, among other things, that: (i) the Auction was properly conducted, and the Winning Bidder and the Back-Up Bidder were properly selected, in accordance with the Bidding Procedures; (ii) the Auction was fair in substance and procedure; (iii) each of the Winning Bid and the Back-Up Bid was a Qualified Bid; (iv) the closing of the Sale in accordance with the Winning Bid (or if applicable, the Back-Up Bid) will provide the highest or otherwise best value for the Purchased Assets and is in the best interests of the Debtor; and (v) each of the Winning Bidder and the Back-Up Bidder are deemed to be purchasers of the Purchased Assets in good faith as set forth in § 363(m).

25.    At the Sale Hearing, the Debtor shall request the Bankruptcy Court to enter an order approving the Winning Bid and, if applicable, the Back-Up Bid (the "Sale Order").  Except to the extent revised by the Debtor in its discretion, after consultation with the Committee and the Winning Bidder, the proposed Sale Order presented to the Bankruptcy Court at the Sale Hearing shall be in the form submitted as part of the Winning Bid.

26.    At the Sale Hearing, the Debtor shall also request, as part of the Sale Order, authorization from the Bankruptcy Court to accept the Back-Up Bid as the Winning Bid, and consummate such bid, if the Winning Bid is not consummated when and as required by its terms without further order of the Bankruptcy Court.  The Debtor and the Back-Up Bidder shall be bound to consummate the Back-Up Bid if the Winning Bid terminates, at which time the Back-Up Bidder

- 10 -

US_ACTIVE\122549257\V-9

shall be deemed the Winning Bidder.  The Debtor shall promptly give notice to the Back-Up Bidder if the Winning Bid is terminated and shall provide the Back-Up Bidder a reasonable period within which to close as set forth in the Back-Up Bid APA.

27.    After approval of the Sale and entry of the Sale Order, HRSA must also approve the Winning Bidder as a FQHC and the transfer of certain federal grants and state payments to the Winning Bidder.  To commence this approval process, the Debtor and Willing Bidder shall submit the Winning Bid APA to HRSA for review.  It may take up to six months for the HRSA to complete its approval process.

## VI.    RETURN OF DEPOSITS

28.    Upon closing of the Sale with the Winning Bidder (or Back-Up Bidder, if applicable), the Deposit of the Winning Bidder or Back-Up Bidder shall be credited to the Purchase Price.  The Deposit of the Winning Bidder or Back-Up Bidder will be forfeited to the Debtor if the Winning Bidder or Back-Up Bidder fails to enter into the required definitive documentation or to consummate the applicable sale transaction in accordance with these Bidding Procedures and the terms of the applicable transaction documents with respect to the Winning Bid and Back-up Bid as shall be set forth in the Winning Bid APA and Back-Up Bid APA or as otherwise ordered by the Bankruptcy Court.

29.    The Deposits of any Qualified Bidders other than the Winning Bidder and the Back-Up Bidder will be returned within two (2) business days after the conclusion of the Sale Hearing; provided, that, the Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder at the earlier of (i) the closing of the Sale to the Winning Bidder, and (ii) thirty (30) days after entry of the Sale Order.

- 11 -

# VII. <u>NOTICE PROCEDURES</u>

30.     The Debtor proposes that any objections to the Sale (other than an Assumption Objection (defined herein) which shall be governed by the procedures set forth below) (a "<u>Sale Objection</u>"), must be filed with the Court on or before the Sale Objection Deadline set forth in the Bidding Procedures Order and also: (i) be in writing; (ii) comply with the Rules and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of California; (iii) set forth the specific basis for the Sale Objection; and (iv) be served, so as to be actually received on or before the Sale Objection Deadline, upon the Notice Parties.  If a Sale Objection is not filed and served on or before the Sale Objection Deadline, the Debtor requests that the objecting party be barred from objecting to the Sale and not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.  The Debtor also requests that the Court approve the form of the notice of sale procedures (the "<u>Procedures Notice</u>") substantially in the form to be filed by the Debtor before the hearing on this Motion.  The Debtor will serve a copy of the Procedures Notice on the Notice Parties and all parties which have requested to receive notice under Rule 2002 (the "<u>Procedures Notice Parties</u>").

31.     The Debtor proposes to file with the Court and serve the Procedures Notice within one (1) business day following entry of the Bidding Procedures Order, by first-class mail, postage prepaid on the Procedures Notice Parties.  The Procedures Notice provides that any party that has not received a copy of the Motion or the Bidding Procedures Order that wishes to obtain a copy of the Motion or the Bidding Procedures Order, including all exhibits thereto, may make such a request in writing to Dentons US LLP, Attn: Tania M. Moyron, 601 S. Figueroa St., Suite 2500, Los Angeles, CA 90017 or by emailing tania.moyron@dentons.com or calling (213) 623-9300.

32.     The Debtor submits that the foregoing notices comply fully with Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Bidding Procedures, Auction

- 12 -

US_ACTIVE\122549257\V-9

and Sale, and Sale Hearing to the Debtor's creditors and other parties in interests as well as to those who have expressed an interest or are likely to express an interest in bidding on the Purchased Assets. Based on the foregoing, the Debtor respectfully requests that this Court approve these proposed notice procedures.

## VIII.    ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND PROCEDURES RELATED THERETO

33.     As part of the Sale, the Debtor also seeks to assume and assign certain of their executory contracts and unexpired leases (collectively, the "Assumed Executory Contracts") pursuant to § 365.

34.     The Assumed Executory Contracts will be those contracts and leases that the Debtor believes may be assumed and assigned as part of the orderly transfer of the Purchased Assets; provided, that, the Winning Bidder may choose to exclude (or to add) contracts or leases to the list of Assumed Executory Contracts, subject to notice to the counter-parties to any Assumed Executory Contracts which are added.

35.     The Debtor will file with the Court and serve a cure notice, substantially in the form to be filed with the Court prior to the hearing on this Motion (the "Cure Notice"), (along with a copy of this Motion) upon each counterparty to the Assumed Executory Contracts. The Cure Notice will state the date, time and place of the Sale Hearing as well as the date by which any objection to the assumption and assignment of Assumed Executory Contracts (including the Cure Amount (defined below)) must be filed and served. The Cure Notice also will identify the amounts, if any, that the Debtor believes are owed to each counterparty to an Assumed Executory Contract in order to cure any defaults that exist under such contract (the "Cure Amounts"). To the extent there is a contract subsequently added to the list of contracts to be assumed by the Winning Bidder pursuant to the Winning Bid APA selected at the Auction, this Motion constitutes a separate motion to assume and assign that contract to the Winning Bidder pursuant to § 365; each such contract will

- 13 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

be listed in the Winning Bid APA, and will be given a separate Cure Notice filed and served by overnight delivery within five (5) business days of the conclusion of the Auction and announcement of the Winning Bidder.

36.    The inclusion of a contract, lease, or other agreement on the Cure Notice shall not constitute or be deemed a determination or admission by the Debtor and its estate or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

37.    If a Contract or Lease is assumed and assigned pursuant to Court order, then unless the Assumed Executory Contract counterparty properly files and serves an objection to the Cure Amount contained in the Cure Notice by the Assumption Objection Deadline (defined below), the Assumed Executory Contract counterparty will receive at the time of the Closing of the Sale (or as soon as reasonably practicable thereafter), the Cure Amount as set forth in the Cure Notice, if any. If an objection is filed by a counterparty to an Assumed Executory Contract, the Debtor proposes that such objection must set forth a specific default in the executory contract or unexpired lease, claim a specific monetary amount that differs from the amount, if any, specified by the Debtor in the Cure Notice, and set forth any reason why the counterparty believes the executory contract or unexpired lease cannot be assumed and assigned to the Winning Bidder.

38.    If any counterparty objects for any reason to the assumption and assignment of an Assumed Executory Contract (including to a Cure Amount) (an "Assumption Objection"), the Debtor proposes that the counterparty must file the objection and serve it so as to be actually received on or before the Bid Deadline (unless the Cure Notice was served on such counterparty less than twenty (20) days prior to the Bid Deadline, in which case, any Assumption Objection must be served no later than twenty (20) days after service of the Cure Notice) (the "Assumption

- 14 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Objection Deadline"), provided, however, any counterparty may raise at the Sale Hearing an objection to the assumption and assignment of its Assumed Executory Contract solely with respect to the Winning Bidder's ability to provide adequate assurance of future performance under such Assumed Executory Contract. After receipt of an Assumption Objection, the Debtor will attempt to reconcile any differences in the Cure Amount or otherwise resolve the objection with the counterparty. In the event that the Debtor and the counterparty cannot resolve an Assumption Objection, and the Court does not otherwise make a determination at the Sale Hearing regarding an Assumption Objection related to a Cure Amount, the Debtor shall segregate from the sale proceeds a portion of the disputed Cure Amount, in an amount set by the Court or otherwise agreed by the parties, pending the resolution of any such Cure Amount disputes by the Bankruptcy Court or mutual agreement of the parties.

39.    The Winning Bidder shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under §365(b) in connection with the proposed assignment of any Assumed Executory Contract, and the failure to provide adequate assurance of future performance to any counterparty to any Assumed Executory Contract shall not excuse the Winning Bidder from performance of any and all of its obligations pursuant to the Winning Bid APA. The Debtor proposes that the Bankruptcy Court make its determinations concerning adequate assurance of future performance under the Assumed Executory Contacts pursuant to § 365(b) at the Sale Hearing. Cure Amounts disputed by any counterparty will be resolved by the Bankruptcy Court at the Sale Hearing or such later date as may be agreed to or ordered by the Bankruptcy Court.

40.    Except to the extent otherwise provided in the Winning Bid APA, the Debtor and the Debtor's estate shall be relieved of all liability accruing or arising after the assumption and assignment of the Assumed Executory Contracts pursuant to § 365(k).

- 15 -

## IX.   ARGUMENT

A.   **APPROVAL OF THE BIDDING PROCEDURES IS APPROPRIATE AND IN THE BEST INTERESTS OF THE DEBTOR'S ESTATE AND STAKEHOLDERS.**

Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate [.]" 11 U.S.C. § 363(b)(1). Section 105(a) provides in pertinent part that "[t]he Court may issue any order, process or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Rules 2002 and 6004 govern the scope of the notice to be provided in the event a debtor elects to sell property of the estate under § 363.

With respect to the procedures to be adopted in conducting a sale outside the ordinary course of a debtor's business, Rule 6004 provides only that such sale may be by private sale or public auction, and requires only that the debtor provide an itemized list of the property sold together with the prices received upon consummation of the sale.  Fed. R. Bankr. P. 6004(f).

Neither the Bankruptcy Code nor the Rules contain specific provisions with respect to the procedures to be employed by a debtor in conducting a public or private sale.  Nonetheless, as one court has stated, "[i]t is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).  Additionally, courts have long recognized the need for competitive bidding at hearings; "[c]ompetitive bidding yields higher offers and thus benefits the estate. Therefore, the objective is 'to maximize bidding, not restrict it.'"  *Id.*; *see also Burtch v. Ganz (In re Mushroom Transp. Co.)*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that debtor's fiduciary duties included maximizing and protecting the value of the estate's assets); *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) ("[A] primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand.").  Courts

- 16 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing the value of a debtor's estate and, therefore, are appropriate. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 536-37 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide benefit to debtor's estate); *Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (such sale procedures "encourage bidding and to maximize the value of the Assets").

Here, the Bidding Procedures are designed to promote the paramount goal of any proposed sale of property of the Debtor's estate: providing culturally competent and continuity of care, and maximizing the value of sale proceeds received by the estate. The Bidding Procedures provide for an orderly and appropriately competitive process through which interested parties may submit offers to purchase the Purchased Assets. Specifically, the Debtor, with the assistance of its advisors, has structured the Bidding Procedures to promote active bidding by interested parties and to confirm the highest or otherwise best offer reasonably available for the Purchased Assets. Additionally, the Bidding Procedures will allow the Debtor to conduct the Auction in a fair and transparent manner that will encourage participation by financially capable bidders with demonstrated ability to consummate a timely Sale. Accordingly, the Bidding Procedures should be approved because, under the circumstances, they are reasonable, appropriate and in the best interests of the Debtor, its estate, creditors, and all parties in interest.

## B. IF A STALKING HORSE BIDDER IS SUBSEQUENTLY DESIGNATED, THE BREAK-UP FEE HAS A SOUND BUSINESS PURPOSES AND IS NECESSARY TO PRESERVE THE VALUE OF THE DEBTOR'S ESTATE.

The Debtor submits that the potential Break-Up Fee if a Stalking Horse Bidder is subsequently designated is a normal and oftentimes necessary component of sales outside the ordinary course of business under § 363. In particular, such a protection encourages a potential

- 17 -

purchaser to invest the requisite time, money, and effort to conduct due diligence and sale negotiations with a debtor despite the inherent risks and uncertainties of the chapter 11 process. *See*, *e.g.*, *Integrated Resources*, 147 B.R. at 660 (noting that fees may be legitimately necessary to convince a "white knight" to offer an initial bid, for the expenses such bidder incurs and the risks such bidder faces by having its offer held open, subject to higher and better offers); *In re Hupp Indus.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1997) (without any reimbursement, "bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's. . . due diligence"); *In re Marrose Corp.*, 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) (stating that "agreements to provide reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers"); *In re 995 Fifth Ave. Assocs.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (finding that bidding incentives may be "legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citations omitted).

A proposed bidding incentive, such as a Break-Up Fee, should be approved when it is in the best interests of the estate. *See In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995); *see also In re America West Airlines, Inc.*, 166 B.R. 908 (Bankr. D. Ariz. 1994); *In re Hupp Indus., Inc.*, 140 B.R. 191 (Bankr. N.D. Ohio 1992). Typically, this requires that the bidding incentive provide some benefit to the debtor's estate. *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999) (holding even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions the administrative expense provisions of § 503(b) govern in the bankruptcy context).

In evaluating the appropriateness of a break-up fee, the appropriate question for the Court to consider is "whether the break-up fee served any of three possible useful functions: (1) to attract

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 18 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

or retain a potentially successful bid; (2) to establish a bid standard or minimum for other bidders to follow; or (3) to attract additional bidders." *In re Integrated Resources, Inc.*, 147 B.R. at 662 (where the Court heard testimony that the average breakup fee in the industry is 3.3%). Break-up fees in the same general range as the proposed Break-Up Fee have been routinely approved in the context of bankruptcy sales. *See In re Verity Health System of California, Inc.*, No. 18-20151 (Bankr. C.D. Cal. Oct. 30, 2018) (J. Robles) (approving break-up fee equal to 4% of the cash purchase price); *In re T Asset Acquisition Company, LLC*, No. 09-31853 (Bankr. C.D. Cal. Jan. 28, 2010) (J. Robles) (approving break-up fee equal to 3% of the cash purchase price); *In re CXM, Inc.*, 307 B.R. 94, 103–04 (Bankr. N.D. Ill. 2004) (court approved break-up fee in amount equal to the actual expenses that the stalking horse incurred in connection with its bid to buy the Sale Assets, subject to a maximum cap of $200,000, which equaled 3% of the cash purchase price); *In re Women First Healthcare, Inc.*, 332 B.R. 115, 118 (Bankr. D. Del. 2005) (court approved break-up fee that equaled 4.7% percent of the purchase price); *In re Dan River, Inc.*, No. 04-10990 (Banker. N.D. Ga. Dec. 17, 2004) (court approved break-up fee equal to 5.3% of the cash purchase price); *In re Lake Burton Dev., LLC*, 2010 WL 5563622, *43 (Bankr. N.D. Ga. Mar. 18, 2010) (court approved break-up fee equal to 4.75% of cash purchase price); *In re Case Engineered Lumber, Inc.*, No. 09–22499 (Bankr. N.D. Ga. Sept. 1, 2009) (J. Brizendine) (approving break-up fee equal to 3.5% of the cash purchase price); *In re Tama Beef Packing Inc.*, 321 B.R. 469, 498 (B.A.P. 8th Cir. 2005) (noting that the bankruptcy court correctly concluded that break-up fees are "usually limited to one to four perfect of the purchase price").

The Debtor submits that the Bidding Procedures, including the proposed Break-Up Fee to any Stalking Horse Bidder, satisfy all three of the useful functions set forth above: (1) to attract or retain a potentially successful bid; (2) to establish a bid standard or minimum for other bidders to follow; and (3) to attract additional bidders. The proposed Break-Up Fee of up to 2.5% of the

purchase price is well within, and below, the percentage parameters that have been approved by many other courts. Thus, the Debtor believes that the proposed Break-Up Fee if a Stalking Horse Bidder is selected would fairly and reasonably compensate any Stalking Horse Bidder for taking actions that will benefit the Debtor's estate. The Break-Up Fee would compensate such a Stalking Horse Bidder for diligence and professional fees incurred in negotiating the terms of any Stalking Horse APA on an expedited timeline.

Additionally, the Debtor does not believe that the Break-Up Fee will have a chilling effect on the sale process. Rather, any Stalking Horse Bidder will increase the likelihood that the best possible price for the Purchased Assets will be received, by permitting other qualified bidders to rely on the diligence performed by any Stalking Horse Bidder, and moreover, by allowing qualified bidders to utilize any Stalking Horse APA as a platform for negotiations and modifications in the context of a competitive bidding process. Any Stalking Horse Bidder would only be designated after consultation with the Committee.

Finally, any Break-Up Fee will be paid only if, among other things, the Debtor enters into a transaction for the Purchased Assets with a bidder other than any Stalking Horse Bidder. Accordingly, no Break-Up Fee will be paid unless a higher and better offer is received and consummated. In sum, the potential Break-Up Fee is reasonable under the circumstances and will enable the Debtor to maximize the value for the Purchased Assets while limiting any chilling effect in the sale process.

## C. THE PROCEDURE FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IS APPROPRIATE.

Section 365(a) provides that, subject to the court's approval, a trustee "may assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a). Upon finding that a trustee has exercised its sound business judgment in determining to assume an executory contract or unexpired lease, courts should approve the assumption under § 365(a). *See Nostas Assocs. v.*

US_ACTIVE\122549257\V-9

*Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

Pursuant to § 365(f)(2), a trustee may assign an executory contract or unexpired lease of nonresidential real property if:

> (A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, and should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *In re Bygaph, Inc.*, 56 B.R. 596, 605-6 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; chief determinant of adequate assurance is whether rent will be paid).

The Debtor and the Winning Bidder will present evidence at the Sale Hearing to prove the financial credibility, willingness, and ability of the Winning Bidder to perform under the contracts

- 21 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

or leases.  The Court and other interested parties therefore will have the opportunity to evaluate the ability of any Winning Bidder to provide adequate assurance of future performance under the contracts or leases, as required by § 365(b)(1)(C).

In addition, the Debtor submits that the cure procedures set forth herein are appropriate, reasonably calculated to provide notice to any affected party, and afford the affected party to opportunity to exercise any rights affected by the Motion, and consistent with § 365.  To the extent that any defaults exist under any Assumed Executory Contracts, any such defaults will be cured pursuant to the Winning Bid APA.  Except as otherwise limited by § 365, any provision in the Assumed Executory Contracts that would restrict, condition, or prohibit an assignment of such contracts will be deemed unenforceable pursuant to § 365(f)(1).

Accordingly, the Debtor submits that the cure procedures for effectuating the assumption and assignment of the Assumed Executory Contracts as set forth herein are appropriate and should be approved.

## D.   APPROVAL OF THE SALE IS WARRANTED UNDER § 363.

As discussed above, § 363(b)(1) provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).

### 1.   The Sale of the Assets is Authorized by § 363 as a Sound Exercise of the Debtor's Business Judgment.

In accordance with Rule 6004, sales of property rights outside the ordinary course of business may be by private sale or public auction.  The Debtor has determined that the Sale of the Purchased Assets by public auction will enable it to obtain the highest and best offer for these assets (thereby maximizing the value of the estate) and is in the best interests of the Debtor's creditors. The Debtor has determined in its business judgment that a sale of the Purchased Assets through a competitive, public auction is the best way to maximize the value of those assets.

- 22 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Sections 363 provides that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although § 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, a sale of a debtor's assets should be authorized if a sound business purpose exists for doing so. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (2d Cir. 1986); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Ry. Co.*, 124 BR. 169, 176 (D. Del. 1991); *see also Official Comm. of Unsecured Creditors v. The LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the. . . [trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (*quoting In re Atlanta Packaging Prods., Inc.*, 99 BR. 124, 130 (Bankr. N.D. Ga. 1988)). As long as the sale appears to enhance a debtor's estate, court approval of a debtor's decision to sell should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code. *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re Lajijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct

- 23 -

public or private sales of estate property.  Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.").

Applying § 363, the proposed Sale of the Purchased Assets should be approved.  As set forth above, the Debtor has determined that the best method of maximizing the recovery of the Debtor's creditors would be through the Sale of the Purchased Assets.  As assurance of value, bids will be tested through the Auction consistent with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and pursuant to the Bidding Procedures approved by the Court.  Consequently, the fairness and reasonableness of the consideration to be paid by the Winning Bidder ultimately will be demonstrated by adequate "market exposure" and an open and fair auction process—the best means, under the circumstances, for establishing whether a fair and reasonable price is being paid.

The Debtor and its advisors have been contacting potential interested parties and have assembled a data room which is available upon the execution of an appropriate confidentiality agreement.  There is a limited universe of potential acquirers of the Purchased Assets, and the Debtor and its advisors have been in active discussions with many of these potential purchasers.

**2.    The Sale of the Debtor's Assets Free and Clear of Liens and Other Interests is Authorized by § 363(f).**

The Debtor further submits that it is appropriate to sell the Purchased Assets free and clear of liens pursuant to § 363(f), with any such liens attaching to the sale proceeds of the Purchased Assets to the extent applicable.  Section 363(f) authorizes a trustee to sell assets free and clear of liens, claims, interests and encumbrances if:

> (1)    applicable nonbankruptcy law permits the sale of such property free and clear of such interests;
>
> (2)    such entity consents;

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 24 -

(3)    such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  This provision is supplemented by § 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

Because § 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Debtor's Assets "free and clear" of liens and interests.  *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that § 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of § 363(f) is met).

At least one of the tests of § 363(f) is satisfied with respect to the transfer of the Purchased Assets pursuant to the APA.  Additionally, at least § 363(f)(2) will be met in connection with the transactions proposed under the Purchase Agreement because each of the parties holding liens on the Purchased Assets will consent or, absent any objection to this motion, will be deemed to have consented to the Sale.  Any lienholder also will be adequately protected by having its liens, if any, in each instance against the Debtor or its estate, attach to the sale proceeds ultimately attributable to the Purchased Assets  in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 25 -

and defenses the Debtor may possess with respect thereto.  Accordingly, § 363(f) authorizes the transfer and conveyance of the Purchased Assets free and clear of any such claims, interests, liabilities, or liens.

Although § 363(f) provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code.  *Folger Adam Security v. DeMatteis/MacGregor JV*, 209 F.3d 252, 257 (3d Cir. 2000).  Courts have interpreted "any interest" expansively  to include not only *in rem* interests in property, but also other obligations that are "connected to or arise from the property being sold" or that could "potentially travel with the property being sold."  *In re Gardens Regional Hospital and Medical Center, Inc.*, 567 B.R. 820, 825 (Bankr. C.D. Cal. 2017) (California Attorney General imposed conditions are an "interest in property" that can be stripped off the assets through a sale under § 363); *In re La Paloma Generating, Co.*, 2017 WL 5197116, *4 (Bankr. D. Del. Nov. 9, 2017) (holding that emission surrender obligations created by California regulations and statutes and enforced by the California Air Resources Board are an interest in property which can be cut off by a § 363 sale); *see also In re Trans World Airlines, Inc.*, 322 F.3d 283, 285, 288 (3d Cir. 2001) (holding that plaintiff's interests in travel vouchers that were issued to settle employment discrimination are an interest under § 363 because they arise from the property being sold); *PBBPC, Inc. v. OPK Biotech, LLC (In re PBBPC, Inc.)*, 484 B.R. 860, 867-870 (1st Cir. B.A.P. 2013) (holding that debtor's assets could be sold free and clear of Commonwealth of Massachusetts's right to treat a purchaser of substantially all of the assets of chapter 11 debtor as a "successor employer" to which debtor's experience rating could be imputed to determine purchaser's unemployment insurance contribution); *In re ARSN Liquidating Corp. Inc.*, 2017 WL 279472, *5 (Bankr. D.N.H. Jan. 20, 2017) (Nat'l Council on Compensation Ins. violated sale order by imputing debtor's workers' compensation experience rating to buyer in setting buyer's workers' compensation experience

- 26 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

rating); *In re Vista Marketing Group Ltd.*, 557 B.R. 630, 635-39 (Bankr. N.D. Ill. 2016) (free and clear language in sale order prevented a state sanitary district from asserting claim against asset purchaser for connection fee surcharge that was calculated based entirely on debtor's use of the district's sewer facilities); *United Mine Workers of Am. Combined Benefit Fund v. Walter Energy, Inc.*, 551 B.R. 631, 641 (N.D. Ala. 2016) (sale under § 363 cuts off Coal Act obligations despite language in Act imposing successor liability on buyer); *In re Christ Hospital*, 502 B.R. 158, 76-79 (Bankr. D.N.J. 2013) (section 363 sales cut off tort claims against purchaser of nonprofit hospital); *In re Tougher Indus.*, 2013 WL 1276501 at **6-9 (Bankr. N.D.N.Y. Mar. 27, 2013) (holding that debtor's assets could be sold free and clear of New York State Department of Labor's right to use the debtor's experience rating to access the buyer's tax liability as successor to the debtor); *In re Grumman Olson Indus. Inc.*, 467 B.R. 694, 702–03 (S.D.N.Y 2012) ("Section 363(f) can be used to sell property free and clear of claims that could otherwise be assertable against the buyer of the assets under the common law doctrine of successor liability"); *WBO P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBO P'ship)*, 189 B.R. 97, 104–05 (Bankr. E.D. Va. 1995) (holding that Commonwealth of Virginia's right to recapture depreciation is an "interest" as that term is used in § 363(f)).

In the case of *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-89 (3d Cir. 2003), the Third Circuit specifically addressed the scope of the term "any interest."  The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is towards "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property.'" *Id.* at 289 (*citing* 3 Collier on Bankruptcy, ¶ 363.06[1] (L. King, 15th rev. ed. 1988)).  As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co*., the scope of § 363(f) is not limited to *in rem* interests. 99 F.3d 573, 581-582 (4th Cir. 1996) (holding that coal mine operators

US_ACTIVE\122549257\V-9

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

could sell their assets free and clear of their obligations to a benefits plan and fund under the Coal Act). Thus, debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger*, 209 F.3d at 258 (*citing Leckie*, 99 F.3d at 582).

Courts have consistently held that a buyer of a debtor's assets pursuant to a § 363 sale takes such assets free from successor liability resulting from pre-existing claims. *See The Ninth Avenue Remedial Group v. Allis-Chalmers Corp.*, 195 B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); *MacArthur Company v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93-94 (2d Cir. 1988) (channeling of claims to proceeds consistent with intent of sale free and clear under § 363(f)). The purpose of an order purporting to authorize the transfer of assets free and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against the purchaser arising from the Debtor's pre-sale conduct. Under § 363(f), the purchaser is entitled to know that the Purchased Assets are not infected with latent claims that will be asserted against the purchaser after the proposed transaction is completed. Accordingly, consistent with the above-cited case law, the order approving the Sale should state that the Winning Bidder is not liable as a successor under any theory of successor liability, for claims that encumber or relate to the Purchased Assets.

**3.     The Winning Bidder Should be Afforded All Protections Under § 363(m) as a Good Faith Purchaser.**

Section 363(m) protects a good-faith purchaser's interest in property purchased from the debtor's estate notwithstanding that the sale conducted under § 363(b) is later reversed or modified on appeal. Specifically, § 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity

- 28 -

US_ACTIVE\122549257\V-9

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

knew of the pendency of the appeal, unless such authorization and such sale were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) "codifies Congress's strong preference for finality and efficiency" in bankruptcy proceedings.  *In re Energytec, Inc*. 739 F.3d 215, 218-19 (5th Cir. 2013). The Ninth Circuit has repeatedly held that, under § 363(m), "[w]hen a sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal." *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 576 (9th Cir. 1998); *In re Ewell*, 958 F.2d 276, 282 (9th Cir. 1992) ("Because the Buyer was a good faith purchaser, under 11 U.S.C. § 363(m) the sale may not be modified or set aside on appeal unless the sale was stayed pending appeal."); *Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1172 (9th Cir. 1988) ("Finality in bankruptcy has become the dominant rationale for our decisions […]").

The selection of the Winning Bidder will be the product of arms' length, good faith negotiations in an anticipated competitive purchasing process.  The Debtor intends to request at the Sale Hearing a finding that the Winning Bidder is a good faith purchaser entitled to the protections of § 363(m).

**E.     RELIEF FROM THE 14-DAY WAITING PERIOD UNDER RULES 6004(H) AND 6006(D) IS APPROPRIATE.**

Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Debtor requests that the Order be effective immediately by providing that the 14-day stays under Rules 6004(h) and 6006(d) are waived.

- 29 -

The purpose of Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, *Collier* suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." *Collier on Bankruptcy*, ¶ 6004.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Furthermore, *Collier* provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  *Id.*

The Debtor hereby requests that the Court waive the 14-day stay periods under Rules 6004(h) and 6006(d) or, in the alternative, if an objection to the Sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

## X.    CONCLUSION

**WHEREFORE**, the Debtor respectfully request that the Court enter an order: (i) granting the relief requested herein; and (ii) granting such other and further relief as the Court may deem proper.

Dated:  November 10, 2022

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA M. MOYRON

By    */s/ Tania M. Moyron*
      Tania M. Moyron

Attorneys for the Chapter 11 Debtor and
Debtor In Possession

US_ACTIVE\122549257\V-9

<u>**EXHIBIT 1**</u>

**BIDDING PROCEDURES**

Borrego Community Health Foundation (the "<u>Debtor</u>") proposes to conduct an auction for the Sale (as defined under Paragraph 1 below) of the Purchased Assets (as defined under Paragraph 2 below) and will proceed in accordance with the following bid procedures ("<u>Bidding Procedures</u>") which have been approved pursuant to an Order entered by the United States Bankruptcy Court for the Southern District of California, Los Angeles Division ("<u>Bankruptcy Court</u>") on November 28, 2022 ("<u>Bidding Procedures Order</u>") in the Chapter 11 case styled *Borrego Community Health Foundation*, Case No. 22-02384-11 (the "<u>Bankruptcy Case</u>").

The form of asset purchase agreement for the Sale is posted in the Debtor's on-line data room (the "<u>Draft APA</u>").  As provided for below, the Debtor is soliciting bids ("<u>Bids</u>") for the proposed acquisition of the Purchased Assets, in accordance with the procedures below, which require, among other requirements, that prospective bidders submit an executed asset purchase agreement, in the form of the Draft APA, along with a marked version evidencing any changes to the Draft APA.  The Debtor will consider all Bids which comply with the terms of these Bidding Procedures; <u>provided</u>, <u>that</u>, Bids will be evaluated based upon the cash consideration provided by such offer.

1.  <u>**Sale Proposal**</u>¶ These Bidding Procedures set forth the terms by which prospective bidders may qualify for and participate in the Auction (as defined under Paragraph 13 below), thereby competing to make the highest and best offer for the Purchased Assets.  The sale of the Purchased Assets (a "<u>Sale</u>") shall be free and clear of any and all claims, liens, and other encumbrances, pursuant to § 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"),[1] with all such liens, claims and encumbrances attaching to the proceeds of the Sale to the same extent and with the same priority as such liens, claims and encumbrances attached to the Purchased Assets prior to the Sale.

2.  <u>**Purchased Assets**</u>¶ For purposes of a Sale, the "<u>Purchased Assets</u>" consist of any or all tangible and intangible real and personal property assets of the Debtor as defined and set forth in the Draft APA.

3.  <u>**"As Is, Where Is" Sale**</u>¶ Except as explicitly set forth in the Draft APA, any Sale of the Purchased Assets will be transferred on an "as is, where is" basis, with all faults, and without representations or warranties of any kind, nature or description by the Debtor, its agents or estates, whether written, verbal, express, implied, or by operation of law.

4.  <u>**Committee**</u>¶   "Committee" means, collectively, the Official Committee of Unsecured Creditors.

---

[1] Unless specified otherwise, all "§" or "Section" references are to the Bankruptcy Code.

1

5.      **Potential Bidders / Execution of NDA/ Financial Information**¶ To participate in the Auction, any party (a "Potential Bidder") wishing to submit a Bid to purchase the Purchased Assets must execute, or have executed, a nondisclosure agreement ("NDA") in the form provided by Debtor's advisors and in form and substance satisfactory to the Debtor before such Potential Bidder may receive due diligence information from the Debtor, including access to the Debtor's on-line data room or other non-public information relating to the Purchased Assets. In addition, any Potential Bidder must submit financial information to the Debtor, who shall provide such financial information to the Committee's professionals upon request, to evidence such Potential Bidder's ability to consummate the Sale, which information must be satisfactory to the Debtor after consultation with the Committee.[2]  Further, on or before **December 12, 2022**, any Potential Bidder must submit an Indication of Interest to purchase the Purchased Assets to the Debtor and the Committee, which includes (1) the proposed structure of the transaction, purchase price and any material terms; (2) a description of the acquiring entity and relevant experience; (3) proposed plans for the assets following consummation of the sale transaction; (4) evidence of financial capacity to complete the transaction; (5) authority and approval to complete the transaction; (6) a detailed description of the due diligence information and / or investigation you may require to submit a Bid; (7) a proposed timetable for consummating the transaction; and (8) contact information for the Potential Bidder; *provided*, *however,* that a Potential Bidder's failure to submit an Indication of Interest on or before December 12, 2022 shall not be a basis to disqualify such Potential Bidder from further participation in the Sale process.

6.      **Due Diligence**¶ After receipt of an executed NDA, the Debtor shall, upon request by the Potential Bidder, provide each Potential Bidder reasonable due diligence information as soon as reasonably practicable after such request, including access to the Debtor's on-line data room. The Debtor shall not furnish, and shall have no obligation to furnish, any confidential and/or non-public information relating to the Purchased Assets or the Debtor (collectively, "Confidential Information"), or grant access to the Debtor's on-line data room, to (i) any person that does not qualify as a Potential Bidder, or (ii) to Potential Bidders who, at such time and in the Debtor's reasonable business judgment, after consultation with the Committee, have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale; *provided, however*, that the Debtor is required to provide access to the on-line data room, and the Confidential Information contained within, to the Committee.

7.      **Representations and Warranties**¶.  The Debtor makes no representation or warranty as to the Confidential Information provided through the due diligence process or otherwise, except to the extent set forth in the Draft APA (or as set forth in any Qualified APA (as defined under Paragraph 9 below) entered into

---

[2] As used herein, "in consultation with the Committee" means prior consultation and discussion with the Committee.

US_ACTIVE\122549321\V-7

between the Debtor and the Winning Bidder (as defined under Paragraph 13 below). No party may conduct any additional due diligence after the Bid Deadline (as defined under Paragraph 8 below).

8.    **Bid Deadline**¶ Potential Bidders must submit their Bids so that such Bids are actually received by each of the following parties **no later than 5:00 p.m. (Pacific Time) on December 22, 2022** (the "Bid Deadline"): (i) counsel to the Debtor: Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Samuel R. Maizel (samuel.maizel@dentons.com) and Tania M. Moyron (tania.moyron@dentons.com); (ii) financial advisor to the Debtor: Ankura, 2021 McKinney Avenue, Suite 340, Dallas, TX 75201 (Attn: CJ Pease (charles.pease@ankura.com)); (iii) the Office of the United States Trustee (the "U.S. Trustee"): 880 Front Street, Room 3230, San Diego, CA 92101 (Attn: David Ortiz (david.a.ortiz@usdoj.gov)); (iv) counsel to the Committee: Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com)); and (v) financial advisor to the Committee: FTI, 350 S. Grand Avenue, Suite 3000, Los Angeles, CA 90071 (Attn: Cynthia Nelson (cynthia.nelson@fticonsulting.com) and Marc Bilbao (marc.bilbao@fticonsulting.com)) (collectively, the "Bid Deadline Recipients"). Potential Bidders may either e-mail their Bids to the e-mail addresses listed above or may deliver hard-copies of their Bids to the physical addresses listed above so that they are actually received by the Bid Deadline. The Debtor shall have no obligation to consider any other delivery format, such as fax, as being acceptable. The Debtor may, after consultation with the Committee, extend the Bid Deadline until the commencement of the Auction for one or more Potential Bidders without prior notice to any party, but shall have no obligation to do so under any circumstances. For the avoidance of doubt, the Debtor and/or the Committee may seek authority from the Court, including on an expedited basis, to extend the Bid Deadline for cause.

9.    **Qualified Bid**¶ In order to constitute a "Qualified Bid," a Bid must satisfy the following requirements (the "Bid Requirements"):

(a)    be submitted (i) in writing and (ii) be received by the Bid Deadline Recipients by the Bid Deadline as set forth in Paragraph 8 of these Bidding Procedures, subject to Paragraph 11 of these Bidding Procedures;

(b)    constitute a good faith, bona fide offer to purchase the Purchased Assets in accordance with the terms of the Qualified APA (as defined in this Paragraph 9) for a proposed purchase price ("Purchase Price") identified in such Qualified APA and defined as the "Purchase Price" therein;

(c)    identify the legal name of the Potential Bidder (including any direct or indirect equity holders, if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale);

3

(d)     be accompanied by a clean and a duly executed copy of an asset purchase agreement (the "Qualified APA"), the form of which shall be consistent with the Draft APA and which shall not be inconsistent with these Bidding Procedures;

(e)     be accompanied by a copy of the Qualified APA which is marked to reflect the amendments and modifications compared to the Draft APA;

(f)     be accompanied by a copy of the draft Sale Order (as defined under Paragraph 15 below) marked to reflect the amendments and modifications (if any) compared to the form of draft Sale Order posted in the Debtor's on-line data room;

(g)     be accompanied by a deposit by wire transfer in an amount equal to the greater of $200,000 or ten percent (10%) of the aggregate Purchase Price in certified funds or such other amount acceptable to the Debtor, in consultation with the Committee ("Deposit"), to be held in escrow and treated in accordance with the provisions of Paragraph 16 of these Bidding Procedures;

(h)     provide sufficient and adequate information to demonstrate to the satisfaction of the Debtor, in consultation with the Committee, that such Potential Bidder has the financial wherewithal and ability to consummate the Sale;

(i)     demonstrate a commitment to operating Debtor's clinics as a Federally Qualified Health Center ("FQHC") providing continuity of culturally competent care to its patients;

(j)     include a written statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures and the Bidding Procedures Order and consents to the jurisdiction of the Bankruptcy Court (including waiving any right to a jury trial) in connection with any disputes related to these Bidding Procedures as well as (*each as defined below*) the Auction, the Sale Hearing, the Sale Order and/or the closing of the Sale;

(k)     include a written statement outlining the absence or presence, and details thereof, of any relationship, affiliation, or connection of any kind between the Potential Bidder, on the one hand, and the Debtor and/or any of its affiliates, current or former officers, directors, and/or investors;

(l)     not be conditioned on any due diligence, financing, or other contingencies other than entry of the Sale Order, and any other contingencies solely to the extent set forth in the Qualified APA;

(m)     remain irrevocable until forty-eight (48) hours after the conclusion of the Sale Hearing or such longer period of time as set forth below if the

4

Potential Bidder is selected as the Winning Bidder or Back-Up Bidder (as defined below);

(n)     states whether the Potential Bidder is willing to serve as a stalking horse bidder and specify any requested bidding protections, including a break-up fee and/or expense reimbursement in an amount not to exceed in the aggregate 2.5% of the proposed Purchase Price of such Bid; and

(o)     states that the Potential Bidder is willing to serve as a Back-Up Bidder and that its Qualified Bid (or any Qualified Bid as modified at the Auction) shall constitute the Back-Up Bid if the Debtor determines that it qualifies as the Back-Up Bid in accordance with the provisions of Paragraph 14.

10.    **Discretionary Determination of Stalking Horse Bidder**¶ The Debtor, in its discretion, after consultation with the Committee, may agree that a Qualified Bidder which indicated a willingness to serve as a stalking horse bidder shall be afforded stalking horse status and protections (the "Stalking Horse Bidder"), including a break-up fee and expense reimbursement in an amount not to exceed in the aggregate 2.5% of the proposed Purchase Price under such Qualified Bidder's Qualified APA (the "Break-Up Fee").  Any Break-Up Fee, to the extent payable, shall only be paid from proceeds received by the Debtor at the closing of a Sale with a Qualified Bidder other than the Stalking Horse Bidder.  The award of stalking horse protection may occur without further notice (other than the filing of a notice on the Bankruptcy Court docket no later than twenty-four (24) hours prior to the commencement of the Auction) or order of the Bankruptcy Court.  If such designation of the Stalking Horse Bidder is made, the Debtor shall notify all other Potential Bidders and, unless the Debtor receives a higher or better bid (as determined by the Debtor after consultation with the Committee) prior to the Auction, the Opening Bid at the Auction shall be the Bid of the Qualified Bidder that has been designated as the Stalking Horse Bidder.

11.    **Determination of Qualified Bids**¶ A Bid that satisfies each of the Bid Requirements, as determined by the Debtor in its reasonable discretion, in consultation with the Committee, constitutes a "Qualified Bid", and such Potential Bidder constitutes a "Qualified Bidder."  The Debtor may determine, in consultation with the Committee, that a Bid is not a Qualified Bid if the Qualified APA differs in any material respect from the Draft APA.  Prior to the Auction, the Debtor shall determine, after consultation with the Committee, whether any submitted bids constitute Qualified Bids.  No later than one business day prior to the Auction, the Debtor shall file and serve on all Potential Bidders that submitted a Bid (regardless of whether such Bid was determined to be a Qualified Bid) a notice (the "Auction Notice") indicating which Potential Bidders have submitted Qualified Bids. If any Bids are designated as Qualified Bids, the Auction shall be conducted on January 13, 2023, as further described below.

12.    **Auction**¶ The Debtor shall conduct an auction on **January 13, 2023**, at the offices of Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, California

90017, commencing at 10:00 a.m. Pacific Time (the "Auction").  The Auction will be conducted to determine the highest and best Qualified Bid (the "Winning Bid," with such bidder being the "Winning Bidder").  Subject to paragraph 18 below, the Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

(a)     only Qualified Bidders, in person or through duly-authorized representatives at the Auction may bid at the Auction, and every Qualified Bidder must have at least one (1) such duly-authorized representative with authority to bind the Qualified Bidder at the Auction;

(b)     only such authorized representatives of each of the Qualified Bidders, the Debtor, the Committee (including its members), and their respective legal and financial advisors shall be permitted to attend the Auction;

(c)     prior to the commencement of the Auction, representatives of the Debtor, and/or the Committee may have discussions with each Qualified Bidder with respect to the terms and conditions of such Qualified Bids, and the Debtor will have selected, in consultation with the Committee, a Qualified Bid to become the opening bid at the Auction (the bid submitted by such Qualified Bidder shall be referred to as the "Opening Bid" and the Qualified Bidder shall be referred to as the "Opening Bidder");

(d)     bidding shall commence at the amount of the Opening Bid.  The Opening Bid shall be announced by the Debtor at or before the commencement of the Auction.  Other Qualified Bidders may then submit successive bids in increments of at least $500,000 (plus, with respect to the first successive bid, the amount of the Break-Up Fee, if any) higher than the Opening Bid, and all subsequent bids must be at least $500,000 higher than the previous bid.  To the extent a Stalking Horse Bidder submits higher bids, such Stalking Horse Bidder shall have the right (but not the obligation) to increase its Opening Bid by using, as a credit, the amount of the Break-Up Fee when determining whether any Stalking Horse Bidder has topped the previous bid by the required amount;

(e)     Qualified Bidders shall have the right to submit additional bids that include modifications to their Qualified APA at the Auction, consistent herewith, provided that any such modifications to the Qualified APA, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtor than any prior bid by such party (as determined by the Debtor, following consultation with the Committee).  The Debtor, in consultation with the Committee, reserves the right to separately negotiate the terms of any Qualified Bids at the Auction, provided the terms are fully disclosed at the time such Qualified Bid is formally submitted;

(f)     the bidding will be transcribed by a certified court reporter employed by the Debtor to ensure an accurate recording of the bidding at the Auction;

6

(g)     each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale and is not in violation of § 363(n); and

(h)     absent irregularities in the conduct of the Auction, the Debtor will not consider any Potential Bids made after the Auction is closed.

13.    **Acceptance of the Winning Bid and Designation of the Back-Up Bid**¶

(a)     Upon the conclusion of the Auction (if such Auction is conducted), the Debtor, in the exercise of its reasonable, good-faith business judgment and after consultation with the Committee, shall identify (i) the Winning Bid, which is the highest and best Qualified Bid submitted at the Auction; and (ii) the next highest and best Qualified Bid (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder"). In evaluating Qualified Bids, the Debtor shall give preference to Qualified Bidders which demonstrate a commitment to operating Debtor's clinics as a FQHC providing continuity of culturally competent care to its patients.

(b)     Each of the Winning Bidder and the Back-Up Bidder shall be required to execute a definitive Qualified Bid conformed to the provisions of the Winning Bid and the Back-Up Bid, as applicable, as soon as practicable but, in no event, prior to the Sale Hearing. For the purposes of these Bidding Procedures, the definitive agreement executed by the (i) Winning Bidder shall be defined as the "Winning Bid APA" and (ii) Back-Up Bidder shall be defined as the "Back-Up Bid APA." The Back-Up Bidder must keep the Back-Up Bid open and irrevocable until the earlier of (i) 5:00 p.m. (Pacific Time) on the date which is thirty (30) days after the entry of the Sale Order (the "Outside Back-Up Date"), or (ii) the date of closing of the Sale to the Winning Bidder.

(c)     Within two business days after the conclusion of the Auction, the Winning Bidder and the Back-Up Bidder shall each deposit with the Debtor an additional amount in cash such that, when combined with their existing Deposit, each such bidder's aggregate Deposit equals the greater of $200,000 or ten percent (10%) of the Purchase Price reflected in the final bid of the Winning Bidder and of the Back-Up Bidder, respectively (such additional amounts shall be included in the definition of the "Deposit").

(d)     If an Auction is held, the Debtor shall be deemed to have accepted a Qualified Bid as the winner of the Auction (conditioned upon approval by the Bankruptcy Court) only when (i) such bid is declared the Winning Bid; (ii) definitive documentation has been executed in respect thereof; and (iii) any additional Deposit required as a result of a bid submitted at the Auction (as required by the Bidding Procedures) has been provided to the Debtor. Such acceptance is also conditioned upon approval by the Court of the Winning Bid and (if applicable) the Back-Up Bid.

7

14.   **Sale Hearing**¶

(a)   The sale hearing is presently scheduled to take place **on January 19, 2023 at 10:00 a.m. (Pacific Time),** or as soon thereafter as counsel may be heard, before the Honorable Laura S. Taylor, Dept. 3 – Courtroom 129, 325 West F Street, San Diego, California (the "Sale Hearing").

(b)   Within two business days after the conclusion of the Auction (and in advance of the Sale Hearing), the Debtor will file a notice of the Winning Bid and Back-Up Bid, along with copies of the Winning Bid APA, Back-Up Bid APA and the proposed Sale Order (the "Notice of Winning Bid and Back-Up Bid"), redacted as necessary to protect commercially sensitive and/or confidential information.

(c)   Any objection to the approval of the Winning Bid and Back-Up Bid shall be filed no later than **TBD at 5:00 o'clock p.m. (Pacific Time)** (the "Sale Objection Deadline").

(d)   The Debtor will present the results of the Auction to the Bankruptcy Court at the Sale Hearing, at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was properly conducted, and the Winning Bidder and the Back-Up Bidder were properly selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, (iii) each of the Winning Bid and the Back-Up Bid was a Qualified Bid, (iv) closing of the Sale with the Winning Bid (or if applicable, the Back-Up Bid) will provide the highest and best value for the Purchased Assets and is in the best interests of the Debtor and (v) each of the Winning Bidder and the Back-Up Bidder are deemed to be purchasers of the Purchased Assets in good faith as set forth in § 363(m).

(e)   At the Sale Hearing, the Debtor shall request the Bankruptcy Court to enter an order approving the Winning Bid and, if applicable, the Back-Up Bid (the "Sale Order"). Except to the extent revised by the Debtor in its discretion, after consultation with the Committee and the Winning Bidder, the proposed Sale Order presented to the Bankruptcy Court at the Sale Hearing shall be in the form submitted as part of the Winning Bid.

(f)   At the Sale Hearing, the Debtor shall also request, as part of the Sale Order, authorization from the Bankruptcy Court to accept the Back-Up Bid as the Winning Bid, and consummate such bid, if the Winning Bid is not consummated when and as required by its terms without further order of the Bankruptcy Court. The Debtor and the Back-Up Bidder shall be bound to consummate the Back-Up Bid if the Winning Bid terminates, at which time the Back-Up Bidder shall be deemed the Winning Bidder. The Debtor shall promptly give notice to the Back-Up Bidder if the Winning

8

Bid is terminated and shall provide the Back-Up Bidder a reasonable period within which to close as set forth in the Back-Up Bid APA.

(g)    After approval of the Sale and entry of the Sale Order, the Debtor shall request the Health Resources & Services Administration ("HRSA") approve the Winning Bidder as a federally qualified health center and the transfer of certain federal grants and state payments to the Winning Bidder. It may take up to six months for the HRSA to complete this approval process.

15.    **Treatment of Deposit**¶

(a)    The Deposit of each Potential Bidder shall be held pursuant to an escrow agreement acceptable to the Debtor, subject to the prior consent of the Debtor as to the escrow agent and form of escrow agreement, where such consent is not to be unreasonably withheld.

(b)    Upon closing of the Sale with the Winning Bidder (or Back-Up Bidder, if applicable), the Deposit of the Winning Bidder or Back-Up Bidder shall be credited to the Purchase Price. The Deposit of the Winning Bidder or Back-Up Bidder will be forfeited to the Debtor if the Winning Bidder or Back-Up Bidder fails to enter into the required definitive documentation or to consummate the applicable sale transaction in accordance with these Bidding Procedures and the terms of the applicable transaction documents with respect to the Winning Bid and Back-up Bid as shall be set forth in the Winning Bid APA and Back-Up Bid APA or as otherwise ordered by the Bankruptcy Court.

(c)    The Deposits of any Qualified Bidders other than the Winning Bidder and the Back-Up Bidder will be returned within two (2) business days after the conclusion of the Sale Hearing; provided, that, the Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder at the earlier of (i) the closing of the Sale to the Winning Bidder, and (ii) thirty (30) days after entry of the Sale Order.

(d)    The Deposit of any Potential Bidder who is determined not to be a Qualified Bidder shall be returned to such Potential Bidder within two (2) business days of such determination, pursuant to the terms of the applicable escrow agreement.

16.    **Payment of the Break-Up Fee.**  If any Stalking Horse Bidder is not the Winning Bidder, the Debtor shall pay the Break-Up Fee to such Stalking Horse Bidder as set forth in the agreement between the Debtor and the Stalking Horse Bidder providing for such Break-Up Fee, but in no event shall payment be any earlier than the time of the consummation of the sale of the Purchased Assets or transfer thereof in the context of an Alternative Transaction, and shall only be paid from the proceeds of such sale or upon the transfer of such Purchased Assets.

9

Notwithstanding the foregoing, a Break-Up Fee will only be payable if the Debtor has previously determined pursuant to Paragraph 10 of these Bidding Procedures that a bid merits stalking horse status and protections.

17. **Reservation of Rights**¶  **THE DEBTOR RESERVES ITS RIGHTS TO MODIFY THESE BIDDING PROCEDURES IN ANY MANNER IN CONSULTATION WITH THE COMMITTEE THAT WILL BEST PROMOTE THE GOALS OF THE BIDDING PROCESS.  THE DEBTOR FURTHER RESERVES ITS RIGHTS TO IMPOSE, IN CONSULTATION WITH THE COMMITTEE, AT OR PRIOR TO THE AUCTION, ADDITIONAL TERMS AND CONDITIONS ON THE SALE OF THE PURCHASED ASSETS, INCLUDING, WITHOUT LIMITATION, EXTENDING THE DEADLINES SET FORTH IN THESE BIDDING PROCEDURES, ADJOURNING THE AUCTION AT OR PRIOR TO THE AUCTION AND/OR ADJOURNING THE SALE HEARING PRIOR TO SUCH HEARING OR IN OPEN COURT WITHOUT FURTHER NOTICE, AND REJECTING ANY OR ALL QUALIFIED BIDS IF, IN THE DEBTOR'S REASONABLE, GOOD-FAITH BUSINESS JUDGMENT, FOLLOWING CONSULTATION WITH THE COMMITTEE, THE DEBTOR DETERMINES THAT SUCH QUALIFIED BID IS (I) INADEQUATE OR INSUFFICIENT, (II) NOT IN CONFORMITY WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE OR ANY RELATED RULES OR THE TERMS SET FORTH HEREIN, OR (III) CONTRARY TO THE BEST INTERESTS OF THE DEBTOR.  THE DEBTOR RESERVES THE RIGHT, AT ANY TIME, AND IN CONSULTATION WITH THE COMMITTEE, FOR ANY REASON AND IN ITS REASONABLE, BUSINESS JUDGMENT, TO DECLINE TO PURSUE THE SALE AND TO WITHDRAW ANY MOTION FILED IN THE COURT SEEKING TO APPROVE THE SALE.**

US_ACTIVE\122549321\V-7