1  SAMUEL R. MAIZEL (SBN 189301)
   samuel.maizel@dentons.com
2  TANIA M. MOYRON (SBN 235736)
   tania.moyron@dentons.com
3  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
4  Los Angeles, CA 90017-5704
   Telephone:    213 623 9300
5  Facsimile:    213 623 9924

6  Proposed Attorneys for Chapter 11 Debtor and
   Debtor In Possession
7

8              UNITED STATES BANKRUPTCY COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10 In re                                    | Case No. 22-02384-11

11 BORREGO COMMUNITY HEALTH             | Chapter 11 Case
   FOUNDATION,
12         Debtor and Debtor In Possession.  | **DEBTOR'S REPLY IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER ESTABLISHING**
13                                           | **PROCEDURES FOR MONTHLY PAYMENT OF FEES AND EXPENSE REIMBURSEMENT;**
14                                           | **DECLARATION OF ISAAC LEE**
15                                           | Judge: Honorable Laura S. Taylor
16
17

18         Borrego Community Health Foundation, the above-captioned debtor and

19 debtor-in-possession herein (the "Debtor"), hereby submits this reply (the "Reply")

20 to the objections filed by McKesson Corporation ("McKesson") and in support of the

21 *Debtor's Motion for Entry of an Order Establishing Procedures for Monthly Payment*

22 *of Fees and Expense Reimbursement* [Docket No. 143] (the "Motion"). In further

23 support of the Motion, the Debtor submits the accompanying Declaration of Isaac

24 Lee.

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# I.

## **INTRODUCTION**

The objections filed by McKesson are without legitimate basis and are no more than a thinly veiled attempt to pressure the Debtor into early payment of McKesson's alleged administrative claim under section 503(b)(9) of title 11 of the United States Code (the "Bankruptcy Code").  However, as set forth in the Motion and herein, the Debtor has satisfied the factors necessary for the Court to grant the Motion, and nothing requires payment of the asserted priority claim prior to the effective date of a confirmed chapter 11 plan.

Although McKesson makes a series of inapposite arguments, the central tenet underlying its objections is as follows: that chapter 11 professionals should *not* be placed ahead in priority of other administrative claimants with regard to unencumbered estate funds in contravention of the Bankruptcy Code's priority scheme.  The Debtor does not disagree with this statement and no such action is being taken.  The fact of the matter is, as set forth in the Declaration of Isaac Lee, the Debtor has paid, and continues to pay, all debts as they become due in this chapter 11 case, including ordinary course expenses such as trade claims, United States Trustee fees, and other administrative expenses.  There is no evidence to the contrary in the record.

Through its objections, McKesson seeks to singularly penalize chapter 11 professionals, forcing them to effectively finance this chapter 11 case, in an effort to pressure the Debtor into making an early payout on McKesson's asserted administrative claim under section 503(b)(9) of the Bankruptcy Code.  Despite McKesson's unfounded arguments, motions of this sort are routinely approved in chapter 11 cases and the Motion should be granted here.

Finally, as set forth in the Declaration of Isaac Lee, the Debtor intends to pay valid claims under section 503(b)(9) of the Bankruptcy Code at the appropriate time, namely on the effective date of a confirmed chapter 11 plan.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1

Based on the foregoing, and for the reasons set forth below, the Debtor respectfully submits that this Court should overrule McKesson's objections and grant the Motion.

## II.

## STATEMENT OF RELEVANT FACTS

1.  On November 4, 2022, the Debtor filed the Motion.

2.  No objections were filed to the Motion except the objection filed by McKesson on November 18, 2022, titled *McKesson's Corp.'s Opposition to Debtor's Motion for Entry of an Order Establishing Procedures for Monthly Payment of Fees and Reimbursement* [Docket No. 194] (the "Original McKesson Objection").

3.  On November 21, 2022, this Court convened a hearing to consider the Motion, which hearing was continued to December 7, 2022.

4.  Thereafter, McKesson filed *McKesson Corporation's Supplemental Opposition to Debtor's Motion for Entry of an Order Establishing Procedures for Monthly Payment of Fees and Expense Reimbursement* [Docket No. 227] (the "Supplemental McKesson Objection"[1] and together with the Original McKesson Objection the "McKesson Objections").

5.  On November 21, 2022, the Court entered a minute order continuing the hearing on the Motion to December 7, 2022, and setting a corresponding briefing schedule [Docket No. 211].

6.  The Debtor has paid, and continues to pay, all debts as they become due in this chapter 11 case, including ordinary course expenses such as trade claims, United States Trustee fees, and other administrative expenses. The Debtor is confident that it will continue to timely pay all such debts in the ordinary course of business. Declaration of Isaac Lee, ¶ 7.

---

[1] On November 29, 2022, McKesson filed an addendum to the Supplemental McKesson Objection [Docket No. 240] (the "McKesson Addendum"). To the extent applicable this Reply will also be in response to the McKesson Addendum.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

7.      Moreover, the Debtor intends, and is confident that it will be able, to pay all valid claims under 11 U.S.C. § 503(b)(9) at the appropriate time, namely upon the effective date of a confirmed chapter 11 plan. *Id.*, ¶ 8.

## III.

## ARGUMENT

**A.   There Exists No Disparate Treatment Among Administrative Creditors and McKesson Should Not Be Permitted to Pressure the Debtor into Early Payment of its Claim.**

Despite McKesson's unfounded contentions, the Debtor is not proposing to afford chapter 11 professionals a superior treatment to other administrative creditors in contravention of the Bankruptcy Code's priority scheme.  To the contrary, as demonstrated in the accompanying Declaration of Isaac Lee, the Debtor has been, and continues to be, current on all debts as they become due in this chapter 11 case, including ordinary course expenses such as trade claims, United States Trustee fees, and other administrative expenses.  The Debtor recognizes that McKesson contends that it holds an approximately $1.5 million administrative claim under section 503(b)(9) of the Bankruptcy Code.  And to the extent it is determined that such claim is a valid administrative expense, the Debtor intends to pay it at the proper time, namely on the effective date of a confirmed plan. *In re LTV Steel Co.*, 288 B.R. 775, 779 (Bankr. N.D. Ohio 2002) (denying immediate payment of administrative expenses because the Bankruptcy Code not require it and instead requires parity among administrative claims), *see also In re Verity Health Sys. Of Cal., Inc.*, Case No. 18-20151 [Docket No. 614] (Bankr. C.D. Cal. Oct. 22, 2018) ("[I]t is well established that the Court has broad discretion in determining when the Debtors are required to pay an administrative claim.  Even if the Debtors' underfunding obligations do constitute an administrative claim (a finding the Court does not make), nothing in the Bankruptcy Code requires that the claim be immediately paid.").

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   McKesson has not introduced any evidence, and none exists, that the Debtor

2   will be unable to pay administrative claims under section 503(b)(9) of the Bankruptcy

3   Code upon the effective date of a confirmed plan.  Instead, it appears that McKesson

4   is attempting to use its opposition to the Motion as a thinly veiled mechanism to

5   pressure the Debtor into early payment of McKesson's alleged section 503(b)(9)

6   claim, ahead of other similarly situated administrative creditors.   However,

7   McKesson's own argument belies its position, that every administrative expense

8   claim should be treated *pari passu*.  McKesson did not request that the Debtor refrain

9   from paying *any* administrative claim until McKesson's alleged section 503(b)(9)

10  claim is paid.  This is not surprising as, by its own admission, McKesson is holding a

11  deposit of $667,000.00 on account of anticipated post-petition pharmaceutical and

12  medical-surgical goods. *See* McKesson Addendum, ¶ 1.  Instead, McKesson seeks to

13  singularly penalize chapter 11 professionals by forcing them to effectively finance

14  this chapter 11 case, in an effort to collect early payment of its alleged section

15  503(b)(9) claim, ahead of other similarly situated administrative creditors.

16  McKesson cites two cases in support of its contention that it is somehow being

17  prejudiced by the Motion.  McKesson first cites *Czyzewski v. Jevic Holding Corp.*,

18  137 S. Ct. 943 (2017) ("*Jevic*"),  a United States Supreme Court Case concerning the

19  proposed "structured dismissal" of chapter 11 case.  In *Jevic* the Supreme Court

20  overturned the bankruptcy court's decision approving a non-consensual "structured

21  dismissal" that provided for a recovery to general unsecured creditors, but not certain

22  priority wage claimants, effectively "skipping over" a class of creditors in violation

23  of the Bankruptcy Code's priority scheme.  *Jevic* bears no relation to this case.  As

24  explained herein, and in the Declaration of Isaac Lee,  administrative creditors are

25  being paid, and will be paid, as their claims are due, exactly in accordance with the

26  Bankruptcy Code's priority scheme.

27  McKesson next cites *In re The Great Atlantic & Pacific Tea Company, Inc., et*

28  *al.*, Case No. 15-23007-LGB (Bankr. S.D.N.Y. 2015) ("*A&P*").  However, in *A&P*,

1   by McKesson's own admission, administrative creditors only received a 20%

2   recovery upon their claims.  As set forth herein and in the Declaration of Isaac Lee,

3   here the Debtor is paying administrative expenses as they become due in accordance

4   with the Bankruptcy Code.  Furthermore, in *A&P* the chapter 11 professionals in

5   question received 100% of their fees.

6        McKesson further contends that any fees received by the chapter 11

7   professionals in this case should be subject to "mandatory disgorgement", without

8   explaining what "mandatory disgorgement" means.  It is undisputed that this Court

9   retains exclusive jurisdiction with respect to fees paid to chapter 11 professionals in

10  this case.  Indeed, under the express terms of the proposed order submitted as **Exhibit**

11  **A** to the Motion, "[t]his Court retains exclusive jurisdiction with respect to all matters

12  arising from or related to the implementation, interpretation, and enforcement of this

13  Order." Motion, Ex. A.  As such, all payments to chapter 11 professionals in this case

14  are subject to disgorgement upon an order of this Court.  If McKesson believes such

15  drastic recourse is appropriate at any point, it is free to bring a motion to that end and

16  prove its case to this Court, the same as is any other party-in-interest.

17       At bottom, no relief sought in the Motion prejudices McKesson's position

18  under the Bankruptcy Code's priority scheme to payment on its claim at the proper

19  time.  All valid administrative expenses are being paid and will continue to be paid as

20  they become due and all administrative creditors are being afforded the footing

21  provided them in accordance with the Bankruptcy Code.  The chapter 11 professionals

22  should not be made to effectively finance this chapter 11 case based on unfounded

23  assertions from a creditor holding an alleged administrative expense claim under

24  section 503(b)(9) of the Bankruptcy Code which has yet to become due.

25  **B.**    **McKesson's Contention That the Debtor May Be Misappropriating Grant Funds is a Red Herring.**

26

27       Without any legitimate foundation, McKesson speculates that the Debtor

28  intends to misappropriate federal grant funds.  This argument is a red herring and this

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   is not the proper stage at which to adjudicate this issue.  The Debtor does not seek to

2   make any payment through the Motion, or otherwise use any federal grant funds.

3   Instead, the Debtor merely seeks to propose procedures by which chapter 11

4   professionals may apply for compensation and reimbursement of actual and necessary

5   expenses.  Such procedures would, among other things, provide for a process by

6   which parties-in-interest may object to fee applications of chapter 11 professionals.

7   If a chapter 11 professional applies for compensation and a party-in-interest believes

8   that such application should not be granted for any reason, that party-in-interest is free

9   to bring an objection.  If McKesson has an issue with any aspect of a chapter 11

10  professional's application for compensation and expense reimbursement it should

11  bring an objection at the proper time, not in connection with this Motion.  Tellingly,

12  neither the U.S. Department of Health and Human Services ("HHS") nor the Health

13  Resources and Services Administration ("HRSA"), an agency within HHS charged

14  with administering the grants in question, has objected to the Motion.

15          Nevertheless, as fully explained in the Declaration of Isaac Lee, the Debtor is

16  not misappropriating any federal grant funds.  *See* Declaration of Isaac Lee, ¶ 9 (" To

17  the best of my knowledge, the Debtor is using all federal grant funds in accordance

18  with applicable law.").   Despite McKesson's suggestion that HRSA grant funds

19  cannot be used for legal fees (despite HHS and HRSA making no such objection), the

20  applicable regulations expressly allow the "costs of professional and consultant

21  services rendered by persons who are members of a particular profession or possess a

22  special skill, and who are not officers or employees of the non-Federal entity" to be

23  paid using HRSA grant funds.  45 CFR § 75.459(a).  Although "legal and related

24  services are limited," (*Id.*), the limitation is for legal costs incurred in defending

25  against proceedings "commenced by" the federal or a state government. 45 C.F.R. §

26  75.435.  This limitation would not apply to the bankruptcy proceeding, which was, of

27  course, commenced by the Debtor.

28

**C.** **McKesson Enjoys an Advantageous Position Among Administrative Expense Claimants in this Chapter 11 Case.**

McKesson argues that its receipt of a $667,000.00 deposit in connection with its administrative claim somehow does not place it in a preferred position in this chapter 11 case, despite such a deposit not being a protection typically afforded to administrative creditors. McKesson contends that it cannot apply any portion of such deposit to its administrative claim under section 503(b)(9) of the Bankruptcy Code, while conceding that there exists no executed contractual provision to the contrary. *See* McKesson Addendum. Instead McKesson is admittedly bound only by its own commitment provided just earlier this week. *See Id.*, ¶ 4. McKesson's receipt and possession of the deposit certainly places it in a preferred position among administrative creditors.[2]

**D.** **The Debtor Has Satisfied the *Knudsen* Factors.**

As fully set forth in the Motion, the Debtor has satisfied the factors as set forth in *In re Knudsen Corp.*, 84 B.R. 668, 672-73 (B.A.P. 9th Cir. 1988), which are as follows:

1. The case is an unusually large one in which an exceptionally large amount of fees accrue each month;
2. The court is convinced that waiting an extended period for payment would place an undue hardship on counsel;
3. The court is satisfied that counsel can respond to any reassessment in one or more of the ways listed above; and
4. The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

As to the first factor, this case is quite large, and is certainly larger than the

---

[2] McKesson cites a final case in support of the proposition that chapter 11 professionals bear the risk of administrative insolvency, *In re Lochmiller Indus., Inc.*, 178 B.R. 241 (Bankr. S.D. Cal. 1995) ("*Lochmiller*"). As explained herein, and in the Declaration of Isaac Lee, the Debtor has paid, and continues to pay, administrative expenses as they become due in this chapter 11 case. The Debtor intends to continue to pay such claims, including with regard to claims under section 503(b)(9) of the Bankruptcy Code, at the appropriate time. As such, *Lochmiller* in inapposite.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  average chapter 11 case in this judicial district.   Moreover, the chapter 11

2  professionals in this case are working diligently to respond to numerous issues,

3  including an adversary proceeding, a complex sale process, and issues raised by

4  McKesson itself, and while the Debtor's professionals (and the Debtor expects, all

5  other chapter 11 professionals) are working efficiently to minimize the accrual of fees

6  and expenses, fees and expenses of chapter 11 professionals in relation thereto are

7  accruing.

8         As to the second factor, forcing chapter 11 professionals to wait an extended

9  period of time for payment would obligate them to effectively finance this chapter 11

10  case, to their substantial detriment.

11        As to the third factor, as set forth herein and on the record, there can be no

12  legitimate dispute that the chapter 11 professionals are not capable of responding to

13  any reassessment concerning their paid fees in this chapter 11 case.   In the highly

14  unlikely event that at some hypothetical point in the future the Debtor becomes unable

15  to pay administrative claims in full, the Court will be well-positioned to assess what,

16  if any, remedy is appropriate.   There can simply be no legitimate dispute that if this

17  Court, based on such a reassessment, orders a chapter 11 professional to disgorge

18  payments already made to it, that such chapter 11 professional would be unable to do

19  so.

20        The fourth factor appears to be undisputed and, in any event, the fee retainer

21  procedure is certainly subject to a noticed hearing prior to any payment thereunder.

22        Moreover, and importantly, there is a tangible *benefit* to frequent disclosure of

23  accrued professional fees as "permitting professionals to be paid on a monthly basis

24  and provide the Court, the United States Trustee, and other parties in interest with a

25  running account of the amounts paid to professionals prevents undue surprises; in

26  cases where there are unencumbered assets, a creditors' committee can keep close

27  watch and hopefully take swift action to avoid later finding that there will be no

28  distribution to its constituents as a case has become administratively insolvent." *In*

1  *re ACT Mfg., Inc.*, 281 B.R. 468, 479 (Bankr. D. Mass. 2002).

2        At bottom, despite McKesson's myriad unfounded contentions, the Motion is

3  straightforward and routine in nature.  By the Motion, the Debtor simply proposes

4  procedures whereby chapter 11 professionals may apply to this Court for

5  compensation and reimbursement of actual and necessary expenses.  Nothing in the

6  Motion prejudices the rights, including the ability to object to a chapter 11

7  professional's fee application, or position under the Bankruptcy Code's priority

8  scheme, of any creditor, administrative or otherwise.  While the Court certainly does

9  not need to make such a predicate finding to grant the Motion, the fact of the matter

10  is that the Debtor has paid, and continues to pay, all debts as they become due in this

11  chapter 11 case, including ordinary course expenses such as trade claims, United

12  States Trustee fees, and other administrative expenses.  The Debtor also intends to

13  pay valid claims under section 503(b)(9) of the Bankruptcy Code at the appropriate

14  time, namely on the effective date of a confirmed chapter 11 plan.  As such, all

15  administrative creditors stand on the precise footing afforded to them under the

16  Bankruptcy Code.

17

18        WHEREFORE, the Debtor respectfully submits that this Court should overrule

19  the McKesson Objections and grant the Motion.

20

21  Dated: December 2, 2022                DENTONS US LLP

22                                          SAMUEL R. MAIZEL
                                            TANIA M. MOYRON

23

24                                          By: */s/ Tania M. Moyron*
                                               Tania M. Moyron

25

26                                          Proposed Attorneys for the Chapter 11

27                                          Debtor and Debtor In Possession

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA  90017-5704
(213) 623-9300

9

**DECLARATION OF ISAAC LEE**

I, Isaac Lee, hereby state and declare as follows:

1.      I am a Managing Director at Ankura with more than twenty (20) years of operational and financial restructuring experience.  I have advised numerous companies on turnaround plan development and evaluation, liquidity improvement initiatives, asset dispositions, liability management and bankruptcy filing preparation. I have also assisted in managing and administering companies during chapter 11 cases.  Additionally, I have prior experience with health care providers, including a nine surgical center system and had senior level responsibilities on two (2) prior engagements where Ankura has been involved as Chief Restructuring Officer.

2.      I received my MBA from the Tuck School at Dartmouth College and my BS in Business Administration from the University of Southern California.

3.      In January 2022, Borrego Community Health Foundation (the "Debtor") engaged Ankura Consulting Group ("Ankura") to, among other things, provide financial advisory services.

4.      Effective as of September 12, 2022 (the "Petition Date"), I was appointed the Chief Restructuring Officer ("CRO") in connection with the Debtor's chapter 11 case (the "Case"), and am supported by a team at Ankura.

5.      I am knowledgeable and familiar with the Debtor's day-to-day operations, business and financial affairs, restructuring efforts, and the circumstances leading to the commencement of this Case.  Except as otherwise indicated herein, this Declaration is based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtor or the Debtor's legal and financial advisors, or my opinion based upon my experience, knowledge, and information concerning the Debtor.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

6.    I submit this Declaration in further support of the *Debtor's Motion for Entry of an Order Establishing Procedures for Monthly Payment of Fees and Expense Reimbursement* [Docket No. 143] (the "Motion").[3]

7.    The Debtor has paid, and continues to pay, all debts as they become due in this chapter 11 case, including ordinary course expenses such as trade claims, United States Trustee fees, and other administrative expenses.    The Debtor is confident that it will continue to timely pay all such debts in the ordinary course of business.

8.    The Debtor intends, and is confident that it will be able, to pay all valid claims under 11 U.S.C. § 503(b)(9) at the appropriate time, namely upon the effective date of a confirmed chapter 11 plan.

9.    To the best of my knowledge, the Debtor is using all federal grant funds in accordance with applicable law.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

---

[3] All capitalized terms not defined herein have the meaning ascribed to them in the Motion.

11

1     I declare under penalty of perjury that, to the best of my knowledge and after

2    reasonable inquiry, the foregoing is true and correct.

3

4    Dated: December 2, 2022                    BORREGO COMMUNITY HEALTH
                                                FOUNDATION
5

6                                        By: _____

7                                            Isaac Lee
                                             Chief Restructuring Officer
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300