TENTATIVE RULING

ISSUED BY JUDGE LAURA S. TAYLOR

Debtor: BORREGO COMMUNITY HEALTH FOUNDATION

Number: 22-02384-LT11

Hearing: 02:00 PM Wednesday, December 7, 2022

Motion: MOTION FOR THE ENTRY OF (I) AN ORDER (1) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (2) APPROVING AUCTION SALE FORMAT AND BIDDING PROCEDURES; (3) APPROVING PROCESS FOR DISCRETIONARY SELECTION OF STALKING HORSE BIDDER AND BID PROTECTIONS; (4) APPROVING FORM OF NOTICE TO BE PROVIDED TO INTERESTED PARTIES; (5) SCHEDULING A COURT HEARING TO CONSIDER APPROVAL OF THE SALE TO THE HIGHEST AND BEST BIDDER; AND (6) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (II) AN ORDER AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR OF ALL CLAIMS, LIENS AND ENCUMBRANCES FILED ON BEHALF OF BORREGO COMMUNITY HEALTH FOUNDATION

Hear. In this motion, Debtor requests approval of bidding procedures for the sale of its assets and seeks to schedule a sale hearing for approval of the winning bid and sale order. Debtor intends to assume and assign certain executory contracts and to sell its assets free and clear of liens and other interests under § 363(f). As to the § 363(f) sale, Debtor states that "at least one of the tests is satisfied" for sale of its assets.

Debtor is aware that HRSA must approve the sale and expects that approval would occur six months after approval of the sale by the Court.

Four parties filed objections to Debtor's motion, and Debtor replied, as summarized below.

**California Department of Health Care Services' Objection**

The California Department of Health Care Services (DHCS) objects to the motion to the extent that Debtor intends to sell the Medi-Cal Provider Agreements (MCPAs) between DHCS and Debtor. DHCS notes that the motion and proposed bidding procedures are silent as to the treatment of MCPAs. DCHS argues that the MCPAs are executory contracts that must be assumed by and assigned to the buyer of Borrego's assets because both parties have

continuing obligations: Borrego to comply with the terms and conditions of the agreements, and the Department to make payments for services (citing a variety of cases including: *Erickson v. United States Department of Health and Human Services*, 67 F. 3d 858, 862 (9th Cir. 1995); *In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 5 (1st Cir. 2004); *In re University Medical Center*, 973 F.2d 1065, 1075 and n.13 (3rd Cir. 1992); *Green v. Cashman*, 605 F.2d 945, 946 (6th Cir. 1979); *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 569 B.R. 788, 799 n. 12 (Bankr. C.D. Cal. 2017), aff'd, 2018 WL 1354334 (B.A.P. 9th Cir. Mar. 12, 2018), aff'd in part, rev'd in part and remanded, 975 F.3d 926 (9th Cir. 2020); *In re Vitalsigns Homecare, Inc.*, 396 B.R. 232, 239 (Bankr. D. Mass. 2008); *In re Hefferman Memorial Hospital District*, 192 B.R. 228, 231 n. 4 (S.D. Cal. 1996); *In re St. Johns Home Health Agency Co.*, 173 B.R. 238, 242 n.1 (S.D. Fl. 1994); *In re Berks Behavioral Health, LLC*, 2010 WL 4922173, 7 (Bankr. E.D. Pa. 2010); *Lin v. State of California*, 78 Cal. App. 4th 931 (Ct. App. 2012)).

Therefore, DCHS argues, the MCPAs are not assets in the form of licenses that Debtor may sell free and clear of debts under § 363(f).

DHCS further states that Debtor has no entitlement to continue to participate in Medi-Cal under *Erickson*, 67 F.3d at 862; the medical services provider is not the intended beneficiary of the government program; its ability to participate depends on its continued compliance with the terms of the MCPAs. Therefore, DCHS asserts, Borrego has no property interest in the MCPAs.

Additionally, DCHS argues, the MCPAs themselves state that the provider has no property right in its status as a provider and may not assign its provider number or rights and obligations under an MCPA unless the purchaser assumes joint and several liability.

Consequently, according to DHCS, the sale of assets would not fulfill any of prongs under 363(f), and the approximately $60 million in overpayments Borrego owes DHCS must be paid by Borrego prior to the sale or be assumed by the buyer under § 365(b).

DHCS also objects to the motion as, in DHCS's view, the motion seeks approval of an asset purchase agreement which is not attached.

**Health and Human Services Objection**

The United States Department of Health and Human Services (HHS) objects to the extent that Debtor proposes to sell assets that belong to the federal government. HHS argues that the Court should determine what assets are property of the estate before selling its assets. HHS suggests that an evidentiary hearing may be required to determine whether certain assets are property of the bankruptcy estate or the federal government. This includes undisbursed amounts on federal grants to Debtor and property purchased with grant funds.

Debtor lists on its schedules certain equipment, grants, and other amounts

which may be government, not estate, property. HHS's Health Resources & Services Administration (HRSA) provides grants to health care providers, such as Debtor, treating geographically isolated and economically or medically vulnerable populations. HHS notes that Debtor has failed to submit required cost reports to determine qualified grant usage. Further, the federal government retains an interest in property, equipment, and supplies purchased with HRSA grant funds under 45 C.F.R. §§ 75.318 and 75.320.

Additionally, Debtor received $17,608,363.54 in Provider Relief Funds under the Coronavirus Aid, Relief, and Economic Security Act. Of these funds, Debtor has not yet reported on $6,011,481.10, which under certain circumstances, Debtor may be required to repay.

Similar to DHCS, HHS argues that the Debtor cannot sell its Medicare Provider Agreements (MPAs) "free and clear" of any liability under the payment provision of the Medicare statute. Debtor does not have a property interest in the MPAs to sell. In its view, no subsection of § 363(f) is available to permit the free and clear sale. Rather, it posits, the MPAs are executory contracts that must be assumed under § 365, and prior to assumption, Debtor must submit its missing cost reports so HHS can calculate any necessary adjustments. It notes that Debtor's schedules appear to list undisbursed HRSA funds under both Schedule B accounts receivable and Schedule G executory contracts.

Finally, HHS objects in that HRSA must evaluate a successor entity to determine if it is an eligible Successor in Interest. It thus asserts that any contract for sale must provide a contingency for HRSA approval.

**Debtor's Reply**

Debtor filed an omnibus reply to DCHS's and HHS's objections. Debtor argues: (1) the objections are premature as far as they related to sale of assets that will be heard at the hearing to approve the sale; and (2) their MPAs or MCPAs (together Provider Agreements) are statutory entitlements that are assets that can be transferred free and clear of successor liability under § 363(f), rather than executory contracts that must be assumed and assigned. Debtor further clarifies that it does not intend to sell what it does not own, including HRSA grants and funds and HRSA's interest in property purchased with grant funds.

Debtor cites Ninth Circuit cases for the proposition that Provider Agreements are statutory entitlements, not contracts. *PAMC, Ltd. v. Sebelius*, 747 F.3d 1214, 1221 (9th Cir. 2014) and *Guzman v. Shewry*, 552 F.3d 941, 946 (9th Cir. 2008); also *Hollander v. Brezenoff*, 787 F.2d 834 (2nd Cir. 1986); *Mem'l Hosp. v. Heckler*, 706 F.2d 1130, 1136 (11th Cir. 1983); *Harper-Grace Hospitals v. Schweiker*, 708 F.2d 199, 201 (6th Cir. 1983). Debtor further state that DCHS was aware of these cases due to a prior case involving the same counsel, but failed to include them in their objection. *See In re Verity Health Sys. of California, Inc.*, 606 B.R. 843 (Bankr. C.D. Cal. 2019), vacated, 2019 WL 7288754 (Bankr.

C.D. Cal. Dec. 9, 2019) after settlement. As a matter of contract law, Debtor continues, neither party received consideration under the Provider Agreements because they merely require both parties to follow preexisting statutory requirements.

Debtor further states that HHS has repeatedly and successfully argued that MPAs are not contracts. *Southeast Arkansas Hospice, Inc. v. Sebelius*, 1 Fed. Supp. 3d 915 (E.D. Ark. 2014); Government Parties' Reply in Further Support of their Motion for Partial Summary Judgment at 2, 4, *United States v. Malik*, 2103 WL 3948074 (D.D.C. June 13, 2013). As has DCHS in relation to MCPAs. *California Pharmacists Assoc. v. Jennifer Kent, Director, California Dept. of Health Care Servs.*, Case No. 4:19-cv-02999-JSW, Defendant Director Kent's Opposition to Plaintiff's Motion for Preliminary Injunction, Document No. 29 (N.D. Cal. July 19, 2019); Therefore, HHS should be judicially estopped from arguing otherwise under the elements of *Ah Quin v. County of Kauai Dept. of Trans.*, 733 F. 3d 267 (9th Cir. 2013). *See also Mull v. Motion Picture Indus. Health Plan*, 2014 WL 1514812, at *17 n. 11 (C.D. Cal. Feb. 4, 2014) ("Judicial estoppel is…appropriate to bar litigants from making incompatible statements in two different cases.") (citations omitted). Debtor acknowledges that there are many cases where courts held Provider Agreements to be executory contract, but explains that the debtors in those cases did not dispute the issue.

Debtor next argues that, even if the Provider Agreements are contracts, they are not executory. Because the duties of each party are imposed by statute or regulation; one side's failure to perform does not excuse the other party's performance.

As to the objection arising out of potential sale of government funding and property, Debtor first states that it intends to abide by the terms and conditions required by the HRSA grant awards and will not transfer grant awards without approval by HRSA. Second, Debtor states it is permitted to sell property purchased with HRSA funds and pay HRSA for its interest in the property. See 45 CFR 75.320(e). Finally, as to Provider Relief Funds arising out of the Covid-19 pandemic, Debtor takes the position that the funds belong to it once it properly and truthfully filed for relief and received the funding.

**Inland Empire Health Plan's Objection**

Inland Empire Health Plan (IEHP) objects based on its goal to provide safe and available healthcare to its members based on the following points:

- IEHP seeks a reasonable amount of time to vet potential bidders, at least 60 days, including to ensure that the winning bidder can provide uninterrupted healthcare services to IEHP members in compliance with state and federal law.

- The proposed three business day period (and three long-weekend days) between the auction and sale hearing is insufficient.

- IEHP would not find out the identity of the winning bid and backup bid until after the auction (over the weekend).

- Objections to the assumption and assignment of any executory contract are due on the Bid Deadline—long before IEHP finds out who is the winning bidder

IEHP proposes the following modifications:

- IEHP can learn the identity of potential bidders that have access to the on-line data room and contact potential bidders to request diligence related to their ability to comply with state and federal law.

- Six months following the Court's approval of sale to fully vet a winning bidder and backup bidder.

- Deadline to object to the assumption and assignment of provider agreements up to 90 days after approval of the sale.

- IEHP additionally wants: to receive potential bidders' indications of interest; to have access to the on-line data room including confidential information; to be named a bid deadline recipient; to be a consultation party to determine if a bid is qualified; to attend the auction; to have discussions with qualified bidders to determine their ability to operate as an FQHC.

**Debtor's Reply**

In response to IEHP's objection, Debtor offers to share the identity of Potential Bidders with access to the on-line data room in order to provide IEHP one month prior to the sale hearing to vet the bidders. Debtor argues that IEHP's remaining objections are overreaching and unnecessary, including allowing IEHP access to the on-line data room, to determine whether a bid is Qualified, and 90 days following the Sale order to file assumption objections.

**AB Staffing Solutions' Objection**

AB Staffing Solutions brings a limited objection in that the sale procedures do not require the winning bidder to provide notice to parties to contracts it declines to assume, but only requires notice to parties to contracts that it elects to assume.

**Debtor's Reply**

Debtor agrees to provide notice to all executory contract counter-parties of the unexpired leases and executory contracts that will be assumed and assigned to the Winning Bidder, including to the counter-parties to those contracts not assumed and assigned.

Debtor's agreement resolves AB Staffing Solutions' objection.

**Analysis**

As to the unresolved objections, the Court agrees with the Debtor that many of the objections are premature. And the schedule here is not designed for either appropriate judicial review or reasoned response by the objectors. Thus, the goal of this hearing will be to fashion an order that allows the sale process to commence while preserving the parties' rights by: (1) documenting and approving undisputed matters; (2) deciding disputed matters relating to bidding procedures only; (3) identifying remaining disputes; and (4) determining a schedule for the sale, including when the Court will decide remaining disputes.

**First**, the Court is inclined to approve matters that appear to be undisputed, including:

- Conducting an auction to the sale of Debtor's assets is appropriate.
- Debtor may sell its assets as is.
- Debtor will provide to IEHP the identity of potential bidders.
- Bidders must be qualified.
- The proposed requirements for Qualification as a Bidder are appropriate.
- The procedures relating to Qualified Bidders' deposits are appropriate.
- Debtor may designate a Stalking Horse Bidder.
- The auction may take place at Dentons LLP.
- The proposed bidding procedures at the auction are appropriate.
- The post-bidding procedures regarding the Winning Bid and Back-Up Bid are appropriate.
- After the auction, the Court will conduct a sale hearing.
- Debtor may assume and assign executory contracts and unexpired leases under the procedures proposed, subject to objections to be heard at the sale hearing.
- Debtor may attempt to sell its assets free and clear of other interests under § 363(f), subject to objections to be heard at or before the sale hearing.
- Debtor will use grant funds in accordance with their terms and conditions.
- HRSA must approve the proposed sale.

The approval of these matters does not include the schedule requested by Debtor.

Further, the Court notes that it does not consider itself bound by ¶ 17 of the Bidding Procedures.

**Second**, the Court will determine IEHP's objections related to the bidding procedures. The Court is inclined to permit IEHP to be present at the auction. But it is not inclined to allow IEHP to have unfettered access to the on-line data room or to permit IEHP to take part in the determination of Qualified Bidders. IEHP will have the opportunity to object at the sale hearing.

**Third**, the Court does not intend to decide remaining objections that relate the extent of Debtor's assets. The main remaining objections, brought by HHS and DHCS, involves whether the Provider Agreements are assets that can be sold free and clear under § 363(f) or contracts that must be assumed and assigned along with their liabilities. The Court does not intend to decide this issue at this time.

HHS also objects as to its interest in property purchased with grant funds, the remaining grant funds possessed by Debtor, and remaining relief funds. The Court will hear if Debtor's assurances are sufficient or if an evidentiary or other hearing is required.

The Court cannot approve the form of the asset purchase agreement, which it has not seen, until the sale hearing. The Court will likewise consider whether to make a § 363(m) finding at the sale hearing.

The Court will hear if there are any other objections that remain unresolved.

**Fourth**, the dates provided in the motion are no longer feasible. The motion assumed a clear runway, but the objections demonstrate that there is anything but. The Court will discuss dates with the parties. This discussion includes IEHP's objections as to the timing of the auction and sale, though their proposed time frames seem excessive. Also as part of this discussion, the Court will hear whether the Debtor would prefer to delay the auction and sale hearing to resolve remaining issues. The Court understands Debtor's desire to liquidate but also notes that certain objections may resolve once the identity of the purchaser is known.