SAMUEL R. MAIZEL (SBN 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (SBN 235736)
tania.moyron@dentons.com
REBECCA M. WICKS (SBN 313608)
rebecca.wicks@dentons.com
Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:  213 623 9300
Facsimile:   213 623 9924

Attorneys for Chapter 11 Debtor and
Debtor In Possession

JEFFREY N. POMERANTZ (SBN 143717)
jpomerantz@pszjlaw.com
STEVEN W. GOLDEN (Admitted *Pro Hac Vice*)
sgolden@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone:  310 227 6910
Facsimile:   310 201 0760

Attorneys to the Official Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

In re:

BORREGO COMMUNITY HEALTH FOUNDATION,

      Debtor and Debtor In Possession.

Case No. 22-02384
Chapter 11 Case

**FIRST AMENDED JOINT COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF BORREGO COMMUNITY HEALTH FOUNDATION**

Judge: Hon. Laura S. Taylor

Hearing:
Date:     January 17, 2024
Time:    10:00 a.m.
Place:    Department 3

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-8181

# **TABLE OF CONTENTS**

**SECTION 1. INTRODUCTION** ................................................................ **4**

**SECTION 2. SUMMARY OF CLASSIFICATION OF CLAIMS UNDER
PLAN AND IMPORTANT SOLICITATION AND
CONFIRMATION DATES AND DEADLINES** .......................... **6**

    2.1    Summary of Classification of Claims. ...................................... 6

    2.2    Important Dates and Deadlines. .............................................. 6

**SECTION 3. DEFINITIONS AND INTERPRETATION** ............................ **7**

    A.    Definitions. ............................................................................ 7

    B.    Interpretation and Rules of Construction. ............................. 25

    C.    Controlling Document. ........................................................ 25

**SECTION 4. BACKGROUND** ................................................................ **26**

    4.1    Overview of the Debtor. ...................................................... 26

    4.2    Events Leading to Chapter 11 Filing. .................................. 27

**SECTION 5. THE CHAPTER 11 CASE** .................................................. **28**

    5.1    Material First-Day Motions Filed on the Petition Date. ........... 28

    5.2    Motion for Entry of Order: Authorizing (I) Key Employee
Retention Program and (II) Key Employee Incentive
Program. ............................................................................ 29

    5.3    Estate Professionals, the Committee, and the Patient Care
Ombudsman. ...................................................................... 29

    5.4    Administrative Matters, Reporting and Disclosures. ............... 30

    5.5    Adversary Proceeding against DHCS. .................................. 31

    5.6    The Sale of Substantially All Assets. ................................... 33

    5.7    Claims Bar Date and Reconciliation. ................................... 35

**SECTION 6. CONFIRMATION AND VOTING PROCEDURES** ............... **36**

    6.1    Confirmation Hearing. ........................................................ 36

    6.2    Procedures for Objections. .................................................. 36

    6.3    Requirements for Confirmation. .......................................... 36

    6.4    Classification of Claims. ..................................................... 37

    6.5    Impaired Claims. ............................................................... 39

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

ii

| | 6.6 | Confirmation Without Necessary Acceptances; Cramdown. | 40 |
|---|---|---|---|
| | 6.7 | Feasibility. | 41 |
| | 6.8 | Best Interests Test and Liquidation Analysis. | 41 |
| | 6.9 | Eligibility to Vote on the Combined Plan and Disclosure Statement. | 42 |
| | 6.10 | Solicitation Package / Release Opt-Out Election Form. | 42 |
| | 6.11 | Voting Procedures, Voting Deadline, and Deadline to Submit the Release Opt-Out Election. | 43 |
| | 6.12 | Acceptance of the Combined Plan and Disclosure Statement. | 44 |

**SECTION 7. CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER DISCLOSURES** ....... **45**

| | 7.1 | Certain Risk Factors to be Considered. | 45 |
|---|---|---|---|
| | 7.2 | Certain U.S. Federal Income Tax Consequences. | 48 |
| | 7.3 | Releases, Exculpations, and Injunctions. | 55 |
| | 7.4 | Alternatives to the Combined Plan and Disclosure Statement. | 55 |

**SECTION 8. UNCLASSIFIED CLAIMS** ....... **56**

| | 8.1 | Administrative Claims. | 56 |
|---|---|---|---|
| | 8.2 | Professional Claims. | 57 |
| | 8.3 | Statutory Fees. | 57 |
| | 8.4 | Priority Tax Claims. | 58 |

**SECTION 9. CLASSIFICATION OF CLAIMS AND VOTING** ....... **58**

| | 9.1 | Classification in General. | 58 |
|---|---|---|---|
| | 9.2 | Summary of Classification. | 58 |
| | 9.3 | Special Provision Governing Unimpaired Claims. | 59 |
| | 9.4 | Elimination of Vacant Classes. | 59 |
| | 9.5 | Voting; Presumptions; Solicitation in Good Faith. | 59 |
| | 9.6 | Cramdown. | 59 |

**SECTION 10. TREATMENT OF CLAIMS** ....... **60**

| | 10.1 | Class 1: Priority Non-Tax Claims. | 60 |
|---|---|---|---|

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

10.2    Class 2: Secured Claims. .................................................... 60

10.3    Class 3: General Unsecured Claims. ................................... 61

10.4    Class 4: Allowed DHCS Claim. ........................................ 61

**SECTION 11. DISTRIBUTIONS** ........................................................ **62**

11.1    Party Responsible for Making Distributions. ..................... 62

11.2    Appointment of Disbursing Agent. ................................... 62

11.3    Timing of Distributions. .................................................... 62

11.4    Manner of Cash Payments Under the Plan and
Liquidating Trust Agreement. ........................................... 63

11.5    Distribution Procedures. ................................................... 63

11.6    Withholding of Distributions. ........................................... 64

11.7    Delivery of Distributions and Undeliverable
Distributions. .................................................................... 65

11.8    Setoffs and Recoupments. ................................................. 65

11.9    De Minimis Distributions. ................................................. 66

11.10   Allocation of Plan Distribution Between Principal and
Interest. ............................................................................. 66

11.11   Entry of Final Decree in Chapter 11 Case. ........................ 66

11.12   Distribution Cap. ............................................................. 67

11.13   Distributions Free and Clear. ............................................ 67

**SECTION 12. PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS** .............................. **67**

12.1    No Distributions Pending Allowance. ............................... 67

12.2    Resolution of Disputed Claims. ........................................ 67

12.3    Objection Deadline. .......................................................... 68

12.4    Allowance and Estimation of Claims. ............................... 68

12.5    Disallowance of Claims. .................................................... 69

12.6    Adjustment Without Objection. ........................................ 69

12.7    Reserve Provisions for Disputed Claims. .......................... 70

12.8    Rounding. ......................................................................... 70

12.9    Cumulative Effect. ............................................................ 70

**SECTION 13. LIQUIDATING TRUST BENEFICIARIES** ................................. **71**

13.1    Identification of Liquidating Trust Beneficiaries. ..................... 71

13.2    Beneficial Interests Only. ............................................................. 71

13.3    Evidence of Beneficial Interests. ................................................ 71

13.4    Conflicting Claims. ....................................................................... 71

13.5    Limitation on Transferability. ..................................................... 72

**SECTION 14. EXECUTORY AGREEMENTS** ............................................ **72**

14.1    General Treatment. ........................................................................ 72

14.2    Rejection Bar Date. ....................................................................... 73

14.3    Insurance Policies. ........................................................................ 73

**SECTION 15. MEANS FOR IMPLEMENTATION OF THE PLAN** ............... **74**

15.1    General Settlement of Claims. ..................................................... 74

15.2    Sale Transaction. ........................................................................... 74

15.3    DHCS Settlement Agreement. .................................................... 75

15.4    Plan Funding. ................................................................................ 76

15.5    Post-Effective Date Governance. ................................................ 76

15.6    Liquidating Trust. ......................................................................... 79

15.7    Appointment of the Liquidating Trustee and Co-Liquidating Trustee. ....................................................................... 80

15.8    Rights and Powers of Liquidating Trustee and Co-Liquidating Trustee. ....................................................................... 80

15.9    Fees and Expenses. ....................................................................... 81

15.10    Transfer of Beneficial Interests in the Liquidating Trust. ......... 81

15.11    Litigation of Debtor's Causes of Action. ................................... 81

15.12    Full and Final Satisfaction. .......................................................... 82

15.13    Employment and Compensation of Professionals. .................... 82

15.14    No Further Court Authorization. ................................................. 82

15.15    Dissolution of the Committee. ..................................................... 82

15.16    Coordination Between Post-Effective Date Debtor and the Liquidating Trust. ......................................................................... 83

15.17    Destruction and Abandonment of Books and Records. ............ 83

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

v

15.18    Mutuality Preserved. ...................................................... 84

**SECTION 16. EFFECT OF CONFIRMATION** ...................................... **84**

16.1    Binding Effect of the Plan. ............................................ 84

16.2    Vesting of Assets. .......................................................... 84

16.3    No Discharge. ................................................................ 84

16.4    Pursuant to § 1141(d), the Debtor will not receive a discharge under this Plan. ........................................... 84

16.5    Property Free and Clear. ............................................... 84

**SECTION 17. EXCULPATIONS, INJUNCTIONS, AND RELEASES** .......... **85**

17.1    Extension of Existing Injunctions and Stays. ............... 85

17.2    Releases. ........................................................................ 85

17.3    Injunctions. ................................................................... 87

17.4    Exculpation. ................................................................. 88

17.5    No Recourse. ................................................................ 89

17.6    Post-Confirmation Liability of Liquidating Trustee and the Co-Liquidating Trustee. .................................... 89

17.7    Preservation of Rights of Action. ................................. 90

17.8    Termination of Responsibilities of the Patient Care Ombudsman. ................................................................ 93

**SECTION 18. CONDITIONS PRECEDENT TO EFFECTIVE DATE** ............ **93**

18.1    Conditions Precedent to Confirmation of Plan. ........... 93

18.2    Conditions to Effective Date. ....................................... 93

18.3    Waiver of Condition. .................................................... 94

**SECTION 19. RETENTION OF JURISDICTION** .................................... **95**

19.1    Bankruptcy Court Jurisdiction. .................................... 95

**SECTION 20. MISCELLANEOUS PROVISIONS** .................................... **97**

20.1    Termination of All Employee, Retiree and Workers' Compensation Benefits. ................................................ 97

20.2    Administrative Claims Bar Date. .................................. 98

20.3    Exemption from Transfer Taxes. .................................. 98

20.4    Amendments. ................................................................ 99

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

vi

20.5    Revocation or Withdrawal of Plan. ........................................... 99

20.6    Severability. ............................................................................ 99

20.7    Request for Expedited Determination of Taxes. ....................... 99

20.8    Securities Exemption. ............................................................ 100

20.9    U.S. Trustee Quarterly Fees and Post-Confirmation Status
        Reports. ................................................................................. 100

20.10   Courts of Competent Jurisdiction. ......................................... 100

20.11   Governing Law. ..................................................................... 100

20.12   Continuing Effect of the Bankruptcy Court Orders and
        Settlement Stipulations. ........................................................ 100

20.13   Substantial Consummation. ................................................... 101

20.14   Waiver of Fourteen-Day Stay ................................................ 101

20.15   Reservation of Rights. ........................................................... 101

20.16   Successors and Assigns. ........................................................ 101

20.17   Time. ...................................................................................... 101

20.18   Business Day Transactions. ................................................... 101

20.19   Headings. ............................................................................... 102

20.20   Exhibits. ................................................................................. 102

20.21   Notices. .................................................................................. 102

20.22   Post-Effective Date Notices. ................................................. 103

20.23   Conflict of Terms. ................................................................. 103

20.24   Entire Agreement. ................................................................. 103

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

## DISCLAIMERS

**EACH HOLDER OF A CLAIM AGAINST THE DEBTOR ENTITLED TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE VOTING. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY BE MADE EXCEPT PURSUANT TO THE TERMS HEREOF AND SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE.[1] IF YOU ARE ENTITLED TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT. <u>THE DEBTOR URGES YOU TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT. THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS JOINTLY PROPOSED WITH THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (THE "COMMITTEE") WHICH SUPPORTS THE COMBINED PLAN AND DISCLOSURE STATEMENT AND URGES CREDITORS IN CLASS 3 TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.</u>**

**THE COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH §§ 1121 AND 1125 AND BANKRUPTCY RULES 3016 AND 3017, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST THE DEBTOR SHOULD EVALUATE THE COMBINED PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR. YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE COMBINED PLAN AND**

---

[1] All references to section or chapter herein are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., as amended. All references to "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure.

DISCLOSURE STATEMENT.

THE COMBINED PLAN AND DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, EVENTS IN THE CHAPTER 11 CASE, AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTOR AND THE COMMITTEE BELIEVE THAT THE STATEMENTS AND DESCRIPTIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE TRUE AND ACCURATE, THEY ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTORY PROVISIONS. THE TERMS OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTES GOVERN IN THE EVENT OF ANY DISCREPANCY WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT. CREDITORS AND OTHER INTERESTED PARTIES SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, AND THE APPLICABLE STATUTES THEMSELVES FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE FACTUAL STATEMENTS AND REPRESENTATIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE MADE BY THE DEBTOR AND THE COMMITTEE AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED, AND THE DEBTOR AND THE COMMITTEE DISCLAIM ANY OBLIGATION TO UPDATE ANY SUCH STATEMENTS AFTER THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DELIVERY OF THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT NECESSARILY BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**ALL FORWARD-LOOKING STATEMENTS CONTAINED HEREIN OR OTHERWISE MADE BY THE DEBTOR OR THE COMMITTEE INVOLVE MATERIAL RISKS AND UNCERTAINTIES AND ARE SUBJECT TO CHANGE BASED ON NUMEROUS FACTORS, INCLUDING FACTORS THAT ARE BEYOND THE DEBTOR'S CONTROL. ACCORDINGLY, THE DEBTOR'S FUTURE PERFORMANCE AND FINANCIAL RESULTS MAY DIFFER MATERIALLY FROM THOSE EXPRESSED OR IMPLIED IN ANY SUCH FORWARD-LOOKING STATEMENTS. SUCH FACTORS INCLUDE, BUT ARE NOT LIMITED TO, THOSE DESCRIBED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTOR AND THE COMMITTEE DO NOT INTEND TO UPDATE OR REVISE THEIR FORWARD-LOOKING STATEMENTS EVEN IF EXPERIENCE OR FUTURE CHANGES MAKE IT CLEAR THAT ANY PROJECTED RESULTS EXPRESSED OR IMPLIED THEREIN WILL NOT BE REALIZED.**

**ANY PROJECTED RECOVERIES TO CREDITORS SET FORTH IN THIS DISCLOSURE STATEMENT ARE BASED UPON THE ANALYSES PERFORMED BY THE DEBTOR AND ITS ADVISORS. ALTHOUGH THE DEBTOR AND ITS ADVISORS HAVE MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN, THE DEBTOR AND ITS ADVISORS CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THIS INFORMATION.**

**IN CONNECTION WITH THE DEBTOR'S AND THE COMMITTEE'S SOLICITATION OF ACCEPTANCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT PURSUANT TO § 1126(b), THE DEBTOR AND THE COMMITTEE ARE FURNISHING A SOLICITATION PACKAGE, CONSISTING OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE EXHIBIT A HERETO, CONFIRMATION NOTICE, AND A BALLOT AND/OR A RELEASE OPT-OUT ELECTION FORM, AS APPLICABLE, TO EACH RECORD HOLDER OF CLAIMS ELIGIBLE TO VOTE OR ITS COUNSEL. THE COMBINED PLAN AND DISCLOSURE STATEMENT IS TO BE USED BY EACH SUCH ELIGIBLE HOLDER SOLELY IN CONNECTION WITH ITS EVALUATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT; USE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE IS NOT AUTHORIZED. NOTHING STATED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR, THE**

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**COMMITTEE OR ANY OTHER PARTY. THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY NOT BE REPRODUCED OR PROVIDED TO ANYONE OTHER THAN ADVISORS TO THE RECIPIENT WITHOUT THE PRIOR WRITTEN CONSENT OF THE DEBTOR.**

## <u>SECTION 1.</u>
## INTRODUCTION

Borrego Community Health Foundation, (the "<u>Debtor</u>"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, and the Official Committee of Unsecured Creditors (the "<u>Committee</u>") hereby jointly propose the following combined disclosure statement and plan pursuant to §§ 1121(a) and 1125(b) (the disclosure statement portion hereof, the "<u>Disclosure Statement</u>" and the chapter 11 plan portion hereof, the "<u>Plan</u>," as may be modified and/or amended from time to time, and collectively, the "<u>Combined Plan and Disclosure Statement</u>"). Capitalized terms used in the Combined Plan and Disclosure Statement and not otherwise defined have the meanings ascribed to such terms in Section 3.

The Plan proposes to pay or otherwise satisfy Allowed Administrative Claims, Allowed Secured Claims, Allowed General Unsecured Claims, and a portion of the Allowed DHCS Claim, in full on the Effective Date or as soon as practicably thereafter. The Plan creates Class A and Class B Liquidating Trust Interests and proposes to pay Allowed General Unsecured Claims and the Allowed DHCS Claim in accordance with the DHCS Settlement.  The Plan also proposes the resolution of certain other Claims and the distribution of proceeds to Holders of Allowed Claims. Claims against the Debtor—other than Unclassified Claims—are classified in Section 9 and treated in accordance with Section 10 hereof. The Plan provides that (i) the Liquidating Trustee will administer the Class B Liquidating Trust Assets and continue the wind-down and liquidation of the Debtor after the Effective Date, and (ii) the Co-Liquidating Trustee will administer the Class A Liquidating Trust Assets to pay Holders of Allowed General Unsecured Claims.

The Debtor and the Committee will distribute the Combined Plan and Disclosure Statement to all holders of Claims in accordance with § 1125(b); Bankruptcy Rules 2002, 3016, and 3017; and the Bankruptcy Court's order conditionally approving the Combined Plan and Disclosure Statement [Docket No. _] (the "<u>Conditional Approval and Procedures Order</u>").

The Combined Plan and Disclosure Statement and the exhibit hereto include a discussion of: (i) the nature and history of the Debtor's business and liabilities; (ii) events during the Chapter 11 Case; (iii) the requirements for confirmation of the Plan and procedures for voting to accept or reject the Plan; (iv) additional factors and

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

disclosures to be considered, including risk factors and certain U.S. federal income tax consequences of the Plan; and (v) the terms of the Plan, including the treatment of holders of Claims under the Plan. The Disclosure Statement was prepared with the intent to provide "adequate information" (as defined in the Bankruptcy Code) to enable holders of Claims against the Debtor to make informed judgments about the Plan.

Subject to the restrictions on modifications set forth in § 1127 and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Section 20.4 of the Combined Plan and Disclosure Statement, the Debtor and the Committee expressly reserve the right to alter, amend, or modify the Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times, before substantial consummation thereof.

Please read the Combined Plan and Disclosure Statement, the exhibit, other supporting materials, and any appropriate ballot carefully and follow the instructions set forth below and on the appropriate ballot to vote on the Combined Plan and Disclosure Statement. The Debtor and the Committee believe that the Combined Plan and Disclosure Statement provides the best method of maximizing the recoveries for the holders of Claims against the Debtor. **Therefore, the Debtor and the Committee recommend that all creditors who are entitled to vote should vote in favor of the Combined Plan and Disclosure Statement.**

Unless otherwise specified, all section or exhibit references in the Combined Plan and Disclosure Statement are to the respective section in, or exhibit to, the Combined Plan and Disclosure Statement, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection, or clause contained herein. The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; and (c) unless otherwise noted above, the rules of construction set forth in § 102 shall apply.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

## SECTION 2.
### SUMMARY OF CLASSIFICATION OF CLAIMS UNDER PLAN AND IMPORTANT SOLICITATION AND CONFIRMATION DATES AND DEADLINES

### 2.1    *Summary of Classification of Claims.*

The following table designates the Classes of Claims against the Debtor and specifies which of those Classes are (a) not Impaired by the Plan, (b) Impaired by the Plan, and (c) entitled to vote to accept or reject the Plan in accordance with § 1126. In accordance with § 1123(a)(1), Administrative Claims, Professional Claims, Statutory Fees, and Priority Tax Claims, have not been classified. All of the potential Classes for the Debtor are set forth herein. If, ultimately, the Debtor does not have Holders of Claims in a particular Class or Classes, such Classes shall be treated as set forth in Section 10.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Not Impaired | No (deemed to accept) |
| 2 | Secured Claims | Not Impaired | No (deemed to accept) |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Allowed DHCS Claim | Impaired | Yes |

### 2.2    *Important Dates and Deadlines.*

| Event | Proposed Date |
|---|---|
| Voting Record Date | November 28, 2023 |
| Solicitation commences | December 11, 2023 |
| Deadline to file Plan Supplement | December 11, 2023 |
| Voting Objection Deadline | December 22, 2023 |
| Deadline for Creditors to file Rule 3018 Motions | December 29, 2023 |
| Deadline to respond to Voting Objection | December 29, 2023 |
| Deadline for Debtor to respond to Rule 3018 Motions | January 5, 2024 |
| Voting Deadline and deadline to submit the Release Opt-Out Election Form | January 8, 2024, at 4:00 p.m., Pacific Time |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

| Event | Proposed Date |
|-------|---------------|
| Combined Plan and Disclosure Statement Objection Deadline | January 8, 2024, at 4:00 p.m., Pacific Time |
| Deadline to file Confirmation Brief and other evidence supporting the Combined Plan and Disclosure Statement | January 11, 2024 |
| Deadline to file Voting Tabulation Affidavit | January 11, 2024 |
| Confirmation Hearing | January 17, 2024, at 10:00 a.m. |

## SECTION 3.
## DEFINITIONS AND INTERPRETATION

**A.    Definitions.**

As used in the Combined Plan and Disclosure Statement, capitalized terms not otherwise defined have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

3.1    ***Administrative Claim*** means a Request for Payment of an administrative expense of a kind specified in § 503(b) and entitled to priority pursuant to § 507(a)(2) or § 507(b), including: (i) the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the business of the Debtor through the Effective Date; (ii) the value of goods received by the Debtor within 20 days before the Petition Date in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business pursuant to § 503(b)(9); (iii) Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court; (iv) Professional Claims; (v) and Statutory Fees.

3.2    ***Administrative Claims Bar Date*** means the deadline set by an order of the Bankruptcy Court by which Holders of Administrative Claims, other than Administrative Claims arising in the ordinary course of business for the Debtor or Professional Claims, must assert Administrative Claims or be forever barred, which shall be (a) thirty days after the Effective Date for Administrative Claims other than Professional Claims, and (b) 45 days after the Effective Date for Professional Claims.

3.3    ***Administrative Claims Objection Bar Date*** means the deadline for filing objections to requests for Administrative Claims required to be filed, which shall be

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

90 days following the Effective Date, *provided, however,* that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court.

3.4     ***Administrative Claims Reserve*** means Cash to be set aside by the Debtor on the Effective Date in an aggregate amount estimated to fund the required amounts for payment of all unpaid Allowed Administrative Claims that will be paid after the Effective Date and all Administrative Claims that are not yet Allowed as of the Effective Date.

3.5     ***Adversary Proceeding*** shall have the meaning provided below in Section 5.5.

3.6     ***Allowed*** means for Distribution purposes, a Claim, or any portion thereof, or a particular Class of Claims: (a) that is Allowed by a Final Order of the Bankruptcy Court (or such other court as provided by the Plan or as the Liquidating Trustee or Co-Liquidating Trustee, as applicable, and the Holder of such Claim agree may adjudicate such Claim and objections thereto); (b) that is Allowed by this Plan and/or Confirmation Order; (c) is scheduled as not contingent, not unliquidated, and not disputed, and for which no superseding Proof of Claim has been timely filed; (d) for which a Proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code or deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which (i) no objection to its allowance has been filed prior to the date of entry of the Confirmation Order or is not listed on the Disputed Claims Schedule; or (ii) any filed objection to its allowance has been settled or withdrawn, or has been denied by a Final Order of the Bankruptcy Court; (e) following the Effective Date, with respect to General Unsecured Claims, as otherwise may be determined as Allowed by the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement; or (f) that is expressly allowed in a liquidated amount pursuant to this Plan.

3.7     ***Allowed DHCS Balance Claim*** means the Allowed DHCS Claim after: (i) the application of the DHCS Allowed Offset Amount, which amounts have been withheld by DHCS; and (ii) the payment of the DHCS Sales Proceeds Recovery. As set forth herein, the Allowed DHCS Balance Claim shall be subordinated to the prior payment in full of: (a) Allowed Administrative Claims; (b) Allowed Priority Claims; (c) Allowed General Unsecured Claims; and (d) the Effective Date Professional Claim Reserves.

3.8     ***Allowed DHCS Claim*** means the Allowed General Unsecured Claim of DHCS in the total amount of $112,000,000, as accounted for and adjusted as set forth in the DHCS Settlement Agreement.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

3.9     *Appeal* shall have the meaning provided below in Section 5.5.

3.10     *Assets* means all legal or equitable interests of the Estate in any and all (a) property of every kind, nature, character and description, whether real, personal, or mixed, whether tangible or intangible (including contract rights), wherever situated and by whomever possessed, and any goodwill related thereto, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action, securities, investments and any other general intangibles, and (b) the proceeds, products, offspring, rents or profits thereof, including all assets of the Debtor constituting "property of the estate" as described in § 541.

3.11     *Asset Purchase Agreement* means the agreement between the Debtor and DAP Health setting forth the terms of the DAP Sale, pursuant to § 363, and approved by the Sale Order.

3.12     *Avoidance Actions* means any Causes of Action arising under any section of chapter 5 of the Bankruptcy Code, including, without limitation, §§ 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 or under similar or related state or federal statutes and common law, including state fraudulent transfer laws.

3.13     *Ballots* means the ballots upon which the Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan, in accordance with the Plan and the Voting Instructions.

3.14     *Ballot Deadline* means the date by which all Ballots must be properly executed, completed and delivered by First Class Mail, overnight courier, or hand delivery, to Kurtzman Carson Consultants LLC, at 222 N. Pacific Coast Highway, 3rd Floor, El Segundo, CA 90245, so as to be actually received by Kurtzman Carson Consultants LLC no later than 4:00 p.m. (Pacific Time), on the date set by the Bankruptcy Court in the Conditional Approval and Procedures Order.

3.15     *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

3.16     *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of California, or any other court having jurisdiction over the Chapter 11 Case, including, to the extent the jurisdictional reference of the Bankruptcy Court has been withdrawn to the United States District Court for the Southern District of California, pursuant to section 157(d) of title 28 of the United States Code.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

3.17 **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as may be amended from time to time.

3.18 **Bar Date** means the applicable deadlines by which a Proof of Claim or Request for Payment must be, or must have been, filed in in this Chapter 11 Case, as established by either the Bar Date Order, an order of the Bankruptcy Court or this Plan, including without limitation: (a) November 21, 2022 deadline to file Proofs of Claim relating to prepetition Claims; (b) the March 13, 2023 deadline to file Proofs of Claim for Governmental Units; (c) the Administrative Claims Bar Date; (d) the Extended DHCS Bar Date; and (e) the Rejection Bar Date.

3.19 **Bar Date Order** means any order of the Bankruptcy Court establishing Bar Dates for filing Proofs of Claim or Requests for Payment in this Chapter 11 Case, as the same may be amended, modified or supplemented including, but not limited to, the order at Docket No. 16.

3.20 **Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in the State of California are required or authorized to close by law or executive order.

3.21 **Cash** means the legal tender of the United States of America and its equivalent.

3.22 **Causes of Action** means any and all present or future claims, rights, interests, legal and equitable defenses, offsets, recoupments, actions in law or equity or otherwise, choses in action, obligation, guaranty, controversy, demand, action suits, damages, judgments, third-party claims, counter-claims, cross-claims against any Person, whether known or unknown, liquidated or unliquidated, foreseen or unforeseen, existing or hereafter arising, whether based on legal or equitable relief, whether arising under the Bankruptcy Code or federal, state, common, or other law or equity, whether or not the subject of a pending litigation or proceedings on the Effective Date or thereafter of the Estate, the Debtor, or the Liquidating Trust, as applicable, including without limitation: (a) all Avoidance Actions; (b) all other claims in avoidance, recovery, and/or subordination; (c) all claims for the turnover of property to the Debtor or the Liquidating Trust; (d) all claims for compensation for damages incurred by the Debtor; (e) all claims arising in connection with *Husam E. Aldairi, et al. v. Borrego Community Health Foundation*, Case No. 37-2021-00046200-CU-BC-CTL (Cal. Sup. Ct. San Diego); (f) all claims in *Borrego Community Health Foundation v. Inland Valley, LLC, et al.*, Case No. 3:21-cv-01417-AJB-AGS (S.D. Cal.); (g) all claims in *Borrego Community Health Foundation v. Karen Hebets, et al.*, Case No. 3:22-cv-01056-AJB-AGS (S.D. Cal.); (h) all claims in

*Borrego Community Health Foundation v. Travelers Casualty and Surety Company of America*, Case No. 3:22-CV-161-L-MDD (S.D. Cal.); and (i) all other actions described in this Combined Plan and Disclosure Statement, the Confirmation Order, the Schedules, or the Plan.

3.23    ***Chapter 11 Case*** means the voluntary chapter 11 case filed by the Debtor on the Petition Date under the caption, *In re Borrego Community Health Foundation*, Case No. 22-02384, currently pending before the Bankruptcy Court.

3.24    ***CHOW*** means the change of ownership application submitted pursuant to 42 C.F.R § 489.18 by the Debtor and DAP Health for approval by CMS that will result in the transfer of the Debtor's Medicare Identification Number and Medicare Provider Agreement to DAP Health.

3.25    ***CHOW Effective Date*** means date of the approval of the CHOW by CMS.

3.26    ***Claim*** has the meaning set forth in § 101(5).

3.27    ***Claims and Balloting Agent*** means Kurtzman Carson Consultants LLC, which was appointed as the Debtor's claims, noticing, and balloting agent.

3.28    ***Claims Objection Deadline*** means the first Business Day that is the later of (a) two hundred ten (210) days after the Effective Date, or (b) such other later date as the Bankruptcy Court may establish upon a motion by the Liquidating Trustee in accordance with the Plan.

3.29    ***Claimant*** means the Holder of a Claim.

3.30    ***Class*** means a class of Claims established pursuant to Section 9 herein.

3.31    ***Class A Liquidating Trust Assets*** means, collectively: (i) the Remaining Cash; and (ii) (a) 67% of the first $1 million of Net Recovery, (b) 33% of the second $1 million of Net Recovery, and (c) for any Net Recovery thereafter, the Pro Rata share of such Net Recovery among the Holders of Class A Trust Beneficial Interests and Class B Trust Beneficial Interests.

3.32    ***Class A Trust Beneficial Interests*** means the interests in the Liquidating Trust of the Holders of Allowed Claims in Class 3 and their concomitant entitlement to Distributions to be made by the Liquidating Trust on account of Allowed General Unsecured Claims from the Class A Liquidating Trust Assets.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

3.33  **Class B Liquidating Trust Assets** means collectively: (i) the DHCS Sales Proceeds Recovery; (ii) (a) 33% of the first $1 million of Specified Litigation Recoveries, (b) 67% of the second $1 million of Specified Litigation Recoveries, and (c) for any Specified Litigation Recoveries thereafter, the Pro Rata share of such Specified Litigation Recoveries among the Holders of Class A Trust Beneficial Interests and Class B Trust Beneficial Interests; and (iii) solely to the extent any Class A Liquidating Trust Assets remain after Holders of Class A Trust Beneficial Interests are paid in full, the Class A Liquidating Trust Assets.

3.34  **Class B Trust Beneficial Interests** means the interest in the Liquidating Trust of the Holders of Allowed Claims in Class 4 and their concomitant entitlement to Distributions to be made by the Liquidating Trust on account of the Allowed DHCS Balance Claim from the Class B Liquidating Trust Assets.

3.35  **Closing** means the consummation of the transactions contemplated by the DAP Sale pursuant to the terms of the Asset Purchase Agreement.

3.36  **Closing Date** means July 31, 2023, pursuant to the Asset Purchase Agreement, as set forth in the *Notice of Occurrence of Closing of Sale to DAP Health, Inc*. [Docket No. 823].

3.37  **CMS** means the Centers for Medicare and Medicaid Services.

3.38  **Committee** means the Official Committee of Unsecured Creditors appointed on September 26, 2022, by the U.S. Trustee in this Chapter 11 Case pursuant to § 1102 [Docket No. 49].

3.39  **Conditional Approval and Procedures Order** means the order entered by this Court (i) conditionally approving the disclosures set forth in the Combined Plan and Disclosure Statement, and (ii) approving the solicitation procedures set forth in the Combined Plan and Disclosure Statement on December [_], 2023 [Docket No. _].

3.40  **Confirmation** means the entry of the Confirmation Order, subject to all conditions specified in Section 18.1 hereof having been satisfied.

3.41  **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

3.42  **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

3.43   ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to § 1129.

3.44   ***Co-Liquidating Trustee*** means such person selected pursuant to Section 15 of the Plan or any successor or replacement officer appointed under the terms of the Plan and Liquidating Trust Agreement.

3.45   ***DAP Health*** means Desert Aids Project d/b/a DAP Health.

3.46   ***DAP Sale*** means the sale of substantially all of the Debtor's assets to DAP Health pursuant to § 363.

3.47   ***Debtor*** means Borrego Community Health Foundation, in its capacity as debtor and debtor in possession in this Chapter 11 Case.

3.48   ***DHCS*** means the California Department of Health Care Service.

3.49   ***DHCS 9019 Order*** means the Order granting the Debtor's Motion to Approve Compromise Among Debtor, Official Committee of Unsecured Creditors, and California Department of Health Care Services [Docket No. 544] and approving the DHCS Settlement Agreement.

3.50   ***DHCS Allowed Offset Amount*** means the approximately $20,600,000 that DHCS is withholding from the Debtor, which amount is inclusive of approximately $6,200,000 in monies otherwise payable to the Debtor for the provision of in-house dental services to Medi-Cal beneficiaries, consistent with the definition in the DHCS Settlement Agreement.

3.51   ***DHCS Findings of Fact*** shall have the meaning provided below in Section 5.5.

3.52   ***DHCS Order*** shall have the meaning provided below in Section 5.5.

3.53   ***DHCS Sales Proceeds Recovery*** means the 40% of the Net Cash Proceeds of the DAP Sale received by DHCS on or around the Effective Date of this Plan, consistent with the definition in the DHCS Settlement Agreement.

3.54   ***DHCS Settlement Agreement*** means the settlement agreement by and between the Debtor, the Committee, and DHCS that resolved all disputes between the Debtor, the Committee, and DHCS, approved by the DHCS 9019 Order.

3.55   ***DHHS*** means the United States Department of Health and Human Services.

13

3.56    **Disbursing Agent** means the individual or individuals as may be retained by the Liquidating Trustee or Co-Liquidating Trustee, as applicable, to assist him or her distribute the Liquidating Trust Assets in accordance with this Plan and the Liquidating Trust Agreement.

3.57    **Dispute Resolution** shall have the meaning set forth below in Section 13.4.

3.58    **Disputed Claim** means a Claim that is either: (i) as of the date of entry of the Confirmation Order, the subject of a pending objection; or (ii) listed on a schedule included with the Plan Supplement (the "Disputed Claims Schedule").

3.59    **Disputed Claim Reserve** shall have the meaning set forth below in Section 12.7.

3.60    **Distribution Date** means the Initial Distribution Date or any Subsequent Distribution Date, as applicable.

3.61    **Distributions** means the distributions of Cash to be made in accordance with the Plan and the Liquidating Trust Agreement.

3.62    **Distribution Record Date** means the close of business on the Business Day immediately preceding the Effective Date.

3.63    **District Court** means the United States District Court for the Southern District of California.

3.64    **Effective Date** means a day, as determined by the Plan Proponents, that is a Business Day as soon as reasonably practicable after all conditions to the Effective Date specified in Section 18.2 hereof have been satisfied or waived.

3.65    **Effective Date Professional Claim Reserves** means cash to be set aside by the Liquidating Trustee on the Effective Date sufficient in the aggregate to fund a reserve on account of accrued and unpaid Professional Claims not yet fixed and allowed by the Bankruptcy Court prior to or on the Effective Date.

3.66    **Entity** means an entity as defined in § 101(15).

3.67    **Estate** means the estate created upon the Petition Date pursuant to § 541.

3.68    **Exculpated Party** means, individually and collectively: (a) the Debtor; (b) the Debtor's trustees, officers, and managers serving in such capacity on and after the Petition Date; (c) members of the Committee (solely in their capacities as Committee members); and (d) Bankruptcy Court-approved Estate and Committee

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

14

professionals. Notwithstanding the foregoing, none of the Prepetition Fraud Parties are an Exculpated Party.

3.69    ***Excluded Party*** means all enumerated defendants in the Causes of Action and the Prepetition Fraud Parties, as set forth in the Plan Supplement.

3.70    ***Executory Agreement*** means any executory contract or unexpired lease subject to § 365, excluding any executory contract or unexpired lease entered into after the Petition Date and approved by an order of the Bankruptcy Court.

3.71    ***Extended DHCS Bar Date*** means December 29, 2023, which is the deadline by which DHCS must file a Proof of Claim for any further General Unsecured Claims against the Debtor for Medi-Cal overpayments, consistent with the definition in the DHCS Settlement Agreement.

3.72    ***Final Decree*** means the decree contemplated under Bankruptcy Rule 3022.

3.73    ***Final Distribution*** means the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan.

3.74    ***Final Order*** means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, is in full force and effect, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek *certiorari*, or request reargument, further review, or rehearing has expired and no appeal, petition for *certiorari,* request for reargument or further review, or rehearing has been timely filed, or (b) any appeal that has been or may be taken, or any petition for *certiorari* or request for reargument or further review or rehearing that has been or may be filed, has been resolved by the highest court to which the order or judgment was appealed, from which *certiorari* was sought, or to which the request was made, and no further appeal, petition for *certiorari*, request for reargument, or further review or rehearing has been or can be taken or granted; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order; provided, further, that the Debtor or Liquidating Trustee, as applicable, reserve the right to waive any appeal period for an order or judgment to become a Final Order.

3.75    ***General Unsecured Claim*** means any Claim against the Debtor that is not a/an: (i) Administrative Claim; (ii) Professional Claim; (iii) Secured Claim; (iv) Priority Claim; (v) Allowed DHCS Claim; (vi) Allowed DHCS Balance Claim; or (vii) Statutory Fee.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

3.76    ***Governmental Unit*** has the definition set forth in § 101(27).

3.77    ***Holder*** means a holder of a Claim against the Debtor.

3.78    ***Impaired*** means, with respect to a Class of Claims, that such Class is "impaired" within the meaning of § 1124.

3.79    ***Indemnified Parties*** shall have the meaning set forth below in Section 17.6.

3.80    ***Initial Distribution Date*** means the Effective Date, or as soon as practicable thereafter when the initial Distribution of Cash shall be made to the Holders of Allowed Claims, as determined by the Debtor, the Liquidating Trustee, or the Co-Liquidating Trustee, as applicable.

3.81    ***Insurance Policy*** means any insurance policy maintained by or for the benefit of the Debtor, regardless of whether such Insurance Policy is set forth in a schedule to the Plan Supplement.

3.82    ***Liquidating Trust*** means the liquidating trust created pursuant to the Liquidating Trust Agreement.

3.83    ***Liquidating Trust Agreement*** means the *Liquidating Trust Agreement*, to be dated on or prior to the Effective Date, as may be modified from time to time, between the Debtor and the Liquidating Trustee.

3.84    ***Liquidating Trust Assets*** means all assets of the Debtor that (i) exist immediately prior to the Effective Date and are not otherwise used by the Debtor to make Distributions or create Reserves on the Effective Date to or for the benefit of Holders of Allowed Administrative Claims, Priority Non-Tax Claims, Professional Claims and Secured Claims, and (ii) are not Purchased Assets. The Liquidating Trust Assets also include, without limitation, to the extent not otherwise expressly excluded by this definition: (i) the Remaining Cash; (ii) all Causes of Action the Debtor holds or may hold against any Person or Entity as of the Effective Date (except to the extent they are the subject of any of the Releases set forth in the Plan); (iii) all Claims and rights of the Debtor under any Insurance Policies; (iv) any and all other non-Cash assets, interests, rights, claims and defenses of the Debtor or the Estate, including, without limitation, all rights under any order of the Bankruptcy Court; (v) any and all tax refunds to which the Debtor may be entitled; and (vi) any and all proceeds of any of the foregoing.

3.85    ***Liquidating Trust Beneficiaries*** means the Holders of Trust Beneficial Interests, as of any point in time.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

16

3.86 ***Liquidating Trustee*** means such person selected pursuant to Section 15 of the Plan or any successor or replacement officer appointed under the terms of the Plan and Liquidating Trust Agreement.

3.87 ***Litigation*** means the interest of the Estate, the Debtor, or the Liquidating Trust, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtor or the Liquidating Trust, as applicable, except to the extent concerning any Released Parties. Litigation includes, without limitation not otherwise stated herein, any action: (i) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to §§ 544, 545, 547, 548, 549(a), and 550; (ii) for the turnover of property to the Debtor or Liquidating Trust, as applicable; (iii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtor or the Liquidating Trust, as applicable; (iv) for compensation for damages incurred by the Debtor; and (v) equitable subordination actions against Creditors.

3.88 ***Litigation Recoveries*** means any Cash or other property received by the Debtor or the Liquidating Trust, as applicable, from all or any portion of the Litigation of any of the Causes of Action, including, but not limited to, awards of damages, attorneys' fees and expenses, interest, and punitive damages, whether recovered by way of settlement, execution on judgment, or otherwise. If any litigation of any of the Causes of Action is pursued on a contingent-fee basis, the Litigation Recovery will be net of any expenses of such litigation and any contingent fee paid to legal counsel.

3.89 ***Local Bankruptcy Rules*** means the Local Rules of the United States Bankruptcy Court of the Southern District of California, as amended from time to time.

3.90 ***Management Services Support Agreement*** means the agreement between the Debtor and DAP Health for DAP Health to provide a broad range of management support services prior to the Closing Date as set forth in the Asset Purchase Agreement.

3.91 ***Medi-Cal*** means the program administered by the State of California for medical assistance under title XIX of the Social Security Act.

3.92 ***Medicare*** means the federal health insurance program administered by CMS under title XVIII of the Social Security Act.

3.93 ***Net Cash Proceeds*** means the aggregate cash consideration paid to or retained by the Debtor at Closing of the DAP Sale net of the Sale Proceeds Holdback.

17

3.94 **Net Recovery** means the aggregate amount of any cash recovery from litigation of any of the Causes of Action realized by the Debtor or its successor-in-interest net of the fees (including attorney's fees) and expenses of such litigation.

3.95 **Nonprofit Laws** means any and all federal, state, local and other laws and governmental regulations applicable to nonprofit corporations, including without limitation, any administrative and judicial interpretations thereof (as applicable).

3.96 **Nonprofit Status** means status as a nonprofit corporation under applicable Nonprofit Laws.

3.97 **Ombudsman Parties** has the meaning set forth in Section 17.8 herein.

3.98 **Operate** (and any such variations, such as "**Operation**") means to operate, oversee, manage, administer, coordinate, control, supervise and/or direct the business and operations of any and/or all of the Purchased Assets, whether in the ordinary course of business or in accordance with the Asset Purchase Agreement, Transition Services Agreement, or otherwise, and including undertaking or pursuing strategies, activities, or actions with the intent of furthering the objectives of, and otherwise to effectuate the Plan as contemplated by the provisions hereof, including any strategies, activities or actions aimed at retaining, renewing, amending, extending or Transferring any of the Purchased Assets.

3.99 **Operating Account** means one or more deposit accounts of Cash established and/or maintained by the Liquidating Trustee as set forth in Section 15.5(c).

3.100 **Ordinary Course Professionals Order** means the order [Docket No. 400] entered by the Bankruptcy Court granting the Debtor's motion to retain and compensate professionals utilized by the Debtor in the ordinary course of business [Docket No. 271].

3.101 **Ordinary Course Professionals** means the professionals retained by the Debtor in the ordinary course of their business operations, pursuant to the Ordinary Course Professionals Order.

3.102 **Patient Care Ombudsman** means Dr. Jacob Nathan Rubin, MD, FACC, appointed by the U.S. Trustee to serve as the patient care ombudsman in the Chapter 11 Case, pursuant to § 333(a), in accordance with the order entered by the Bankruptcy Court on September 16, 2022 [Docket No. 25].

3.103 **Person** means an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

18

venture, governmental authority, Governmental Unit or other entity of whatever nature.

3.104 **Petition Date** means September 12, 2022, which is the date that the Debtor filed a voluntary chapter 11 petition.

3.105 **Plan** means this plan of liquidation proposed by the Plan Proponents, including the Plan Supplement and the exhibit hereto and thereto, as the same may be amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code and its terms.

3.106 **Plan Proponent** means each of the Debtor and the Committee.

3.107 **Plan Supplement** means a supplemental appendix to this Plan, as may be amended from time to time on or prior to the Effective Date, which will contain the following items:

a) the Schedule of Assumed Contracts;

b) the list of Retained Causes of Action;

c) the list of Excluded Parties;

d) the Disputed Claims Schedule;

e) the schedule of Insurance Policies;

f) the initial Wind-down Budget;

g)  the identity of the directors serving on the Post-Effective Date Board of Directors;

h) the identity of the initial Liquidating Trustee;

i) the identity of the initial Co-Liquidating Trustee;

j) the form of Liquidating Trust Agreement; and

k) the schedule of estimated costs of administration and any other funds required to be distributed upon the Effective Date as required by Local Rule 3020-1.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*provided that,* the Debtor shall file items (a) through (k) by December 11, 2023. The Debtor may file separately each of the foregoing documents. The Plan Supplement shall be in substance and form acceptable to each of the Plan Proponents.

3.108 ***Post-Effective Date Board of Directors*** means the three (3) member board of directors for the Debtor that will be formed prior to or on the Effective Date in accordance with Section 15.5(b) hereof.  The initial members of the Post-Effective Date Board of Directors shall be: (i) Jenna LeComte-Hinley, PhD; (ii) Frank Figueroa; and (iii) Martha Deichler.  All proposed members of the Post-Effective Date Board of Directors are members of the Debtor's existing Board of Directors.

3.109 ***Post-Effective Date Debtor*** means the Debtor, in existence as of the Effective Date, which shall exist solely for the limited duration and purposes set forth in the Plan.

3.110 ***Prepetition Fraud*** means the fraud discovered by the Debtor orchestrated by certain of the Debtor's prior management, landlords and contractors and community contract dentists that involved filing false claims for dental services provided by the contract dentists.

3.111 ***Prepetition Fraud Parties*** means the parties who are alleged to have participated in the Prepetition Fraud as set forth in the Plan Supplement.

3.112 ***Priority Claim*** means a Priority Non-Tax Claim or a Priority Tax Claim.

3.113 ***Priority Non-Tax Claim*** means any Claim entitled to priority in payment as specified in § 507(a)(4), (5), (6), (7) or (9) other than Administrative Claims and Priority Tax Claims.

3.114 ***Priority Tax Claims*** means Claims of any Governmental Unit entitled to priority under § 507(a)(8) and 507(c).

3.115 ***Professional*** means any Person (a) retained in the Chapter 11 Case by Final Order, pursuant to §§ 327, 363, and 1103 or otherwise; or (b) awarded compensation and reimbursement by the Bankruptcy Court, pursuant to § 503(b)(4).

3.116 ***Professional Claim*** means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and prior to and including the Effective Date.

3.117 ***Proof of Claim*** means a proof of claim filed in this Chapter 11 Case.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

3.118 **Provider Agreements** means (i) the Medicare Health Insurance Benefits Agreements between the Debtor and DHHS, and (ii) the Medi-Cal Provider Agreements between the Debtor and DHCS.

3.119 **Purchased Assets** means collectively all of the Assets listed in Section 1.7 of the Asset Purchase Agreement.

3.120 **Rejection Bar Date** means the last date for any Entity whose claims arise out of the Bankruptcy Court approved rejection of an executory contract or unexpired lease to file a Proof of Claim for damages related to such rejection. The Rejection Bar Date for such Claims will be, (i) with respect to executory contracts and unexpired leases rejected pursuant to a Bankruptcy Court order other than the Confirmation Order, the date provided by an order approving the rejection, and, (ii) with respect to executory contracts and unexpired leases rejected pursuant to the Confirmation Order, the date that is thirty (30) days after the Effective Date.

3.121 **Related Persons** means, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's successors and assigns, as applicable, its current and former shareholders, affiliates, subsidiaries, employees, agents, investment managers, subagents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants.

3.122 **Releases** shall have the meaning provided below in Section 17.2.

3.123 **Release Opt-Out Election Form** means a form for Holders of Claims to opt out of being a Releasing Party in connection with the Third Party Release set forth in Section 17 of the Plan.

3.124 **Released Party** means, individually and collectively: (a) the Debtor, (b) the Committee, (c) the following members of the Committee: McKesson Corporation; Greenway Health, LLC; We Klean Inc.; Mustafa Bilal, DDS, Inc.; Vista Village Family Dentistry; Vitamin D Public Relations, LLC; and Pourshirazi & Youssefi Dental Corporation; and (d) each of the Related Persons of each of the Entities in the foregoing clauses (a)-(c); provided, however, that notwithstanding anything to the contrary herein, including the definition of "Related Persons," none of the Prepetition Fraud Parties are a Released Party.

3.125 **Releasing Party** means (a) the Released Parties; and (b) all Claimants that (i) vote to accept the Plan (or are deemed to accept the Plan), and (ii) do not affirmatively opt out of Third Party Releases pursuant to a duly executed Release Opt-Out Election Form; *provided, that,* notwithstanding anything contained herein to the

contrary, in no event shall an Entity be a Releasing Party that (x) does not vote to accept or reject the Plan, (y) votes to reject the Plan, or (z) appropriately marks the Release Opt-Out Election Form to opt out of the Third Party Releases and returns such Release Opt-Out Election Form in accordance with the Plan and the Voting Instructions.

3.126 **Remaining Cash** means the actual sum of Cash that constitutes Liquidating Trust Assets after: (i) the payment of Cash necessary to satisfy all Allowed Unclassified Claims that are Allowed on or prior to the Effective Date; (ii) the funding of reserves for disputed Unclassified Claims to the extent required by the Bankruptcy Court on or prior to the Effective Date; (iii) the payment of all Allowed Claims payable on the Effective Date as set forth in Classes 1-2; and (iv) the Transfer into or maintenance of funds in the Operating Accounts for the Post-Effective Date Debtor on the Effective Date in accordance with Section 15.5(c).

3.127 **Remaining Estate Funds** means the actual sum of Cash held by the Debtor on the Effective Date.

3.128 **Request for Payment** means a request for payment of an Administrative Claim filed in the Chapter 11 Case.

3.129 **Retained Causes of Action** shall have the meaning set forth below in Section 17.7(b).

3.130 **Sale Effective Time** means midnight (Pacific Coast Time) following the Closing Date of the DAP Sale.

3.131 **Sale Order** means the Final Order approving the DAP Sale, pursuant to § 363, titled Order (A) Authorizing the Sale of Property to Desert Aids Project d/b/a DAP Health Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of an Unexpired Lease Related Thereto; and (C) Granting Related Relief [Docket No. 559].

3.132 **Sale Proceeds Holdback** means $16,000,000, which amount is the Debtor's good faith estimate of the aggregate amount of Secured Claims, Priority Claims, and Administrative Claims, which amount may be adjusted only in a manner consistent with the DHCS Settlement Agreement.

3.133 **Schedule of Assumed Contracts** means the schedule listing the Executory Agreements to be assumed pursuant to the Plan.

3.134 **Scheduled** means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

3.135 **Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor in the Chapter 11 Case pursuant to § 521 and Bankruptcy Rule 1007 [Docket Nos. 97, 98], which incorporate by reference the global notes and statement of limitations, methodology, and disclaimer regarding the Debtor's schedules and statements, as such schedules or statements have been or may be further modified, amended, or supplemented from time to time in accordance with Bankruptcy Rule 1009 or Final Orders of the Bankruptcy Court.

3.136 **Secured Claim** means a Claim that is (a) secured by a lien on any of the Assets, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, to the extent of the value of the claimant's interest in such Asset, or (b) entitled to setoff under § 553, to the extent of the amount subject to such setoff, as determined pursuant to § 506(a) or § 1129(b).

3.137 **Solicitation Package** shall have the meaning set forth below in Section 6.10.

3.138 **Specified Litigation** means the following lawsuits: (i) Husam E. Aldairi, et al. v. Borrego Community Health Foundation, Case No. 37-2021-00046200-CU-BC-CTL (Cal. Sup. Ct. San Diego); (ii) Borrego Community Health Foundation v. Inland Valley, LLC, et al., Case No. 3:21-cv-01417-AJB-AGS (S.D. Cal.); (iii) Borrego Community Health Foundation v. Karen Hebets, et al., Case No. 3:22-cv-01056-AJB-AGS (S.D. Cal.); and (iv) Borrego Community Health Foundation v. Travelers Casualty and Surety Company of America, Case No. 3:22-CV-161-L-MDD (S.D. Cal.).

3.139 **Specified Litigation Defendant** means any counterparty to the Debtor in the Specified Litigation.

3.140 **Specified Litigation Recoveries** means the Net Recovery, if any, realized by the Debtor or the Liquidating Trust from any or all of the Specified Litigation.

3.141 **Statutory Fees** means the fees payable pursuant to section 1930 of title 28 of the United States Code that were incurred in connection with the Chapter 11 Case.

3.142 **Subsequent Distribution Date** means any date after the Initial Distribution Date upon which the Liquidating Trust makes a Distribution to any Holders of Allowed Claims, as determined by the Liquidating Trustee or Co-Liquidating Trustee, as applicable.

3.143 **Tax** means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income,

23

excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation, and withholding tax.

3.144 ***Third Party Releases*** shall have the meaning provided below in Section 17.2(b).

3.145 ***Transition Period*** means the time between the Sale Effective Time and the occurrence of both (i) the CHOW Effective Date, and (ii) the dissolution of the Post-Effective Date Debtor.

3.146 ***Transition Services Agreement*** means the agreement between the Debtor and DAP Health in which the parties (or their successors-in interest, including the Post-Effective Date Debtor) agree to provide certain services and support after the Closing of the Sale pending the approval of the CHOW by CMS.

3.147 ***Transfer (and any variations such as "Transferring")*** means to, directly or indirectly, sell, convey, assign, pledge, encumber, hypothecate, gift, contribute, subject to a joint venture, partnership, or similar arrangement, abandon, convey, or transfer or otherwise dispose of, either voluntarily or involuntarily, any Asset or enter into any contract for any Asset that will effectuate the foregoing whether or not the foregoing is subject to approvals or conditions.

3.148 ***Trust Assets Accounts*** means interest-bearing bank account(s) or money-market account(s) to be established and held in trust by the Liquidating Trustee or Co-Liquidating Trustee, as applicable, on or after the Effective Date, for the purpose of holding the Liquidating Trust Assets to be distributed pursuant to the Plan and any interest, dividends, or other income earned upon the investment of the Liquidating Trust Assets.

3.149 ***Trust Beneficial Interests*** mean, collectively, (i) Class A Trust Beneficial Interests, and (ii) the Class B Trust Beneficial Interests. The Trust Beneficial Interests shall be evidenced as set forth in Section 13.3 and shall not be transferable, except to the limited extent provided in the Liquidating Trust Agreement.

3.150 ***Unclassified Claims*** means, collectively, Administrative Claims, Professional Claims, Statutory Fees, and Priority Tax Claims.

3.151 ***Unimpaired Claim*** means a Claim that is not impaired because the Plan leaves unaltered the legal, equitable, and contractual rights to which such Claim entitles the Holder of such Claim, as set forth in § 1124(1).

3.152 ***U.S. Trustee*** means the Office of the United States Trustee for the Southern District of California.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

3.153 ***Vacatur Stipulation*** shall have the meaning provided below in Section 5.5.

3.154 ***Voting Instructions*** means the instructions for voting on the Plan contained on the Ballots.

3.155 ***Wind-down Budget*** means the budget (as the same may be amended or modified from time to time as provided in the Liquidating Trust Agreement) setting forth the projected costs and expenses associated with winding down the Debtor and the Estate and for the Liquidating Trustee and Co-Liquidating Trustee to discharge their duties under the Plan and the Liquidating Trust Agreement.

## B.    Interpretation and Rules of Construction.

Unless otherwise specified, all Section or exhibit references in the Combined Plan and Disclosure Statement are to the respective Section in, or exhibit to, the Combined Plan and Disclosure Statement, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular Section, subsection, or clause contained therein. The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) the rules of construction set forth in § 102 shall apply; and (4) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

## C.    Controlling Document.

The Combined Plan and Disclosure Statement (without reference to the Plan Supplement) shall govern and control in the event of an inconsistency between the terms and provisions in the Combined Plan and Disclosure Statement (without reference to the Plan Supplement), the Plan Supplement, any other instrument or document created or executed pursuant to the Combined Plan and Disclosure Statement, or any order (other than the Confirmation Order) referenced in the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

25

Combined Plan and Disclosure Statement (or any exhibit, schedules, appendices, supplements or amendments to any of the foregoing); <u>provided</u> <u>that</u>, notwithstanding anything herein to the contrary, the Confirmation Order shall govern and control in all respects in the event of a conflict between the Confirmation Order and any provision of the Combined Plan and Disclosure Statement or the Plan Supplement.

**<u>SECTION 4.</u>**
**BACKGROUND**

### 4.1 *Overview of the Debtor.*

The Debtor is a non-profit public charity, tax-exempt under section 501(c)(3) of the Internal Revenue Code. The Debtor strives to be the community leader in improving the health of the populations in its service area, many of whom struggle with job and housing insecurity or disabilities. Its primary focus is the underserved, with an empowered workforce providing measurable quality and compassionate care to its patients. On the Petition Date, the Debtor had 24 brick and mortar sites including administrative sites, 2 pharmacies, and 6 mobile units covering a service area consisting of a 250-mile corridor on the eastern side of San Diego and Riverside Counties, CA. During 2021, the Debtor provided approximately 386,000 patient care visits. As of 2021, of Debtor's patients: (a) 94% had incomes below 200% of the FPL; (b) 71% lived in poverty; (c) approximately 75% were Medi-Cal (Medicaid) recipients or participate in other public health programs; (d) 36% were under the age 18; and (e) 93% were under the age of 65. The Debtor's services included comprehensive primary care, pediatric care, urgent care, behavioral health, dental services, specialty care, transgender health, women's health, prenatal care, veteran's health, chiropractic services, telehealth, and pharmacy. The Debtor was also an active partner in the training of medical residents, medical students, nurse practitioner students, physician assistant students, nursing students and other healthcare professionals.

As of the Petition Date, the Debtor operated as a federally qualified health center ("<u>FQHC</u>"). FQHCs are federally designated entities that receive federal grants and enhanced state payments to provide health care services to low-income and rural patients. The Debtor's health services were targeted to families with incomes below 200% of the Federal Poverty Level. As an FQHC, the Debtor strived to deliver high quality, comprehensive, compassionate primary health care to people in the surrounding area, regardless of ability to pay.

The Debtor also operated as a Federal Tort Claims Act ("<u>FTCA</u>") "deemed facility." Under section 224 of the Public Health Service Act, as amended by the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Federally Supported Health Centers Assistance Acts of 1992 and 1995, employees of eligible health centers like the Debtor may be deemed as federal employees for the purposes of liability protections under the FTCA for acts or omissions in the performance of medical, surgical, dental, or related functions resulting in personal injury, including death, and occurring within the scope of employment. Congress extended eligibility for FTCA protections to health centers like the Debtor in order to increase the availability of funds for health centers to provide primary health care services by reducing or eliminating health centers' malpractice insurance premiums.

Further information concerning the Debtor's operations is available in the *Declaration of Isaac Lee, Chief Restructuring Officer, in Support of Debtor's Emergency First Day Motions* [Docket No. 7] (the "First-Day Declaration").

### 4.2    *Events Leading to Chapter 11 Filing.*

In 2020, the Debtor's Board of Trustees (the "Board") became aware that members of the Debtor's leadership, certain landlords/contractors, and community dentists orchestrated what appears to be significant fraud for their own personal enrichment which involved filing false claims for dental services provided by contract dentists (*i.e.,* the Prepetition Fraud). In November 2020, DHCS issued a temporary suspension of payments for Medi-Cal services because of an ongoing fraud investigation into the outside, contract dental program. There were no accusations of any fraudulent acts associated with the in-house dental program or medical services. During the pendency of the suspension by DHCS, the Debtor provided thousands of services without compensation.

Following the participation in a formal administrative meet and confer process, on February 26, 2021, the Debtor entered into a settlement agreement with DHCS, pursuant to which DHCS agreed to lift the temporary suspension as it pertained to the reimbursement of Medi-Cal medical services. The temporary payment suspension remained in place through the Petition Date with respect to dental services.

The Debtor took strong corrective actions and fully cooperated with state and federal investigators. Among other steps taken by the Debtor in the fall of 2020, the Debtor (a) terminated individual executives and others suspected of involvement in the apparent fraud; (b) removed any tainted members from the Board; (c) hired new leadership and added new board members with a high level of integrity and experience; (d) agreed to the appointment of a monitor, and fully cooperated with that monitor; (e) diligently completed corrective action plans; (f) initiated lawsuits against the bad actors; (g) created a corporate compliance department and instituted a robust compliance program; and (h) engaged reputable legal, IT, accounting, and financial

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

consultants to guide it on its path to full responsibility and integrity.

The Debtor initiated an internal investigation to identify wrongdoing by former associates, which led to the filing of pending litigation against the former trustees, officers, and contract dentists. The schemes included selling useless assets to the Debtor at inflated prices, entering into one-sided agreements with the Debtor to its detriment, committing and/or covering up healthcare fraud though improper billing of dental services, entering into leases with the Debtor that were many times fair market rates and terms, paying themselves above-market salaries and benefits, and hiring friends and family members to work for the Debtor and paying them above-market salaries.

While there were no accusations of any fraudulent acts associated with the in-house dental program, as set forth above, the Medi-Cal suspension on the Debtor's in-house dental payments resulted in DHCS withholding more than $7 million otherwise payable to the Debtor.

The Debtor commenced this Chapter 11 Case as a result of the issues discussed in this Section IV with the objective to maintain the Debtor's business operations; to preserve value for the Debtor, its stakeholders, and parties in interest; and, most importantly, to protect the health and wellbeing of the patients who are being treated at the facilities operated by the Debtor and the employees of the Debtor.

## SECTION 5.
## THE CHAPTER 11 CASE

The following is a brief description of certain material events that have occurred during the Chapter 11 Case.

### 5.1 *Material First-Day Motions Filed on the Petition Date.*

a) <u>Emergency Motion to Pay the Debtor's Prepetition Priority Wages</u>

The Debtor filed an emergency motion [Docket No. 3] (the "<u>Wage Motion</u>") for authority to pay the Debtor's prepetition priority wages and related benefits in the ordinary course of business to avoid the disruption to the Debtor's business from failing to do so. The Bankruptcy Court granted the Wage Motion. [*See* Docket No. 20].

b) <u>Emergency Motion to Maintain Cash Management Systems</u>

The Debtor filed an emergency motion [Docket No. 4] (the "<u>Cash Management</u>

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Motion") for authority to maintain their cash management systems, which was imperative to avoid significant disruption to the Debtor's business operations. The Bankruptcy Court granted the Cash Management Motion. [*See* Docket. No. 28].

### c)    Emergency Motion to Provide Adequate Assurance of Payment to the Debtor's Utilities

The Debtor filed an emergency motion [Docket No. 5] (the "Utilities Motion") for an order authorizing the Debtor to provide adequate assurance of future payment to certain utility companies pursuant to § 366(c). The Bankruptcy Court granted the Utilities Motion. [*See* Docket No. 22].

### d)    Emergency Motion to Maintain Insurance Programs

The Debtor filed an emergency motion [Docket No. 6] (the "Insurance Motion") for authority to maintain insurance programs, pay premiums and other obligations in the ordinary course, and prevent insurance companies from enforcing ipso facto provisions or otherwise terminating insurance policies without first seeking relief from the automatic stay. The Bankruptcy Court granted the Insurance Motion. [*See* Docket No. 21].

### e)    Emergency Motion to Set Insider Compensation

The Debtor filed an emergency motion [Docket No. 11] (the "Motion to Set Insider Compensation") for authority to pay insiders their pre-petition salaries as they come due during the Chapter 11 Case. The Bankruptcy Court granted the Motion to Set Insider Compensation on an interim basis [*see* Docket No. 24] and later on a final basis [*see* Docket No. 90].

**5.2    *Motion for Entry of Order: Authorizing (I) Key Employee Retention Program and (II) Key Employee Incentive Program.***

On December 7, 2022, the Debtor filed a motion [Docket No. 279] (the "KERP/KEIP Motion") seeking authorization of (a) a key employee retention plan and (b) a key employee incentive plan. The United States Trustee filed an objection to the KERP/KEIP Motion [Docket No. 324] and the Bankruptcy Court later approved the KERP/KEIP Motion on February 9, 2023 [Docket No. 436].

**5.3    *Estate Professionals, the Committee, and the Patient Care Ombudsman.***

On September 27, 2022, the Bankruptcy Court entered an order approving the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

employment of Kurtzman Carson Consultants LLC, as claims and noticing agent to the Debtor. [Docket No. 54]. On November 16, 2022, the Bankruptcy Court entered an order approving the employment of Ankura Consulting Group, LLC, as financial advisor to the Debtor. [Docket No. 176]. On November 18, 2022, the Bankruptcy Court entered an order [Docket No. 198] approving the employment of Hooper, Lundy & Bookman P.C., as special healthcare regulatory counsel. On December 13, 2022, the Bankruptcy Court entered an order [Docket No. 292] approving the employment of Dentons US LLP, as counsel to the Debtor.

Additionally, on December 6, 2022, the Debtor filed a motion [Docket No. 271] to employ various ordinary course professionals. On January 24, 2023, the Bankruptcy Court entered an order [Docket No. 400] granting the motion. Since the Petition Date, the Debtor has employed, pursuant to various filings, ordinary course professionals that provide an array of important services to the Debtor in the ordinary course of business, including legal, accounting, and consulting services.

On September 26, 2022, the U.S. Trustee appointed [Docket No. 49] an Official Committee of Unsecured Creditors (the "Committee") to represent the interests of general unsecured creditors. The Committee comprises the following seven members: (i) McKesson Corporation, (ii) Greenway Health, LLC, (iii) We Klean Inc., (iv) Mustafa Bilal, DDS, Inc., (v) Vista Village Family Dentistry, (vi) Vitamin D Public Relations, LLC, and (vii) Pourshirazi & Youssefi Dental Corporation. On December 9, 2022, the Bankruptcy Court entered an order [Docket No. 287] approving the employment of Pachulski Stang Ziehl & Jones LLP, as counsel to the Committee. On November 29, 2022, the Bankruptcy Court entered an order [Docket No. 242] approving the employment of FTI Consulting, Inc., as financial advisor to the Committee.

The U.S. Trustee appointed Dr. Jacob Nathan Rubin, MD, (the "Patient Care Ombudsman") to serve as the patient care ombudsman in this Chapter 11 Case, pursuant to § 333(a). [Docket No. 25]. On October 18, 2022, the Bankruptcy Court entered orders approving the employment of the following professionals to the Patient Care Ombudsman: Levene, Neale, Bender, Yoo & Brill LLP, as bankruptcy counsel [Docket No. 100]; and Dr. Tim Stacy DNP, ACNP-BC, as consultant [Docket No. 101]. The Patient Care Ombudsman has filed three reports in the Chapter 11 Case [Docket Nos. 169, 348, 560].

### 5.4    *Administrative Matters, Reporting and Disclosures.*

The Debtor was required to address the various administrative matters attendant to the commencement of this Chapter 11 Case, which required an extensive amount

of work by the Debtor's employees and its professionals. These matters included the preparation of the *Schedules of Assets and Liabilities* and *Statements of Financial Affairs* for the Debtor's Chapter 11 Case [*see* Docket Nos. 97, 98], and preparation of the materials required by the U.S. Trustee, including, without limitation, the 7-Day Package.

The Debtor has made every effort to comply with its duties under §§ 521, 1106 and 1107 and all applicable U.S. Trustee guidelines, including the filing of the Debtor's monthly operating reports with the U.S. Trustee. [Docket Nos. 172, 312, 432, 517.] The Debtor also attended its initial interview with the U.S. Trustee and the meeting of creditors required under § 341(a).

### 5.5    *Adversary Proceeding against DHCS.*

On September 26, 2022, the Debtor filed the *Debtor's Complaint for Declaratory Judgment and Preliminary and Permanent Injunctive Relief, or in the Alternative, for Writ of Mandate Under Code of Civil Procedure* 1085 [Docket No. 1] (the "Complaint"), commencing an adversary proceeding (Adv. Pro. No. 22-90056) against DHCS (the "Adversary Proceeding"). The Complaint sought, among other things, (i) an order temporarily and permanently enjoining DHCS from suspending the Debtor from the Medi-Cal program until and unless DHCS affords the Debtor the rights to which it is entitled under federal law and under the Constitution and (ii) a Writ of Mandate under Code of Civil Procedure 1085: (1) setting aside DHCS' suspension of the Debtor's Medi-Cal payments; (2) ordering DHCS to rescind any notices issued to third-parties, including but not limited to Medi-Cal health plans, directing or otherwise compelling them to (x) block transfer patients already assigned to the Debtor, and (y) assign patients that would otherwise be assigned to the Debtor to other providers; and (3) compel the payment of approximately $6.7 million that was being withheld related to prior provision of in-house dental services to Medi-Cal beneficiaries.

On September 27, 2022, the Debtor filed its *Emergency Motion: (I) to Enforce the Automatic Stay Pursuant to 11 U.S.C. § 362; or, Alternatively, (II) for Temporary Restraining Order; Memorandum of Points and Authorities in Support Thereof; and Declarations in Support Thereof* [Adv. Dkt. No. 3] (the "Motion to Enforce") and certain other supporting declarations. The Motion to Enforce sought (A) the entry of an order enforcing the automatic stay to prevent DHCS from suspending all Medi-Cal payments and taking other related acts; or, alternatively, (2) the entry of order restraining and enjoining DHCS from causing immediate and irreparable harm to the Debtor, its estate, and thousands of patients by suspending all Medi-Cal payments and taking other related acts which would, inevitably, have caused the Debtor to close its

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

clinics and cease providing essential medical services to low income and rural patients in Southern California. DHCS objected to the Motion to Enforce and filed, among other things, *Defendant California Department of Health Care Services' Opposition to Debtor's Emergency Motion: (1) to Enforce the Automatic Stay; or (2) for Temporary Restraining Order* [Adv. Dkt. No. 30]. The Committee filed a statement in support of the Motion to Enforce [Adv. Dkt. No. 37].

On October 26, 2022, the Bankruptcy Court issued its *Findings of Fact and Conclusions of Law re: Emergency Motion to (I) Enforce the Automatic Stay or (II) Alternatively for Temporary Restraining Order* [Adv. Dkt. No. 65] (the "DHCS Findings of Fact") and *Order on Emergency Motion to (I) Enforce the Automatic Stay or (II) Alternatively for Temporary Restraining Order* [Adv. Dkt. No. 66] (the "DHCS Order") granting, in part, the Motion to Enforce on the terms and conditions set forth in the DHCS Order. DHCS filed a *Notice of Appeal and Statement of Election*. [Adv. Dkt. No. 90] with respect to the DHCS Findings of Fact and DHCS Order, thereby commencing Case No. 22-CV-01751-GPC-MSB (S.D. Cal.) (the "Appeal").

On October 26, 2022, DHCS filed its *Answer to Complaint for Declaratory Judgment and Preliminary and Permanent Injunctive Relief, or in the Alternative, for Writ of Mandate Under Code of Civil Procedure 1085* [Adv. Dkt. No. 67].

On November 4, 2022, the Debtor, the Committee and DHCS entered into a stipulation (the "Stipulation") [Adv. Dkt. No. 73], to participate in a non-binding mediation to resolve all active disputes between the parties. On November 7, 2022, the Bankruptcy Court approved the Stipulation. [Adv. Dkt. No. 74].

On February 27, 2023, the Debtor filed a *Motion to Approve Compromise Among Debtor, Official Committee of Unsecured Creditors and California Department of Health Care Services Pursuant to Federal Rule of Bankruptcy Procedure 9019* [Docket No. 510] (the "Settlement Motion"). The Bankruptcy Court approved the Settlement Motion on March 7, 2023 [Docket No. 544] (the "DHCS 9019 Order"). The DHCS 9019 Order sets forth the treatment of the DHCS Claim and provides for the allocation of the DAP Sale proceeds among DHCS and Holders of other Allowed Claims.

On September 26, 2023, the Debtor filed the *Notice of Filing of Executed Settlement Agreement Among the Debtor, the Official Committee of Unsecured Creditors, and the California Department of Health Care Services [Docket Nos. 510, 544]* [Docket No. 923]. Pursuant to the DHCS 9019 Order, the Debtor, the Committee, and DHCS prepared and executed a finalized settlement agreement.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

On October 17, 2023, the Debtor, DHCS, and the Committee jointly filed the *Stipulation Among the Debtor, the California Department of Health Care Services and the Official Committee of Unsecured Creditors to (I) Vacate the (A) Findings of Fact and Conclusions of Law re: Emergency Motion to Enforce the Automatic Stay or Alternatively for Temporary Restraining Order [Docket No. 65] and (B) Order on Emergency Motion to Enforce the Automatic Stay or Alternatively for Temporary Restraining Order [Docket No. 66]; and (II) Dismiss the Adversary Proceeding* [Adv. Docket No. 133] (the "Vacatur Stipulation") pursuant to the DHCS Settlement Agreement.  On October 18, 2023, the Bankruptcy Court entered an order approving the Vacatur Stipulation [Adv. Docket No. 134] and (a) dismissing the Adversary Proceeding with prejudice and (b) vacating the DHCS Findings of Fact and DHCS Order.

On November 6, 2023, the Debtor and DHCS filed the *Joint Stipulation to Dismiss the Appeal* [App. Docket No. 12] (the "Appeal Stipulation") pursuant to the DHCS Settlement Agreement.  On November 7, 2023, the District Court entered an order approving the Appeal Stipulation [App. Docket No. 13] and dismissing the Appeal.

### 5.6    *The Sale of Substantially All Assets.*

On November 10, 2022, the Debtor filed a motion [Docket No. 161] (the "Sale Motion") requesting entry of an order (i) authorizing the proposed sale of substantially all of the Debtor's assets, (ii) approving the form of the Asset Purchase Agreement (the "APA"), (iii) approving certain procedures governing the sale process (the "Bid Procedures"), and (iv) approving certain procedures governing assumption and rejection of Executory Agreements in connection with the sale. On December 5, 2022, the Debtor filed a supplement to the Sale Motion with revised Bid Procedures [Docket No. 276]. On December 8, 2022, the Debtor filed a second supplement to the Sale Motion, which attached a form APA [Docket No. 285].

On December 19, 2022, the Bankruptcy Court entered an order [Docket No. 321] approving the Bid Procedures. The order provided that all objections to the proposed Bid Procedures were overruled and that remaining objections concerning the proposed sale were premature.

On January 16, 2023, the Debtor filed a notice [Docket No. 389] to counterparties of Executory Agreements that may be assumed and assigned in connection with the sale. The Debtor filed a supplemental notice [Docket No. 409] on January 27, 2023. Certain counterparties to executory agreements filed objections (collectively, the "Cure Objections") to the notices concerning assumption and

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

assignment. [*See* Docket Nos. 426, 431, 440, 441, 445, 447, 455, 458, 487].

On February 2, 2023, the Debtor filed a notice [Docket No. 418] that the Debtor received Qualified Bids pursuant to the Bid Procedures and selected designated DAP Health as the stalking horse bidder. The notice further provided that the Debtor would conduct an auction on February 6, 2023.

On February 9, 2023, the Debtor filed a notice [Docket No. 438] that the Debtor had adjourned the auction and requested final highest and best bids by February 10, 2023. The next day, on February 10, 2023, the Bankruptcy Court entered an order vacating deadlines for objections to the sale [Docket No. 443].

On February 15, 2023, the Debtor filed a notice [Docket No. 465] that the Debtor had selected (i) DAP Health as the winning bidder, and (ii) Altamed Health Services Corporation as the back-up bidder.

On February 16, 2023, the Bankruptcy Court entered an order approving modified deadlines and scheduling a hearing to approve the sale. [Docket No. 476].

On February 16, 2023, the Debtor filed a notice [Docket No. 478] to counterparties to Executory Agreements designated by DAP Health for assumption and assignment in connection with the sale.

On March 1, 2023, the Bankruptcy Court held a hearing to approve the DAP Sale pursuant to the Sale Motion. At the hearing, the Bankruptcy Court considered the Cure Objections as well as certain objections (collectively, the "Sale Objections") to the DAP Sale as well as any withdrawals thereof. [*See* Docket Nos. 270, 356, 489, 491]. As set forth in further detail below, the Bankruptcy Court overruled the Sale Objections.

On March 13, 2023, the Bankruptcy Court entered an order [Docket No. 559] granting the Sale Motion and approving the DAP Sale (the "Sale Order"). In connection with the DAP Sale, the Debtor and DAP Health entered into that certain Transition Services Agreement, wherein the parties agree to provide certain services and support after the Closing of the Sale pending the approval of the CHOW by CMS. Subsequent to approval of the CHOW, the Post-Effective Date Debtor will be dissolved wherein the Debtor provides certain services to DAP Health.

On July 31, 2023, the Debtor filed the *Notice of Occurrence of Closing of Sale to DAP Health, Inc.* [Docket No. 823], which informed the Bankruptcy Court and all parties in interest of the occurrence of the Closing Date.

After the Effective Date and Closing of the Sale, the Post-Effective Date Debtor, as described herein, will need to continue to operate until the CHOW submitted, pursuant to 42 C.F.R § 489.18, by the Debtor and DAP Health is approved by CMS, which will result in the transfer of the Debtor's Medicare Identification Number and Medicare Provider Agreement to DAP Health. After the Closing and Effective Date, DAP Health and the Post-Effective Date Debtor will operate pursuant to the Transition Services Agreement.

5.7  ***Claims Bar Date and Reconciliation.***

a)  General Bar Date

On September 13, 2022, the Bankruptcy Court set a general claims bar date of November 21, 2022, and March 13, 2023, as the deadline for governmental entities to file claims [Docket No. 16]. A Notice of Bar Date was published on October 27, 2022, and October 28, 2022, in the Los Angeles Times, the San Diego Union-Tribune, The Desert Sun, The Press-Enterprise, the El Latino, the La Prensa Hispana Bilingual News Paper, the San Bernadino County Sun, and the San Diego Union-Tribune Español. [Docket No. 157].

b)  Extended DHCS Bar Date

Pursuant to the DHCS Settlement Agreement, the Extended DHCS Bar Date is set for December 29, 2023, which is the deadline by which DHCS must file a Proof of Claim for any further General Unsecured Claims against the Debtor for Medi-Cal overpayments, consistent with the definition in the DHCS Settlement Agreement.

c)  Administrative Claims Bar Date

The Plan contemplates that a deadline will be set by the Bankruptcy Court by which Holders of Administrative Claims, other than Administrative Claims arising in the ordinary course of business for the Debtor or Professional Claims, must assert Administrative Claims or be forever barred, which shall be (a) thirty (30) days after the Effective Date for Administrative Claims other than Professional Claims, and (b) sixty (60) days after the Effective Date for Professional Claims. Such requests for payment may include estimates of amounts through the Effective Date of the Plan.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

# SECTION 6.
## CONFIRMATION AND VOTING PROCEDURES

### 6.1    *Confirmation Hearing.*

On [____], the Bankruptcy Court entered the Conditional Approval and Procedures Order. The Confirmation Hearing has been scheduled for January 17, 2024, at 10:00 a.m. (prevailing Pacific Time) to consider (a) final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to § 1125 and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to § 1129. The Confirmation Hearing may be adjourned from time to time by the Debtor without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

### 6.2    *Procedures for Objections.*

Any objection to final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to § 1125 and/or confirmation of the Combined Plan and Disclosure Statement must be made in writing and filed with the Bankruptcy Court by no later than January 8, 2024, at 4:00 p.m. (prevailing Pacific Time) and be served in accordance with the Local Bankruptcy Rules of the Bankruptcy Court on the following parties: (i) counsel to the Debtor: Dentons US LLP, 601 South Figueroa Street, Suite 2500, Los Angeles, California 90017 (Attn: Samuel R. Maizel (samuel.maizel@dentons.com) and Tania M. Moyron (tania.moyron@dentons.com)); (ii) financial advisor to the Debtor: Ankura, 2021 McKinney Avenue, Suite 340, Dallas, Texas 75201 (Attn: Charles Pease (charles.pease@ankura.com)); (iii) the Office of the United States Trustee: 880 Front Street, Room 3230, San Diego, California 92101 (Attn: Haeji Hong (haeji.hong@usdoj.gov)); (iv) counsel to the Committee: Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067 (Attn: Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com)); and (v) financial advisor to the Committee: FTI, 350 South Grand Avenue, Suite 3000, Los Angeles, California 90071 (Attn: Cliff Zucker (cliff.zucker@fticonsulting.com) and Narendra Ganti (narendra.ganti@fticonsulting.com)). Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

### 6.3    *Requirements for Confirmation.*

The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of § 1129. Among the

requirements for confirmation in the Chapter 11 Case is that the Combined Plan and Disclosure Statement be: (i) accepted by all Impaired Classes of Claims or, if rejected by an Impaired Class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against, and is "fair and equitable" with respect to, such Class; and (ii) feasible. The Bankruptcy Court must also find that:

a.  the Combined Plan and Disclosure Statement has classified Claims in a permissible manner;

b.  the Combined Plan and Disclosure Statement complies with the requirements of Chapter 11 of the Bankruptcy Code; and

c.  the Combined Plan and Disclosure Statement has been proposed in good faith.

The Plan Proponents believe that the Combined Plan and Disclosure Statement complies, or will comply, with all such requirements.

### 6.4 *Classification of Claims.*

Section 1123 provides that a plan must classify the claims of a debtor's creditors. In accordance with § 1123, the Combined Plan and Disclosure Statement divides Claims into Classes and sets forth the treatment for each Class (other than those claims which pursuant to § 1123(a)(1) need not be and have not been classified).

Section 1122 requires the Combined Plan and Disclosure Statement to place a Claim in a particular Class only if such Claim is substantially similar to the other Claims in such class. The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with Priority Non-Tax Claims, various Secured Claims, General Unsecured Claims, and an Allowed DHCS Claim. The Plan Proponents believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims in the same Class and, thus, meet the requirements of § 1122.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim of a particular class unless the claim holder agrees to a less favorable treatment of its claim. The Plan Proponents believe that the Combined Plan and Disclosure Statement complies with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Combined Plan and Disclosure Statement if the holders of Claims affected do not consent to the treatment afforded them under the Combined Plan and Disclosure Statement.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

A Claim is placed in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Combined Plan and Disclosure Statement only to the extent that such Claim is an Allowed Claim in that Class, and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The Plan Proponents believe that the Combined Plan and Disclosure Statement has classified all Claims in compliance with the provisions of § 1122 and applicable case law. It is possible that a holder of a Claim may challenge the Plan Proponents' classification of Claims and that the Bankruptcy Court may find that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed. If such a situation develops, the Plan Proponents intend, in accordance with the terms of the Combined Plan and Disclosure Statement, to make such permissible modifications to the Combined Plan and Disclosure Statement as may be necessary to permit its confirmation. Any such reclassification could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Combined Plan and Disclosure Statement.

**EXCEPT AS SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE COMBINED PLAN AND DISCLOSURE STATEMENT'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Thus, the actual recovery ultimately received by a particular holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein or the actual Distribution received by creditors. The projected recoveries are based on information available to the Debtor as of the date hereof and reflect the Debtor's view as of the date hereof only.

The classification of Claims and the nature of distributions to members of each Class are summarized herein. The Plan Proponents believe that the consideration, if any, provided under the Combined Plan and Disclosure Statement to holders of Allowed Claims reflects an appropriate resolution of their Allowed Claims taking into account the differing nature and priority of such Claims. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Combined Plan and Disclosure Statement. Many of these tests are designed to protect the interests of holders of Claims who are not entitled to vote on the Combined Plan and Disclosure Statement, or do not vote to accept the Combined Plan and Disclosure Statement, but who will be bound by the provisions of the Combined Plan and Disclosure Statement if it is confirmed by the Bankruptcy Court.

### 6.5 *Impaired Claims.*

Pursuant to § 1126, only the Holders of Claims in Classes Impaired by the Combined Plan and Disclosure Statement and receiving a payment or Distribution under the Combined Plan and Disclosure Statement may vote to accept or reject the Combined Plan and Disclosure Statement. Pursuant to § 1124, a Class of Claims may be Impaired if the Combined Plan and Disclosure Statement alters the legal, equitable, or contractual rights of the holders of such Claims treated in such Class. The Holders of Claims not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement. The Holders of Claims in any Class which will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote. Finally, the Holders of Claims whose Claims are not classified under the Combined Plan and Disclosure Statement are not entitled to vote on the Combined Plan and Disclosure Statement.

Under the Combined Plan and Disclosure Statement, Holders of Claims in the Voting Classes – Class 3 (General Unsecured Claims) and Class 4 (Allowed DHCS Claim) – are Impaired and are entitled to vote to accept or reject the Combined Plan and Disclosure Statement. Holders of Claims in Class 1 (Priority Non-Tax Claims) and Class 2 (Secured Claims) are Unimpaired and, therefore, not entitled to vote on

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

the Combined Plan and Disclosure Statement and are deemed to accept the Combined Plan and Disclosure Statement.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN THE VOTING CLASSES.**

### 6.6 *Confirmation Without Necessary Acceptances; Cramdown.*

In the event that any impaired class of claims does not accept a plan, a debtor nevertheless may move for confirmation of the plan. A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, determined without including any acceptance of the plan by any insider holding a claim in that class, and the plan meets the "cramdown" requirements set forth in § 1129(b). Section 1129(b) requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims. Here, the Plan Proponents believe that such requirements are satisfied, as no holder of a Claim or Interest junior to those in the Impaired Classes is entitled to receive any property under the Combined Plan and Disclosure Statement.

The concept of "unfair discrimination" is not defined in the Bankruptcy Code, but case law suggests it exists when a difference in a plan's treatment of two classes of equal priority results in a materially lower percentage recovery for the non-accepting class. The Plan Proponents do not believe that the Plan unfairly discriminates against any Class of Claims.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors, and equity holders, as follows:

a. ***Secured Creditors.*** Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

b. ***Unsecured Creditors.*** Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims that are junior to the claims of the dissenting class will not receive any property under the plan.

As discussed above, the Plan Proponents believe that the distributions provided under the Combined Plan and Disclosure Statement satisfy the absolute priority rule, where required.

### 6.7    *Feasibility.*

Section 1129(a)(11) requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Combined Plan and Disclosure Statement). Based on the Debtor's analysis and subject to the financing contingency described below, the Liquidating Trustee and Co-Liquidating Trustee will have sufficient assets to accomplish their tasks under the Combined Plan and Disclosure Statement. Therefore, the Plan Proponents believe that the liquidation pursuant to the Combined Plan and Disclosure Statement will meet the feasibility requirements of the Bankruptcy Code.

### 6.8    *Best Interests Test and Liquidation Analysis.*

Even if a plan is accepted by the holders of each class of claims, the Bankruptcy Code requires the Bankruptcy Court to determine that such plan is in the best interests of all holders of claims that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in § 1129(a)(7), requires a court to find either that all members of an impaired class of claims have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 case was converted to a case under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses, and administrative claims associated with a chapter 7 liquidation, must be compared with

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims in such impaired class.

The Debtor, with the assistance of its advisors, has prepared a liquidation analysis that summarizes the Debtor's best estimate of recoveries by holders of Claims if the Chapter 11 Case was converted to a case under chapter 7 (the "Liquidation Analysis"), which is attached hereto as **Exhibit A**.

Based upon the Debtor's current projections, Holders of Allowed Administrative Claims, Allowed Secured Claims, Allowed General Unsecured Claims, and a portion of the Allowed DHCS Claim, will be paid in full on the Effective Date or as soon as practicably thereafter. *See* **Exhibit A** (Liquidation Analysis Supplement) attached hereto.

Based upon **Exhibit A** (Liquidation Analysis Supplement) attached hereto, the Plan Proponents believe that creditors will receive at least as much or more under the Plan than they would receive if the Chapter 11 Case was converted to a chapter 7 case.

### 6.9 *Eligibility to Vote on the Combined Plan and Disclosure Statement.*

Unless otherwise ordered by the Bankruptcy Court, only Holders of Allowed Claims in the Voting Classes may vote on the Combined Plan and Disclosure Statement. Further, subject to the tabulation procedures that were approved by the Conditional Approval and Procedures Order, in order to vote on the Combined Plan and Disclosure Statement, Creditors must hold an Allowed Claim in the Voting Classes, or be the Holder of a Claim that has been temporarily Allowed for voting purposes only pursuant to the approved tabulation procedures or under Bankruptcy Rule 3018(a).

### 6.10 *Solicitation Package / Release Opt-Out Election Form.*

All Holders of Allowed Claims in the Voting Classes will receive a solicitation package (the "Solicitation Package"). The Solicitation Packages will contain: (i) the Combined Plan and Disclosure Statement; (ii) the Conditional Approval and Procedures Order; (iii) notice of the Confirmation Hearing; (iv) a form of Ballot, including Voting Instructions and a pre-addressed return envelope; (v) a Release Opt-Out Election Form; and (vi) such other materials as the Bankruptcy Court may direct or approve or that the Debtor deems appropriate.

All other Creditors and parties in interest not entitled to vote on the Combined Plan and Disclosure Statement will receive only a copy of the notice of Confirmation Hearing and a Release Opt-Out Election Form.

Copies of the Combined Plan and Disclosure Statement shall be available on the Claims and Balloting Agent's website at https://www.kccllc.net/BorregoHealth. Any creditor or party-in-interest can request a hard copy of the Combined Plan and Disclosure Statement be sent to them by regular mail by calling the Claims and Balloting Agent at (866) 967-0670 (U.S. & Canada) during regular business hours.

**IN ADDITION TO OTHER PARTIES WHO WILL BE CONSIDERED RELEASING PARTIES, ANY HOLDER OF A CLAIM THAT DOES NOT AFFIRMATIVELY OPT-OUT OF THE THIRD PARTY RELEASE CONTAINED IN SECTION 17 HEREOF BY TIMELY AND PROPERLY COMPLETING AND RETURNING A RELEASE OPT-OUT ELECTION FORM WILL BE CONSIDERED A RELEASING PARTY IN RELATION TO THE THIRD PARTY RELEASE UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

6.11    ***Voting Procedures, Voting Deadline, and Deadline to Submit the Release Opt-Out Election.***

The Voting Record Date for determining which Holders of Claims in the Voting Classes may vote on the Combined Plan and Disclosure Statement is November 28, 2023.

In order for a Creditor's Ballot to count, the Creditor must (1) complete, date, and properly execute the Ballot and (2) properly deliver the Ballot to the Claims and Balloting Agent by either (a) mailing the Ballot via First Class Mail to the Claims and Balloting Agent at the following address: Borrego Health Ballot Processing c/o Kurtzman Carson Consultants LLC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) overnight delivery; (c) hand delivery; or (d) submitting the Ballot by electronically uploading the Ballot on the Claims and Balloting Agent's online balloting platform at https://www.kccllc.net/BorregoHealth. Instructions for casting a Ballot will be available on the Claims and Balloting Agent's website.

Ballots must be submitted electronically, or the Claims and Balloting Agent must actually receive physical, original Ballots by mail, overnight, or hand delivery, on or before the Voting Deadline, which is **January 8, 2024, at 4:00 p.m. (prevailing Pacific Time)**. Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, Creditors may not change their vote once a Ballot is submitted electronically or the Claims and Balloting Agent receives their original

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

paper Ballot. Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any Ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection, or abstention, as the case may be, of the Combined Plan and Disclosure Statement.

In order to be effective, Release Opt-Out Election Form for Holders of Claims entitled to opt out of being a Releasing Party in connection with the Third Party Release contained in Section 17.2(b) must be received by the Claims and Balloting Agent by the Voting Deadline, which is **January 8, 2024, at 4:00 p.m. (prevailing Pacific Time)**. Each Release Opt-Out Election Form must be properly delivered to the Claims and Balloting Agent by either (a) mailing via First Class mail the Release Opt-Out Election Form to the Claims and Balloting Agent at the following address: Borrego Health Ballot Processing c/o Kurtzman Carson Consultants LLC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) overnight courier; (c) hand delivery; or (d) uploading the Release Opt-Out Election Form on the Claims and Balloting Agent's online opt-out portal at https://www.kccllc.net/BorregoHealth.

**IF YOU ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL OR UPLOAD THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT OR PROCEDURES FOR VOTING ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, PLEASE CONTACT THE CLAIMS AND BALLOTING AGENT BY (I) TELEPHONE AT (888) 647-174 (U.S./CANADA) OR (II) EMAIL AT BorregoHealthinfo@kccllc.com. THE CLAIMS AND BALLOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

6.12    *Acceptance of the Combined Plan and Disclosure Statement.*

If you are a Holder of a Claim in one of the Voting Classes, your acceptance of the Combined Plan and Disclosure Statement is important. In order for the Combined Plan and Disclosure Statement to be accepted by an Impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement. At least one Impaired Class of Creditors, excluding the votes

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

of insiders, must actually vote to accept the Combined Plan and Disclosure Statement. The Debtor urges that you vote to accept the Combined Plan and Disclosure Statement.

### SECTION 7.
### CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER DISCLOSURES

**7.1**   ***Certain Risk Factors to be Considered.***

THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION.

**(a)**   ***The Combined Plan and Disclosure Statement May Not Be Accepted.***

The Plan Proponents can make no assurances that the requisite acceptances of the Combined Plan and Disclosure Statement will be received, and the Debtor may need to obtain acceptances of an alternative plan for the Debtor, or otherwise, that may not have the support of the creditors and/or may be required to liquidate the Estate under chapter 7. There can be no assurance that the terms of any alternative arrangement or plan would be similar to or as favorable to creditors as those proposed in the Combined Plan and Disclosure Statement.

**(b)**   ***The Combined Plan and Disclosure Statement May Not Be Confirmed.***

Even if the Plan Proponents receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Plan and Disclosure Statement. Even if

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

the Bankruptcy Court determined that the Combined Plan and Disclosure Statement and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Combined Plan and Disclosure Statement if it finds that any of the statutory requirements for confirmation had not been met. As is described in greater detail in Section 6.3, § 1129 sets forth the requirements for confirmation of a chapter 11 plan. While, as more fully set forth Section 6, the Plan Proponents believe that the Combined Plan and Disclosure Statement complies with or will comply with all such requirements, there can be no guarantee that the Bankruptcy Court will agree.

Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Combined Plan and Disclosure Statement is not confirmed, it is unclear what distributions holders of Claims ultimately would receive with respect to their Claims in a subsequent plan of liquidation. If an alternative could not be agreed to, it is possible that the Debtor would have to liquidate its remaining assets in chapter 7, in which case it is likely that the Holders of Allowed Claims would receive substantially less favorable treatment than they would receive under the Combined Plan and Disclosure Statement.

**(c)** ***Distributions to Holders of Allowed Claims Under the Combined Plan and Disclosure Statement May be Inconsistent with Projections.***

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in the Combined Plan and Disclosure Statement are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtor's estimates. If the total amount of Allowed Claims in a Class is higher than the Debtor's estimates, or the funds available for distribution to such Class are lower than the Debtor's estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

**(d)** ***Objections to Classification of Claims.***

Section 1122 provides that a plan may place a claim in a particular class only if such claim is substantially similar to the other claims in such class. As is described in greater detail in Section 6.4, the Plan Proponents believe that the classification of Claims under the Combined Plan and Disclosure Statement complies with the requirements set forth in the Bankruptcy Code. Nevertheless, there can be no assurance the Bankruptcy Court will reach the same conclusion.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

To the extent that the Bankruptcy Court finds that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed, the Plan Proponents would seek to (i) modify the Combined Plan and Disclosure Statement to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Combined Plan and Disclosure Statement, by changing the composition of such Class and the vote required for approval of the Combined Plan and Disclosure Statement. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Combined Plan and Disclosure Statement based upon such reclassification. Except to the extent that modification of classification in the Combined Plan and Disclosure Statement requires re-solicitation, the Plan Proponents will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Combined Plan and Disclosure Statement by any Holder of Claims pursuant to this solicitation will constitute a consent to the Combined Plan and Disclosure Statement's treatment of such Holder, regardless of the Class as to which such holder is ultimately deemed to be a member. The Plan Proponents believe that under the Bankruptcy Rules, they would be required to resolicit votes for or against the Combined Plan and Disclosure Statement only when a modification adversely affects the treatment of the Claim of any Holder.

The Bankruptcy Code also requires that the Combined Plan and Disclosure Statement provide the same treatment for each Claim of a particular Class unless the Holder of a particular Claim agrees to a less favorable treatment of its Claim. The Plan Proponents believe that the Combined Plan and Disclosure Statement complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Combined Plan and Disclosure Statement does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Combined Plan and Disclosure Statement. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Combined Plan and Disclosure Statement and could increase the risk that the Combined Plan and Disclosure Statement will not be consummated.

**(e)** **_Failure to Consummate the Combined Plan and Disclosure Statement._**

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Although the Plan Proponents believe that the Effective Date will occur and may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

### (f)   The Releases May Not Be Approved.

There can be no assurance that the releases, as provided in Section 17, will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan that differs from the Combined Plan and Disclosure Statement or the Plan not being confirmed.

### (g)   Reductions to Estimated Creditor Recoveries.

The Allowed amount of Claims in any Class could be greater than projected, which, in turn, could cause the amount of Distributions to creditors in such Class to be reduced substantially. The amount of cash realized from the monetization of the Debtor's remaining assets could be less than anticipated, which could cause the amount of Distributions to creditors to be reduced substantially.

### 7.2   Certain U.S. Federal Income Tax Consequences.

The following discussion is a summary of certain material U.S. federal income tax consequences of the Combined Plan and Disclosure Statement to the Debtor and to certain Holders (which solely for purposes of this discussion means the beneficial owner for U.S. federal income tax purposes) of Claims. The following summary does not address the U.S. federal income tax consequences to holders of Claims not entitled to vote on the Combined Plan and Disclosure Statement. This summary is based on the Internal Revenue Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions, and published administrative rules and pronouncements of the IRS, all as in effect on the date hereof and all of which are subject to change or differing interpretations, possibly with retroactive effect. No legal opinions have been requested or obtained from counsel with respect to any of the tax aspects of the Combined Plan and Disclosure Statement and no rulings have been or will be requested from the IRS with respect to the any of the issues discussed below. The discussion below is not binding upon the IRS or the courts. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtor or to certain holders of Claims in light of their individual circumstances, nor does the discussion deal with tax issues with respect to holders of Claims subject to special treatment under the U.S. federal income

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

tax laws (including, for example, insurance companies; banks or other financial institutions; brokers, dealers, or traders in securities; real estate investment trusts; governmental authorities or agencies; tax-exempt organizations; retirement plans; individual retirement or other tax-deferred accounts; certain expatriates or former long-term residents of the United States; small business investment companies; regulated investment companies; S corporations, partnerships, or other pass-through entities for U.S. federal income tax purposes and their owners; persons whose functional currency is not the U.S. dollar; persons who use a mark-to-market method of accounting; persons required to report income on an applicable financial statement; persons holding Claims as part of a straddle, hedge, constructive sale, conversion transaction, or other integrated transaction; and persons who are not U.S. holders (as defined below)). Furthermore, this discussion assumes that a holder of a Claim holds such claim as a "capital asset" within the meaning of section 1221 of the Internal Revenue Code (generally property held for investment). This discussion does not address any U.S. federal non-income (including estate or gift), state, local, or foreign taxation, alternative minimum tax, or the Medicare tax on certain net investment income.

If a partnership (or other entity or arrangement classified as a partnership for U.S. federal income tax purposes) is a holder of Claims, the U.S. federal income tax treatment of a partner in the partnership will generally depend on the status of the partner and the activities of the partnership. A holder of a Claim that is a partnership and the partners in such partnership should consult their tax advisors with regard to the U.S. federal income tax consequences of the Combined Plan and Disclosure Statement.

**THE FOLLOWING SUMMARY IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

### (a)  *Tax Consequences for U.S. Holders of Certain Claims.*

Generally, a Holder of a Claim should in most, but not all, circumstances recognize gain or loss equal to the difference between the "amount realized" by such Holder in exchange for its Claim and such Holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a Holder's

Claim. The tax basis of a Holder in a Claim will generally be equal to the Holder's cost therefor. To the extent applicable, the character of any recognized gain or loss (*e.g.*, ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the Holder, the nature of the Claim in the Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period of the Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the Holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the Holder has held such Claim for more than one year.

A creditor who receives Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss as a result of surrendering its Claim. A creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the Holders of certain Claims, including General Unsecured Claims in Class 3, will likely receive only a partial distribution of their Allowed Claims. Whether the applicable Holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the Holder and its Claims. Creditors should consult their own tax advisors.

### (b) *Tax Consequences in Relation to Liquidating Trust.*

As of the Effective Date, the Liquidating Trust will be established for the benefit of the holders of certain Allowed Claims. The tax consequences of the Plan in relation to the Liquidating Trust and the Beneficiaries thereof are subject to uncertainties due to the complexity of the Plan and the lack of interpretative authority regarding certain changes in the tax law.

Allocations of taxable income of the Liquidating Trust (other than taxable income allocable to the Liquidating Trust's claims reserves) among Holders of Claims will be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its assets (valued at their tax book value) to the holders of the beneficial interests in the Liquidating Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining trust assets.

The tax book value of the trust assets for this purpose will equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements. Uncertainties with regard to federal income tax consequences of the Plan may arise due to the inherent nature of estimates of value that will impact tax liability determinations.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an IRS private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee may (a) elect to treat any trust assets allocable to, or retained on account of, Disputed Claims (the "Trust Claims Reserve") as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. Accordingly, any Trust Claims Reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the trust assets in such reserves, and all distributions from such reserves will be treated as received by holders in respect of their Claims as if distributed by the Debtor. All parties (including, without limitation, the Liquidating Trustee and the holders of beneficial interests in the Liquidating Trust) will be required to report for tax purposes consistently with the foregoing.

The Liquidating Trust is intended to qualify as a liquidating trust for federal income tax purposes. In general, a liquidating trust is not a separate taxable entity but rather is treated for federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS, in Revenue Procedure 94-45, 1994.28 I.R.B. 124, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Liquidating Trust has been structured with the intention of complying with such general criteria. Pursuant to the Plan and Liquidating Trust Agreement, and in conformity with Revenue Procedure 94-45, *supra*, all parties (including the Liquidating Trustee and the holders of beneficial interests in the Liquidating Trust) are required to treat for federal income tax purposes, the Liquidating Trust as a grantor trust of which the holders of the applicable Allowed

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Claims are the owners and grantors. While the following discussion assumes that the Liquidating Trust would be so treated for federal income tax purposes, no ruling has been requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust. If the IRS were to challenge successfully such classification, the federal income tax consequences to the Liquidating Trust and the Beneficiaries thereof could materially vary from those discussed herein.

In general, each creditor who is a Liquidating Trust Beneficiary will recognize gain or loss in an amount equal to the difference between (i) the "amount realized" by such Liquidating Trust Beneficiary in satisfaction of its applicable Allowed Claim, and (ii) such Liquidating Trust Beneficiary's adjusted tax basis in such Claim. The "amount realized" by a Liquidating Trust Beneficiary will equal the sum of cash and the aggregate fair market value of the property received by such party pursuant to the Plan (such as a Liquidating Trust Beneficiary's undivided beneficial interest in the assets transferred to the Liquidating Trust). Where gain or loss is recognized by a Liquidating Trust Beneficiary in respect of its Allowed Claim, the character of such gain or loss (i.e., long-term or short-term capital, or ordinary income) will be determined by a number of factors including the tax status of the party, whether the Claim constituted a capital asset in the hands of the party and how long it had been held, whether the Claim was originally issued at a discount or acquired at a market discount and whether and to what extent the party had previously claimed a bad debt deduction in respect of the Claim.

After the Effective Date, any amount that a creditor receives as a Distribution from the Liquidating Trust in respect of its beneficial interest in the Liquidating Trust should not be included, for federal income tax purposes, in the party's amount realized in respect of its Allowed Claim, but should be separately treated as a distribution received in respect of such party's beneficial interest in the Liquidating Trust.

In general, a Liquidating Trust Beneficiary's aggregate tax basis in its undivided beneficial interest in the assets transferred to the Liquidating Trust will equal the fair market value of such undivided beneficial interest as of the Effective Date and the Liquidating Trust Beneficiary's holding period in such assets will begin the day following the Effective Date. Distributions to any Liquidating Trust Beneficiary will be allocated first to the original principal portion of the Liquidating Trust Beneficiary's Allowed Claim as determined for federal tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim. However, there is no assurance that the IRS will respect such allocation for federal income tax purposes.

52

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

For all federal income tax purposes, all parties (including the Liquidating Trustee and the holders of beneficial interests in the Liquidating Trust) will treat the transfer of assets to the Liquidating Trust, in accordance with the terms of the Plan and Liquidating Trust Agreement, as a transfer of those assets directly to the holders of the applicable Allowed Claims followed by the transfer of such assets by such Holders to the Liquidating Trust. Consistent therewith, all parties will treat the Liquidating Trust as a grantor trust of which such holders are to be owners and grantors. Thus, such holders (and any subsequent holders of interests in the Liquidating Trust) will be treated as the direct owners of an undivided beneficial interest in the assets of the Liquidating Trust for all federal income tax purposes. Accordingly, each holder of a beneficial interest in the Liquidating Trust will be required to report on its federal income tax return(s) the holder's allocable share of all income, gain, loss, deduction, or credit recognized or incurred by the Liquidating Trust.

The Liquidating Trust's taxable income will be allocated to the holders of beneficial interests in the Liquidating Trust in accordance with each such holder's pro rata share. The character of items of income, deduction and credit to any holder and the ability of such holder to benefit from any deductions or losses may depend on the particular situation of such holder.

The federal income tax reporting obligation of a holder of a beneficial interest in the Liquidating Trust is not dependent upon the Liquidating Trust distributing any cash or other proceeds. Therefore, a holder of a beneficial interest in the Liquidating Trust may incur a federal income tax liability regardless of the fact that the Liquidating Trust has not made, or will not make, any concurrent or subsequent distributions to the holder. If a holder incurs a federal tax liability but does not receive distributions commensurate with the taxable income allocated to it in respect of its beneficial interests in the Liquidating Trust it holds, the holder may be allowed a subsequent or offsetting loss.

The Liquidating Trustee will file with the IRS returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The Liquidating Trust will also send to each holder of a beneficial interest in the Liquidating Trust a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct the holder to report such items on its federal income tax return.

Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, could also change the federal income tax consequences of the Plan and the transactions contemplated thereunder.

*(c)*   **_Information Reporting and Withholding._**

In connection with the Combined Plan and Disclosure Statement, the Debtor will comply with all applicable withholding and information reporting requirements imposed by U.S. federal, state, local, and foreign taxing authorities, and all Distributions under the Combined Plan and Disclosure Statement will be subject to those withholding and information reporting requirements. Holders of Claims may be required to provide certain tax information as a condition to receiving Distributions pursuant to the Combined Plan and Disclosure Statement.

In general, information reporting requirements may apply to Distributions pursuant to the Combined Plan and Disclosure Statement. Additionally, under the backup withholding rules, a holder may be subject to backup withholding with respect to Distributions made pursuant to the Combined Plan and Disclosure Statement, unless a U.S. holder provides the applicable withholding agent with a taxpayer identification number, certified under penalties of perjury, as well as certain other information, or otherwise establish an exemption from backup withholding. Backup withholding is not an additional tax. Any amounts withheld under the backup withholding rules will be allowed as a credit against a U.S. holder's U.S. federal income tax liability, if any, hand may entitle a U.S. holder to a refund, provided the required information is timely furnished to the IRS.

In addition, from an information reporting perspective, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders of Claims are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Combined Plan and Disclosure Statement would be subject to these regulations and require disclosure on the holder's tax returns.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES. EACH HOLDER OF A CLAIM IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

### 7.3   *Releases, Exculpations, and Injunctions.*

This Combined Plan and Disclosure Statement contains certain releases, exculpations, and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan will affect any Claim, interest, right, or action with regard to the Debtor and certain third parties.

**THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BIND ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW.**

### 7.4   *Alternatives to the Combined Plan and Disclosure Statement.*

If the requisite acceptances are not received or the Combined Plan and Disclosure Statement is not confirmed and consummated, the theoretical alternatives to the Combined Plan and Disclosure Statement would be (a) formulation of an alternative chapter 11 plan, (b) conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) dismissal of the Chapter 11 Case. As discussed below, the Plan Proponents do not believe that any of these alternatives, even if viable, would afford holders of Claims a greater recovery than what is provided by the Combined Plan and Disclosure Statement.

If the Combined Plan and Disclosure Statement is not confirmed, then the Debtor or any other party in interest could attempt to formulate a different plan. The additional costs, including, among other amounts, additional professional fees, all of which would constitute Administrative Claims (subject to allowance thereof), however, may be so significant that one or more parties in interest could request that the Chapter 11 Case be converted to chapter 7. At this time, the Plan Proponents do not believe that there are viable alternative plans available to the Debtor.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate and distribute the Debtor's remaining assets in accordance with the priorities established by the Bankruptcy Code. As discussed above and indicated in the Liquidation Analysis, the Plan Proponents believe that the Combined Plan and Disclosure Statement provides a better outcome for holders of Claims than a chapter 7 liquidation would provide.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Case also could be dismissed. Among other effects, dismissal would result in the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

termination of the automatic stay, thus permitting creditors to assert state-law rights and remedies against the Debtor and its assets, likely to the detriment of other creditors. While it is impossible to predict precisely what would happen in the event the Chapter 11 Case is dismissed, it is unlikely that dismissal would result in a ratable distribution of the Debtor's assets among creditors as provided in the Combined Plan and Disclosure Statement. Thus, the vast majority of creditors could expect to receive less in the dismissal scenario than they would receive under the Combined Plan and Disclosure Statement.

## SECTION 8.
## UNCLASSIFIED CLAIMS

In accordance with § 1123(a)(1), the following Claims are not classified and are excluded from the Classes set forth in Section 9 hereof and shall receive the treatment discussed below:

### 8.1    *Administrative Claims.*

Except to the extent that the Debtor (or the Liquidating Trust) and the Holder of an Allowed Administrative Claim agree to less favorable treatment, a Holder of an Allowed Administrative Claim (other than a Professional Claim, which shall be subject to Section 8.2 or Statutory Fees, which shall be subject to Section 8.3) shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim either (a) on the Effective Date, (b) if the Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of their businesses after the Petition Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim, (c) on such other date as agreed between the Debtor (or the Post-Effective Date Debtor) and such Holder of an Allowed Administrative Claim, or (d) to the extent the Allowed Administrative Claim had not yet been Allowed on the Effective Date, from the Administrative Claims Reserve pursuant to Section 20.2 hereof.

Holders of Administrative Claims (including, without limitation, Professionals requesting compensation or reimbursement of such expenses pursuant to §§ 327, 328, 330, 331, 503(b), or 1103) that do not file such requests by the applicable deadline provided for herein may be subject to objection for untimeliness and may be prohibited by order of the Bankruptcy Court from asserting such claims against the Debtor, the Post-Effective Date Debtor, the Estate, the Liquidating Trust, or their

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

successors or assigns, or their property. Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

### 8.2 *Professional Claims.*

All Professionals seeking an award by the Bankruptcy Court of a Professional Claim (other than the Ordinary Course Professionals) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, and shall receive, in full satisfaction of such Claim, Cash in an amount equal to 100% of such Allowed Professional Claim promptly after entry of an order of the Bankruptcy Court allowing such Claim or upon such other terms as may be mutually agreed-upon between the Holder of such Professional Claim and the Debtor, which Cash shall be paid out of the Effective Date Professional Claim Reserve. Objections to any final applications covering Professional Claims must be filed and served on the Post-Effective Date Debtor, the Liquidating Trustee, and the requesting Professional no later than ninety (90) days after the Effective Date (unless otherwise agreed by the requesting Professional).

On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee shall establish the Effective Date Professional Claim Reserves based upon estimates of anticipated fees provided by Professionals for services rendered and expenses incurred prior to the Effective Date, including estimated fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date. The Liquidating Trustee shall supplement the Effective Date Professional Claim Reserves if the amount originally established is insufficient to pay Allowed Professional Fee Claims.

Upon approval of the fee applications by the Bankruptcy Court, the Liquidating Trustee shall pay Professionals from the Effective Date Professional Claim Reserves all of their respective Allowed Professional Fee Claims.

### 8.3 *Statutory Fees.*

Statutory Fees shall be paid by the Liquidating Trustee in the ordinary course of business until the closing, dismissal or conversion of the Chapter 11 Case to another chapter of the Bankruptcy Code. Any unpaid Statutory Fees that accrued before the Effective Date shall be paid no later than thirty (30) days after the Effective Date. For the avoidance of doubt, if the Chapter 11 Case is reopened, the Liquidating Trustee

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

shall pay any Statutory Fees in the ordinary course of business until the closing, dismissal, or conversion of the Chapter 11 Case to another chapter of the Bankruptcy Code.

### 8.4 *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Tax Claim, at the option of the Liquidating Trustee: (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, and (ii) the first Business Day after the date that is thirty (30) days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate pursuant to § 511, over a period not exceeding five (5) years from and after the Petition Date; *provided, however*, the Post-Effective Date Debtor and Liquidating Trustee, as applicable, reserve the right to prepay all or a portion of any such amounts at any time under this option at the discretion of the Post-Effective Date Debtor and the Liquidating Trustee.

### SECTION 9.
### CLASSIFICATION OF CLAIMS AND VOTING

### 9.1 *Classification in General.*

A Claim is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under §§ 1122 and 1123(a)(1); *provided, that* a Claim is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Allowed Claim has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 9.2 *Summary of Classification.*

The following table designates the Classes of Claims against the Debtor and specifies which of those Classes are (a) not Impaired by the Plan, (b) Impaired by the Plan, and (c) entitled to vote to accept or reject the Plan in accordance with § 1126. In accordance with § 1123(a)(1), Administrative Claims, Professional Claims, Statutory Fees, and Priority Tax Claims, have not been classified. All of the potential Classes for the Debtor are set forth herein. If, ultimately, the Debtor does not have

Holders of Claims in a particular Class or Classes, such Classes shall be treated as set forth in Section 9.4.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Not Impaired | No (deemed to accept) |
| 2 | Secured Claims | Not Impaired | No (deemed to accept) |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Allowed DHCS Claim | Impaired | Yes |

### 9.3    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor or the Liquidating Trust with respect to Unimpaired Claims, including all legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 9.4    *Elimination of Vacant Classes.*

Any Class of Claims, as of the commencement of the Confirmation Hearing, that does not have at least one (1) Holder of a Claim in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies § 1129(a)(8) with respect to that Class.

### 9.5    *Voting; Presumptions; Solicitation in Good Faith.*

Only Holders of Allowed Claims in Class 3 and Class 4 are entitled to vote to accept or reject this Plan. Holders of Claims in a Voting Class will receive Ballots containing detailed voting instructions.

The Plan Proponents will solicit votes on the Plan from the Voting Classes in good faith and in compliance with the applicable provisions of the Bankruptcy Code. Accordingly, the Plan Proponents and each of their Related Persons shall be entitled to, and upon the Confirmation Date, will be granted the protections of § 1125(e).

### 9.6    *Cramdown.*

If any Class of Claims is deemed and/or presumed to reject this Plan or is entitled to vote on this Plan and does not vote to accept this Plan, the Plan Proponents intend to (i) seek confirmation of this Plan under § 1129(b), or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code. If a

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

controversy arises as to whether any Claims, or any Class of Claims, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## SECTION 10.
## TREATMENT OF CLAIMS

In full and final satisfaction of all of the Claims against the Debtor (except with respect to Unclassified Claims that are satisfied in accordance with Section 8 above), the Claims shall receive the treatment described below. Except to the extent expressly provided in this Section 10, the timing of Distributions is addressed in Section 11 hereof.

10.1   *Class 1: Priority Non-Tax Claims.*

    a)   ***Classification.*** Class 1 consists of Priority Non-Tax Claims.

    b)   ***Treatment.*** Except to the extent that a Holder of an Priority Non-Tax Claim agrees to a less favorable treatment of such Claim, each such Holder shall receive payment in Cash in an amount equal to the amount of such Allowed Claim, payable on the later of (i) the Effective Date; and (ii) after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in each case, or as soon as reasonably practicable thereafter in accordance with the priority scheme set forth in the Bankruptcy Code.

    c)   ***Voting.*** Class 1 is Unimpaired. Holders of Priority Non-Tax Claims are deemed to have accepted the Plan, pursuant to § 1126(f), and are not entitled to vote to accept or reject the Plan.

10.2   *Class 2: Secured Claims.*

    a)   **Classification. Class 2 consists of Secured Claims**.

    b)   **Treatment.** The legal, equitable, and contractual rights of Holders of Allowed Secured Claims are unaltered by the Plan, except as altered pursuant to the Sale Order, and the Liens of the Holders of the Secured Claims will continue to attach to their respective collateral, provided, that, all such Claims shall remain subject to any and all defenses, challenges, counterclaims, and setoff or recoupment rights with respect thereto. Except to the extent that a Holder of an Allowed Secured Claim agrees to a less favorable treatment of such Claim, each such Holder shall, at the option of the Post-Effective Date Debtor and Liquidating Trustee, as applicable, receive one of

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

the following treatments: (i) the Holder of such Secured Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such Holder in full satisfaction of such Secured Claim; (ii) on or as soon as practicable after the later of (A) the Effective Date; or (B) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Secured Claim, the Holder of such Secured Claim will receive a Cash payment equal to the amount of its Secured Claim in full and final satisfaction of such Secured Claim; or (iii) the collateral securing the Secured Claim shall be abandoned to such Holder, in full and final satisfaction of such Secured Claim. receive payment in Cash in an amount equal to the amount of such Allowed Claim.

The Bankruptcy Court shall retain jurisdiction and power to determine the amount necessary to satisfy any Allowed Secured Claim. Upon receipt of Cash in an amount equal to the amount of such Allowed Secured Claim, the Holder of such Allowed Secured Claim shall release (by the Confirmation Order shall be deemed to release) all Liens against any Liquidating Trust Assets.

c) **Voting. Class 2 is Unimpaired.** Holders of Secured Claims are deemed to have accepted the Plan, pursuant to § 1126(f), and are not entitled to vote to accept or reject the Plan.

10.3 *Class 3: General Unsecured Claims.*

a) **Classification.** Class 3 consists of the General Unsecured Claims against the Debtor.

b) **Treatment.** As soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive in full satisfaction, settlement, discharge, and release of, and in exchange for such Allowed General Unsecured Claim, its Pro Rata share of the Class A Trust Beneficial Interests.

c) **Voting. Class 3 is Impaired.** Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

10.4 *Class 4: Allowed DHCS Claim.*

a) **Classification.** Class 4 consists of the Allowed DHCS Claim.

b) **Treatment.** As soon as practicable after the Effective Date, DHCS as holder of the Allowed DHCS Claim, shall receive in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed DHCS Claim: (i) the application of the DHCS Allowed Offset Amount to the Allowed DHCS Claim by

DHCS; (ii) distribution of the DHCS Sales Proceeds Recovery by the Liquidating Trustee; and (iii) distribution of its Pro Rata share of the Class B Trust Beneficial Interests.

c) **Voting. Class 4 is Impaired.** The Holder of the DHCS Claim is entitled to vote to accept or reject the Plan.

## SECTION 11.
## DISTRIBUTIONS

11.1 ***Party Responsible for Making Distributions.*** Subject to the prior payment of the amounts required to be paid by the Debtor in Cash on the Effective Date pursuant to this Plan, all Plan Distributions shall be made by the Liquidating Trustee (or by the Disbursing Agent, to the extent directed by the Liquidating Trustee), or, with respect to Distributions made to Holders of Class A Trust Beneficial Interests, by the Co-Liquidating Trustee (or by the Disbursing Agent, to the extent directed by the Co-Liquidating Trustee).

Neither the Liquidating Trustee nor the Co-Liquidating Trustee shall be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court. The Liquidating Trustee, Co-Liquidating Trustee, or Disbursing Agent, as applicable, shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform their duties under the Plan; (b) make all Distributions contemplated hereby; (c) employ transfer agents and registrars to represent them with respect to their responsibilities; and (d) exercise such other powers as may be vested in the Liquidating Trustee or Co-Liquidating Trustee by order of the Bankruptcy Court, pursuant to the Plan, the Liquidating Trust Agreement, or as deemed by the Liquidating Trustee or the Co-Liquidating Trustee, applicable, to be necessary and proper to implement the provisions hereof.

11.2 ***Appointment of Disbursing Agent.*** A Disbursing Agent may be appointed either pursuant to the Confirmation Order or by the Liquidating Trustee.

11.3 ***Timing of Distributions.***

a) Distributions on Account of All Claims Other Than the DHCS Claim. Subject to Section 11.1 of this Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim), or as soon as reasonably practicable thereafter, each Holder of an Allowed Claim (except for the Allowed DHCS Claim) against the Debtor shall receive full amount of the Distributions that the Plan provides for Allowed Claims in

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

62

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

the applicable Class and in the manner provided herein. If and to the extent there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions provided in the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the Distributions provided for therein, regardless of whether Distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all debts of the Debtor shall be deemed fixed and adjusted pursuant to the Plan and the Debtor and the Liquidating Trust shall have no liability on account of any Claims except as set forth in the Plan and in the Confirmation Order. All payments and all Distributions made by the Liquidating Trustee, the Co-Liquidating Trustee, or the Disbursing Agent under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the Debtor.

b) Distributions on Account of the Allowed DHCS Claim. Distributions on account of the Allowed DHCS Claim shall be made in accordance with Section 10.4 hereof, provided, however, that Distributions on account of the Allowed DHCS Balance Claim (i.e., to the Holder of Class B Trust Beneficial Interests) need not be made to the extent there is no Cash in the Trust Assets Accounts to distribute.

11.4 *Manner of Cash Payments Under the Plan and Liquidating Trust Agreement.*

Cash payments made pursuant to the Plan and Liquidating Trust Agreement, shall be in United States dollars by checks drawn on a domestic bank selected by the Liquidating Trustee, Co-Liquidating Trustee, or Disbursing Agent, as applicable, or by wire or ACH transfer from a domestic bank, at the option of the Liquidating Trustee, Co-Liquidating Trustee, or Disbursing Agent, as applicable.

11.5 *Distribution Procedures.*

a) **Distribution Dates.** The Liquidating Trustee and Co-Liquidating Trustee, as applicable, shall make Distributions to Holders of Claims as provided in Section 11 of the Plan.

b) **Subsequent Distributions.** Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution Date shall be held by the Liquidating Trust for Distribution on any Subsequent Distribution Date after such Claim is Allowed. No interest shall accrue or be paid on the unpaid amount of any Distribution.

c)     **Distribution Record Date.** Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date. Neither the Liquidating Trustee nor the Co-Liquidating Trustee shall have any obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any Distribution with respect to any Claim, the Liquidating Trustee and Co-Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Liquidating Trustee or Co-Liquidating Trustee as of the Distribution Record Date.

d)     **Time Bar to Cash Payments by Check.** Checks issued by the Liquidating Trustee or Co-Liquidating Trustee, as applicable, on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article shall be made directly to the Liquidating Trustee or Co-Liquidating Trustee, as applicable, by the Holder of the Allowed Claim to which the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of six months from the Effective Date or 30 days after the date on which such check is voided. After that date, all Claims in respect of voided checks shall be disallowed and forever barred and the proceeds of those checks shall revest in and become the property of the Liquidating Trust as unclaimed property in accordance with § 347(b).

11.6     *Withholding of Distributions.* In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee and Co-Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and all related agreements shall be subject to any applicable withholding and reporting requirements. The Liquidating Trustee or Co-Liquidating Trustee, as applicable, may withhold the entire Distribution to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any Governmental Unit. Any property so withheld will then be paid by the Liquidating Trustee or the Co-Liquidating Trustee, as applicable, to the appropriate authority. If the Holder of an Allowed Claim fails to provide the information to comply with any withholding requirements of any Governmental Unit within three months after the date of first

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

notification to the Holder of the need for such information for the Cash necessary to comply with any applicable withholding requirements, then such Holders' Distribution shall be treated in accordance with Section 11.6 of the Plan.

11.7   ***Delivery of Distributions and Undeliverable Distributions.*** Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Liquidating Trustee or Co-Liquidating Trustee, as applicable, at (a) the address of each Claimant as set forth in the Schedules, unless superseded by the address set forth on proof(s) of claim filed by such Claimant, or (b) the last known address of such Claimant if no proof of claim is filed or the Debtor, Post-Effective Date Debtor, Liquidating Trustee, or Co-Liquidating Trustee has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Liquidating Trustee or Co-Liquidating Trustee may, in its discretion, make reasonable efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as the Liquidating Trustee or Co-Liquidating Trustee deems appropriate, but no Distribution to any such Holder shall be made unless and until the Liquidating Trustee or Co-Liquidating Trustee has determined the then-current address of such Holder, at which time the Distribution to such Holder shall be made without interest. Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, the Liquidating Trustee or Co-Liquidating Trustee until the Distributions are claimed or are deemed to be unclaimed property under § 347(b), as set forth in Section 11.7 of the Plan. The Liquidating Trustee or Co-Liquidating Trustee shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or Liquidating Trust Agreement.

Except with respect to property not distributed because it is being held in the Disputed Claim Reserve, Distributions that are not claimed by the later of ninety (90) days from the Effective Date or ninety (90) days after the date of a Distribution shall be deemed to be unclaimed property under § 347(b) and shall vest or revest in the Liquidating Trust, and the Claims with respect to which those Distributions are made shall be automatically cancelled. Nothing contained in the Plan shall require the Debtor or the Liquidating Trust to attempt to locate any Holder of an Allowed Claim. All funds or other property that vest or revest in the Liquidating Trust pursuant to this Section shall be distributed to the other Holders of Allowed Claims in accordance with the provisions of the Plan and the Liquidating Trust Agreement.

11.8   ***Setoffs and Recoupments.*** The Liquidating Trustee or Co-Liquidating Trustee may, to the extent permitted under applicable law, setoff or recoup against

any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights, and Causes of Action of any nature that the Debtor or the Liquidating Trust may hold against the Holder of such Allowed Claim that are not otherwise waived, released, or compromised in accordance with the Plan; *provided, however*, that neither such a setoff, recoupment, nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee or Co-Liquidating Trustee of any such claims, rights, and Causes of Action that the Debtor or the Liquidating Trust possesses against such Holder; *provided, further,* that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee or the Co-Liquidating Trustee of any such Claims, rights, or Causes of Action that the Debtor, the Estate, or the Liquidating Trust possess against such Holder. Any Holder of an Allowed Claim subject to such setoff or recoupment reserves the right to challenge any such setoff or recoupment in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

11.9    ***De Minimis Distributions.*** No Distribution is required to be made to a Holder of an Allowed Claim if the amount of Cash to be distributed on any Distribution Date under the Plan on account of such Claim is $50 or less. Any Holder of an Allowed Claim on account of which the amount of Cash to be distributed is $50 or less will have its Claim for such Distribution discharged and will be forever barred from asserting any such Claim against each Released Party, the Post-Effective Date Debtor, the Liquidating Trustee, the Co-Liquidating Trustee, and the Liquidating Trust. Any Cash not distributed pursuant to this Section will, in the Liquidating Trustee's discretion, be included in the Trust Assets Accounts, free of any restrictions thereon, and will be distributed in accordance with the Plan.

11.10    ***Allocation of Plan Distribution Between Principal and Interest.*** All Distributions by the Liquidating Trustee with respect to any Allowed Claim shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim (including the interest portion of the Allowed Claim), if any.

11.11    ***Entry of Final Decree in Chapter 11 Case.*** After all the Disputed Claims have become Allowed Claims or have been disallowed by Final Order, and all Distributions in respect of Allowed Claims have been made in accordance with this Plan, or at such earlier time as the Liquidating Trustee deems appropriate, the Liquidating Trustee (i) shall seek authority from the Bankruptcy Court for entry of the Final Decree closing the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules and (ii) shall be authorized under the Plan to take any necessary corporate action with respect to the Debtor's continued existence without

the necessity for approvals or notices under any applicable state or other law, including under the Nonprofit Laws. Notwithstanding the foregoing, actions with respect to the Post-Effective Date Debtor shall be taken by the Liquidating Trustee. The entry of Final Decree closing this Chapter 11 Case shall not affect the Nonprofit Status of the Post-Effective Date Debtor to the extent it has not dissolved in accordance with the Plan.

11.12 ***Distribution Cap.*** In no event shall any Holder of an Allowed Claim receive Distribution(s) of an aggregate value exceeding one hundred percent (100%) of the amount of such Holder's Allowed Claim.

11.13 ***Distributions Free and Clear.*** Except as otherwise provided herein, any Distributions under the Plan shall be free and clear of any Liens, Claims, and encumbrances, and no Entity, including the Debtor, shall have any interest (legal, beneficial, or otherwise) in any property of the Estate distributed pursuant to the Plan.

## SECTION 12.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

12.1 ***No Distributions Pending Allowance.***

Notwithstanding any other provision of the Plan, the Debtor, the Liquidating Trustee or the Co-Liquidating Trustee, as applicable, shall not distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

12.2 ***Resolution of Disputed Claims.***

a) **General Unsecured Claims.** From and after the Confirmation Date, all objections with respect to Disputed General Unsecured Claims shall be litigated to a Final Order by the Co-Liquidating Trustee, (i) except to the extent that the Co-Liquidating Trustee elects to withdraw any such objection or the Co-Liquidating Trustee and the Claimant elects to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed General Unsecured Claim without approval of the Bankruptcy Court; or (ii) as otherwise provided in the Liquidating Trust Agreement. The costs of pursuing objections to General Unsecured Claims shall be borne by the Liquidating Trust.

b) **Other Claims.** From and after the Confirmation Date, all objections with respect to Disputed Claims (other than Disputed General Unsecured Claims) shall be litigated to a Final Order by the Liquidating Trustee, except to the extent the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

67

Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim (other than Disputed General Unsecured Claims) without approval of the Bankruptcy Court. The costs of pursuing the objections to Claims (other than General Unsecured Claims) shall be borne by the Liquidating Trust.

12.3    ***Objection Deadline.*** All objections to Claims shall be filed and served upon the Claimant not later than the Claims Objection Deadline, as such may be extended by order of the Bankruptcy Court.

12.4    ***Allowance and Estimation of Claims.*** Following the date on which a Disputed Claim becomes an Allowed Claim after the Distribution Date, the Liquidating Trustee or Co-Liquidating Trustee, as applicable, shall pay directly to the Holder of such Allowed Claim, as soon as reasonably practicable, the amount provided for under the Plan, as applicable, and in accordance therewith.

a)    **Allowance of Claims.** Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Liquidating Trustee or Co-Liquidating Trustee, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor or its Estate had with respect to any Claim immediately before the Effective Date, except with respect to any Claim deemed Allowed under the Plan or by orders of the Bankruptcy Court. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim will become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim.

b)    **Prosecution of Objections to Claims.** From and after the Effective Date, unless otherwise provided in the Plan, the Confirmation Order, or the Liquidating Trust Agreement, (i) the Liquidating Trustee will have the sole authority to file objections to Claims (other than General Unsecured Claims) and settle, compromise, withdraw, or litigate to judgment objections to any and all Claims (other than General Unsecured Claims), regardless of whether such Claims are in an Unimpaired Class or otherwise; and (ii) the Co-Liquidating Trustee will have the sole authority to file objections to general Unsecured Claims and settle, compromise, withdraw, or litigate to judgment objections to any and all General Unsecured Claims. From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without any further notice to or action, order, or approval of the Bankruptcy Court. The Liquidating Trustee will have the sole authority to administer

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court; provided, however, that with respect to General Unsecured Claims, the Co-Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any compromises or settlements of General Unsecured Claims without any further notice to or action, order, or approval of the Bankruptcy Court.

c)      **Estimation of Claims.** At any time, (a) prior to the Effective Date, the Debtor, and (b) after the Effective Date, the Liquidating Trustee or, solely with respect to General Unsecured Claims, the Co-Liquidating Trustee may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by § 502(c) regardless of whether the Debtor or the Liquidating Trust has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Liquidating Trustee or Co-Liquidating Trustee, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.

12.5  *Disallowance of Claims.*

a)      Except as otherwise agreed, any and all proofs of claim filed after the Bar Date are Disputed, and Holders of such Claims will not receive any Distributions thereon unless and until such Claim is Allowed.

b)      Subject to and in accordance with this Plan, any Claims held by Entities from which property is recoverable under §§ 542, 543, 550, or 553 or Entities that are transferees of transfers avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a), provided, that, such Cause of Action is retained by the Liquidating Trust, shall be deemed disallowed pursuant to § 502(d), and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action the Debtor holds or may hold against any Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estate by that Entity have been turned over or paid to the Debtor or Liquidating Trust.

12.6  *Adjustment Without Objection.* Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged from the claims register at the direction of the Debtor, the Liquidating

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

69

Trustee, or the Co-Liquidating Trustee, as applicable, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

12.7   ***Reserve Provisions for Disputed Claims.***

a)   **Establishment of Disputed Reserves.** On or prior to each Distribution Date, the Liquidating Trustee shall each reserve Cash required for Distribution on Disputed Claims as if such Claims were Allowed as filed with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee, as applicable (the "Disputed Claim Reserve"). On each Distribution Date after the Effective Date in which the Liquidating Trustee or Co-Liquidating Trustee makes Distributions to Holders of Allowed Claims, the Liquidating Trustee shall retain on account of Disputed Claims an amount the Liquidating Trustee estimates would be necessary to fund the Pro Rata Share of such Distributions to Holders of Disputed Claims is such Claims were Allowed, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee or Co-Liquidating Trustee, as applicable.

b)   **Maintenance of Disputed Reserves.** The Liquidating Trustee shall hold property in the Disputed Claim Reserve in trust for the benefit of the Holders of the applicable Disputed Claims that are ultimately determined to be Allowed. The Disputed Claim Reserve shall be closed (or deemed closed) by the Liquidating Trust when all Distributions and other dispositions of Cash of other property required to be made hereunder will have been made in accordance with the terms of the Plan. Upon closure of the Disputed Claim Reserve, all Cash or other property held in that Disputed Claim Reserve shall revest in and become unrestricted property of the Liquidating Trust to be distributed in accordance with the Plan and the Liquidating Trust Agreement.

c)   **Limitation on Funding Disputed Claim Reserves.** Except as expressly set forth in the Plan, neither the Debtor nor the Liquidating Trustee shall have any duty to fund the Disputed Claim Reserve except from the Liquidating Trust Assets.

12.8   ***Rounding.*** Whenever any payment of a fraction of a cent would otherwise be called for, the actual Distribution shall reflect a rounding of such fraction down to the nearest cent.

12.9   ***Cumulative Effect.*** All the objection, estimation, and resolution procedures set forth in this Section are intended to be cumulative (where possible) and not exclusive of one another.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

## SECTION 13.
## LIQUIDATING TRUST BENEFICIARIES

13.1 ***Identification of Liquidating Trust Beneficiaries.*** Each of the Liquidating Trust Beneficiaries shall be recorded and set forth in a schedule maintained by the Liquidating Trustee expressly for such purpose based upon its Allowed Claim in Class 3 or Class 4.

13.2 ***Beneficial Interests Only.*** The ownership of Trust Beneficial Interests shall not entitle any Trust Beneficiary to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of such Liquidating Trust Assets or to require an accounting, except as may be specifically provided herein.

13.3 ***Evidence of Beneficial Interests.*** Ownership of a Trust Beneficial Interest (a) shall be noted in the books and records of the Liquidating Trust and (b) shall not be evidenced by any certificate, note, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee, including the Schedules.

13.4 ***Conflicting Claims.*** Except as otherwise provided in the Liquidating Trust Agreement, if any conflicting claims or demands are made or asserted with respect to a Trust Beneficial Interest, the Liquidating Trustee shall be entitled, at its sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Liquidating Trustee or Co-Liquidating Trustee, as applicable, may elect to make no payment or Distribution with respect to the beneficial interest represented by the claims or demands involved, or any part thereof, and the Liquidating Trustee or Co-Liquidating Trustee, as applicable, shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands and file a motion with the Bankruptcy Court to adjudicate any such conflicting claims or demands. In so doing, the Liquidating Trustee or Co-Liquidating Trustee, as applicable, shall not be or become liable to any party for his/her refusal to comply with any of such conflicting claims or demands. The Liquidating Trustee or Co-Liquidating Trustee, as applicable, shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order or (b) all differences have been resolved by a written agreement among all of such parties and the Liquidating Trustee or Co-Liquidating Trustee, as applicable, which agreement shall include a complete release of the Liquidating Trust and the Liquidating Trustee (the occurrence of either (a) or (b) being referred to as a "Dispute Resolution" in this Section). Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Liquidating Trustee or Co-Liquidating Trustee, as applicable, shall hold in a segregated interest-bearing account with a United States financial institution any

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

payments or Distributions from the Liquidating Trust as applicable, to be made with respect to the Beneficial Interest at issue. Promptly after a Dispute Resolution is reached, the Liquidating Trustee shall Transfer the payments and Distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

13.5 **_Limitation on Transferability._** As set forth in more detail in the Liquidating Trust Agreement, the Trust Beneficial Interests may not be transferred, sold, assigned, hypothecated, or pledged, except as they may be assigned or transferred by will, intestate succession, or operation of law.

## SECTION 14.
## EXECUTORY AGREEMENTS

14.1 **_General Treatment._** On the Effective Date, all Executory Agreements to which the Debtor is a party shall be deemed rejected as of the Effective Date, except for those Executory Agreements that (a) have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court (including pursuant to any Sale Order), (b) are the subject of a separate motion to assume, assume and assign, or reject filed under § 365 on or before the Effective Date, (c) are specifically designated as a contract or lease to be assumed pursuant to the DAP Sale and no timely objection to the proposed assumption was filed; or (d) are specifically designated as a contract or lease to be assumed on the Schedule of Assumed Contracts and no timely objection to the proposed assumption has been filed. If the party to an Executory Agreement listed to be assumed in the Schedule of Assumed Contracts wishes to object to the proposed assumption (including with respect to the cure amounts), it shall do so within thirty (30) days from the service of the Schedule of Assumed Contracts. However, nothing in this Section shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtor and the Estate, the Debtor's officers, managers and directors and/or the Liquidating Trust. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions and rejections, as applicable, pursuant to § 365, as of the Effective Date. Nothing in this Section shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.

The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and neither the Debtor nor the Liquidating Trust shall bear any liability for costs associated with such matters.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

72

14.2   **_Rejection Bar Date._** Claims arising out of the rejection of an Executory Agreement pursuant to the Plan must be filed with the Bankruptcy Court (or as otherwise provided for in the Debtor's notice of rejection) no later than thirty (30) days after the Effective Date. Any Claims not filed within such time period will be forever barred from assertion against the Debtor, the Liquidating Trustee, and the Liquidating Trust Assets. All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as General Unsecured Claims.

14.3   **_Insurance Policies._** For the avoidance of doubt, the Debtor's rights with respect to all Insurance Policies under which the Debtor may be an insured beneficiary or assignee (including all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by the Debtor after the Petition Date, and all Insurance Policies under which the Debtor holds rights to make, amend, prosecute, and benefit from claims) shall be Transferred to the Liquidating Trust (including, without limitation, for the Liquidating Trustee to pursue and prosecute any Causes of Action) on the Effective Date, unless any such Insurance Policy is otherwise cancelled by the Liquidating Trustee in its discretion. Notwithstanding any provision providing for the rejection of Executory Agreements, any Insurance Policy that is deemed to be an Executory Agreement shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Liquidating Trust, which shall retain the right to assume or reject any such Executory Agreements pursuant to and subject to the provisions of § 365 following the Effective Date, with all rights of the Insurers to object or otherwise contest such assumption or rejection being expressly reserved provided, that, the Liquidating Trustee may not reject (a) any extended reporting period (tail) coverage purchased by the Debtor and (b) any Insurance Policies assumed by the Debtor pursuant to an order of the Bankruptcy Court.

The Confirmation Order shall constitute a determination that no default by the Debtor exists with respect to any of the Insurance Policies requiring a cure payment and that nothing in the Sale Order, any underlying agreements or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any Claims or Causes of Action.

Notwithstanding anything to the contrary in the Confirmation Order or the Plan (including any other provision that purports to be preemptory or supervening), nothing shall in any way operate to impair, or have the effect of impairing the Insurers' legal, equitable or contractual rights, if any, in respect of any Claims (as defined by § 101(5)), and the rights of Insurers shall be determined under the Insurance Policies and under applicable nonbankruptcy law; *provided, that*, any Claim by an Insurer

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

73

against the Debtor or the Liquidating Trust shall also be determined under applicable bankruptcy law, and Plan and Confirmation Order provisions.

Nothing in the Plan or in the Confirmation Order shall preclude any Person from asserting in any proceeding any and all Claims, defenses, rights or causes of action that it has or may have under or in connection with any Insurance Policy, and nothing in the Plan or the Confirmation Order shall be deemed to waive any claims, defenses, rights or causes of action that any Person (including any Insurer) has or may have under the provisions, terms, conditions, defenses and/or exclusions contained in the subject Insurance Policies; *provided, that*, any Claims by an Insurer against the Debtor or the Liquidating Trust shall also be determined under applicable bankruptcy law, and Plan and Confirmation Order provisions. Nothing in this Plan shall diminish, impair or otherwise affect payments from the proceeds or the enforceability of any Insurance Policies that may cover (a) Claims by the Debtor, or (b) Claims against the Debtor or covered Persons.

## SECTION 15.
## MEANS FOR IMPLEMENTATION OF THE PLAN

15.1 ***General Settlement of Claims.*** The Liquidating Trustee and Co-Liquidating Trustee are authorized and directed to make Distributions of the distributable Assets pursuant to and in accordance with the Plan. All Plan Distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final. For the avoidance of doubt, the Plan itself shall not be deemed to be a settlement.

15.2 ***Sale Transaction.*** On March 13, 2023, the Bankruptcy Court entered the Sale Order authorizing and approving the DAP Sale, pursuant to § 363. Pursuant to the DAP Sale, the Debtor sold the Purchased Assets to DAP Health pursuant to the terms in the Asset Purchase Agreement.

a) **Cooperation During Transition Period.** Between the entry of the Sale Order and the Closing of the DAP Sale, the Debtor and DAP Health cooperated pursuant to the Management Services Support Agreement. On July 31, 2023, the DAP Sale Closed and the Management Services Support Agreement terminated on its terms and that to the extent the Debtor or DAP Health may have claims, rights, or ongoing obligations to each other under the Management Services Support Agreement that survive the termination, such claims, rights, or ongoing obligations shall cease to exist on the Effective Date, and that the Post-Effective Date Debtor shall not inherit any claims, rights, benefits, or Causes of Action arising under,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

relating to, or in connection with the Asset Purchase Agreement, the Management Services Support Agreement, or any other agreement relating to the foregoing.

b) **No Effect on Sale Order.** Nothing in the Plan is intended to, nor shall be construed to, alter any of the terms and conditions upon which the DAP Sale was approved as set forth in the Asset Purchase Agreement. Neither the Plan nor the Confirmation Order shall limit or otherwise affect any of the Bankruptcy Court's findings, conclusions, orders, and judgments as set forth in the Sale Order, and insofar as any of the protections afforded DAP Health by the Sale Order conflict with or contradict certain terms and conditions in the Plan or any findings, conclusions, orders, or judgments in the Confirmation Order, the Sale Order shall govern and control with respect to DAP Health.

c) **No Claims against DAP Health.** Notwithstanding anything that may suggest otherwise in the Plan, the Plan Supplement, or any Schedule or Exhibit to either of the foregoing, or any other document executed in connection with Confirmation or this Chapter 11 Case, neither the Post-Effective Date Debtor nor any Holder of any Claim shall have any claim, cause of action, right, or recourse against DAP Health or the Purchased Assets on account of or in connection with the DAP Sale, the Asset Purchase Agreement, the Master Services Support Agreement, or any other agreement or document executed in connection with the consummation of the DAP Sale.

15.3 *DHCS Settlement Agreement.* On March 7, 2023, the Bankruptcy Court entered the DHCS 9019 Order authorizing and approving the DHCS Settlement among the Debtor, the Committee, and DHCS, which resolved the various disputes between the Debtor, the Committee, and DHCS. The DHCS Settlement Agreement sets forth the treatment of the DHCS Claim and provides for the allocation of the DAP Sale proceeds among DHCS and Holders of other Allowed Claims. DHCS will apply the DHCS Offset Amount to the DHCS Claim as set forth in the DHCS Settlement Agreement. Pursuant to the DHCS Settlement Agreement, the DHCS Claim will be reduced dollar for dollar by the DHCS' receipt of Specified Litigation Recoveries, which will be allocated as set forth therein. Finally, the DHCS Settlement Agreement provides for the Extended DHCS Bar Date in order for DHCS to file an additional Proof of Claim for Medi-Cal overpayments not included within the DHCS Claim as a General Unsecured Claim.

Nothing in the Plan is intended to, nor shall be construed to, alter any of the terms and conditions upon which the DHCS Settlement Agreement was approved as set forth therein. Neither the Plan nor the Confirmation Order shall limit or otherwise affect any of the Bankruptcy Court's findings, conclusions, orders, and judgments as set forth in the DHCS 9019 Order, and insofar as any of the protections afforded

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DHCS by the DHCS 9019 Order conflict with or contradict certain terms and conditions in the Plan or any findings, conclusions, orders, or judgments in the Confirmation Order, the DHCS 9019 Order shall govern and control with respect to DHCS

15.4 **_Plan Funding_**. This Plan will be funded from the following sources: (i) the Remaining Estate Funds; (ii) the Remaining Cash; (iii) Net Cash Proceeds; (iv) any refunds, deposits, or other monies owing to the Debtor which were not sold to DAP Health; (v) the Litigation Recoveries; (vi) any other monetary recoveries obtained by the Debtor prior to the Effective Date; and (vii) any other monetary recoveries obtained by the Liquidating Trustee after the Effective Date that do not constitute Purchased Assets.

15.5 **_Post-Effective Date Governance_**¶.

a) **_Post-Effective Date Debtor._**

    i. **_Continued Limited Existence._** On and after the Effective Date, the Post-Effective Date Debtor shall continue in existence for the purposes set forth herein, and retain its Nonprofit Status to the same extent as such status existed immediately prior to the Petition Date. No party shall take any action to interfere with, alter, terminate, or otherwise adversely affect the Nonprofit Status of the Post-Effective Date Debtor. Specifically, the Post-Effective Date Debtor shall continue in existence (i) to maintain the Provider Agreements for Medi-Cal and Medicare, and participate in the Medi-Cal and Medicare programs, until the CHOW is approved, and (ii) to collect or otherwise liquidate all amounts owing under the Provider Agreements until all payments due under such agreements have been received by the Post-Effective Date Debtor and, if appropriate, Transferred to the Liquidating Trust.

    ii. **_No Further Approvals Required._** In performance of its duties hereunder, the Post-Effective Date Debtor shall have the rights and powers of a debtor in possession under § 1107, and such other rights, powers, and duties necessary, appropriate, advisable or convenient to effectuate the provisions of the Plan. Except to the extent provided in this Plan or the Confirmation Order, on and after the Effective Date, the Post-Effective Date Debtor shall not be required to obtain any approvals from the Bankruptcy Court, any court or Governmental Unit and/or provide any

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

notices under the Nonprofit Laws to implement the terms of the Plan.

iii.   ***The Post-Effective Date Debtor's Books and Records.*** The Debtor shall Transfer dominion and control over all of its books and records, in whatever form, manner or media, to the Liquidating Trustee on or as soon as reasonably practicable after the Effective Date.

iv.   ***Dissolution.*** The Liquidating Trustee will cause the Post-Effective Date Debtor to be dissolved for all purposes under applicable non-bankruptcy law after (i) the CHOW is approved and (ii) the receipt of all payments related to Medi-Cal and Medicare. The Liquidating Trustee may dissolve the Post-Effective Date Debtor, earlier than as set forth herein, if it determines that the continued existence of the Post-Effective Date Debtor is not necessary to satisfy the foregoing conditions. Such dissolution shall occur without the necessity for any other or further actions to be taken by or on behalf of the Post-Effective Debtor, or payment of any fees, charges, penalties or other amounts required by applicable non-bankruptcy law; provided, however, that the Liquidating Trustee may in its discretion file any certificates of cancellation as may be appropriate in connection with dissolution of the Post-Effective Date Debtor.

**b) Post-Effective Date Board of Directors.**

i.   ***Duties and Obligations.*** The Post-Effective Date Board of Directors shall (i) fulfill its duties and obligations under the Post-Effective Date Debtor's bylaws and state and federal law, and (ii) oversee the Liquidating Trustee solely in his/her capacity as president of the Post-Effective Date Debtor consistent with the terms of this Plan.

ii.   ***Resignation.*** Any member of the Post-Effective Date Board of Directors may resign at any time upon not less than thirty (30) days' written notice to the Liquidating Trustee; provided, that, the Liquidating Trustee may waive such notice period.

iii.   ***Replacement.*** Notwithstanding anything in the bylaws to the contrary, in the event that a director serving on the Post-Effective

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Date Board of Directors resigns or is duly removed for cause, or in the event of the death of any such director or other occurrence rendering such director incapacitated or unavailable for a period of thirty (30) consecutive days, a replacement director shall be designated by the remaining members of the Post-Effective Date Board of Directors in consultation with the Liquidating Trustee. If a replacement director cannot be designated pursuant to this Plan, the Liquidating Trustee may file a motion with the Bankruptcy Court seeking appointment of a replacement director.

iv. ***Termination.*** The terms of the Post-Effective Date Board of Directors shall expire upon the date they are no longer required under state law as to the Debtor, as applicable.

v. ***Limitation of Liability of the Post-Effective Date Board of Directors***. The liability of the Post-Effective Date Board of Directors shall be limited to the maximum extent permitted by law, including any exculpations under the articles of incorporation or bylaws of the Post-Effective Date Debtor.

vi. ***Operating Accounts for the Post-Effective Date Debtor.*** On the Effective Date, or as soon thereafter as is practical and subject to the prior payment of the amounts required to be paid or reserved by the Post-Effective Date Debtor in cash on the Effective Date on account of Claims pursuant to this Plan, the Post-Effective Date Debtor shall establish and fund deposit accounts to serve as Operating Accounts for the Post-Effective Date Debtor for use in accordance with the Wind-down Budget, provided, however, the Post-Effective Date Debtor may, with the written consent of the Liquidating Trustee, utilize previously established deposit accounts for such purpose. The Liquidating Trustee shall be authorized to use the funds in the Operating Accounts as needed to preserve, administer, and continue the Operations for the Post-Effective Date Debtor, including paying all related costs and expenses associated, and collection of any amounts due to the Post-Effective Date Debtor under the Transition Services Agreement, each in accordance with the Wind-down Budget. After the Effective Date, all Cash or other proceeds generated by the Purchased Assets solely to the extent required to fund the Operating Accounts in accordance with the Wind-down Budget

during the Transition Period shall be excluded from the definition of the Remaining Cash.

### 15.6 *Liquidating Trust.*

a) **Formation of the Liquidating Trust.** On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, inter alia, (a) administering the Liquidating Trust Assets including the Distributions and payments contemplated under the Plan, (b) prosecuting and/or resolving all Disputed Claims, (c) investigating and pursuing any Causes of Action the Debtor holds or may hold against any Entity, and (d) making all Distributions to the Beneficiaries provided for under the Plan. The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of the trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, make distribution to Holders of Allowed Claims subject to the terms of this Plan, liquidate and convert to Cash the remaining Liquidating Trust Assets, and make timely Distributions to the Beneficiaries of the proceeds thereof, and not unduly prolong the duration of the Liquidating Trust. Neither the Liquidating Trust nor the Liquidating Trustee or Co-Liquidating Trustee shall be or shall be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

b) **Funding of the Liquidating Trust.** On the Effective Date, the Liquidating Trust Assets shall vest automatically in the Liquidating Trust. The Plan shall be considered a motion pursuant to §§ 105, 363, and 365 for such relief. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of the Liquidating Trust Beneficiaries. The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtor to the Liquidating Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Liquidating Trust Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Liquidating Trust Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtor's rights, title and interest in the Liquidating Trust Assets, and the Debtor will have no further interest in or with respect to the Liquidating Trust Assets.

Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as possible after the Effective Date, the Liquidating Trustee shall make a good-faith valuation of the Liquidation Trust Assets. The valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Liquidating Trust, and the Liquidating Trust Beneficiaries) for all federal income tax purposes.

15.7   ***Appointment of the Liquidating Trustee and Co-Liquidating Trustee.*** The Liquidating Trustee shall be selected by the Debtor with the consent of the Committee, such consent not to be unreasonably withheld. The initial Liquidating Trustee shall be a representative from Ankura Consulting Group, LLC.  The Co-Liquidating Trustee shall be selected by the Committee with the consent of the Debtor, such consent not to be unreasonably withheld. The initial Co-Liquidating Trustee shall be a representative from FTI Consulting, Inc. The Liquidating Trustee and Co-Liquidating Trustee shall be deemed appointed on the Effective Date, without application, notice, hearing or other order of the Bankruptcy Court. The appointment, duties, rights, and powers of the Liquidating Trustee and the Co-Liquidating Trustee are as set forth in the Liquidating Trust Agreement.

15.8   ***Rights and Powers of Liquidating Trustee and Co-Liquidating Trustee.***

a)   **Liquidating Trustee.** The Liquidating Trustee shall be deemed the Estate's representative in accordance with § 1123 and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under §§ 704 and 1106 and Bankruptcy Rule 2004 to act on behalf of the Liquidating Trust. Without limiting the foregoing, and except as provided for below with respect to the Co-Liquidating Trustee, the Liquidating Trustee will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtor holds or may hold against any Entity; (4) make Distributions as contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (7) assert or waive any attorney-client privilege on behalf of the Debtor and Estate with regard to acts or events during time periods prior to the Petition Date; and (8) employ and compensate professionals and other agents, including, without limitation, existing Professionals employed by the Debtor in accordance with the Liquidating Trust Agreement or the Plan, provided, however,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

b)      **Co-Liquidating Trustee.** The Co-Liquidating Trustee shall have all the rights and powers set forth in the Liquidating Trust Agreement.  To ensure expeditious resolution of any Disputed General Unsecured Claims and distributions to Holders of Allowed General Unsecured Claims, the Co-Liquidating Trustee will have the right to, in consultation with the Liquidating Trustee, to: (1) make Distributions to Holders of Allowed General Unsecured Claims; (2) object to the Disputed General Unsecured Claims and prosecute (or continue the prosecution of), settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; and (3) employ and compensate professionals and other agents, including, without limitation, existing Professionals employed by the Debtor or Committee in accordance with the Liquidating Trust Agreement or the Plan, provided, however, that any such compensation shall be made only out of the Liquidating Trust Assets. The Co-Liquidating Trustee will resign (by written submission, email being sufficient to the Liquidating Trustee) upon (i) fully adjudicating all Disputed General Unsecured Claims except any Disputed General Unsecured Claims against Specified Litigation Defendants, and (ii) making the Final Distribution to the Holders of General Unsecured Claims except Specified Litigation Defendants.

15.9   ***Fees and Expenses.*** Subject to payment in full of all Allowed Administrative Claims, and except as otherwise ordered by the Bankruptcy Court, expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

15.10   ***Transfer of Beneficial Interests in the Liquidating Trust.*** Liquidating Trust Interests shall not be transferable except upon death of the interest holder or by operation of law. The Liquidating Trust shall not have any obligation to recognize any transfer of Claims occurring after the Distribution Record Date.

15.11   ***Litigation of Debtor's Causes of Action.*** Except as otherwise provided in this Plan, all Causes of Action are retained, vested in the Liquidating Trust, and preserved pursuant to § 1123(b). From and after the Effective Date, all Causes of Action will be prosecuted or settled by the Liquidating Trustee. Except as otherwise provided in this Plan, to the extent any Causes of Action are already pending on the Effective Date, the Liquidating Trustee, as successor to the Debtor (in any derivative capacity or as an intervening party), will continue the prosecution of such Causes of Action and shall be substituted as plaintiff, defendant, or in any other capacity for the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Debtor pursuant to this Plan and the Confirmation Order on the Effective Date without need for any further motion practice or notice in any case, action, or matter.

15.12 ***Full and Final Satisfaction.*** Commencing upon the Effective Date, subject to the terms of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee and Co-Liquidating Trustee, as applicable, shall be authorized and directed to distribute the amounts required under the Plan to the Holders of Allowed Claims according to the provisions of the Plan. Upon the Effective Date, all Debts of the Debtor shall be deemed fixed and adjusted pursuant to this Plan, and the Liquidating Trust shall have no liability on account of any Claims except as set forth in this Plan and in the Liquidating Trust Agreement. All payments and all distributions made by the Liquidating Trustee or Co-Liquidating Trustee under the Plan shall be in full and final satisfaction of all Claims against the Liquidating Trust; provided, however, that nothing contained in this Article 9 of the Plan, or in any other provision of this Plan, shall be deemed to constitute or result in a discharge of the Debtor under § 1141(d).

15.13 ***Employment and Compensation of Professionals.*** In accordance with the Liquidating Trust Agreement, the Liquidating Trust may employ such counsel, advisors, and other professionals selected by the Liquidating Trustee or Co-Liquidating Trustee (which may be the same professionals employed by the Post-Effective Date Debtor or the Committee) that the Liquidating Trustee and Co-Liquidating Trustee reasonably require to perform its responsibilities under the Plan without further order from the Bankruptcy Court.

15.14 ***No Further Court Authorization.*** Except as provided herein or the Confirmation Order, the Liquidating Trustee and Co-Liquidating Trustee will continue the orderly administration of the Liquidating Trust Assets and otherwise implement the provisions of this Plan without necessity of any further order of the Bankruptcy Court or approval or consent of any Governmental Unit, including under the Nonprofit Laws. Further, except as provided herein or the Confirmation Order, the Liquidating Trustee and Co-Liquidating Trustee will continue their oversight and related responsibilities pursuant to the Plan and Liquidating Trust Agreement without necessity of any further order of the Bankruptcy Court or other Governmental Unit, including under the Nonprofit Laws.

15.15 ***Dissolution of the Committee.*** On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto). The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's Professionals to represent the Liquidating Trustee or to be compensated or reimbursed per the Plan and the Liquidating Trust Agreement in connection with such representation.

15.16 ***Coordination Between Post-Effective Date Debtor and the Liquidating Trust.*** Notwithstanding anything herein to the contrary, in furtherance of the purposes of the Liquidating Trust, at the request of the Liquidating Trustee or Co-Liquidating Trustee, as applicable, the Post-Effective Date Debtor (including, without limitation, the Post-Effective Date Debtor's employees, agents and/or professionals) shall be authorized to provide assistance and services to, or otherwise act on behalf of, the Liquidating Trustee or Co-Liquidating Trustee, as applicable, in the performance of the Liquidating Trustee's or Co-Liquidating Trustee's duties, as applicable, under the Plan and the Liquidating Trust. Without limitation on the foregoing, the Post-Effective Date Debtor shall be authorized to assist in the reconciliation and administration of Claims, and assist in the liquidation and/or collection of Liquidating Trust Assets (including, without limitation, litigation claims). The Liquidating Trustee shall oversee all such services provided on behalf of the Liquidating Trust.

15.17 ***Destruction and Abandonment of Books and Records.*** Except as otherwise provided in this subsection or the Liquidating Trust Agreement, on or after the Effective Date, pursuant to § 554(a), the Liquidating Trustee is authorized, from time to time, without further application to the Bankruptcy Court or notice to any party, to abandon or otherwise destroy documents and records (whether in electronic or paper format) that he or she determines, in his/her reasonable business judgment, are no longer necessary to the administration of either the Chapter 11 Case or the Plan, notwithstanding any federal, state, or local law or requirement requiring the retention of the applicable documents or records; provided, that, sixty (60) days prior to any abandonment or destruction, the Liquidating Trustee will give notice to any Insurer requesting notice prior to the Confirmation Date and a general description of the documents to be abandoned or destroyed, and the Insurer shall have thirty (30) days thereafter to request, at its sole expense, copies of the documents relevant to the defense or indemnity claims covered by that Insurer. The Insurer and the Liquidating

Trustee shall cooperate in limiting the request to documents relevant to defense or indemnity of claims covered by that Insurer.

15.18 ***Mutuality Preserved.*** Unless specifically agreed in writing by the Debtor, the Liquidating Trustee, or Co-Liquidating Trustee, as applicable, nothing in the Plan constitutes a waiver of the requirements for setoff under § 553.

## SECTION 16.
## EFFECT OF CONFIRMATION

16.1 ***Binding Effect of the Plan.*** The provisions of the confirmed Plan shall bind the Debtor, the Liquidating Trust, the Liquidating Trustee, the Co-Liquidating Trustee, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor, whether or not such Creditor has filed a Proof of Claim in the Chapter 11 Case, whether or not the Claim of such Creditor is impaired under the Plan, and whether or not such Creditor has accepted or rejected the Plan. All Claims and Debts shall be fixed and adjusted pursuant to the Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in § 1146(a).

16.2 ***Vesting of Assets.*** Upon the Effective Date, title to all property of the Estate of the Debtor in the Chapter 11 Case shall vest in the Liquidating Trust and shall be retained by the Liquidating Trust for the purposes contemplated under this Plan pursuant to the Liquidating Trust Agreement. Without limiting the generality of the foregoing, all Causes of Action the Debtor holds or may hold against any Entity, recoveries from any Causes of Action, and all resulting Liquidating Trust Assets shall vest in the Liquidating Trust upon the Effective Date and shall no longer constitute property of the Estate.

16.3 ***No Discharge. Pursuant to § 1141(d), the Debtor will not receive a discharge under this Plan.***

16.5 ***Property Free and Clear.*** Except as otherwise provided in the Plan or the Confirmation Order, all property that shall vest in the Liquidating Trust shall be free and clear of all Claims, Liens, charges, or other encumbrances of Creditors, and in relevant documents, agreements, and instruments contained in the Plan Supplement. Following the Effective Date, the Liquidating Trustee may Transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

### SECTION 17.
### EXCULPATIONS, INJUNCTIONS, AND RELEASES

17.1 ***Extension of Existing Injunctions and Stays.*** Unless otherwise provided herein, all injunctions or stays arising under §§ 105 or 362, any order entered during the Chapter 11 Case under §§ 105 or 362 or otherwise, and in existence on the Effective Date, shall remain in full force and effect until the closing of the Chapter 11 Case.

17.2 ***Releases.***

a) **Debtor Release.** Pursuant to § 1123(b), and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtor and its estate shall release each Released Party, and each Released Party is deemed released by the Debtor and the estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor or its estate, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or indeterminable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the estate would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's liquidation, the Chapter 11 Case, the purchase, sale, transfer of any security, asset, right, or interest of the Debtor, the DAP Sale, the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the treatment of Claims prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; provided, that, the foregoing Debtor Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan. For avoidance of doubt, the foregoing Debtor Release does not

release any of the Debtor's claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities with respect thereto.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtor and all Holders of Claims; (d) fair, equitable and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor or its estate asserting any Claim or Cause of Action released pursuant to the Debtor Release.

b)   **Third Party Release.** On, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Released Parties shall be forever released (the "Third Party Release") from any and all claims, obligations, actions, suits, rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, and liabilities throughout the world under any law or court ruling through the Effective Date (including all claims based on or arising out of factors or circumstances that existed as of or prior to the Effective Date, including claims based on negligence or strict liability, and further including any derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise) which the Debtor, its estate, Creditors, or other persons receiving or who are entitled to receive distributions under the Plan may have against any of them in any way related to this Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, and related to the Debtor (or its predecessors), its business and/or its assets; provided, however, that the foregoing releases are granted only by (a) Creditors who returned a Ballot; and (b) Creditors who were sent a Solicitation Package or a Release Opt-Out Election Form, but either (i) did not vote; or (ii) did not return a Release Opt-Out Election Form; provided, however, that the release provided in this section shall not apply to (A) any Creditor whose Claim is not Allowed either in whole or in part; or (B) any Creditor in category (b) above if the Solicitation Package or Release Opt-Out Election Form was returned to the Debtor as undelivered and that such Creditor did not otherwise submit a Ballot; and provided further, however, that the release provided in this Section shall not extend to any claims by any Governmental Unit

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, ultra vires acts under applicable law.

c) **Limitation of Claims Against the Liquidating Trust.** As of the Effective Date, except as provided in this Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Liquidating Trust any other or further Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever, relating to the Debtor based upon any acts, omissions, liabilities, transactions, occurrences, or other activity of any nature that occurred prior to the Effective Date.

d) <u>**WAIVER OF LIMITATIONS ON RELEASES**</u>. THE LAWS OF SOME STATES (FOR EXAMPLE, CALIFORNIA CIVIL CODE § 1542) PROVIDE, IN WORDS OR SUBSTANCE, THAT A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS/HER/ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY THE RELEASING PARTY MUST HAVE MATERIALLY AFFECTED THE RELEASING PARTY'S DECISION TO RELEASE. THE RELEASING PARTIES IN SECTIONS 17.2(a)-(c) OF THE PLAN ARE DEEMED TO HAVE WAIVED ANY RIGHTS THEY MAY HAVE UNDER SUCH STATE LAWS AS WELL AS UNDER ANY OTHER STATUTES OR COMMON LAW PRINCIPLES OF SIMILAR EFFECT.

17.3 *Injunctions.*

a) **General Injunction**. Except as otherwise expressly provided herein, all Persons who have held, currently hold or may hold a Claim against the Debtor are permanently enjoined on and after the Effective Date from taking any action in furtherance of such Claim or any other Cause of Action released and discharged under the Plan, including, without limitation, the following actions against any Released Party: (a) commencing, conducting or continuing in any manner, directly or indirectly, any action or other proceeding with respect to a Claim; (b) enforcing, levying, attaching, collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order with respect to a Claim; (c) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance of any kind with respect to a Claim; (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtor, the Post-Effective Date Debtor or the Liquidating Trust with respect to a Claim; or (e) commencing, conducting or continuing any proceeding that does not conform to or comply with or is contradictory to the provisions of this Plan; <u>provided</u>, <u>however</u>, that nothing in this injunction shall preclude the Holders of Claims against the Debtor

from enforcing any obligations of the Debtor, the Post-Effective Date Debtor, the Liquidating Trust, the Liquidating Trustee, or Co-Liquidating Trustee under this Plan and the contracts, instruments, releases and other agreements delivered in connection herewith, including, without limitation, the Confirmation Order, or any other order of the Bankruptcy Court in the Chapter 11 Case. By accepting a Distribution made pursuant to this Plan, each Holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth in this Section.

b) **Other Injunctions.** The Post-Effective Date Debtor, the Liquidating Trustee, the Co-Liquidating Trustee, the Post-Effective Date Board of Directors, or the Liquidating Trust and their respective members, directors, officers, agents, attorneys, advisors or employees shall not be liable for actions taken or omitted in its or their capacity as, or on behalf of, the Post-Effective Date Debtor, the Post-Effective Date Board of Directors, the Liquidating Trustee, the Co-Liquidating Trustee, or the Liquidating Trust (as applicable), except those acts found by Final Order to arise out of its or their willful misconduct, gross negligence, fraud, and/or criminal conduct, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its or their actions or inactions in its or their capacity as, or on behalf of the Post-Effective Date Board of Directors, the Post-Effective Date Debtor, the Liquidating Trustee, the Co-Liquidating Trustee, or the Liquidating Trust (as applicable), except for any actions or inactions found by Final Order to involve willful misconduct, gross negligence, fraud, and/or criminal conduct. Any indemnification claim of the Post-Effective Date Debtor, the Post-Effective Date Board of Directors, the Liquidating Trustee, the Co-Liquidating Trustee, and the other parties entitled to indemnification under this subsection shall be satisfied from the Liquidating Trust Assets. The parties subject to this Section shall be entitled to rely, in good faith, on the advice of retained professionals, if any.

17.4    *Exculpation.* To the maximum extent permitted by applicable law, each Exculpated Party shall not have or incur any liability for any act or omission in connection with, related to, or arising out of the Chapter 11 Case (including, without limitation, the filing of the Chapter 11 Case), the marketing and the DAP Sale, the Plan and any related documents (including, without limitation, the negotiation and consummation of the Plan, the pursuit of the Effective Date, the administration of the Plan, or the property to be distributed under the Plan), or each Exculpated Party's exercise or discharge of any powers and duties set forth in the Plan, except with respect to the actions found by Final Order to constitute willful misconduct, gross negligence, fraud, or criminal conduct, and, in all respects, each Exculpated Party shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Without limitation of the foregoing, each such Exculpated Party shall be released and exculpated from any and all Causes of Action

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

that any Person is entitled to assert in his/her/their own right or on behalf of any other Person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence in any way relating to the subject matter of this Section.

17.5   ***No Recourse.*** If a Claim is Allowed in an amount for which after application of the payment priorities established by this Plan (including, without limitation, in Sections 8 and 10 hereof) there is insufficient value to provide a recovery equal to that received by other Holders of Allowed Claims in the respective Class, no Claim Holder shall have recourse for any such deficiency against any of the Released Parties, the Post-Effective Date Debtor, the Post-Effective Date Board of Directors, the Liquidating Trustee, the Co-Liquidating Trustee, or the Liquidating Trust. However, except as specifically stated otherwise in this Plan, nothing in this Plan shall modify any right of a Holder of a Claim under § 502(j). The obligations under this Plan of the Debtor's Estate shall (i) be contractual only and shall not create any fiduciary relationship and (ii) be obligations of the Debtor's Estate only and no individual acting on behalf of the Debtor, the Committee, the Post-Effective Date Debtor, the Post-Effective Date Board of Directors, the Liquidating Trustee, the Co-Liquidating Trustee, the Oversight Committee, or otherwise, shall have any personal or direct liability for these obligations. Approval of the Plan by the Confirmation Order shall not in any way limit the foregoing.

17.6   ***Post-Confirmation Liability of Liquidating Trustee and the Co-Liquidating Trustee.*** The Liquidating Trustee and the Co-Liquidating Trustee, together with their respective consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "***Indemnified Parties***") shall not be liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims for any action or inaction taken in good faith in connection with the performance or discharge of their duties under this Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by final order of a court of competent jurisdiction). However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful misconduct. In addition, the Liquidating Trust and the Estate shall, to the fullest extent permitted by the laws of the State of California, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Liquidating Trust and the Estate or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Trust and the Estate. To the extent the Liquidating Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee or the Co-Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as expenses of the Liquidating Trust. All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

### 17.7  *Preservation of Rights of Action.*

a) **Vesting of Causes of Action.** Except as otherwise provided in the Plan or Confirmation Order, including any Cause of Action that is expressly waived, relinquished, exculpated, released, settled, or compromised under the Plan or Confirmation Order (including, without limitation, pursuant to the Debtor/Estate Release), (i) in accordance with § 1123(b)(3), any Causes of Action that the Debtor holds or may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust; (ii) after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action the Estate holds or may hold against any Entity constituting Liquidating Trust Assets, in accordance with the terms of the Plan and the Liquidating Trust Agreement, as applicable, and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case; and (iii) Causes of Action and recoveries therefrom shall remain the sole property of the Liquidating Trust, and Holders of Claims shall have no direct right or interest in to any such Causes of Action or recoveries.

b) **Preservation of All Causes of Action Not Expressly Settled or Released.** Unless a Cause of Action against a Holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan (including, without limitation, pursuant to the Debtor/Estate Release) and/or or any Final Order (including the Confirmation Order), the Debtor and the Liquidating Trustee expressly reserve such retained Cause of Action (collectively, the "Retained Causes of Action") for later adjudication by the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtor may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time, or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue

preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Retained Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Plan or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order). In addition, the Debtor and Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which a Debtor is a defendant or interested party against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

i. The Retained Causes of Action preserved hereunder include, without limitation, the following claims, rights, or other causes of action:

ii. Against the Excluded Parties and/or any other party not expressly released pursuant to this Plan;

iii. that constitute Avoidance Actions;

iv. relating to pending litigation, including, without limitation, the suits, administrative proceedings, executions, garnishments, and attachments listed in the Debtor's Schedules;

v. against vendors, suppliers of goods or services (including attorneys, accountants, consultants, or other professional service providers), utilities, contract counterparties, and other parties for, including but not limited to: (A) services rendered; (B) over- and under-payments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, setoff, or recoupment; (C) failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors; (D) wrongful or improper termination, suspension of services, or supply of goods, or failure to meet other contractual or regulatory obligations; (E) indemnification and/or warranty claims; or (F) turnover Causes of Action arising under §§ 542 or 543;

vi. against health plans, payors, and other related providers;

vii. against landlords or lessors, including, without limitation, for erroneous charges, overpayments, returns of security deposits, indemnification, or for environmental claims;

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

viii.    arising against current or former tenants or lessees, including, without limitation, for non-payment of rent, damages, and holdover proceedings;

ix.    arising from damage to any of the Debtor's property;

x.    relating to claims, rights, or other Causes of Action the Debtor may have to interplead third parties in actions commenced against the Debtor;

xi.    for collection of a debt or other amount owed to the Debtor;

xii.    against insurance carriers, reinsurance carriers, underwriters, surety bond issuers or other related or similar parties relating to coverage, indemnity, contribution, reimbursement, or other matters; and

xiii.    arising under or relating to the Asset Purchase Agreement and related documents including, but not limited to, enforcement of such agreements by the Debtor's Estate and/or breaches of any and/or all of such agreements by the applicable non-Debtor parties.

c)    **Transactions Subject to Review by Liquidating Trustee or Co-Liquidating Trustee.** Subject to the immediately preceding paragraph, any Entity to which the Debtor has incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from the Debtor or a Transfer of money or property of the Debtor, or that has received services from the Debtor or a Transfer or money or property of the Debtor, or that has transacted business with the Debtor, or that has leased property from the Debtor, should assume and is hereby advised that any such obligation, Transfer, or transaction may be reviewed by the Liquidating Trustee or Co-Liquidating Trustee, as applicable, subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a Proof of Claim against the Debtor in the Chapter 11 Case; (ii) the Debtor, the Committee, the Liquidating Trustee, or Co-Liquidating Trustee have objected to any such Entity's Proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtor, the Committee, the Liquidating Trustee, or Co-Liquidating Trustee have objected to any such Entity's Scheduled Claim; (v) any such Entity's Scheduled Claim has been identified by the Debtor, the Committee, the Liquidating Trustee, or Co-Liquidating Trustee as disputed, contingent, or unliquidated; or (vi) the Debtor, the Liquidating

Trustee, or Co-Liquidating Trustee have identified any potential claim or Cause of Action against such Entity herein.

17.8 ***Termination of Responsibilities of the Patient Care Ombudsman.*** On the Closing Date, the duties and responsibilities of the Patient Care Ombudsman were terminated and the Patient Care Ombudsman was discharged from his duties as Patient Care Ombudsman and is not required to file any further reports or perform any additional duties as Patient Care Ombudsman. No person or entity may seek discovery in any form, including but not limited to by motion, subpoena, notice of deposition or request or demand for production of documents, from the Patient Care Ombudsman or his agents, professionals, employees, other representatives, designees or assigns (collectively, with the Patient Care Ombudsman, the "***Ombudsman Parties***") with respect to any matters arising from or relating in any way to the performance of the duties of the Patient Care Ombudsman in this Chapter 11 Case, including, but not limited to, pleadings, reports or other writings filed by the Patient Care Ombudsman in connection with this Chapter 11 Case. Nothing herein shall in any way limit or otherwise affect the obligations of the Patient Care Ombudsman under confidentiality agreements, if any, between the Patient Care Ombudsman and any other person or entity or shall in any way limit or otherwise affect the Patient Care Ombudsman's obligation, under § 333(c)(1) or other applicable law or Bankruptcy Court Orders, to maintain patient information, including patient records, as confidential, and no such information shall be released by the Patient Care Ombudsman without further order of the Bankruptcy Court.

## SECTION 18.
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

18.1 ***Conditions Precedent to Confirmation of Plan.*** The confirmation of the Plan shall be conditioned upon the Bankruptcy Court entering the Confirmation Order in form and substance satisfactory to the Plan Proponents.

18.2 ***Conditions to Effective Date.*** The following are conditions precedent to the Effective Date:

a) ***The Confirmation Order shall have been entered by this Court in form and substance acceptable to the Plan Proponents, which Confirmation Order shall not have been terminated, suspended, vacated or stayed, and shall not have been amended or modified after entry without the consent of the Plan Proponents;***

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

b)      **The Liquidating Trustee shall have accepted the terms of the Liquidating Trustee's service and compensation, and such terms and compensation shall have been approved by the Court in the Confirmation Order;**

c)      **The Co-Liquidating Trustee shall have accepted the terms of the Co-Liquidating Trustee's service and compensation, and such terms and compensation shall have been approved by the Court in the Confirmation Order;**

d)      **With respect to all other documents and agreements necessary to implement the Plan: (1) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (2) such documents and agreements shall have been tendered for delivery to the required parties and have been approved by any required parties and, to the extent required, filed with and approved by the applicable authorities in the relevant jurisdiction; and (3) such documents and agreements shall have been effected or executed; and**

e)      **All other actions, authorizations, consents, and regulatory approvals required (if any) and necessary to implement the provisions of the Plan shall have been obtained, effected, or executed in a manner acceptable to the Plan Proponents or, if waivable, waived by the Person or Persons (or Entity or Entities) entitled to the benefit thereof.**

18.3    ***Waiver of Condition.*** The Plan Proponents may waive the conditions to effectiveness of this Plan, set forth in Section 18.2 hereof, without leave of the Bankruptcy Court and without any formal action, other than proceeding with confirmation of this Plan and filing a notice of confirmation with the Bankruptcy Court. To the extent that the Debtor believes that it is unable to comply with the conditions to the effectiveness of this Plan, set forth in Section 18.2 hereof, the Plan Proponents reserve the right to amend the Plan at such time (in accordance with the terms hereof) to address such inability.

# **SECTION 19.**
## **RETENTION OF JURISDICTION**

19.1 ***Bankruptcy Court Jurisdiction.*** Unless otherwise provided herein or in the Confirmation Order, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Case. Without limiting the foregoing, the Bankruptcy Court shall retain jurisdiction to:

(a) allow, disallow determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim or Professional Claim and the resolution of any objections to the allowance or priority of Claims, and the resolution of any claim objections brought by the Debtor and/or the Committee, by the Liquidating Trustee and Co-Liquidating Trustee on behalf of the Liquidating Trust;

(b) resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Agreement to which the Debtor is a party and to hear, determine and, if necessary, liquidate, any Claims arising from, or cure amounts related to, such assumption or rejection;

(c) determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Effective Date, including, without limitation, any and all Causes of Action preserved under the Plan commenced prior to, on, or after the Effective Date;

(d) ensure that Distributions to Holders of Allowed Claims are accomplished in accordance with the Plan;

(e) hear and determine matters relating to claims with respect to the Debtor's director and officer insurance;

(f) enter, implement or enforce such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g) issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

95

implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court, including, without limitation, any actions relating to the Nonprofit Status of the Post-Effective Date Debtor;

(h) resolve a dispute with respect to and/or otherwise appoint a replacement of the Liquidating Trustee or Co-Liquidating Trustee;

(i) hear and determine any application to modify this Plan in accordance with § 1127, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created in connection therewith, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j) hear and determine all applications under §§ 330, 331, and 503(b) for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(k) hear and determine disputes arising in connection with the interpretation, implementation, obligation or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated in the Plan, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(l) take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate this Plan, including all contracts, instruments, releases, and other agreements or documents created in connection therewith, or to maintain the integrity of this Plan following consummation;

(m) determine such other matters and for such other purposes as may be provided in the Plan and/or the Confirmation Order;

(n) hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146, including without limitation, (i) any requests for expedited determinations under § 505(b) filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Petition Date through, and including, the date of Final Distribution under the Plan, and (ii)

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

any other matters relating to the Nonprofit Status of the Post-Effective Date Debtor;

(o)   hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and Title 28 of the United States Code;

(p)   authorize recovery of all assets of any of the Debtor and property of the Debtor's Estate, wherever located;

(q)   consider any and all claims against each Released Party involving or relating to the administration of the Chapter 11 Case, any rulings, orders, or decisions in the Chapter 11 Case, or any aspects of the Debtor's Chapter 11 Case and the events leading up to the commencement of the Chapter 11 Case, including the decision to commence the Chapter 11 Case, the development and implementation of the Plan, the decisions and actions taken prior to or during the Chapter 11 Case and any asserted claims based upon or related to prepetition obligations of the Debtor for the purpose of determining whether such claims belong to the Estate or third parties. In the event it is determined that any such claims belong to third parties, then, subject to any applicable subject matter jurisdiction limitations, the Bankruptcy Court shall have exclusive jurisdiction with respect to any such litigation, subject to any determination by the Bankruptcy Court to abstain and consider whether such litigation should more appropriately proceed in another forum;

(r)   hear and resolve any disputes regarding the reserves required hereunder, including without limitation, disputes regarding the amounts of such reserves or the amount, allocation and timing of any releases of such reserved funds; and

(s)   enter the Final Decree closing the Chapter 11 Case.

## SECTION 20.
## MISCELLANEOUS PROVISIONS

20.1   ***Termination of All Employee, Retiree and Workers' Compensation Benefits.*** All existing employee benefits (including, without limitation, workers' compensation benefits, health care plans, disability plans, severance benefit plans, incentive plans, and life insurance plans) and retiree benefits (as such term is defined

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

under § 1114(a)) not previously terminated by the Debtor, or assumed by the Debtor in the Schedule of Assumed Contracts, shall be terminated on or before the Effective Date.

20.2   ***Administrative Claims Bar Date.*** All Requests for Payment of an Administrative Claim must be filed with the Bankruptcy Court and served on the Debtor no later than the Administrative Claims Bar Date. Such Requests for Payment may include estimates of amounts through the Effective Date. The Administrative Claims Reserve shall be established on the Effective Date in an amount determined by the Bankruptcy Court in order to satisfy all Administrative Claims that have not been Allowed as of the Effective Date and all Allowed Administrative Claims that will be paid after the Effective Date. In the event that the Debtor, the Liquidating Trustee objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing: (a) no Request for Payment need be filed with respect to an undisputed postpetition obligation which was paid or is payable by the Debtor in the ordinary course of business; provided, however, that in no event shall a postpetition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, alleged obligations arising from personal injury, property damage, products liability, consumer complaints, employment law (excluding claims arising under workers' compensation law), secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an obligation which is payable in the ordinary course of business; and (b) no Request for Payment need be filed with respect to fees payable pursuant to 28 U.S.C. § 1930. All Administrative Claims that become Allowed after the Effective Date shall be paid solely from the Administrative Claims Reserve, and shall not constitute a claim against the Liquidating Trust, the Liquidating Trustee, or any of the Liquidating Trust Assets. No Holder of an Administrative Claim shall have recourse for any deficiency in the payment of its Administrative Claim against any of the Released Parties, the Post-Effective Date Debtor, the Post-Effective Date Board of Directors, the Liquidating Trustee, or the Liquidating Trust.

20.3   ***Exemption from Transfer Taxes.*** Pursuant to § 1146(c), the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by this Plan, whether real or personal property, shall not be

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

98

subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

20.4    **Amendments.** The Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Plan Proponents may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with § 1127(b), or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of an Allowed Claim that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder.

20.5    **Revocation or Withdrawal of Plan.** The Plan Proponents may withdraw or revoke this Plan at any time prior to the Effective Date. If the Plan Proponents revoke or withdraw this Plan prior to the Effective Date, or if the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

20.6    **Severability.** In the event that the Bankruptcy Court determines, prior to the Effective Date, that any provision of this Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistently with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

20.7    **Request for Expedited Determination of Taxes.** The Plan Proponents or the Liquidating Trustee, as applicable, shall have the right to request an expedited determination under § 505(b) with respect to tax returns filed, or to be filed, for any

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

and all taxable periods ending after the Petition Date through and including the date of Final Distribution under the Plan.

20.8 **_Securities Exemption._** To the extent the Trust Beneficial Interests are deemed or asserted to constitute securities, the Trust Beneficial Interests and the issuance and distribution thereof shall be exempt from Section 5 of the Securities Act, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, § 1145.

20.9 **_U.S. Trustee Quarterly Fees and Post-Confirmation Status Reports._** All fees payable under 28 U.S.C. § 1930(a)(6) shall be paid by the Debtor in the amounts and at the times such fees may become due up to and including the Effective Date. The Liquidating Trust shall pay all fees payable by the Debtor under 28 U.S.C. § 1930(a)(6) until the Chapter 11 Case is closed, dismissed or converted. After the Effective Date, the Liquidating Trust and Post-Effective Date Debtor shall file and serve the quarterly status reports required by § 1106(a)(7), Bankruptcy Rule 2015(a)(5), and 28 C.F.R. § 58.8.

20.10 **_Courts of Competent Jurisdiction._** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

20.11 **_Governing Law._** Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflict of laws thereof.

20.12 **_Continuing Effect of the Bankruptcy Court Orders and Settlement Stipulations._** Unless otherwise set forth in the Plan or the Confirmation Order or otherwise ordered by the Bankruptcy Court, the orders of the Bankruptcy Court and any other settlement stipulations entered into by the Debtor (including without limitation, the DHCS 9019 Order, the DHCS Settlement Agreement, agreements to lift the automatic stay, resolve litigation claims and limit recoveries to available insurance proceeds) shall not be modified, limited or amended by the Plan and shall remain in full force and effect. To the extent of any direct conflict between the terms

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

of this Plan and any settlement agreements, the conflicting provisions of such settlement agreements shall govern with respect to the treatment of Allowed Claims as provided for therein.

20.13 *Substantial Consummation.* On the Effective Date, the Plan shall be deemed substantially consummated under §§ 1101 and 1127(b).

20.14 *Waiver of Fourteen-Day Stay.* The Plan Proponents request as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

20.15 *Reservation of Rights.* Neither the filing of the Plan nor any statement or provision contained in the Plan, nor the taking by any party in interest of any action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor any statement contained in the Plan may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Case involving the Debtor, except with respect to Confirmation of the Plan.

20.16 *Successors and Assigns.* The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

20.17 *Time.* In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply. Any reference to "day" or "days" shall mean calendar days, unless otherwise specified herein.

20.18 *Business Day Transactions.* In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed

on or as soon as reasonably practicable on the next succeeding Business Day, but shall be deemed to have been completed as of the initial due date.

20.19 **Headings.** Headings are used in this Plan for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

20.20 **Exhibits.** Exhibit A, any schedules to this Plan, and the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein.

20.21 **Notices.** Any notices to or requests by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

<u>If to the Debtor:</u>

Borrego Community Health Foundation
587 Palm Canyon Dr.
Suite 208
Borrego Springs, California 92004
Attn:  Doug Habib

with copies to:

Dentons US LLP
Attorneys for the Debtor and Debtor-In-Possession
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017
1 213 623 9300
Attn:  Samuel R. Maizel
        Tania M. Moyron
        Rebecca M. Wicks

<u>If to the Committee:</u>

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
1 310 227 6910
Attn:  Jeffrey N. Pomerantz
        Steven W. Golden

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

If to the Liquidating Trustee:

Ankura Consulting Group, LLC
2000 K Street NW, 12th Floor
Washington, DC 20006
1 202 507 5499
Attn: Isaac Lee

If to the Co-Liquidating Trustee:

FTI Consulting, Inc.
8251 Greensboro Drive, Suite 400
McLean, VA 22101
1 202 262 4778
Attn: Narendra Ganti

20.22 **Post-Effective Date Notices.** Following the Effective Date, except as otherwise provided herein, notices shall only be served on the Post-Effective Date Debtor, the Liquidating Trustee, the Co-Liquidating Trustee, the U.S. Trustee, and those Persons who file with the Court and serve upon the Liquidating Trust a request, which includes such Person's name, contact person, address, telephone number, facsimile number, and email, that such Person receive notice of post-Effective Date matters. Persons who had previously filed with the Court requests for special notice of the proceedings and other filings in the Chapter 11 Case shall not receive notice of post-Effective Date matters unless such Persons File a new request in accordance with this Section.

20.23 **Conflict of Terms.** In the event of a conflict between the terms of this Plan and the Disclosure Statement, the terms of this Plan shall control.

20.24 **Entire Agreement.** On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

Dated:      San Diego, California
         As of December 4, 2023

1

## **Exhibit A**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

# Exhibit A[2]
Liquidation Analysis

**Background**

Section 1129(a)(7) of the Bankruptcy Code, which is often referred to as the "best interests of creditors" test, requires that as a condition to confirmation of the Plan, each holder of a Claim in each Impaired Class must either (i) accept the Plan, or (ii) receive or retain under the Plan property of value that is not less than the amount the Holder of an Impaired Class Claim would receive or retain in a hypothetical liquidation under chapter 7 of the Bankruptcy Code (the "***Liquidation Analysis***").

The Debtor prepared this Liquidation Analysis to include: (i) estimated cash proceeds that a chapter 7 trustee would generate if the Debtor's Chapter 11 Case were converted to a chapter 7 case and the assets of the Debtor's Estate were liquidated; (ii) estimated distribution that each Holder of a Claim would receive from the liquidation proceeds; and (iii) compared each Holder's estimated distribution and recovery under a chapter 7 liquidation to the projected distribution and recovery under the Plan.

The Liquidation Analysis is based upon certain assumptions, and, as such, certain aspects may be different from those represented in the Plan. The Liquidation Analysis should be read in conjunction with the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Borrego Community Health Foundation* [Docket No. 1091].

THE PLAN PROPONENTS MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THESE ESTIMATES AND ASSUMPTIONS CONTAINED HEREIN, OR A CHAPTER 7 TRUSTEE'S ABILITY TO ACHIEVE THE PROJECTED RESULTS. IN THE EVENT THAT THE CHAPTER 11 CASE IS CONVERTED TO A CHAPTER 7 LIQUIDATION, ACTUAL RESULTS MAY VARY MATERIALLY FROM THE ESTIMATES AND PROJECTIONS SET FORTH IN THIS LIQUIDATION ANALYSIS.

**Presentation**

The Liquidation Analysis has been prepared assuming the Debtor converted its

---

[2] Capitalized terms not otherwise defined herein shall have the meanings described to them in the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Borrego Community Health Foundation* [Docket No. 1091].

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Chapter 11 Case to chapter 7 of the Bankruptcy Code on or about January 19, 2024 (the "***Liquidation Date***").[3]

On the Liquidation Date, it is assumed the Bankruptcy Court would appoint a chapter 7 trustee to liquidate the Debtor's remaining assets, wind down the Debtor and the Estate, and provide distributions to creditors considering the DHCS Settlement Agreement. The distributable value is assumed to be applied in the following order: (i) payment of the Allowed Secured Claims and the DHCS Sales Proceeds Recovery; (ii) chapter 7 administrative costs, including trustee fees, professional fees, and wind-down expenses; (iii) Allowed Chapter 11 Administrative Claims and Priority Claims; (iv) Allowed General Unsecured Claims; and (v) the Allowed DHCS Claim. The treatment of creditors in the context of a chapter 7 liquidation would be the same as they are under the Plan, but the distribution to those creditors would be significantly less.

The Liquidation Analysis assumes the Liquidating Trust under the Plan would employ existing Debtor and/or Committee professionals. Under the chapter 7 scenario, a chapter 7 trustee would be appointed to administer the Debtor's assets. A chapter 7 trustee would be completely unfamiliar with the complexities of this Chapter 11 Case. Following the appointment of a chapter 7 trustee, the chapter 7 trustee would presumably hire new professionals who are equally unfamiliar with the complexities of this Chapter 11 Case. For example, there is significant litigation pending where the Debtor is a plaintiff, and those cases could eventually represent a meaningful source of recoveries for the Debtor's Estate. The Debtor's professionals are intimately familiar with that litigation. The result of a chapter 7 trustee's employment of a substantial number of professionals unfamiliar with this complex Chapter 11 Case would be the incurrence of an extraordinary amount of additional professional fees. By contrast, the Debtor's and the Committee's professionals are skilled and already intimately familiar with the Chapter 11 Case.

---

[3] The "Best Interest Test" requires a liquidation analysis that demonstrates that, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, than that claimant or interest holder must receive or retain under the plan property of a value not less than the amount that such holder would receive or retain if the Debtor were forced to liquidate under chapter 7 of the Bankruptcy Code. It is not at all clear that this test applies in the bankruptcy of a nonprofit company. Unlike in the bankruptcy of a for-profit entity, the Bankruptcy Code and state law may preclude or restrict the forced sale of a nonprofit's assets. 11 U.S.C. §§ 1112(c), 303. By way of example, under § 1112(c), a nonprofit's creditors cannot force a nonprofit to convert its chapter 11 case to a chapter 7, nor under § 303 can they file an involuntary petition against a nonprofit. Similarly, state statutes impose stringent requirements on the transfer or sale of a nonprofit debtor's assets, *see, e.g.*, CAL. CORP. CODE §§ 5913, 7913, 9633.5, and the involuntary dissolution of a nonprofit, *see, e.g.*, CAL. CORP. CODE §§ 6510-6519, 8510-8519, 9680.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Additionally, a chapter 7 trustee(s) would be under a statutory duty to liquidate the Debtor's assets as expeditiously as possible. *See* 11 U.S.C. § 704(a)(1). However, the Debtor must remain extant, with operating management and a board of directors until DAP Health obtains its own Medicare and Medi-Cal provider agreements, among other things. Since the Bankruptcy Code does not automatically authorize the chapter 7 trustee to operate the Debtor's businesses following a conversion to chapter 7, the chapter 7 trustee would be required to seek authority to continue operating the Debtor after obtaining approval from the U.S. Trustee to make such request. *See, e.g.*, 11 U.S.C. § 721 ("The court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate."); Executive Office for the United States Trustee, U.S. Dept. of Justice *Handbook for Chapter 7 Trustees* (Oct. 1, 2012), at 4-31  ("The trustee must consult with the United States Trustee prior to seeking authority to operate the business[.]"). The chapter 7 trustee's discretion to move for an operating order under § 721, and the willingness of the U.S. Trustee and Court to grant such request, presents significant potential risks to creditor recoveries in chapter 7 for several important reasons. The Debtor must be in a position to monitor DAP Health's operations for as long as DAP Health does not have its own provider agreements. Failure to allow DAP Health continued access to Medi-Cal receivables would imperil the continued viability of the Debtor's former clinics and breach the agreement between the Debtor and DAP Health. Thus, the risk that the Debtor would not continue to operate in a hypothetical chapter 7 case represents a substantial risk to creditor recoveries in comparison with the Plan.  Additionally, the chapter 7 trustee and/or their professionals would have to have health care industry operational experience and experience collecting health care receivables, in general, and FQHC operational experience specifically, to provide the necessary oversight and ensure sufficient liquidation of Estate assets.  Retaining this expertise will result in greatly increasing the cost to the chapter 7 trustee and the Estate.

The advantages of finishing a liquidation in chapter 11 are not just "common knowledge" among professionals. Experts have also concluded that conversion to chapter 7 offers few advantages over liquidation in chapter 11: cases converted from chapter 11 to chapter 7 take significantly longer to resolve than a "pure" chapter 11 liquidation, and such cases require similar, if not greater, fees, and in the end provide creditors with statistically lower recovery rates than a comparable chapter 11 procedure. *See* Arturo Bris, Ivo Welch and Ning Zhu, *The Costs of Bankruptcy: Chapter 7 Liquidation versus Chapter 11 Reorganization*, J. OF FINANCE, vol. 61(3), June 2006, at 1253.

**Conclusion**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

The Plan demonstrates the Allowed DHCS Claim will receive a substantial recovery under the Plan. However, under a chapter 7 liquidation, the remaining value available for the Allowed DHCS Claim would be materially less compared to the remaining value available under the proposed Plan. Through the significant cost savings of the confirmed Plan as compared to conversion to chapter 7, holders of allowed claims will receive more under the Plan than they would receive in a converted chapter 7 bankruptcy (and certainly at least as much as under the Plan).

| | Borrego Community Health Foundation | | |
|---|---|---|---|
| | Liquidation Analysis | | |
| | Proposed Chapter 11 Plan vs. Chapter 7 Plan of Liquidation | | |

*$ in USD 000's*

| | Proposed Plan | Chapter 7 | FN |
|---|---|---|---|
| Current Cash on Hand | $ 69,332 | $ 69,332 | [A] |
| Cash Burn to Plan Effective Date (ED) | (1,628) | (1,628) | [B] |
| **Distributable Value at ED** | **$ 67,705** | **$ 67,705** | |
| | | | |
| Secured Claims | (3) | (3) | |
| DHCS Sales Proceeds Recovery | (13,600) | (13,600) | [C] |
| US Trustee Fees | (250) | (250) | |
| Administrative Claims - Excluding Professional Fees | (1,939) | - | |
| Administrative Professional Fee Claims | (2,015) | - | |
| Priority Claims | (1,435) | - | |
| **Claims to be Paid at ED** | **$ (19,242)** | **$ (13,853)** | |
| | | | |
| **Excess Distributable Value at ED** | **$ 48,463** | **$ 53,851** | |
| | | | |
| Litigation Settlement Proceeds | 1,500 | 1,500 | |
| Jared Settlement Proceeds | 105 | 105 | [D] |
| Estimated Post-ED Net Payments Due to Buyer | (1,425) | (1,425) | [E] |
| **Distributable Value to be Realized Post-ED** | **$ 48,643** | **$ 54,031** | |
| | | | |
| Post-ED US Trustee Fees | (750) | (750) | |
| Wind-Down Expenses | (1,523) | (1,523) | [F] |
| Liquidating Trust Fees | (3,110) | - | |
| Chapter 7 Trustee Fee (3% of disbursements) | - | (2,372) | |
| Chapter 7 Trustee Legal Counsel | - | (3,000) | [G] |
| Chapter 7 Trustee Financial Advisor | - | (1,100) | [G] |
| Cost of Transition from Chapter 11 Debtor's Professionals | - | (1,000) | [H] |
| Administrative Claims - Excluding Professional Fees | - | (1,939) | |
| Administrative Professional Fee Claims | - | (2,015) | |
| Priority Claims | - | (1,435) | |
| **Administrative & Priority Claims Paid Post-ED** | **$ (5,382)** | **$ (15,133)** | |
| | | | |
| **Remaining Value Available for Unsecured Creditors** | **$ 43,260** | **$ 38,898** | |
| | | | |
| Estimated General Unsecured Claims | 11,668 | 11,668 | [I] |
| **Remaining Value for DHCS Claim** | **$ 31,592** | **$ 27,230** | [C] |
| | | | |
| **Negative Impact of Chapter 7 Scenario** | | **$ (4,362)** | |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**Footnotes to the Liquidation Analysis**

[A]: This reflects the Debtor's Cash on hand as of November 3, 2023.

[B]: The projected uses of Cash include estimated payment of Administrative Claims and Chapter 11 administrative costs incurred before the Effective Date, net of estimated accounts receivable collections.

[C]: Pursuant to the DHCS Settlement Agreement, DHCS will be paid the first 40% of Net Cash Proceeds of the DAP Sale. The remaining cash available after disbursements to Allowed General Unsecured Creditors will be distributed to DHCS in accordance with the Plan and DHCS Settlement Agreement.

[D]: This reflects payments pursuant to the compromise among Debtor, George Jared, D.D.S., and George Jared D.D.S., Inc. [Docket Nos. 761], as approved by this Court's order [Docket No. 824].

[E]: This represents accounts receivable collected on behalf of DAP Health pursuant to the Asset Purchase Agreement after Closing [Docket No. 465], net of any Debtor-related accounts receivable collections.

[F]: This represents the costs of maintaining the Debtor's Estate until the regulatory change of ownership applications are approved, and costs of the subsequent wind-down of the Estate. Expenses include, but are not limited to, regulatory reporting and audits, tax related filings, business software licenses, document storage, and bank fees.

[G]: Chapter 7 trustee advisor fees are estimated to be materially greater than the Liquidating Trust advisor fees given the need for the chapter 7 trustee's professionals to familiarize themselves with the Chapter 11 Case and its complexities.

[H]: This represents an estimate of the costs to transition from the Debtor's current professionals in the Chapter 11 Case to incoming chapter 7 professionals including the costs of information and knowledge transfer by the Debtor's professionals related to outstanding causes of action.

[I]: General Unsecured Claims were based on the mid-point of an estimated allowed claims range of $6.2 million to $17.1 million.  As set forth herein and in the Plan, General Unsecured Claimants are anticipated to receive 100% recovery on their Allowed Claims.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300